*Designated for electronic publication only*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 18-5157

CASEL F. LUCAS, APPELLANT,

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before GREENBERG, *Judge.*

**MEMORANDUM DECISION**

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

GREENBERG, *Judge:* Gulf War veteran Casel F. Lucas appeals through counsel that part of a June 14, 2018, Board of Veterans' Appeals decision that denied service connection for arthritis of the left elbow, a right elbow strain, bilateral ankle strains, chronic fatigue syndrome (CFS), a sleep disorder, genitourinary problems, and impotence.[1] Record (R.) at 4-18. The appellant argues that the Board (1) erred by relying on an inadequate March 2011 examination; (2) failed to address whether his left elbow arthritis entitled him to service connection based on a continuity of symptomatology; and (3) failed to address whether his undiagnosed symptoms of fatigue, sleep impairment, abdominal discomfort, and genitourinary problems entitled him to direct service connection. Appellant's Brief at 14-28. The Secretary concedes that remand is warranted to determine whether Mr. Lucas is entitled to presumptive service connection under 38 C.F.R. § 3.317

---

[1] The Board also found that the veteran was entitled to service connection for a right fifth finger condition, a left fifth finger condition, recurrent respiratory infections, GERD, and headaches. The Court will not disturb these favorable findings. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007). Additionally, the Board remanded the issues of entitlement to service connection for a right knee condition and an increased rating for post-traumatic stress disorder (PTSD). These matters are not currently before the Court. *See Hampton v. Gober*, 10 Vet.App. 481, 482 (1997). Lastly, the Board also determined that the veteran was not entitled to service connection for ALS and that he voluntarily withdrew a claim related to an earlier effective date for PTSD. The appellant presents no argument as to these matters and the Court deems them abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc) (holding that, where an appellant abandons an issue or claim, the Court will not address it).

(2019) for his abdominal discomfort, genitourinary symptoms, and impotence; but he argues that the rest of the decision on appeal should be affirmed. Secretary's Brief at 9-23. For the following reasons, the Court will set that part of the June 2018 Board decision on appeal aside and remand the matters for readjudication.

Justice Alito noted in *Henderson v. Shinseki* that our Court's scope of review in this appeal is "similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706." 562 U.S. 428, 432 n.2 (2011); *see* 38 U.S.C. § 7261. The creation of a special court solely for veterans, and other specified relations such as their widows, is consistent with congressional intent as old as the Republic. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n., 1 L. Ed. 436 (1792) ("[T]he objects of this act are exceedingly benevolent, and do real honor to the humanity and justice of Congress."). "The Court may hear cases by judges sitting alone or in panels, as determined pursuant to procedures established by the Court." 38 U.S.C. § 7254. Accordingly, the statutory command of Congress that a single judge may issue a binding decision, pursuant to procedures established by the Court, is "unambiguous, unequivocal, and unlimited." *Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993); *see generally Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

From the beginning of the Republic, statutory construction concerning congressional promises to veterans has been of great concern. "By the act concerning invalids, passed in June, 1794, vol. 3. p. 112, the secretary at war is ordered to place on the pension list, all persons whose names are contained in a report previously made by him to congress. If he should refuse to do so, would the wounded veteran be without remedy? Is it to be contended that where the law, in precise terms, directs the performance of an act, in which an individual is interested, the law is incapable of securing obedience to its mandate? Is it on account of the character of the person against whom the complaint is made? Is it to be contended that the heads of departments are not amenable to the laws of their country?" *Marbury v. Madison*, 5 U.S. 137, 164, 2 L. Ed. 60, 69 (1803).

The appellant served on active duty in the U.S. Army from March 1988 to March 1992 as a rifleman. R. at 27 (DD Form 214). The veteran was awarded numerous medals during service, including a Southwest Asia service medal with two bronze stars. *Id.*

In August 2010, the veteran filed a claim seeking service connection for joint pain in his bilateral ankles and bilateral elbows, chronic fatigue, a sleep disorder, and genitourinary issues to

include impotence. R. at 1243-56. In a September 2010 statement in support of his claim, the veteran explained that he had experienced these conditions since service. R. at 1166-77.

In March 2011, Mr. Lucas attended a VA examination for his claimed conditions. R. at 958-86. The VA examiner noted that the veteran complained of "unspecified joint pain . . . since 1990 . . . due to wear and tear" in his bilateral ankles and bilateral elbows. R. at 979. The examiner diagnosed the veteran with bilateral elbow strain and bilateral ankle strain. R. at 985. The examiner explained that because strains are diseases "with a clear and specific etiology and diagnosis" that are caused by "injury or overuse," the condition was not related to service because "there are no records of evaluation or treatment for . . . strain[s] during active duty or since active duty." R. at 985.

Additionally, the March 2011 examiner reviewed Mr. Lucas's complaints regarding fatigue and determined that there was "no pathology to render a diagnosis" for chronic fatigue syndrome because 6 of the 10 criteria required for a CFS diagnosis had not been met. R. at 978. Further, the examiner noted that she had reviewed whether any other clinical condition could explain the veteran's fatigue symptoms, but did not link the condition to any other known pathology. *Id.* Lastly, the examiner did not provide a diagnosis for the veteran's sleep disturbances, abdominal discomfort with flatulence, genitourinary issues, or impotence because she concluded that there was "no pathology to render a diagnosis" for these conditions. R. at 971-72.

In April 2011, the March 2011 examiner provided an addendum opinion related to x-rays R. at 948. After reviewing the x-rays, the examiner diagnosed Mr. Lucas with arthritis in his left elbow, but opined that the condition was likely not related to service. *Id.* The examiner also noted that the remaining joints were normal. *Id.*

In June 2018, the Board issued a decision denying service connection for arthritis of the left elbow, right elbow strain, bilateral ankle strains, CFS, a sleep disorder, genitourinary problems, and impotence. R. at 4-18. The Board relied on the March 2011 examination to deny the bilateral ankle, bilateral elbow, sleep disorder, and CFS claims. R. at 11-15. The Board also found that the conditions related to the appellant's joint pain, and fatigue did not entitle him to service connection for a medically unexplained chronic multi symptom illness (MUCMI) under 38 C.F.R. § 3.317. R. at 9-11. The Board did not discuss, however, whether the appellant's genitourinary problems or impotence entitled him to presumptive service connection for a MUCMI, nor did the Board address

the abdominal discomfort with flatulence discussed in the March 2011 examination report. *See* R. at 4-18. This appeal ensued.

The Court agrees with the Secretary that a remand is required for the Board to address whether 38 C.F.R. § 3.317 allows for service connection for the appellant's genitourinary problems and impotence. Appellee's Brief at 9-12. Further, the Court agrees with the Secretary's concession that the Board failed to discuss service connection for the appellant's abdominal discomfort with related flatulence, to include whether the condition can be granted presumptive service connection under 38 C.F.R. § 3.317. *Id.* Because the examinations of record failed to provide a diagnosis or medical explanation for the genitourinary and abdominal symptoms and impotence, the Board was required to address whether these signs or symptoms allow for presumptive service connection under 38 C.F.R. § 3.317.

The Court also concludes that the Board erred in relying on an inadequate March 2011 VA examination, and its accompanying April 2011 addendum, to deny service connection for a MUCMI. *Hicks v. Brown*, 8 Vet.App. 417, 421 (1995) (the Board's reliance on an inadequate medical examination frustrates judicial review and requires remand). The March 2011 examiner's failure to explain the etiology of Mr. Lucas's unspecified joint pain renders the examination inadequate as to whether the veteran suffers from a MUCMI. *Stewart v. Wilkie*, 30 Vet.App. 383, 389 (2020) (holding that under 38 C.F.R. § 3.317, "an illness is a MUCMI where either etiology or pathophysiology of the illness is inconclusive").

In the March 2011 VA examination and accompanying April 2011 addendum, the examiner stated that the appellant's unspecified joint pains were caused by strains and arthritis. R. at 948, 985. The examiner reasoned that because both arthritis and strains had a specific etiology and diagnosis, the conditions, and thus the related joint pain, could not be related to service. R. at 979, 985. However, the examiner neither provided a "specific etiology" for the conditions nor discounted the lay evidence providing a possible etiology; instead, the examiner provided only these conditions' pathophysiology. Therefore, without some explanation regarding the specific etiology of these conditions, it is unclear why the Board deemed this examination supportive of its denial of service connection as a MUCMI. Yet, the examiner did not explain how finding all joints, but the left elbow, normal in April 2011 evidenced that the appellant's current symptoms were related to strains and arthritis; to the contrary, this unexplained joint pain would appear to meet the criteria for a symptom of a MUCMI. R. at 10; *see* 38 C.F.R. § 3.317 (2019) (providing that

4

veterans who served during the Persian Gulf war are entitled to presumptive service connection for "a medically unexplained chronic multisymptom illness that is defined by a cluster of signs or symptoms"); *see also Stewart* 30 Vet.App. at 389.

Further, the Court determines that the Board erred by not considering whether the appellant's sleep disturbances and fatigue entitled him to service connection for a MUCMI. R. at 10-11; 38 § C.F.R. 3.317. This is especially troubling given that the Board noted that fatigue and sleep disturbances are signs of a MUCMI, R. at 10, and the March 2011 VA examiner's admission that she could not provide a diagnosis related to fatigue or sleep disturbances. R. at 976-78. Remand is therefore warranted for the Board to adequately address whether presumptive service connection is warranted for these undiagnosable conditions.

The Court is troubled by the Board's cursory discussion regarding a MUCMI. Given that *all* the claims on appeal involved undiagnosable conditions, or unexplained signs or symptoms, it is unclear why the appellant should not be service connected for a MUCMI. On remand the Board's consideration of the MUCMI issue must include a holistic review of *all* the appellant's undiagnosable conditions or unexplained signs or symptoms. *See* 38 C.F.R. § 3.317.

Lastly, the Court agrees with the appellant that the Board should have discussed whether the veteran's left elbow arthritis entitled him to service connection on the basis of a continuity of symptomatology. *See* 38 C.F.R. § 3.303(b) (2019). The appellant stated that the symptoms associated with his left elbow arthritis have persisted since service, yet the Board failed to address this evidence or determine whether the veteran may be entitled to service connection based on continued symptoms. *See Id.* On remand the Board should also address whether this evidence warrants service connection for left elbow arthritis.

This matter is to be provided expeditious treatment. *See* 38 U.S.C. § 7112; *see also Hayburn's Case*, 2 U.S. (2 Dall.) at 410, n. ("[M]any unfortunate and meritorious [veterans], whom Congress have justly thought proper objects of immediate relief, may suffer great distress, even by a short delay, and may be utterly ruined, by a long one.").

For the foregoing reason, that part of the June 14, 2018, Board decision on appeal is SET ASIDE and those matters are REMANDED for readjudication.

DATED: March 31, 2020
Copies to:
Karen P Galla, Esq.
VA General Counsel (027)



# COMMONWEALTH OF VIRGINIA

### Department of Corrections
**Division of Operations**
**Eastern Region**

Gregory L. Holloway
Regional Operations Chief

14545 Old Belfield Road
Capron, VA 23829
(434) 658-4368

July 2, 2020

C. Lucas 1080673
Haynesville Correctional Center
P.O. Box 129
Haynesville, Virginia 22472

Dear C. Lucas:

Although your concerns are appreciated and noted, there was no evidence enclosed to support the proper utilization of the *Offender Grievance Procedure (OP 866.1)*. In addition, HCC-20-REG-00046 is due a response to you on July 5, 2020. Please note the below information which you can use as guidance when attempting to have your issues addressed via the grievance procedure.

Before a grievance issue can be reviewed outside the institutional level, an exhaustion of that level must be demonstrated which begins with the submission of an informal complaint. If the staff fails to respond, you can still choose to submit your regular grievance to the Institutional Ombudsman by attaching the complaint form and/or receipt with the grievance. If staff determines that your **grievance** does not meet the intake criteria, you can **then** forward the package to this office for appeal review. If no receipt was issued to you within two working days, then you are advised to speak with your Unit Manager either in person or via request form so that he/she can inquire into the status of your document(s). Please utilize the procedure designed to investigate and bring resolution to grievable matters. With only a few exceptions, remember grievances must be filed within thirty days from date of occurrence of the alleged incident.

If you have questions regarding filing procedure, you may direct them to the Grievance staff at your facility and/or refer to OP 866.1.

Sincerely

K. Cosby, Regional Ombudsman
Eastern Regional Office

/kwc

# BOARD OF VETERANS' APPEALS

## DEPARTMENT OF VETERANS AFFAIRS

IN THE APPEAL OF
### CASEL F. LUCAS
REPRESENTED BY
### Virginia Department of Veterans Services

SS 2▬▬▬▬
Docket No. 13-22 962

DATE:      June 14, 2018

## ORDER

Service connection for post-traumatic arthritis, left elbow, to include as due to Gulf War environmental exposures, is denied.

Service connection for right elbow strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for flexion contracture, distal interphalangeal (DIP) joint, right fifth finger, is granted.

Service connection for flexion contracture, DIP joint, left fifth finger, is granted.

Service connection for right ankle strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for left ankle strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for chronic fatigue syndrome (CFS), to include as due to Gulf War environmental exposures, is denied.

Service connection for recurrent upper respiratory infections is granted.

Service connection for a sleep disorder, to include as due to Gulf War environmental exposures, is denied.

Service connection for gastroesophageal reflux disease (GERD) is granted.

RECEIVED MAY 2 6 2020 By: GRIEVANCE OFFIC

IN THE APPEAL OF
**CASEL F. LUCAS**

SS 2█████████
Docket No. 13-22 962

Service connection for genitourinary problems, to include as due to Gulf War environmental exposures, is denied.

Service connection for impotency, to include as due to Gulf War environmental exposures, is denied.

Service connection for amyotrophic lateral sclerosis (ALS), to include as due to Gulf War environmental exposures, is denied.

Service connection for <u>headaches</u> is <u>granted</u>.

The appeal for an effective date earlier than August 25, 2010 for the grant of service connection for PTSD is dismissed.

## REMANDED

Entitlement to service connection for patellofemoral syndrome, right knee, to include as due to Gulf War environmental exposures, is remanded.

Entitlement to an initial rating in excess of 10 percent for posttraumatic stress disorder (PTSD) is remanded.

## FINDINGS OF FACT

1. The Veteran had active service in the Southwest Asia Theater of Operations during the Persian Gulf War.

2. The Veteran's left elbow pain has been linked to a diagnosis of post-traumatic arthritis, left elbow, and the preponderance of the evidence is against finding that his post-traumatic arthritis, left elbow, was manifested in service, within one year of his separation from service, or is due to a disease or injury in service, to include a specific in-service event, injury, or disease.

**RECEIVED**

MAY 2 6 2020

By:_____
GRIEVANCE OFFICE

2

IN THE APPEAL OF
**CASEL F. LUCAS**

SS 2█████████

Docket No. 13-22 962

3. The Veteran's right elbow pain has been linked to a diagnosis of right elbow strain, and the preponderance of the evidence is against finding that his right elbow strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease.

4. The Veteran's flexion contracture, DIP joint, right fifth finger, has been related to service.

5. The Veteran's flexion contracture, DIP joint, left fifth finger, has been related to service.

6. The Veteran's right ankle pain has been linked to a diagnosis of right ankle strain, and the preponderance of the evidence is against finding that his right ankle strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease

7. The Veteran's left ankle pain has been linked to a diagnosis of right ankle strain, and the preponderance of the evidence is against finding that his right ankle strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease

8. The Veteran has not manifested a diagnosis of CFS during the pendency of his appeal; nor has he been diagnosed with a medically unexplained chronic multi symptom illness.

9. The preponderance of the evidence of record establishes recurrent upper respiratory infections as a diagnosable but medically unexplained chronic multi symptom illness.

10. The preponderance of the evidence is against finding that the Veteran has a sleep disorder due to a disease or injury in service, to include specific in-service event, injury, or disease.

11. The Veteran's GERD began during active service.



RECEIVED

MAY 2 6 2020

By: GRIEVANCE OFFICE

3

IN THE APPEAL OF                      SS 2⬛⬛⬛⬛⬛⬛⬛

**CASEL F. LUCAS**                  Docket No. 13-22 962

been diagnosed with CFS or with any medically unexplained chronic multi-symptom illness. The existence of a current disability is the cornerstone of a claim for VA disability compensation. *See Brammer v. Derwinski, supra.* As such, without a current diagnosis, the Veteran lacks the evidence necessary to substantiate his claim for service connection. The Board acknowledges that the Veteran does appear to have experienced fatigue, particularly as a result of his difficulties sleeping, but that fact alone does not necessitate the diagnosis of CFS which requires a specific set of symptomatology beyond just fatigue.

**5. Entitlement to service connection for recurrent upper respiratory infections.**

The Veteran contends he has respiratory problems due to various exposures in Iraq during the Gulf War, including chemicals and toxins, and exposure to WMDs after the demolition of an arms facility. He also contends he has had recurrent upper respiratory infections, to include pneumonia, and bronchitis, requiring treatment, since his service in Desert Storm.

Service treatment records show that in April 1988, the Veteran was treated for asthmatic bronchitis, and in May 1988 he was hospitalized for acute respiratory disease.

On a VA examination in March 2011, the Veteran reported his respiratory condition had an onset in the 1990s, and that he had recurrent upper respiratory infections requiring treatment since Desert Storm. The diagnosis was recurrent upper respiratory infections, which the examiner indicated was, by VBA definition, category # (2), a diagnosable but medically unexplained chronic multi symptom illness of unknown etiology. The examiner opined it was at least as likely as not the Veteran's recurrent upper respiratory infections were related to a specific exposure event he experienced during his service in Southwest Asia. The examiner noted that signs and symptoms that may be manifestations of both undiagnosed illnesses or diagnosed medically unexplained chronic multi-symptom illnesses include signs or symptoms involving the upper respiratory system.

As noted above, signs and symptoms which may be manifestations of medically unexplained chronic multi symptom illnesses include respiratory symptoms.

RECEIVED
MAY 2 6 2020
By: GRIEVANCE OFFICE

IN THE APPEAL OF
  CASEL F. LUCAS

SS 22~~~~~
Docket No. 13-22 962

38 C.F.R. § 3.317(b).  Therefore, the VA examiner's 2011 assessment of the Veteran's recurrent upper respiratory infections as a diagnosable but medically unexplained chronic multi symptom illness is consistent with the regulations governing such illnesses.  Review of the record and resolving reasonable doubt in favor of the Veteran, the Board finds that his respiratory symptoms manifested to a degree of 10 percent or more not later than December 31, 2021, and service connection for this condition is therefore warranted.  38 C.F.R. § 3.317.

## 6. Entitlement to service connection for sleep disorder.

The Veteran contends he has a sleep disorder due to various exposures during the Gulf War, including chemicals and toxins, as well as exposure to WMDs after the demolition of an arms facility.  He also contends he has had restless sleep and sleep disruptions since 1990/1991.

In a June 1999 treatment record from the Virginia Department of Corrections, it was noted that the Veteran had reported he was not able to sleep well and the impression was sleep disorder.  Subsequently, it was noted in prison records that he was prescribed Benadryl as a sleeping medication.

The Board concludes that, while the Veteran arguably was diagnosed with a sleep disorder in June 1999, and he has reported having sleep problems since service, the preponderance of the evidence weighs against finding that he has a sleep disorder that began during service or is otherwise related to an in-service injury, event, or disease.  38 U.S.C. §§ 1110, 1131, 5107(b); *Holton v. Shinseki*, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).

In this regard, private treatment records from prison show the Veteran was not diagnosed with a sleep disorder until 1999, which is 7 years after his separation from service.  While the Veteran is competent to report having experienced symptoms of restless sleep and sleep problems since service, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of a sleep disability, as the issue is medically complex.  *Jandreau v. Nicholson*, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007).

RECEIVED

MAY 2 6 2020

By: GRIEVANCE OFFICE

13



VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866_F1_4-17

## REGULAR GRIEVANCE

Log Number: _____

| LUCAS   CASEL | 1080673 | Q·A | Q·A·38·B |
|---|---|---|---|
| Last Name, First | Number | Building | Cell/Bed Number |

| Security, Food Service, Medical, Acc Administration | 24 April 2030      10:41 AM |
|---|---|
| Individuals Involved in Incident | Date/ Time of Incident |

**WHAT IS YOUR COMPLAINT?** (Provide information from the informal process: Attach Informal Complaint response or other documentation of informal process.) FOOD SERVICE AREA Contaminated by COVID-19 Inmates from 6-A-Dorm was moved There while The Compound Lunch Menu was Being Prepared And Served. A Group of Medical Personnel Went into Chow Hall B To Exam The Entire Dorm of 6-A. Haynesville Correctional Center that HAD Positive Test Result of COVID 19. This was Done While The food in the Kitchen was being Put on Our Trays. My Tray Especially. This Is A ServSafe Violation. This is A Health Dept. Violation. This is a State. HEALTH CODE Violation. This is a FEDERAL HEALTH Code Violation. This is a VADOC HEALTH Code Violation. I Am An Extreme At Risk Inmate ① Chronic Lung DISEASE Chronic Bronchitis Recurrent Upper Respiratory Infects. 50% Service Connected by VA ② Diabetic ③ Hypertension ④ Irregular Heart Rhythm. I was Directly Exposed to Chemical Weapons Desert Storm (WMD) Mustard Gas Sarin Nerve Then After we Recieved Our Dinner Trays Later the Contaminated 6-A was still here They also Cheming form Come in After we had been Served The Contaminated food. I Refused the Lunch & Dinner Meals

**What action do you want taken?** To Never Contaminate Any Part of Food Service To Conduct COVID 19 Exams OR Any Medical Treatment That is what Medical is for, Gym, Visitation, Housing Area, DOC, VCE. x I was Denied this MEAL BECAUSE it Could HAVE Killed Me With My Chronic Medical Issues. I must be Protected My Food MUST BE Protected. This WAS

Grievant's Signature: Carol F. Lucas        **RECEIVED**   Date: 12 May 2020.

Warden/Superintendent's Office: _____

Date Received: _____   MAY 15 2020

By: _____
GRIEVANCE OFFICE

1 of 2                                                                 Revision Date: 4/28/17

VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866_F1_4-17

**INSTRUCTIONS FOR FILING**: You are required per Operating Procedure 866.1 *Offender Grievance Procedure* to attempt to resolve your complaint in good faith prior to filing a regular grievance.  You must submit your grievance within 30 days from the date of occurrence or discovery of incident.  Only one issue per grievance will be addressed.  Write your issue only in the space provided on the grievance form, preferably in ink.  Regular grievances are submitted through the institutional mail to the facility Grievance Office and a receipt issued within 2 working days from received date if the grievance is not returned during intake.

| INTAKE: | Grievances should be accepted for logging unless returned for the following reason(s): |
|---|---|
| ☐ | Non-Grievable.  This issue has been defined as non-grievable in accordance with Operating Procedure 866.1. ☐ Disciplinary Procedure.  You may appeal hearing decisions, penalties, and/or procedural errors under the provisions in Operating Procedure 861.1, *Offender Discipline*. ☐ Matters beyond the control of the Department of Corrections |
| ☒ | Does not affect you personally (This issue did not cause you personal loss or harm) *If you can tell me* |
| ☐ | Limited.  You have been limited by the Warden/Superintendent *how it affected you and* |
| ☐ | More than one issue – resubmit with only one issue *your personal loss or harm, I will reconsider my decision* |
| ☐ | Expired Filing Period.  Grievances are to be filed within 30 calendar days from date of occurrence/incident, or discovery of the occurrence/incident except in instances:  1) beyond the offender's control or, 2) where a more restrictive time frame has been established in Operating Procedures to prevent loss of remedy or the issue from becoming moot. |
| ☐ | Repetitive.  This issue has been grieved previously in Grievance # |
| ☐ | Inquiry on behalf of other offenders. |
| ☐ | Group Complaints or Petitions.  Grievances are to be submitted by individuals. |
| ☐ | Vulgar/Insolent or Threatening Language.  YOU MAY BE CHARGED IN ACCORDANCE WITH OPERATING PROCEDURE 861.1 *OFFENDER DISCIPLINE* |
| ☐ | Photocopy/Carbon Copy.  You must submit the original grievance for responses and appeals. |
| ☐ | Grievances Filed Regarding Another Institution.  This grievance is being returned to you for you to submit to: |
| ☐ | Informal Procedure.  You have not used the informal process to resolve your complaint |
| ☐ | Request for services |
| ☐ | Insufficient Information (Not to include Medical).  You need to provide the following information to the Grievance Office within 5 days before the grievance can be processed: |
| ☐ | The issue in the grievance is different from the issue in the informal complaint |

Institutional Ombudsman/Grievance Coordinator: *Police T. Brun, II*   Date: 5-20-20

If you disagree with this decision, you have 5 calendar days from date of receipt to submit to the Regional Ombudsman for a review of the intake decision.  The Regional Ombudsman's decision is final.

| Regional Review of Intake (within 5 working days of receipt) | |
|---|---|
| ☐ | The intake decision is being upheld in accordance with Operating Procedure 866.1 *Offender Grievance Procedure*. |
| ☐ | The intake decision is being returned to you because the 5 day time limit for review has been exceeded. |
| ☐ | The grievance meets the criteria for intake and is being returned to the Warden/Superintendent for logging. |

Regional Ombudsman:                                                     Date:

**WITHDRAWAL OF GRIEVANCE**: I wish to voluntarily withdraw this grievance.  I understand that by withdrawing this grievance, there will be no further action on this issue nor will I be able to file any other grievance in the future on this issue.

Offender Signature: _____   Date: _____

Staff Witness: _____   Date: _____

*Revision Date: 4/28/17*

VIRGINIA
DEPARTMENT OF CORRECTIONS

**RECEIVED**

Offender Request 801_F3_7-1

## Offender Request   MAY 2 6 2020

**DIRECTIONS**
1. Fill in your Name, Number, Full Housing Assignment
2. Please Print your request; *KEEP IT BRIEF*
3. Drop in the appropriate Mail Box

4. Requests may be returned/unanswered if addressed to the wrong department or if duplicate requests are sent.

GRIEVANCE OFFICE

| YOUR LAST NAME | FIRST | MI | NUMBER | BLDG/CELL |
|---|---|---|---|---|
| Lucas | Casel | F. | 1086613 | 2-A-38-B |

| WORK ASSIGNMENT | ASSIGNED COUNSELOR | TODAY'S DATE |
|---|---|---|
| 2-A Unit Custodian | Ms. Robinson | 21 May 2020 |

TO:  ☐ Unit Manager   ☐ Medical   ☐ Personal Property   ☐ Law Library   ☐ Security
☐ Treatment   ☐ Mental Health   ☐ Education   ☐ Enterprise Shop   ☐ Accounting
☐ Chaplain   ☐ Assistant Warden   ☐ Warden   ☒ Other  Ms. Brown Ombudsman

**CHECK PURPOSE**  ☐ Appointment Request   ☐ Question/Statement

Ms. Brown, You asked me to explain how the incident in the Kitchen affected me, my personal loss or harm.

1) Check the COVID 19 warmline # is not confidential, & I have made several Mental Health complaints. 2) Ask Ms. Ridley are my fears real & her reasoning.

3) My Medical Issues with my lungs are 1000% Critical & Chronic. I have provided @ the US Dept. of Veteran Affairs documentation, VSDOC Medical Sheet & 4) a copy of my 4 inhalers Microbreathin Chamber.

How I was hurt by this Negligent Action Mental Health Detoriorting, I was hurt physically by Being Deprived of 2 meals. I could not risk eating that am, my continued

*DO NOT ATTACH ADDITIONAL PAGES; DO NOT WRITE BELOW THIS LINE*

## RESPONSE

Request sent to correct department ☒ Yes  ☐ No; Routed to: _____   Date: _____

Everything you have said is what you assumed would happen. Grievances are based on facts; not assumptions. You were not denied meals; you chose not to partake in the meals provided; there is a difference. My decision has not changed and any further action on this issue can be reviewed by the Region.

Offender seen  ☐ Yes  ☒ No

_Rose T. Brown, IO_
**Official Responding**

5-26-20
Date of Response

Revision Date: 7-16-13

My statement I believe this a claim to act upon if my

my Health was Hurt Because I Am A Diabetic

I take Glipizide which is a sub for Glucotrol.

I must Eat when I take this Medication.

Bottomline The Kitchen was Not Decontaminated Before

The lunch Meal Was Prepared & Served. Nor Was it Decontaminated

Before The Dinner Meal was Prepared & Served the Kitchen

Still Didn't Recieved Decontamination Cleaning.

Mr. Brown, I AM an Expert With Nuclear Biological

and Chemical Weapons. NBC Environments in full MOPP Gear

Mission Oriented ~~Battle~~ Protective Posture. I was The

U.S. Army Champion with Dealing in hazardous contaminated

Conditions.

This I have Provided you the Military served for.

I, Can not Risk eating that food it REALLY Could Have

Killed Me & My family would have Never Known The Truth

My Mental Health Has been Greatly Damaged, my Blood Sugar

became extremely ~~Low~~ LOW from the lack of food Yes

I have been hurt & I am at loss.

I am Resubmitting The Grievance it is VALID it Directly Affected

Me. The Grievance is Also founded.

Carl F. Sucar

**RECEIVED**

MAY 26 2020

By: _____
GRIEVANCE OFFICE



**VIRGINIA**
**DEPARTMENT OF CORRECTIONS**

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| | | |
|---|---|---|
| CABEL F. LUCAS | 1080613 | 2-A-38-B |
| Offender Name | Offender Number | Housing Assignment |
| Food Service Supervisor, Security, Hcc Administration | | 24 April 2020, 1091 Am |
| Individuals Involved in Incident | | Date/ Time of Incident |

☐ Unit Manager/Supervisor      ☒ Food Service        ☐ Institutional Program Manager
☐ Personal Property              ☐ Commissary          ☐ Mailroom
☐ Medical Administrator          ☐ Other (Please Specify):

Briefly explain the nature of your complaint (be specific): Denied Food + Food Service Housing 6-A Inmates in Chow Hall. I was at Medical being Seen for Therpy at 1080 Am Friday 24 April 2020. After my Medical Treatment I Withessed Inmates Contaminated from Housing Unit 6-A Being Moved within B side Chow Hall. This is a food Service Hazard. The Potential Contamination of the food, food Equipment, food Service Personnel to cross contaminate the Trays being Prepared for Lunch the Trays arrived at my Dorm at 11'17 Am. The Chow Hall still had inmates from 6-A inside without being Properly Decontaminated, sterilized, & Sanitized. I'm left alone with Chronic illness Disease (Hypertension), Diabetic, Heart Condition. I had to Refuse the Meal. Recurrant, Repeatable, Healthcare Violation & Sexual, Abuse, Violating 8th Amendment

Offender Signature _Cabel F. Lucas_           Date _24 April 2020_

---

**Offenders - Do Not Write Below This Line**

Date Received: _4-28-20_                    Tracking # _HCC20-INF-00706_

Response Due: _5-13-20_          Assigned to: _Rose T Brown, FO_

Action Taken/Response:

~~The VADOC and the Department of Health has issued preventive measures for staff and offenders to follow guidelines on handwashing and hand sanitizer usage, and social distancing. The DOC has~~ established food preparation and distribution, and offender sanitation crew to ensure comply with safety, security, policies, procedures, and practices.

_Rose T Brown_                    _Rose T. Brown, IO_              _5-7-20_
Respondent Signature               Printed Name and Title              Date

**WITHDRAWAL OF INFORMAL COMPLAINT:**
I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____          Date: _____

Staff Witness Signature: _____          Date: _____

RECEIVED
MAY 26 2020
BY GRIEVANCE OFFICE

RECEIVED
MAY 26 2020
BY GRIEVANCE OFFICE

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Receipt Report

VACORIS C - #.0

DOC Location: HCC Haynesville Correctional Center

Report generated by Brown, R T

Report run on 04/28/2020 at 04:01 PM

Grievance Number: <u>HCC-20-INF-00706</u>

Next Action Date: <u>5/13/2020 12:00:00 AM</u>

| On this date: | 04/28/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | 1080673 | of | Haynesville Correctional Center<br>HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| He states he was denied food because he was in Medical being triaged and 6A was in the chow on B-side while their building was being decontaminated. He states he decided not to get his meal because of this; therefore, he was denied a meal. ( Rose T. Brown, IO) | | | |
| *Rose T Brown* | | | *IO* |
| *(Signature)* | | | |

Officer Initials: _____

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

Offender Name: CABEL F. LUCAS
Offender Number: 1080173
Housing Assignment: 2-A-38-B
Individuals Involved in Incident: Food Service Supervisor, Security Hcc Administration
Date/ Time of Incident: 24 April 2020  10:41 AM

- [ ] Unit Manager/Supervisor
- [ ] Personal Property
- [ ] Medical Administrator
- [x] Food Service
- [ ] Commissary
- [ ] Other (Please Specify):
- [ ] Institutional Program Manager
- [ ] Mailroom

Briefly explain the nature of your complaint (be specific):

Offender Signature: Cabel F. Lucas
Date: 24 April 2020

### Offenders - Do Not Write Below This Line

Date Received: 4-28-20
Response Due: 5-13-20
Action Taken/Response:

Tracking # HCC20-INF-00706
Assigned to: Bost, Brown, FD

Respondent Signature

Printed Name and Title

Date

**WITHDRAWAL OF INFORMAL COMPLAINT:**
I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____
Staff Witness Signature: _____ Date: _____

Revision Date: 4/28/17

VIRGINIA
DEPARTMENT OF CORRECTIONS

Problem Sheet 720_F32_10-16

## Problem Sheet

| Offender Name: Lucas, Casel | Number: 10806073 |
|---|---|
| Allergies: Valporic Acid, Lithium, Trilafon | DOB. 8.8.1969 |

| Date: | Medical Condition |
|---|---|
| | Gerd |
| | Abd gas lg hx |
| | dry eye |
| | Weakness to ⓛ side of face (injury in 1999) resolved |
| | Nicotine dependency |
| | DJD of knees by symptoms |
| | Fibromyalgia |
| | Weapons of mass distruction exposure |
| | HTN |
| | Migraines |
| | diabetes |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | (DNR for VA in Chart) |
| | |
| | |

Revision Date: 10/14/1

**OFFICE OF THE SECRETARY OF DEFENSE**
1000 DEFENSE PENTAGON
WASHINGTON, DC  20301-1000



SPECIAL ASSISTANT
TO THE SECRETARY OF DEFENSE
FOR GULF WAR ILLNESSES,
MEDICAL READINESS, AND
MILITARY DEPLOYMENTS

Casel Lucas                                                    January 10, 2001
8610 Liberia Ave
Manassas VA  20110-4851

Dear Case. Lucas:

As the Special Assistant for Gulf War Illnesses, Medical Readiness, and Military Deployments, I am responsible for evaluating potential health impacts of your service during the Gulf War.  I am committed to investigating and providing you the most up-to-date and scientifically valid information available.  In 1997, I notified you that if you were with your unit between March 10-13, 1991, you may have been exposed to a very low level of chemical agent resulting from the demolition of munitions at Khamisiyah, Iraq.  As promised, we have worked hard to improve our knowledge of potential exposure areas and unit locations.  As a result of this work, I am contacting Gulf War veterans, like you, whose units were near Khamisiyah at that time.

Using state of the art computer modeling technology and more accurate unit location data, we have improved our analysis of potential exposures to individuals whose units were near Khamisiyah during the demolition of Iraqi weapons.  The most up-to-date models still predict that if you were with your unit at the time of the demolition at Khamisiyah, you may have been exposed to very low levels of chemical agent for a brief period of time (less than 3 days) after the demolition.  However, the possible exposure areas are now considered to be generally smaller than those modeled in 1997.  Based on current medical evidence and ongoing research, there is no indication that any long-term health effects would be expected from the brief, low-level exposure to chemical agents that may have occurred near Khamisiyah.

I have enclosed a fact sheet that includes our analysis and information obtained since 1997, as well as answers to some frequently asked questions.  If you have additional questions about any of the information that I have provided to you, please call my office at 1-800-497-6261 or visit our website at www.gulflink.osd.mil.  Your local library may be able to assist you with getting information from our website.  If you have specific health concerns, I encourage you to seek medical assistance from the programs established for Gulf War veterans.  The Departments of Defense (DoD) and Veterans Affairs (VA) both offer comprehensive medical programs for Gulf War veterans.  To schedule an appointment with the DoD program, call 1-800-796-9699; to schedule an appointment with the VA's program, call 1-800-749-8387.

We have a national obligation to protect the health of our veterans.  I am committed to ensuring that you have the best information and healthcare we can offer.

Sincerely,

Bernard Rostker

·Enclosure

* This letter was mailed to you at another address on Dec. 5, 2000, but was returned. This is a second attempt to reach you.



CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT

ANY ALTERATIONS IN SH
AREAS RENDER FORM

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) LUCAS CASEL FRANK | 2. DEPARTMENT, COMPONENT AND BRANCH ARMY/RA | 3. SOCIAL SECURITY 228 |
|---|---|---|

| 4.a. GRADE, RATE OR RANK SP4 | 4.b. PAY GRADE E4 | 5. DATE OF BIRTH (YYMMDD) 680808 | 6. RESERVE OBLIG TERM DAT Year 96 Month 03 Day |
|---|---|---|---|

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY BALTIMORE, MD | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and State, or com address if known) 1730 MARK DRIVE ALEXANDRIA, VA 22305 |
|---|---|

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND 0017RFA BN 01 SVC BTY FORSCOM FC | 8.b. STATION WHERE SEPARATED FORT SILL, OK |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED C BTRY 1/160th FA 2600 WEST MALONE STREET EL RENO, OK 73036 | 10. SGLI COVERAGE No Amount $ 100000 |
|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) 13B10 CANNON CREWMEMBER 3 YEARS & 10 MONTHS//NOTHING FOLLOWS | 12. RECORD OF SERVICE | Year(s) | Month(s) | Da |
|---|---|---|---|---|
| | a. Date Entered AD This Period | 88 | 05 | 22 |
| | b. Separation Date This Period | 92 | 03 | 26 |
| | c. Net Active Service This Period | 03 | 10 | 2? |
| | d. Total Prior Active Service | 00 | 00 | 0 |
| | e. Total Prior Inactive Service | 00 | 00 | 0 |
| | f. Foreign Service | 02 | 00 | 0 |
| | g. Sea Service | 00 | 00 | 0 |
| | h. Effective Date of Pay Grade | 79 | 07 | 0 |

13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) ARMY SERVICE RIBBON//OVERSEAS SERVICE RIBBON//NATIONAL DEFENSE SERVICE ME L//SOUTHWEST ASIA SERVICE MEDAL W/ TWO BRONZE SERVICE STARS//KUWAIT LIBER ION MEDAL//OVERSEAS SERVICE BAR//DRIVERS BADGE (T)//SEE ITEM 18

14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) GERMAN HEADSTART & EQUAL O PORTUNITY (1 WEEKS) (BEP89)//NOTHING FOLLOWS

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No X | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes X | No | 16. DAYS ACCRUED LEAVE PA |
|---|---|---|---|---|---|---|

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes |
|---|---|

18. REMARKS DELAYED ENTRY PROGRAM: 880308-880321//CONT FROM ITEM 13: HAND A ADE (SHARPSHOOTER)//RIFLE M16 (MARKSMAN)//ARMY GOOD CONDUCT MEDAL//OVERSE S SERVICE BAR//ARMY ACHIEVEMENT MEDAL//NOTHING FOLLOWS

3/25/92

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) 8610 LIBERTA AVE FINITAGRASS VA 2241 | 19.b. NEAREST RELATIVE (Name and address, include Zip Code) BENITA GRIER SEE ITEM 7b |
|---|---|

| 20. MEMBER REQUESTS COPY SENT TO (DIR OF VET AFFAIRS) | Yes | No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title a |
|---|---|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | | | M. HOLYBEE GS9 C TRANSITION |

SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| TYPE OF SEPARATION LEASE FROM ACTIVE DUTY | 24. CHARACTER OF SERVICE (Include upgrades) HONORABLE |
|---|---|

| PARATION AUTHORITY 635-200 CHAPTER | 26. SEPARATION CODE LBK | REENTRY CODE RE-3 |
|---|---|---|

CERTIFICATE IN LIEU OF LOST OR DESTROYED

# Discharge



## Armed Forces of the United States

*This is to certify that*

CASEL FRANK LUCAS    SPECIALIST    USAR

*was discharged from the*

# Army of the United States

*by*     Honorable Discharge

*on*     12 March 1996

*at*     St. Louis, MO

*Given at Washington, D. C., on*     19 July 2006

ROBERT T. MARSH
Colonel, AG



2A 38B

## ADVAIR HFA 45/21

(fluticasone propionate 45 mcg and salmeterol 21 mcg* inhalation aerosol)

*Chronic Lung Condition*

**12 g**

For oral inhalation with ADVAIR HFA actuator only.

*Contents: Each canister contains a microcrystalline suspension of fluticasone propionate and salmeterol xinafoate in propellant HFA-134a (1,1,1,2-tetrafluoroethane). Each actuation delivers 45 mcg of fluticasone propionate and 30.45 mcg of :

See presc
dosage inf

LUCAS,CAS 1080673
Advair HFA 45/21 Aer
SUB FOR ADVAIR HFA MF:GLAXO
INHALE 1 PUFF(S) ORALLY TWICE
DAILY *KOP*

QN:12
OF 12
ID#239259519

Rx only    RX# 31724821  DC:06/13/2020
PRESCRIBER:DURAGA,ASV
WHITE

HJ- HAYNESVILLE CORR CENTER    (P)No Metal/Glass
DIAMOND PHARMACY SERVICES 645 KOLTER INDIANA PA 15701
800-882-6337 FAX 800-523-0008 801753640 LANE: 400  RTN

WARNING: Do Not Exceed The Dose    WARNING: This Drug May Cause
Prescribed By Your Physician, If    Asthma Attack Once One Has Started.
Difficulty In Breathing Persists.

NDC:00173-0715-20

**45/21**
**RECEIVED**
**MAY 26 2020**

120 Metered Actuations

---

NDC 0597-0087-17

## Atrovent® HFA
(ipratropium bromide HFA)
Inhalation Aerosol

*Chronic Sung Condition*

LUCAS,CAS 1080673
Atrovent HFA Inhaler
SUB FOR IPRATROPIUM BROMIDE HFA MFG:BOEHR
INHALE 2 PUFF(S) ORALLY FOUR TIMES
DAILY AS NEEDED FOR SHORTNESS OF
BREATH VIA MICROCHAMBER

QN:12
OF 17.9
ID#238

RX# 32126784  DC:08/02/2020
PRESCRIBER:LEVO,L 813
MILKY WHIT

HJ. HAYNESVILLE CORR CENTER    (P)No 7-
DIAMOND PHARMACY SERVICES 645 KOLTER INDIANA PA 1570
800-882-6337 FAX 800-523-0008 801753640 LANE: 400  RN

WARNING: Do Not Exceed The Dose    WARNING: This Drug Cause
Prescribed By Your Physician, If    Asthma Attack Once One Has Sta
Difficulty In Breathing Persists.

NDC:00597-008

Boehringer
Ingelheim

---



MICROC
Aerosol Holding Chamber for u

• Small Compact Size, Dishw
• Portable for People on the Go
• Optimizes Inhaler Medicatio
• Compatible with Mask Produ
• Anti-Static Delivery
• Clinically Proven Effective

LUCAS,CAS 1080673
Microchamber  Mis
MFG:RESDE
FOR USE WITH INHALER AS
INSTRUCTED *KOP*

RX# 32153034  DC:07/08/2020
PRESCRIBER:DURBAN,A SO

ORIG:04/09/2020 DISP:04/09/2020
HJ- HAYNESVILLE CORR C
DIAMOND PHARMACY SERVICES 645
800-882-6337 FAX 800-523-0008 8

✓ Easy to Clean

*Chronic Sung
Condition BREATH Device*

---

LUCAS,CAS 1080673
Linzess 145mcg Cap
SUB FOR LINACLOTIDE MFG:ACTE
TAKE 1 CAPSULE(S) ORALL
DAILY *KOP*

2A-38B

RX# 32295048  DC:07/13
PRESCRIBER:DURANI,A DAS
WHITE, WHI:OBLONG
ORIG:07/14/2020 DISP:04/17/2020
HJ- HAYNESVILLE C
DIAMOND PHARMACY SE
800-882-6337
Swallow Whole. Do Not Chew Or



---

NDC 63402-510-01    Net Contents: 15 g

*Chronic Sung Condition*

## Xopenex HFA®
(levalbuterol tartrate)
Inhalation Aerosol

*Days
2 of
These
Inhalers*

080673
45mcg Inhaler    QN:15  OF 15
MFG:SEPRA    WHITE

UFF(S) ORALLY FOUR TIMES DAILY AS NEEDED
BREATH VIA MICROCHAMBER

8/02/2020    NDC:63402-0510-01

LE CORR CENTER
ACY SERVICES 645 KOLTER INDIANA PA 15701
800-523-0008 801753640 LANE: 400  RN

WARNING: Do Not Exce
Prescribed By Your Phy
Breathing Persists.

Date Opened (MM/DD)



SUNOVION

63402 51001



LUCAS,CAS 1080673
Atenolol 50mg Tablet
SUB FOR TENORMIN MFG:ZENI
TAKE 1 TABLET(S) ORALLY EVERY
DAILY *KOP*

*Irregular Heart Rhythm*

RX# ~~33333~~ DC:~~~~
PRESCRIBER
WHITE, WHI;ROUND
HJ-

LUCAS,CAS 1080673
amLODIPine 10mg Tablet          QN:30
SUB FOR NORVASC MFG:ASCEN       OF 30
TAKE 1 TABLET(S) ORALLY ONCE DAILY ID#239624477
*KOP*

*Hypertension*

RX# 30766622   DC:08/03/2020
PRESCRIBER:DUERR,LA HSV
WHITE, WHI;ROUND
ORIG:02.06.2020 EXP:04.22.2020
HJ-     HAYNESVILLE CORR CENTER
        DIAMOND PHARMACY SERVICES 645 KOLTER INDIANA PA 15701
        800-882-6337 FAX 800-523-0608
May Make You Drowsy Or Dizzy. Check
With Doctor Before Drinking Alcohol. Use
Care When Operating A

LUCAS,CAS 1080673
glipiZIDE 5mg Tablet            QN:30
SUB FOR GLUCOTROL MFG:APOTX     OF 60
TAKE 1 TABLET(S) ORALLY TWICE   ID#239259530
DAILY *KOP*

*Diabetic Med.*

RX# 17061038   DC:09/08/2020
PRESCRIBER:LEVID,I,HSV
WHITE;ROUND                     APO;GLF
ORIG:09/10/2019 DISP:09/15/2020    NDC:60505-0141-01
HJ-     HAYNESVILLE CORR CENTER        (C)Card
        DIAMOND PHARMACY SERVICES 645 KOLTER INDIANA PA 15701
        800-882-6337 FAX 800-523-0608  LANE: 400   K2
Do Not Drink Alcoholic Beverages While
Taking This Medicine.

r/o 5-12-20
2 of 2

EXP:
04/07/21

glipiZIDE 5mg Tablet

RECEIVED
AUG 26 2020
GRIEVANCE OFFICE

**LAB REPORT**



Printed: 05/20/2020 11:49AM

| | |
|---|---|
| Patient:Lucas, Casel | Facility:Haynesville Correctional-Inmate |
| Gender:M    DOB:08/08/1969 | Physician:Williams, Richard, MD |
| Accession:ORM2014004553 | Collected:05/19/2020 12:00PM |
| Ordered Date: 05/19/2020 3:21PM | Delivery Date: 05/19/2020 3:18PM |

Reporting Group: Molecular

Coronavirus SARS-CoV-2 (COVID-19)
Final Approved 05/20/2020 10:43AM

RCA Laboratory Services LLC dba GENETWORx
GENETWORx
Collected 05/19/2020 12:00PM

The reference interval for this assay is Negative. This laboratory is regulated under the Clinical Laboratory Improvement Amendment (CLIA) of 1988 as qualified to perform high complexity clinical testing. This test is used for clinical purposes. It should not be regarded as investigational or for research. Laboratory specimens were analyzed for COVID-19 using reverse-transcriptase-Real time PCR (rRT-PCR) using primer and probe sequences validated by the Centers for Disease Control (CDC) under the Emergency Use Authorization for Coronavirus Disease-2019 (EUA). This test has been validated in accordance with the FDA's Guidance Document (Policy for Diagnostics Testing in Laboratories Certified to Perform High Complexity Testing under CLIA prior to Emergency Use Authorization for Coronavirus Disease-2019 during the Public Health Emergency) issued on February 29th, 2020. Our test validation has undergone FDA review.  FDA acknowledges that GENETWORx meets the conditions outlined in the Immediately in Effect Guidance for Clinical Laboratories, Commercial Manufacturers, and Food and Drug Administration Staff: Policy for Diagnostic Tests for Coronavirus Disease-2019 during the Public Health Emergency and the FDA FAQs on Diagnostic Testing for SARS-CoV-2 for the allowable modifications to the CDC EUA.

| TEST | RESULT | REF RANGE | UNIT |
|---|---|---|---|
| COVID-19 | Negative | Negative | |

Reporting Laboratories:

(1)  RCA Laboratory Services LLC dba GENETWORx (CLIA ID: 49D2060159),  Lab Director: Jacobs-Helber, Sarah, PhD, HCLD (A BB), 4060 Innslake Dr, Glen Allen, VA  23060, 804-346-4363

2-A-38-B

| DATE OF ADMISSION | DATE OF DISCHARGE | NUMBER OF DAYS HOSPITALIZED |
|---|---|---|
| 3 May 88 | 8 May 88 | 5 |

**CHIEF COMPLAINT:** The patient is an 18 year old black male with a chief complaint of cold for 2 to 3 days. It was also associated with a headache, fever, chills, sore throat, painful ears, swollen glands and a cough productive of yellow sputum. He also admitted to decreased appetite, moderate abdominal pain, no nausea, vomiting or diarrhea.

**PAST MEDICAL HISTORY:** Habits before coming into the service included tobacco 1 pack per day for 2 years. no alcohol and minimal use of caffeine  Allergies: None known. Medications  None chronically. Breathing difficulties not diagnoses.

**FAMILY HISTORY:** Significant for a mother, age 35, and 2 brothers. age 4 and 18 years, with asthma.

**REVIEW OF SYSTEMS:** The patient states he has wheezed since arriving in the army on 22 Mar 88.

**PHYSICAL EXAMINATION:** He is a febrile, well developed, 18 year old black male who was alert and oriented x3.  Temperature 102.2°F; BP 110/80; pulse 100; respiratory rate 18.  HEENT: Both TMs noninjected, but utterly mobile  There is a yellow nasal discharge. Pharynx is slightly injected at 2+.  Neck is supple  There are some tender anterior cervical lymph nodes.  Chest:  Clear to auscultation.  Heart exam:  Regular rate and rhythm, without murmur.  Skin:  No petechiae.  Abdomen is benign.

**HOSPITAL COURSE:** The patient was admitted as an ARD and was placed on Pen Vee K. 500 mg 4 times a day. and Durevent, 1 PO b.i.d  His appetite was markedly decreased and he was placed on a hydrating IV of D5½ normal saline at 125 cc an hour.  He continued to have spiking fevers in the range of 103 to 104°F and was placed on Erythromycin, 500 mg every 6 hours.  He did not tolerate this and had marked abdominal pain and some diarrhea  He was subsequently switched from oral Erythromycin to IV Penicillin G every 6 hours.  Cultures of blood and sputum were negative.  Chest x-ray was normal.  Abdominal series at the time of his pain, looking for evidence of obstruction. was nondiagnostic for obstruction. By 6 May 88 the patient had defervesced, although he still complained of some moderate sore throat.  His throat culture came back negative for beta strep; however. he was continued on the Penicillin G orally, 500 mg q.i.d.. in view of his marked clinical response.  By 8 May 88 the patient had been afebrile for 24 hours and was feeling markedly better.  His physical exam at that time was within normal limits.

*William A. Malabre*

WILLIAM A MALABRE  MD  CPT. MC
REYNOLDS ARMY COMMUNITY HOSPITAL   FORT SILL, OK 73503

| | | NAME |  |
|---|---|---|---|
| ☐ HISTORY & PHYSICAL EXAMINATION (SF 504, SF 505, & SF 506) | ☐ OPERATION REPORT (SF 516) | LUCAS, CASEL | |
| ☐ CONSULTATION SHEET (SF 513) | ☒ NARRATIVE SUMMARY (SF 502) | REGISTER NO. 0650584 | SSN 20 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 |
| ☐ CHRON RECORD OF MEDICAL CARE - (SF 600) | ☐ AUTOPSY PROTOCOL (SF 503) | UNIT PV1 A BTRY 1/19 FA | |
| ☐ PROGRESS NOTE (SF 509) | ☐ | DATE DICT. 8 May 88 | DATE TYPED 9 May 88/kc |

50275-101

**MEDICAL RECORD REPORT**
COPY MADE BY VARMC, ST. LOUIS FROM A RECORD IN VA'S POSSESSION

OPTIONAL FORM 275 (12-7
Prescribed by GSA and 1 CMn
FPMR (41 CFR) 101-11 808-.

# INPATIENT TREATMENT RECORD COVER SHEET

PAGE 1 OF 1

For use of this form, see AR 40-400; the proponent agency is the Office of The Surgeon General.

| 1. REGISTER NUMBER | 2. NAME (Last, First, MI) | | | 3. GRADE | ADMISSION REMARKS |
|---|---|---|---|---|---|
| 0650584 | LUCAS, CASEL | | | PV1 | |

| 4. SEX | 5. AGE | 6. RACE | 7. RELIGION | 8. LENGTH OF SVC | 9. ETS | 10. PREVIOUS ADMISSION |
|---|---|---|---|---|---|---|
| M | 18 | 3 | BAP | 02N | 21 MAR 1992 | NO |

| 11. FMP | 12. SSN | 13. ORGANIZATION | 14. WARD |
|---|---|---|---|
| 20 | 2(b6) | A BTRY 1/19  FORT SILL OK | 3W |

| 15. FLYING STATUS | 16. RATING / DSG | 17. DEPT / BEN | 18. BRANCH / CORPS. | 19. UIC / ZIP | 20. TYPE CASE |
|---|---|---|---|---|---|
| 76 | 0 | ARMY | | 73503 | DIS |

| 21. SOURCE OF ADMISSION / AUTHORITY FOR ADMISSION | 22. HOUR OF ADMISSION | 23. CLINIC SERVICE |
|---|---|---|
| DIR  DIRECT ADMISSION<br>AR 40-3 PARA 4-1 | 1559 | FP INT MED |

| 24. NAME / RELATIONSHIP OF EMERGENCY ADDRESSEE | 25. TYPE DISPOSITION | 26. DATE OF DISPOSITION | |
|---|---|---|---|
| GRIER, EMELIE/GRANDMOTHER | DUTY | 09 MAY 1988 | ADMITTING OFFICER<br>STRAWSER, RICHA |

| 27. ADDRESS OF EMERGENCY ADDRESSEE (Include ZIP Code) | TELEPHONE NO. | 28. DATE OF THIS ADMISSION | 32. UNITS OF WHOLE BLOOD / COMPONENT TRANSFUSED |
|---|---|---|---|
| (b6) | (b6) | 03 MAY 1988 | |

| 29. NAME AND LOCATION OF MEDICAL TREATMENT FACILITY | 30. DATE OF INITIAL ADMISSION |
|---|---|
| REYNOLDS ACH, FT SILL, OK | |

**31. SELECTED ADMINISTRATIVE DATA**

☐ Check if Continued on Reverse

**33. CAUSE OF INJURY**

**34. DIAGNOSES / OPERATIONS AND SPECIAL PROCEDURES**

DG  1.     4659 - -0   0410 - -0
a. ACUTE RESPIRATORY DISEASE, SUSPECTED SECONDARY TO STREPTOCOCCUS, NOT PROVEN BY CULTURE. NOT PR.
b.

☐ Check if Continued on Reverse

**35. TOTAL DAYS THIS FACILITY**

| a. ABSENT SICK DAYS | b. OTHER DAYS | c. CONV LV / COOP CARE DAYS | d. SUPPLEMENTAL CARE DAYS | e. BED DAYS | f. TOTAL SICK DAYS |
|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 5 | 5 |

**36. TOTAL DAYS ALL FACILITIES**

| a. ABSENT SICK DAYS | b. OTHER DAYS | c. CONV LV / COOP CARE DAYS | d. SUPPLEMENTAL CARE DAYS | e. BED DAYS | f. TOTAL SICK DAYS |
|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 5 | 5 |

| SIGNATURE OF ATTENDING MEDICAL OFFICER | SIGNATURE OF PAD OR MEDICAL RECORDS OFFICER |
|---|---|
| WILLIAM A. MALABRE, CPT, MC, MD | FAITH ATKINS, ART |

DA FORM 3647
1 MAY 79

EDITION OF 1 AUG 76 IS OBSOLETE.

COPY MADE BY VARMC, ST. LOUIS FROM A RECORD IN VA'S POSSESSION

 

## SCREENING NOTE OF ACUTE MEDICAL CARE

For use of this form, see AR 40-66; the proponent agency is the Office of The Surgeon General.

| TIME PATIENT DEPARTS UNIT (From DD Form 689) | SCREENER LOCATION | | |
|---|---|---|---|
| | TIME PATIENT ARRIVES | TIME ENCOUNTER BEGINS | TIME PATIENT LEAVES |

| DATE 0 8 MAY 1988 | SCREENER LOCATION TMC #6 RACH, MEDDAC FT. SILL, OK 73503 | CHIEF COMPLAINT Cold | DURATION X2day |
|---|---|---|---|

| PATIENT RESIDENCE ( ) BARRACKS ( ) OFF POST | ( ) Post Housing ( ) TRANSIENT | VITAL SIGNS TEMPERATURE 102² PULSE 100    BP 134/80 | ALLERGIES X/R RESP 18 |
|---|---|---|---|

FIRST VISIT FOR THIS COMPLAINT ( ) YES ( ) NO  IF NO, WAS RETURN SCHEDULED/REQUESTED BY CARE PROVIDER?
( ) YES ( ) NO

| ALGORITHM/CODE | ALGORITHM/CODE |
|---|---|
| ALGORITHM SUMMARY<br><br>① Chin to chest<br>② Bloody Sputum<br>③ Runny nose | ALGORITHM SUMMARY<br><br>ARD admit<br><br>CW7 Marthe CManyh |

COMMENTS (Reasons for referral, method of referral, hospital appointments, self-care protocols, and patient instructions/precautions)

| PATIENT'S IDENTIFICATION (Use mechanical imprint if available, for typed or written entries give: Name, SSN, Unit, Sex, Birthdate and Duty Phone)<br><br>La Casy Casel<br>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<br>Allergha | FINAL DISPOSITION<br>( ) I – PHYSICIAN STAT ( ) IV – SELF CARE PROTOCOL<br>( ) II – PA STAT ( ) V – HOSP CLINIC REFERRAL<br>( ) III – PA<br>SELF CARE PROTOCOL MEDICATIONS GIVEN _____ |
|---|---|
| | AIDMAN'S SIGNATURE & CODE | AUDITOR'S INITIALS & DATE |

DA FORM 5181-R, DEC 84    PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

COPY MADE BY VARMC, ST. LOUIS FROM A RECORD IN VA'S POSSESSION

 

## SCREENING NOTE OF ACUTE MEDICAL CARE

For use of this form, see AR 40-66; the proponent agency is the Office of The Surgeon General.

| TIME PATIENT DEPARTS UNIT (From DD Form 689) | SCREENER LOCATION | | |
|---|---|---|---|
| | TIME PATIENT ARRIVES 0830 | TIME ENCOUNTER BEGINS | TIME PATIENT LEAVES |

| DATE 11 APR 1998 | SCREENER LOCATION TMC #, MEDDAC RACH, MEDDAC FT SILL, OK 73503 | CHIEF COMPLAINT Chest cold | DURATION 1 week |

| PATIENT RESIDENCE | | VITAL SIGNS | |
|---|---|---|---|
| ( ) BARRACKS   ( ) POST HOUSING | | TEMPERATURE 96.2   ALLERGIES NKA | |
| ( ) OFF POST    ( ) TRANSIENT | | PULSE _____ BP _____ RESP. _____ | |

FIRST VISIT FOR THIS COMPLAINT ( ) YES ( ) NO  IF NO, WAS RETURN SCHEDULED/REQUESTED BY CARE PROVIDER? ( ) YES ( ) NO

| Cold        ALGORITHM/CODE  TD-31 | Cough       ALGORITHM/CODE  TD-19 |
|---|---|
| ALGORITHM SUMMARY | ALGORITHM SUMMARY |
| D. yes-chin to chest | D. No- SOB resting |
| 3) no-blood streaked sputum | 2) yes |
| 4) yes too! Nasal discharge | |
| 5) No temp greater than 101° | |
| III | III |

COMMENTS (Reasons for referral, method of referral, hospital appointments, self-care protocols, and patient instructions/precautions)

PE: HEENT: Boggy mucosa ē mucoid secret
o/w NML.
Neck- (-)
Lu. (+) Rhonchi (+) wheeze.

A) Soda

A) Asthmatic Bronchitis
Plan: CXR
① SloBID 300 ī BID #60
② Entex LA ī BID #30
③ Aluput Inhaler ## - ### puffs QID
⑤ PT ē Run at own pace ᵼ Tolerance 1 week.

| PATIENT'S IDENTIFICATION (Use mechanical imprint if available, for typed or written entries glue: Name, SSN, Unit, Sex, Birthdate and Duty Phone) | FINAL DISPOSITION |
|---|---|
| Lucas, Casel  2 2829 · 81·66  E-1  A 1/19 | ( ) I – PHYSICIAN STAT  ( ) IV – SELF CARE PROTOCOL  ( ) II – PA STAT     ( ) V – HOSP-CLINIC REFERRAL  ( ) III – PA      CW3 DOYLE G. STARK Jr. PA  SELF CARE PROTOCOL MEDICATIONS GIVEN _____ |
| | AIDMAN'S SIGNATURE & CODE | AUDITOR'S INITIALS & DATE |

DA FORM 5181-R, DEC 84          PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

COPY MADE BY VARMC, ST. LOUIS FROM A RECORD IN VA'S POSSESSION

NSN 7540-01-165-7294     ☆ US GOVERNMENT PRINTING OFFICE 1984—450-337     519-301

## RADIOLOGIC-CONSULTATION REQUEST/REPORT
### (Radiology/Nuclear Medicine/Ultrasound/Computed Tomography Examinations)

**EXAMINATION(S) REQUESTED**

PA & lateral Chest

| AGE | SEX | SSN (Sponsor) | WARD/CLINIC | REGISTER NO. |
|-----|-----|---------------|-------------|--------------|
| 18 | M | | TMC#6 | |

**FILM NO.**

**PREGNANT** ☐ YES ☒ NO

**REQUESTED BY (Print)**
CW3 DOYLE G. STARK Jr. PA

**TELEPHONE/PAGE NO.**
1-4242

**SIGNATURE OF REQUESTOR**
Doyle Stark

**DATE REQUESTED**
11 April 88

**SPECIFIC REASON(S) FOR REQUEST (Complaints and findings)**

Bilateral Rhonchi + Wheeze.
R/o Pneumonitis

**DATE OF EXAMINATION (Month, day, year)**
11 APR 88

**DATE OF REPORT (Month, day, year)**

**DATE OF TRANSCRIPTION (Month, day, year)**

### RADIOLOGIC REPORT

LUCAS, C.    228298166     53793, 51580

04/11/88 CHEST 2 VIEWS (PA&LAT): The heart, mediastinum, diaphragm and
bony thorax appear normal.

BOB G. EATON M.D.

**PATIENT'S IDENTIFICATION (For typed or written entries give:
Name — last, first, middle, Medical Facility)**

Lucas, Casey
PVT 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
A 1/19

**LOCATION OF MEDICAL RECORDS**

**LOCATION OF RADIOLOGIC FACILITY**

**SIGNATURE**

**RADIOLOGIC CONSULTATION
REQUEST/REPORT**

**STANDARD FORM 519-B (8-83)**
Prescribed by GSA/ICMR
FPMR (41 CFR) 101-11.806-8

COPY MADE BY VARMC, ST. LOUIS FROM RECORD IN VA'S POSSESSION

NSN 7540-00-634-4176

800-108

| HEALTH RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

8 0 MAR 1988

RECORDS SCREENED IAW AR 40-66

{ } NO FOLLOW-UP NEEDED

{ } FOLLOW-UP NEEDED

12-9 JUL 1989    5AS 6/29 FA
APO NY 09323    NKA          -meds

T 98.8 ⑥  19 yro ♂  c/o  cold  X 3 mo.
P 60  O  ⊕ Green yellow spatum ⊕ nasal discharge ⊖ bloody
R 16  spatum ⊕ chin to chest ⊖ swollen glands — DCV
BP 1/6⊕ ⊕ PT may have cold — DCV
    ⑥ PT was givin Entex and TrePlan Hydrate and
Instructed on it use and dosage —— DCV
    PFC ⊙Davidson  9/A16

PATIENT'S IDENTIFICATION (Use this space for Mechanical Imprint)

011    LUCAS CASEL FRANK
       SSDC MRN 228 29 8166

| RECORDS MAINTAINED AT: | | |
|---|---|---|
| PATIENT'S NAME (Last, First, Middle initial) | | SEX |
| RELATIONSHIP TO SPONSOR | STATUS | RANK/GRADE |
| SPONSOR'S NAME | | |
| DEPART/SERVICE | SSN/IDENTIFICATION NO. | DATE OF BIRTH |

CHRONOLOGICAL RECORD OF MEDICAL CARE

STANDARD FORM 600 (Rev. 5-84)
Prescribed by GSA and ICMR
FIRMR (41 CFR) 201-45.505

COPY MADE BY VARMC, ST. LOUIS FROM A RECORD IN VA'S POSSESSION



VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form 720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** _Lucas_ (Last)   _Casel_ (First)   **Number:** _1080673_

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 9/11/20 730p | Offender requesting renewal of D-Cerin and Visine. Chart to MD/NP. | K Langford, RN |
| 9/14/2020 618 Noted 2020 @ 9-14-2020 @ 0000 R. Breslin RN | Emollients are available in the commissary. Memo * Visine tear drops, 2 drops ea eye BID x 90 days EMP | [signature] |
| 9/28/2020 754 Noted PO 09 @ 9/28/20 11AM | Labs from 9/21/2020 Acceptable | A Duvall MD |
| 10/1/2020 1515 | Renew Biotene Mouthspray 2 spray QDPRN Dry mouth — await approval for non formulary med previously Rx Dental. | SSim APRN DNP-C |
| 10-2-2020 9A 193# 97° 18 107/79 72 95% | | |
| 10/6/2020 0730 117/75 69 97% 189.16 @ 98.7 16 | pt seen and evaluated for f/u from pulmonology visit by telephone 9/10/2020 PFTS completed by specialist, reviewed med list and current inhalers, discussed risk/benefits of meds. Review all notes from specialty noted request to add mediation for allergy symptoms and Δ Atrovent to LAMA. TTE completed mild regurgitation EF(55-70%). Obstructive COPD 1) Stop Atrovent ō LAMA | |
| Noted Johnson CCP 10-6-20 HP | Obstructive COPD 2) Start increase ellipta 1 puff inhaled QD x90 days Allergic Rhinitis 1) Zyrtec 10mg PO QD x 90 days ✓ CN: KRR, lungs CTABL Today ABD soft/tender Skin warm/dry ⊕ ROM ⊕ CAP refills 2sec — SSim APRN DNP-C | |
| 10/8/2020 1245 | Emollients are available in commissary please bring receipts for renewal of medical need for Dcerin cream refill per 9/14/2020 Write — SSim APRN DNP-C | |
| | Noted 10/13/20 cep | K Langford RN |



VIRGINIA
DEPARTMENT OF CORRECTIONS   **Health Services Complaint and Treatment Form** 720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** Lucas (Last)   Casel (First)   **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 08/21/2020 2:50 | 2D Echo cardigrn Done on Site Uses Advair as directed | (illegible) |
| Noted 8/25/20 1:30pm (signature) | Renew advair 45/21 B/0 ½ Flonase 0.05% T B/0 ½ Proscar 5mg qd ½ glimetid 5mg B/0 X 180 ½ Crestor 10mg HS Flonase 0.4mg qd P10 mx | X180 (signature) MD |
| 9/1/2020 1050 | Refill request received, please advise pt saline spray, eye drops and lotion need to be purchased from commissary. 1) Senna Plus II PO QD PRN constipation x 30 tabs 2) Oystecal 1 tab PO QD x 90 days 3) Voltaren gel Use 4G to pain site QID PRN max 16g x 3 tubes 4) all others have valid Rx, need refills completed by pharmacy. | Per (signature) Slevin APRN, DNP |
| Noted (signature) @ 9/2/20 1120 (signature) | | |
| 9/2/2020 822 Noted (signature) | labs from 9/3/2020 Acceptable *Redo Ct, Ng, Trich vag ✓ 9/7/20 11A | (signature) MD |

COPY



## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** *Lucas* (Last)  *Casel* (First)     **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 8) P7 20 | Pulm function test q 8/6/20 — acceptable | |
| noted ... 8/7/20 6P | | Leon RN |
| 8/11/20 2⁴⁰Pm 97.9  96% 99 P  114/80 (cold coffee) | To review PFT  feels pretty good & used nasal spray (lots of hx of sinuses &/o epistaxis) + inhaler. Not exercising but plans to walk. NAD  S/O  & cough  A/expansion HS7&2  clear full resp/ & no longer expir. Smoker, history gas exposure. Will avoid smoke but overeats hx almost continuously & X open mouth. Also, pt request STD screen. Order HIV screen, RPR, Chlamydia/ Trichomonas. AP | Leon RN |
| 8/4/2020 1350 | 8/4/2020 Lab screen for COVID negative. acceptable lab 5P | SSkein APRN, DNP-C |
| noted ... 8/4/20 | | |
| 8/18/2020 0900  95% 97.8 T 114/76 NR 68 RR 16 | Pt seen to release Quarantine no S/S of COVID. no temp 14 days Complete release from quarantine, isolation no longer needed, Neg COVID screen. SSkein APRN, DNP-C | |
| noted 8/18/20 0947 Am Student RN | | |
| 8/18/20 730 pm | Spoke c Sgt young in RHU concerning release. | Owen |

COPY



VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form  720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** LUCAS _Last_   CASEL _First_   **Number:** 10 80673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 7/23/2000 94°R 99.3, 94, 96% 18, 153/91 | Pt seen and screened for symptoms of COVID s/p med run. Pt has been in medical isolation since his run. Denies all symptoms of COVID-19 CViS: S,+S Lungs: CTAB/ Asymptomatic *Release back to compound | Adwoff MD |
| 7/27/2020 951 | *Renew Amlodipine 10mg PO qday x180days *Renew Xopenex 45 mcg 5puffs qid PRN SOB x180days *Renew Atrovent 1wf4 puffs qid PRN SOB x180days *Renew Atenolol 50mg PO BID x180days | Adwoff MD |
| 7/29/2020 1355 | Reviewed results CXR dated 7/28/2020 - no acute finding - Acceptable — | Slein APRN, DNP-C |
| 7/29/20 2000 | Offender requesting renewal of Senna Plus. Chart to MD/NP. — | K Langford, RN |
| 7/30/20 | Per Derm consult of 7/8/20 - avoid Cerola gel, No additional lotions (Sdroa?) No chronic Hx PS treated u Lenjens & occasional sen, stat S Rp Senna Plus 2 pog qpm x300 ✓ + | Skon MD |
| 8/4/2020 | Eye Exam Today — | [signature] |



**VIRGINIA**
**DEPARTMENT OF CORRECTIONS**

**Health Services Complaint and Treatment Form** 720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** *Lucas* (Last) *Casel* (First)  **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 7/20/20 2 PM | Notes from Pulm & Derm reviewed. Pulm on 7/16/20 = ? COPD Schedule PFTs & COVID test ordered, CXR & Theophylline ecls. Increased Omeprazole 20mg BID X 90d Keep Pulm appt. Derm — 3 macules — hyperpigmented possibly 2ary to folliculitis — Cleanse y Clindamycin 1% gel qd  No follow up √ Derm _____ Lewis MD | |
| 7/24/20 10:55 AM 98.2  87  94%  120/16 | Review Pulm & Derm consults. Discussed need for outpatient testing (PFT) Theophylline ecls at hospital. Can get CXR at HCC Will inquire about pulm follow up. Reviewed skin area draw orders. No concerning findings on Derm consult. All questions answered.  Lewis, MD | |

VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complain... ...d Treatment Form  720_F17_7-12

# Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** _Lucas_ (Last)    _Casel_ (First)    **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 7/15/20 11:30 Am | Please verify if ingrown toenail of 6/26/20 has resolved. | |
| | CU Derm appt on 7/8/20 → uneven complexion of unknown etiology. Advised Clinda 1% gel / pad BID prn w/o follow up by Derm needed. | |
| | Confirmed darkened beard area, low back & anterior thigh — excoriated. | |
| | Appear w/ D cerix application rather than scratching. | |
| | Rx Clinda 1% gel 2 BID prn x 60d | |
| | Rx Lincess 145 Mg qd | |
| | Pending Opthall & Pulm consults. | _Levin, M_ |
| 7/16/2020 1046AM | Telephone Appt w/ CU pulmonary clinic. Dr Mostinger orders chest CT, PFT's, Priloser to BID, cardiac U.S. Hold off on chest CT until PFTS results are available — | _De Jes/Campen_ |
| 7/16/20 11 Am | Toenail assessment that no ingrown toenail but excised area & healed on own. "It's healed." Bilat all (N) toenails, & myosis, & then acceptable pedicure, & burned on callus. No ro for foot — WNL. Above Pulm recommendations acceptable. | "It's healed." _Levin, M_ |

# ▓ LabCorp

**Patient Report**

**Specimen ID:** 247-245-0730-0
**Control ID:** TSJ45311290

**Acct #:** 45311290     **Phone:** (804) 333-3577    **Rte:** 05

**LUCAS, CASEL**

Haynesville Correctional Ctr
PO Box 129
Haynesville VA 22472

| **Patient Details** | **Specimen Details** | **Physician Details** |
|---|---|---|
| **DOB:** 08/08/1969 | **Date collected:** 09/03/2020 0000 Local | **Ordering:** L LEVIN |
| **Age(y/m/d):** 051/00/26 | **Date received:** 09/03/2020 | **Referring:** |
| **Gender:** M | **Date entered:** 09/03/2020 | **ID:** |
| **Patient ID:** 1080673 | **Date reported:** 09/05/2020 1135 ET | **NPI:** 1679545792 |

**General Comments & Additional Information**
**Total Volume:** Not Provided             **Fasting:** Yes

**Ordered Items**
HIV Ag/Ab with Reflex; RPR; Request Problem

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| **HIV Ag/Ab with Reflex** | | | | | |
|   HIV Screen 4th Generation wRfx | Non Reactive | | | Non Reactive | 01 |
| **RPR** | Non Reactive | | | Non Reactive | 01 |
| **Request Problem** | | | | | |
|   No specimen received. | | | | | 01 |
|   TEST:  183160  Ct, Ng, Trich vag by NAA | | | | | |

| 01 | BN | LabCorp Burlington | Dir: Sanjai Nagendra, MD |
|---|---|---|---|
| | | 1447 York Court, Burlington, NC 27215-3361 | |

For inquiries, the physician may contact Branch: 800-873-7251 Lab: 800-762-4344



Date Issued: 09/06/20 0844 ET        **FINAL REPORT**        Page 1 of 1
This document contains private and confidential health information protected by state and federal law.
If you have received this document in error, please call 800-762-4344

© 1995-2020 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version: 1.00

# Chronic Disease Clinic Follow-Up
## HAYNESVILLE CORRECTIONAL CENTER

Offender Name: __LUCAS, CASEL__

Number: __1080673__

**List chronic diseases:**

| | | | | | |
|---|---|---|---|---|---|
| 1) | HTN | 3) | COPD | 5) | BPH |
| 2) | DM-2 | 4) | I.B.D | 6) | PTSD |

**List current medications:**

_See MAR (attached)_

**Subjective: (Yes or No)**

Asthma: # attacks in last month? _∅_
# short acting beta agonist canisters in last month? _____
# times awakening with asthma symptoms per week? _∅_
Any wheezing? _N_ Any night sweats? _∅_
Any systemic steroids use? _N_ Any hemoptysis? _N_
(CV) hypertension (Y/N): Chest pain? _N_ | SOB? _N_
Any dizziness since last appointment? _N_ Any foot problems since last appointment? _N_
Any blurred vision? _N_ Any claudication? _N_ Any headaches? _N_ Any nausea/vomiting? _N_
Rashes/Lesions? _N_ Any abdominal pain/swelling? _N_ Diarrhea? _N_

Seizure disorder: # seizures since last visit? _____
Diabetes mellitus: # of hypoglycemic reactions since last visit? _____
Any polyuria? _____ Any nocturia? _____ Any orthopnea? _____
Weight loss/gain ↓ ↑ _____ #lbs
Palpitations? _N_ Ankle or leg edema? _N_

For all diseases, since last visit, describe new symptoms:
_COVID-19 neg 8/4/2020_
_Echo done. ∅ 8/21/2020 : EF 68%_
_Mild pulmonic regurg. Mild Tricuspid regurg. Mild ⓇＬ atrial enlargement._
_Possible outlet VSD._

**Patient adherence (Y/N):** with medications? _Y_ with follow up appointments? _Y_ with diet? _Y_
**Vital signs:** Temp _98·6_ BP _105/68_ Pulse _61_ Resp _18_ Wt _203_ PEFR _____ Pain scale _95/0_ _____

**Past Labs:**
Hgb A1C _7·5_ BMP _____ CMP _6/2020_ INR _____ CD4 _-_ Total Chol _90_ LDL _30_ HDL _40_
Trig _101_ Hct _52.3_ Hgb _16.9_ AST _19_ ALT _29_ BUN _H_ Creatinine _1·04_
Micro albumin _____ UA _WNL_ CBC _6/8_ EKG _3/2020 WNL_ LFT _____
Drug level: _____ Other _____ Fibroscan score: _____

Range of fingerstick glucose: _____ BP monitoring range: _90 -196 mg/dL_
_90/68, 130/84._

**Procedure:**
Annual Funduscopic eye exam completed ☐ Yes ☐ No ☑ N/A
Annual dilated eye exam completed ☐ Yes ☐ No ☑ N/A
Annual foot exam completed ☐ Yes ☐ No ☑ N/A
E:

| | |
|---|---|
| HEENT/neck: NC/AT, EOMI, PERRLA, ∅ bruits | Extremities: ∅ edema |
| Heart: S1+S2, No RMG | Neurological: CN2-12 grossly intact |
| Lungs: CTABL | GU/rectal: deferred |
| Abdomen: Soft NT/ND, BSt | Other: |

**Assessment Diagnosis:**

| | | Degree of Control | | | | Clinical Status | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | G | F | P | NA | I | S | W | NA |
| 1 | HTN | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 2 | DM-2 | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 3 | COPD | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 4 | BPH | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |

LUCAS, CASE
1080673

**Plan/Orders:**

Medication: _____

Diagnostics/Procedures: __MAR 2021: EKG__ ✓

Labs: __DEC: CBC, CMP, Lipids, HgA1c, B12, folate, UA, vitD, PSA.__ ✓

Special needs: ____none____    Work Code _____

☑ Administer Influenza vaccine ☐ Administer Pneumonia vaccine

92 months

Monitoring: BP: ____ X day/week/month  Accucheck: _____ X day/week/month  Peak flow: _____

Offender questioned regarding presence of depression and suicidal thoughts while on seizure therapy? ☐ Yes ☐ No ☐ N/A

**Education provided:** ☑ Nutrition ☐ Exercise ☐ Smoking ☑ Test results ☑ Medication management ☐ Lab results ☑ Disease process

**Referral:** (list type & priority level): Specialist: _____

**# Days to next visit?** ☐ 1 year ☑ 180   ☐ 90  ☐ 60  ☐ 30  ☐ Other: _____

**Additional information:**
GTRD ____11/4/2026____
LOC ____D____
MED ____A, 11, 12, 3, 4, 8A, 9____
MH ____2____

Provider Signature: _Adrian Huo_          Date: _9/14/2020_


I copy

**VCU Medical Center**

## Pulmonary OP Estab Visit

LUCAS, CASEL

Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 09/10/20 10:45am    Author MYTINGER, ANDREA    Status Preliminary    Source VCUHL7

PCP: MATHEW MD, ALEXANDER

Visit conducted via telephone in light of COVID-19 pandemic. Haynesville Correctional Center. 804-250-4136

Reason for Follow Up: dyspnea on exertion, reactive airways disease

CC: i'm feeling better.

HPI: 51 yo male with ho HTN, GERD, allergic rhinitis, and reactive airways disease in the setting of multiple military gas inhalational exposures who is scheduled for follow up. last seen by me 7/16 with plan to obtain PFTs and better control GERD, PPI increased to BID dosing.

since last visit, patient is feeling better. states his chest isn't as tight as it used to be. breathing is improved though still having to use inhalers (xopenex and atrovent) at least 3 times daily. still with nasal congestion. congestion is daily. using nasal spray (saline and flonase). also taking singulair. has never been on allergy pill.

increase in PPI dosing has helped with acid reflux and dyspnea.

Social History:

direct exposure to burn pits and saren gas with chemicals to make mustard gas x 3 times monthly.

destroying weapons of mass destruction, without masks as the time, exposed to mustard gas, saren gas

updated smoking history: occasional marijuana, smoked 6 years, a pack would last around 3 days at least.

ROS: Complete systems review performed, please see HPI for pertinent positives and negatives

Medical History:

- Problem List (Active Medical Only) This information was current as of 09/10/20 @ 10:46:00.

Active:

-BP+ - Hypertension

-DM - Diabetes mellitus

-Pain with urination

-Urinary frequency

-Urinary hesitancy

- reactive airways disease

- allergic rhinitis

Home Medications  This information was current as OF 09/10/20 @ 10:57:00.

Prescriptions Documented Meds By Hx:

-amlodipine(Hx): 10 mg, PO, daily

-atenolol(Hx): 50 mg, PO, twice daily

-bisacodyl (bisacodyl 5 mg oral delayed release tablet)(Hx): 5 mg, PO, daily

-calcium carbonate (Oyster Shell 500 (1250 mg) calcium carbonate) oral tablet)(Hx): 1,250 mg, PO, daily

-chlorthalidone (chlorthalidone 25 mg oral tablet)(Hx): mg, PO, daily

-diclofenac topical (diclofenac 1% topical gel)(Hx): 4 g, Topical, four times daily, as needed, as needed for pain

-docusate-senna (Senna Plus)(Hx): PO, bedtime

-duloxetine(Rx): 60 mg, PO, daily

-emollients, topical (DermaCerin topical cream)(Hx): 1 application, Topical, twice daily

-emollients, topical (Hydrocerin)(Hx): Topical

-finasteride(Hx): 5 mg, PO, daily

-fluticasone nasal(Hx): Nasal, daily

-fluticasone-salmeterol (Advair HFA 45 mcg-21 mcg/inh inhalation aerosol)(Hx): Inhalation, twice daily

-fluticasone-salmeterol (Advair HFA 45 mcg-21 mcg/inh inhalation aerosol)(Rx): 2 PUFF, Inhalation, twice daily

-gabapentin(Hx): 200 mg, PO, twice daily

-gabapentin (gabapentin 100 mg oral capsule)(Rx): 200 mg, PO, four times daily

-glipizide(Hx): 5 mg, PO, twice daily


COPY

**VCU** Medical Center

## Pulmonary OP Estab Visit

LUCAS, CASEL

**Age:** 51Y   **Gender:** M   **DOB:** 08/08/1969   **MRN:** 4369269   **Phone:** 8043333577

Date/Time 09/10/20 10:45am     Author MYTINGER, ANDREA     Status Preliminary     Source VCUHL7

-hydroxyzine(Hx):  25 mg, PO, four times daily, as needed, as needed for anxiety
-ipratropium (Atrovent HFA)(Hx):  Inhalation, four times daily
-ipratropium (Atrovent HFA 17 mcg/inh inhalation aerosol)(Rx):  2 PUFF, Inhalation, four times daily
-levalbuterol (Xopenex HFA 45 mcg/inh inhalation aerosol)(Hx):  2 PUFF, Inhalation, four times daily, as needed, as needed for wheezing
-linaclotide (Linzess 145 mcg oral capsule)(Hx):   mcg, PO, daily
-mirtazapine(Hx):  45 mg, PO, bedtime
-montelukast(Hx):  10 mg, PO, daily
-omeprazole(Hx):  20 mg, PO, daily
-oxybutynin(Hx):  5 mg, PO, three times a day
-polycarbophil (Fiber Laxative)(Hx):  0.52 gm, PO, daily
-rosuvastatin(Hx):  10 mg, PO, bedtime
-saliva substitutes (Biotene Mouthwash)(Hx):  2 sprays, PO, daily, as needed, as needed for dry mouth
-tamsulosin(Hx):  0.4 mg, PO, daily
-tetrahydrozoline ophthalmic (Visine)(Hx):  2 Drops, Both Eyes, twice daily, as needed, as needed for dry eyes
-trazodone(Hx):  50 mg, PO, bedtime


Allergies as charted in the allergies profile as of 09/10/20 11:16:13.
lithium - Hives, Hypertension
Trilafon - Hives
valproic acid - Hives


Physical Exam:
deferred given telephone visit
Labs:
Cr 0.9
Imaging:
CXR: none in system
CT: A/P from 8/2019 available.  lung bases with mild bronchiectasis, otherwise unremarkable
TTE: patient declined to show to last appointment
PFT: 8/2020
[IMAGE REMOVED]
[IMAGE REMOVED]
Sleep Study:  none in system
Assessment/Plan: 51 yo male with ho HTN, GERD, allergic rhinitis, and reactive airways disease in the setting of multiple military gas
inhalational exposures who is scheduled for follow up.
>>reactive airways disease:  in the setting of multiple military gas exposures.  PFTs consistent with mild obstruction, symptoms relieved with
BDs though not BD responsive.  given obstruction on PFTs, please add on LAMA such as tiotropium or equivalent.  can dc atrovent once LAMA
added.  continue advair and PRN xopenex.
- pending symptoms at follow up visit, will consider CT imaging.  CXR not performed, patient not wanting to come to MCV if can avoid it

>>PND, lower extremity edema:  as per reported at last visit.  no showed TTE yesterday.  patient and nurse informing me that ultrasound tech
will be present at facility tomorrow.  please obtain full transthoracic echocardiogram, will also place order in cerner.

>>GERD: symptoms improved, continue BID PPI



Page 2 of 3

**VCU** Medical Center

*Printed:* 10/8/20 10:44 AM
*By:* HAYES (REFH015), BRITNEY

## Pulmonary OP Estab Visit

LUCAS, CASEL

Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 09/10/20 10:45am      Author **MYTINGER, ANDREA**      Status **Preliminary**      Source **VCUHL7**

>>allergic rhinitis: still with daily rhinitis. on singulair, ocean nasal spray and singulair. please add on anti-histamine such as cetirizine or equivalent.

RTC 4 months.

Discussed with Dr. Fowler, pulmonary attending.


Andrea Mytinger, DO
Pulmonary/Critical Care Fellow



================================================================

PERFORM Performed By: ANDREA KATHERINE MYTINGER 20200910110018 is COMPLETED
MODIFY Performed By: ANDREA KATHERINE MYTINGER 20200910110555 is COMPLETED
SIGN Performed By: ANDREA KATHERINE MYTINGER 20200910112836 is COMPLETED
MODIFY Performed By: ANDREA KATHERINE MYTINGER 20200910112836 is COMPLETED

Author: MYTINGER, ANDREA
Pulmonary OP Estab Visit



## VCU HEALTH SYSTEM

| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: | 2.08 | Date: 08/06/2020 |
|---|---|---|---|---|---|---|
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: | 50 | DOB: 08/08/1969 |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: | Male | Race: Black |

Diagnosis:   R06.0
Tbco Prod:                Yrs Smk:              Pks/Day:                Yrs Quit:
Medications:

Pre Test Comments:

Post Test Comments:   Inconsistant patient effort and cooperation ; results did not meet ATS criteria for
acceptability and repeatability. Post-bronchodilator completed after 2.5 mg albuterol
nebulized.   Inspiratory volume < 90% VC on DLCO attempted mesurement not
reportable .

| | Pre-Bronch | | | Post-Bronch | | |
| | Actual | Pred | %Pred | Actual | %Pred | %Chng |
|---|---|---|---|---|---|---|
| ---- SPIROMETRY ---- | | | | | | |
| FVC (L) | 4.68 | 4.50 | 103 | 4.57 | 101 | -2 |
| FEV1 (L) | 3.16 | 3.60 | 87 | 2.97 | 82 | -6 |
| FEV1/FVC (%) | 68 | 80 | 84 | 65 | 81 | -3 |
| FEF 25% (L/sec) | 5.66 | 7.82 | 72 | 4.44 | 56 | -21 |
| FEF 50% (L/sec) | 2.63 | 4.73 | 55 | 2.25 | 47 | -14 |
| FEF 75% (L/sec) | 0.65 | 1.69 | 38 | 0.58 | 34 | -11 |
| FEF 25-75% (L/sec) | 1.88 | 3.53 | 53 | 1.68 | 47 | -10 |
| FEF Max (L/sec) | 5.72 | 9.33 | 61 | 4.44 | 47 | -22 |
| FIVC (L) | 4.48 | | | 3.79 | | -15 |
| FIF Max (L/sec) | 4.56 | | | 2.43 | | -46 |
| FIF 50% (L/sec) | 4.54 | 4.98 | 91 | 2.24 | 44 | -50 |
| Expiratory Time (sec) | 7.03 | | | 6.37 | | -9 |
| | | | | | | |
| ---- LUNG VOLUMES ---- | | | | | | |
| SVC (L) | 5.03 | 4.49 | 112 | | | |
| IC (L) | 1.53 | 2.96 | 51 | | | |
| ERV (L) | 3.49 | 1.53 | 228 | | | |
| TGV (L) | 5.34 | 3.53 | 151 | | | |
| RV (Pleth) (L) | 1.84 | 2.00 | 92 | | | |
| TLC (Pleth) (L) | 6.87 | 6.48 | 105 | | | |
| RV/TLC (Pleth) (%) | 27 | 30 | 90 | | | |
| Trapped Gas (L) | | | | | | |

Post-Test Comments:

Inconsistant patient effort and cooperation ; results did not meet ATS criteria for acceptability and repeatability.  Post-bronchodilator
completed after 2.5 mg albuterol nebulized.   Inspiratory volume < 90% VC on DLCO attempted mesurement not reportable .

Complete w/Interp

## VCU HEALTH SYSTEM

| | | | | | | |
|---|---|---|---|---|---|---|
| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: | 2.08 | Date: 08/06/2020 |
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: | 50 | DOB: 08/08/1969 |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: | Male | Race: Black |



Graphs FVC/DLCO/FRC

# VCU HEALTH SYSTEM

| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: | 2.08 | Date: 08/06/2020 |
|-------|--------------|-----|---------|------|------|------------------|
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: | 50 | DOB: 08/08/1969 |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: | Male | Race: Black |

Spirometry reveals mild obstructive lung disease. Lung volumes are within normal limits. The flow volume loop indicates obstructive lung disease. Interpret with caution given the patietn'sdifficulty with performance of pulmonary function studies.

Alpha A. Fowler, III, MD, #8510
««This interpretation has been electronically signed: Fowler, Alpha 08/10/2020  02:52:52 PM»»

**VCU** Medical Center

Printed: 10/19/20 11:20 AM
By: HAYES (REFH015), BRITNEY

### CV: Echo Transthoracic-Adult

LUCAS, CASEL
Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 10/16/20 02:14pm   Author MYTINGER, ANDREA   Status Auth (Verified)   Source VCUHL7

VCU Medical Center
1200 E. Marshall Street
Richmond, VA 23298
Phone: 804-828-9986

Transthoracic Echocardiography Report

Name: LUCAS, CASEL          Study Date: 10/16/2020 02:14 PM
Attending Physician: MYTINGER,
ANDREA                      Accession#: AH2026003
MRN: 4369269               Patient Location: KAHS...VCUHS
DOB: 08/08/1969            Gender: Male
Age: 51 yrs               BP: 129/93 mmHg
Height: 71.5 in          Weight: 201 lb

BSA: 2.1 m2
Heart Rate: 58
Reason For Study: Dyspnea
History: Hypertension, diabetes
mellitus

PROCEDURE
Procedure(CPT Code): TTE Complete (93306-26) 2D with Doppler and Color Flow:
No add on codes required).

Interpretation Summary
Normal left ventricular dimensions with normal segmental function, ejection
fraction, global longitudinal strain, and diastolic function.
The right ventricle is normal in size and function with mildly elevated
systolic pressure.
Normal valves.
Normal atrial and inferior vena caval dimensions.

LEFT VENTRICLE
Normal left ventricular dimensions with normal segmental function, ejection
fraction, global longitudinal strain, and diastolic function. LV ejection
fraction = 60%.



RIGHT VENTRICLE
The right ventricle is normal in size and function.

LEFT ATRIUM
The left atrial size is normal.

RIGHT ATRIUM

## VCU Medical Center

*Printed:* 10/19/20 11:20 AM
*By:* HAYES (REFH015), BRITNEY

### CV: Echo Transthoracic-Adult

**LUCAS, CASEL**
**Age:** 51Y   **Gender:** M   **DOB:** 08/08/1969   **MRN:** 4369269   **Phone:** 8043333577

**Date/Time** 10/16/20 02:14pm   **Author** MYTINGER, ANDREA   **Status** Auth (Verified)   **Source** VCUHL7

Right atrial size is normal.

**AORTIC VALVE**
The aortic valve is normal in structure and function.

**MITRAL VALVE**
Structurally normal mitral valve with trivial regurgitation.

**TRICUSPID VALVE**
Structurally normal tricuspid valve with mild regurgitation. Tricuspid regurgitation peak velocity is 2.8 m/sec. Estimated right atrial pressure is 5 mmHg. Estimated right ventricular systolic pressure is 36 mmHg. Mild elevation of right ventricular systolic pressure.

**PULMONIC VALVE**
Structurally normal pulmonic valve. Trace pulmonic valvular regurgitation.

**ARTERIES**
The aortic root is normal size. The proximal ascending aorta appears normal. The transverse aorta appears normal. The proximal decending aorta appears normal. The pulmonary artery is normal size.

**VENOUS**
The inferior vena cava is normal in size.

**EFFUSION**
Insignificant pericardial effusion or subepicardial fat.

**Normal Values**
IVSd: 0.7cm - 1.2cm LVIDd: 3.5cm - 5.5cm   LVIDs: 2.5cm - 4.0cm
LVPWd: 0.7cm - 1.1cm LA: 1.9cm - 3.8cm   Ao: 2.0cm - 3.7cm
EF: (55 - 75%)   LA Area: <>   RA Area: <>
RVd: 4.3cm   LV Mass(Men): <>   LV Mass(Women): <>
LV Mass Index(Men): <116g> LV Mass Index(Women): <96g>

**MMode/2D Measurements \Π\ Calculations**
RVDd: 3.7 cm   LVIDd: 4.8 cm   LV mass(C)d: 144.5 grams
IVSd: 0.85 cm   LVIDs: 3.4 cm   LV mass(C)d:
LVPWd: 0.91 cm   68.0 grams/m2

Ao root diam: 3.6 cm  asc Aorta Diam: 3.0 cm   LA/Ao: 0.74
LA dimension: 2.7 cm  desc Ao Diam: 1.4 cm   LVOT diam: 2.3 cm



**COPY**

MPA diam: 1.8 cm   LVLs ap4: 7.2 cm   TAPSE: 1.7 cm

# VCU Medical Center

## CV: Echo Transthoracic-Adult

**LUCAS, CASEL**
Age: 51Y   Gender: M   DOB: 06/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 10/16/20 02:14pm   Author MYTINGER, ANDREA   Status Auth (Verified)   Source VCUHL7

---

IVC Diam_: 1.4 cm   RA ESA: 14.4 cm2   LA A4Cs: 15.7 cm2

---

LA ESV (MOD-BP):   LA volume MOD BP Indexed:
44.0 ml
   20.7 ml/m2

Time Measurements
Aortic R-R: 1.0 sec
Aortic HR: 59.0 BPM

Doppler Measurements \T\ Calculations
MV E max vel: 46.2 cm/sec MV dec slope: 145.5 cm/sec2Ao V2 max: 89.5 cm/sec
MV A max vel: 39.9 cm/sec MV dec time: 0.32 sec   Ao max PG: 3.0 mmHg
MV E/A: 1.2            Ao V2 mean: 62.2 cm/sec
            Ao mean PG: 1.8 mmHg
            Ao V2 VTI: 19.5 cm
            AVA(I,D): 3.1 cm2

            AVA(V,D): 3.2 cm2

---

LV V1 max PG: 2.0 mmHg   CO(LVOT): 3.5 l/min   TR max vel: 278.3 cm/sec
LV V1 mean PG: 1.0 mmHg  SV(LVOT): 60.1 ml    TR max PG: 31.3 mmHg
LV V1 max: 71.1 cm/sec
LV V1 mean: 47.2 cm/sec
LV V1 VTI: 15.0 cm

---

AV VR: 0.79   MV P1/2t-pr_: 93.0 msec   RV S Vel: 9.4 cm/sec
AVA(VTI)/BSA: 1.5

---

MV LAT E': 10.3 cm/sec   MV LAT E/E': 4.5   MV MED E': 8.8 cm/sec

---

MV MED E/E': 5.2

---

Electronically Signed By:
   Walter Paulsen, MD  on 10/17/2020 03:52 PM
Performed By: Cara Martin
MRN: 4369269
Please click on link to see image.

# VCU Medical Center

## CV: Echo Transthoracic-Adult

**LUCAS, CASEL**
Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 10/16/20 02:14pm     Author MYTINGER, ANDREA     Status Auth (Verified)     Source VCUHL7
================================================================
ORDER Performed By: ANDREA KATHERINE MYTINGER 20201016141446 is COMPLETED
PERFORM Performed By: WALTER H.J. PAULSEN 20201016141446 is COMPLETED
VERIFY Performed By: WALTER H.J. PAULSEN 20201016141446 is COMPLETED

Author: MYTINGER, ANDREA
CV: Echo Transthoracic-Adult





# LabCorp

**Patient Report**

**Specimen ID:** 247-245-0730-0
**Control ID:** TSJ45311290

**Acct #:** 45311290          **Phone:** (804) 333-3577          **Rte:** 05

**LUCAS, CASEL**

Haynesville Correctional Ctr
PO Box 129
Haynesville VA 22472

| **Patient Details** | **Specimen Details** | **Physician Details** |
|---|---|---|
| **DOB:** 08/08/1969 | **Date collected:** 09/03/2020 0000 Local | **Ordering:** L LEVIN |
| **Age(y/m/d):** 051/00/26 | **Date received:** 09/03/2020 | **Referring:** |
| **Gender:** M | **Date entered:** 09/03/2020 | **ID:** |
| **Patient ID:** 1080673 | **Date reported:** 09/05/2020 1135 ET | **NPI:** 1679545792 |

**General Comments & Additional Information**
**Total Volume:** Not Provided                                                    **Fasting:** Yes

**Ordered Items**
HIV Ag/Ab with Reflex; RPR; Request Problem

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| **HIV Ag/Ab with Reflex** | | | | | |
| HIV Screen 4th Generation wRfx | Non Reactive | | | Non Reactive | 01 |
| **RPR** | Non Reactive | | | Non Reactive | 01 |
| **Request Problem** | No specimen received. | | | | 01 |
| TEST: 183160  Ct, Ng, Trich vag by NAA | | | | | |

| 01 | BN | LabCorp Burlington | Dir: Sanjai Nagendra, MD |
|---|---|---|---|
| | | 1447 York Court, Burlington, NC 27215-3361 | |

For inquiries, the physician may contact Branch: 800-873-7251 Lab: 800-762-4344



This document contains private and confidential health information protected by state and federal law.
If you have received this document in error, please call 800-762-4344

© 1995-2020 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version: 1.00

# VCU Medical Center

Printed: 5/29/20 1:11 PM
By: KING (REFH015), BRANDY

## Urology OP Estab Visit

**LUCAS, CASEL**

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 05/01/20 10:16am      Author FOSTER PA, REGINA      Status Auth (Verified)      Source VCUHL7

VCU HEALTH SYSTEM
MCV HOSPITALS AND PHYSICIANS
Richmond, Virginia 23298
UROLOGY ESTABLISHED VISIT NOTE

NAME: LUCAS, CASEL
DOB: 08/08/1969
MRN: 4369269
VISIT DATE: May 01, 2020
ATTENDING: G/U, SURG

COLLABORATING PHYSICIAN: Lance J. Hampton, MD

REASON FOR VISIT: BPH.

HISTORY OF PRESENT ILLNESS: Mr. Lucas is a 50-year-old incarcerated gentleman with a past medical history of an enlarged prostate and lower urinary tract symptoms. He has had an STI many years ago, while he was in the Military and he believes that all his symptoms started after that, despite being told many times that with his age an enlarged prostate that is likely contributing to some of his symptoms. The patient still believes that a lot of this started as a result of the STI he obtained. He has had significant improvement. However, on Flomax, finasteride, and oxybutynin, on his irritative and obstructive symptoms, he gets up about 3 times at night which is a great improvement because he was getting up about every 20 to 30 minutes before starting on medication, and the oxybutynin helped him even more. He is still getting postvoid incontinence, and he states that is not just a trickle when he thinks he has done, he pulls up his garments, and he soaks completely. This is significantly in fact affecting his quality of life and the patient states that he is possibly interested in surgical intervention.

SOCIAL HISTORY: He is still incarcerated.

REVIEW OF SYSTEMS: A complete review of systems is done and negative except per HPI.

PHYSICAL EXAMINATION: Physical exam not done because this is a telemedicine service.

PERSONAL REVIEW OF LABS: Most recent PSA was back in July of last year, it was 0.7.

ASSESSMENT AND PLAN: This is a 50-year-old incarcerated gentleman found to have an enlarged prostate on a cystoscopy. He has lower urinary tract symptoms that did improve with Flomax, finasteride, and oxybutynin but he continues to get up about 3 times a night which is not as bothersome as the postvoid incontinence that he is still experiencing. He feels that is affecting his quality of life significantly and is hoping that surgical intervention may resolve those symptoms. He had a scope again back in September, so we probably should repeat that maybe this coming September or October at least a year from the previous one to see what type of growth he may have had and at that point, we can determine if he is a candidate for a photovaporization of the prostate.

I personally spent about 15 minutes providing above services or telemedicine and I explained the patient expressed an understanding that this was in place of an in-person visit. Date of the call was 05/01/2020. I did send a message to our clerical team asking that they mail his VA paperwork that I filled out a few months ago to the patient's facility directly as he stated that he needs that information.

Regina C. Foster, PA

**VCU Medical Center**

Printed: 5/29/20 1:11 PM
By: KING (REFH015), BRANDY

### Urology OP Estab Visit

**LUCAS, CASEL**

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 05/01/20 10:16am      Author FOSTER PA, REGINA      Status Auth (Verified)      Source VCUHL7

RCF/MedQ D05/01/2020 T05/01/2020 R
J503885/878866484

=====================================================================
PERFORM Performed By: REGINA C FOSTER 20200501113339 is COMPLETED
TRANSCRIBE Performed By: MEDRITE-RTF  CONTRIBUTOR_SYSTEM 20200501112500 is COMPLETED
SIGN Performed By: REGINA C FOSTER 20200501125716 is COMPLETED
MODIFY Performed By: REGINA C FOSTER 20200501125716 is COMPLETED
VERIFY Performed By: REGINA C FOSTER 20200501125716 is COMPLETED

Author: FOSTER PA, REGINA
Urology OP Estab Visit

# VCU Medical Center

## Urology OP Estab Visit

**LUCAS, CASEL**
Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 01/03/20 11:57am     Author FOSTER PA, REGINA     Status Auth (Verified)     Source VCUHL7

VCU HEALTH SYSTEM
MCV HOSPITALS AND PHYSICIANS
Richmond, Virginia 23298
Urology Established Visit Note

NAME: LUCAS, CASEL
DOB: 08/08/1969
MRN: 4369269
VISIT DATE: January 03, 2020
ATTENDING: G/U, SURG

COLLABORATING PHYSICIAN: Dr. Riccardo Autorino.

REASON FOR VISIT: Followup on lower urinary tract symptoms.

HISTORY OF PRESENT ILLNESS: Mr. Lucas is a 50-year-old incarcerated veteran, that has had issues urinating for years. He had an STD many years ago and we set him up for a cystoscopy to check to see if there was a stricture, which can be as a result of an STD. However, his cystoscopy was normal except for an enlarged prostate and we did discuss that that is possibly a cause of some of the symptoms he is experiencing. He feels like with the addition of finasteride, he has had some improvement on the nocturia as well as the straining and weak stream. His stream is still splitting however and he is getting up about 4 times at night before it was every 20 to 30 minutes.

SOCIAL HISTORY: He is still incarcerated.

REVIEW OF SYSTEMS: A complete review of systems is done and it is negative except per HPI.

PHYSICAL EXAMINATION: VITALS: Blood pressure is 147/106, pulse is 85, and respirations are 17. GENERAL: He is not in any apparent distress. PSYCH: Alert and oriented x3. CARDIOVASCULAR: Adequate peripheral perfusion. No edema. PULMONARY: Normal respiratory effort on room air.

Personal review of imaging showed an enlarged prostate. Small lesions on the kidney, that appear to be cysts, concerning cysto again showed some enlargement, but the attending did not feel that surgical intervention was indicated at that time, so I will fill out this paperwork that he has for the VA. The patient feels like some of his symptoms are as a result of some exposure he had in the military, which is a possibility, but there is not a lot of ways we can determine if that is _____ or not. The paperwork will be sent back to the patient on the address that was provided.

Regina C. Foster, PA

RCF/MedQ D01/03/2020 T01/03/2020 R
J163555/866968548

=====================================================================

## VCU Medical Center

### Urology OP Estab Visit

**LUCAS, CASEL**

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 01/03/20 11:57am      Author FOSTER PA, REGINA      Status Auth (Verified)      Source VCUHL7

PERFORM Performed By: REGINA C FOSTER 20200103132702 is COMPLETED

TRANSCRIBE Performed By: MEDRITE-RTF  CONTRIBUTOR_SYSTEM 20200103131900 is COMPLETED

SIGN Performed By: REGINA C FOSTER 20200103155826 is COMPLETED

MODIFY Performed By: REGINA C FOSTER 20200103155826 is COMPLETED

VERIFY Performed By: REGINA C FOSTER 20200103155826 is COMPLETED


Author: FOSTER PA, REGINA

Urology OP Estab Visit

# VCU Medical Center

Printed: 5/29/20 12:52 PM
By: KING (REFH015), BRANDY

## Urology Procedure Note

**LUCAS, CASEL**

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 09/04/19 04:03pm   Author HAMPTON MD, LANCE   Status Auth (Verified)   Source VCUHL7

Urology Clinic Procedure

| LUCAS, CASEL |PROCEDURE DATE: September 04, 2019 ||
| DOB: 08/08/1969|||
| MRN: 4369269|||
ATTENDING: Lance J. Hampton, MD

HISTORY:  Mr. Lucas is a 50-year-old man, who is an inmate, who was sent to me by Regina Foster for cystoscopy for microscopic hematuria and also for rule out stricture because of his history of STDs and his urethral discomfort, and difficulty urinating.  After obtaining informed consent, he was taken to the procedure room, prepped and draped in usual sterile fashion.  Flexible cystourethroscopy was performed.  This revealed no abnormalities of bladder mucosa, tumors, lesions, or stones.  The urethra was normal.  He has mildly enlarged bilobar hyperplasia of the prostate.  He tolerated the procedure without any difficulty or complications and was discharge in stable condition.  He will follow up as needed.

Lance J. Hampton, MD
Chairman, Division of Urology
Barbara and William Thalhimer Professor of Urology
VCU Medical Center
PO Box 980118
Richmond, VA 2329
(Ph):  804-828-9331
(Fax):  804-828-2307
(Email): lhampton@mcv-vcu.edu

LJH/MedQ D09/04/2019 T09/04/2019 R
J267609/852972160

====================================================================
PERFORM Performed By: LANCE J HAMPTON 20190904184752 is COMPLETED
TRANSCRIBE Performed By: MEDRITE-RTF  CONTRIBUTOR_SYSTEM 20190904184400 is COMPLETED
SIGN Performed By: LANCE J HAMPTON 20190906112724 is COMPLETED
VERIFY Performed By: LANCE J HAMPTON 20190906112724 is COMPLETED

Author: HAMPTON MD, LANCE
Urology Procedure Note

**VCU** Medical Center

## Urology OP Initial Visit

**LUCAS, CASEL**

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 07/19/19 11:59pm      Author FOSTER PA, REGINA      Status Auth (Verified)      Source VCUHL7

Urology Initial Visit Note

NAME: LUCAS, CASEL
DOB:  08/08/1969
MRN:  4369269
VISIT DATE:  July 19, 2019
ATTENDING: Regina C. Foster, PA

COLLABORATING PHYSICIAN: Luriel I Smith-Harrison, MD

REASON FOR VISIT:  Lower urinary tract symptoms and blood in the urine.

HISTORY OF PRESENT ILLNESS: Mr. Lucas is a 49-year-old incarcerated gentleman, presenting as a new patient to the Urology Team. He states that back in 1990 while he was in the military, he was treated for gonorrhea, states that after treatment the burning that he would experience with urination never resolved.  He underwent a second treatment, it still persisted.  He states that he has had a subsequent tests for gonorrhea and chlamydia that were negative; however, he has urgency with hesitancy that is being going on pretty much since he started with the burning many years ago.  He also has a burning sensation with ejaculation and occasionally he sees blood.  He has to strain to empty his bladder.  He was put on Flomax about 4 to 5 months ago, he states that it helps some with the flow.  He gets up 7 times at night to void at least and has frequency during the day as well.  He has some postvoid dribbling and his stream splits just about every time he urinates.  In addition, he has difficulty maintaining an erection.

PAST MEDICAL HISTORY: For high blood pressure.

SOCIAL HISTORY: He is incarcerated.

FAMILY HISTORY: No known family history of prostate, bladder, or renal cancer.

REVIEW OF SYSTEMS: A complete review of systems is done and negative except per HPI.

PHYSICAL EXAMINATION: GENERAL: He is not in any apparent distress.
PSYCH: Alert and oriented x3.  Normal mood and affect.
HEENT: Sclerae nonicteric.  Extraocular movements intact.
PULMONARY: Normal respiratory effort on room air.
CARDIOVASCULAR:  Adequate peripheral perfusion.  No edema.
ABDOMEN:  Not tender or distended.
GU: DRE reveals a 40 g prostate that was smooth and without tenderness.
MUSCULOSKELETAL:  Gait is normal.
EXTREMITIES:  Full range of motion.
SKIN:  Warm and dry to the touch.

LABORATORY DATA:  Personal review of labs; a postvoid residual bladder scan showed 32 mL left in his bladder.

ASSESSMENT AND PLAN: This is a 49-year-old incarcerated gentleman, that has lower urinary tract symptoms pretty classic for BPH; but according to the patient, these have been going on since 1990 when he was in the military after being treated for gonorrhea.  Because he has had blood in his urine, I do want to do a hematuria workup with a CT urogram to check upper tracts as well as a cystoscopy to check lower.  We will also check to see if the patient has a stricture given his history of sexually transmitted infection in the past.  He is going to continue Flomax.  I

Page 1 of 2

**VCU Medical Center**

Printed: 5/29/20 12:52 PM
By: KING (REFH015), BRANDY

## Urology OP Initial Visit

**LUCAS, CASEL**

**Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577**

Date/Time 07/19/19 11:59pm      Author FOSTER PA, REGINA      Status Auth (Verified)      Source VCUHL7

will have the facility add finasteride as well to see if that may provide him with additional benefit.

Regina C. Foster, PA

RCF/MedQ D07/21/2019 T07/21/2019 R
J032310/847171099

=================================================================
PERFORM Performed By: REGINA C FOSTER 20190721101816 is COMPLETED
TRANSCRIBE Performed By: MEDRITE-RTF  CONTRIBUTOR_SYSTEM 20190721101000 is COMPLETED
SIGN Performed By: REGINA C FOSTER 20190721093944 is COMPLETED
MODIFY Performed By: REGINA C FOSTER 20190722093944 is COMPLETED
VERIFY Performed By: REGINA C FOSTER 20190722093944 is COMPLETED

Author: FOSTER PA, REGINA
Urology OP Initial Visit

# VCU Medical Center

Printed: 05/29/20 12:53PM
By: KING (REFH015), BRANDY

## CT: Abd/Pelvis (urography) w/o

**LUCAS, CASEL**

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 08/07/19 12:22pm      Status Auth (Verified)      Source VCUHL7

CT: Abd/Pelvis (urography) w/o
Procedure: CT: Abd/Pelvis (urography) w/o
Reason For Study: Hematuria
Ordering Physician:FOSTER PA, REGINA C


Abdomen pelvis CT scan without and with IV contrast material and CT urogram dated 8/2/2019

COMPARISON: None.

TECHNIQUE: CT scans were obtained throughout the abdomen and pelvis without oral contrast material and initially without intravenous contrast material. Scans were then repeated following uneventful intravenous administration of 150 mL of Omnipaque 300. Delayed images through the abdomen and pelvis were also obtained. Sagittal and coronal reconstructions as well as the reconstructed 3-D urogram image was also obtained and submitted.

FINDINGS: Limited imaging of the lung bases showed no abnormality. The heart size was normal. The liver was normal in size with no focal defects. The gallbladder, pancreas, and spleen all had a normal appearance.

The adrenal glands were normal. Both kidneys were normal in size with no perinephric soft tissue stranding. No radiopaque calculus was noted. There were bilateral subcentimeter cortical hypodensities, too small to characterize but likely small cysts. Excretory phase imaging showed the ureters and bladder to be normal. The calyces had brush border throughout consistent with medullary sponge kidney. There was an enlarged prostate gland indenting the bladder base.

The abdominal aorta showed minimal scattered calcifications with scattered calcifications in the common iliac arteries. There was no evidence of aneurysm.

A small hiatal hernia was noted. The stomach, small bowel, and colon had a normal appearance aside from the presence of sigmoid and descending colon diverticulosis.

Images the pelvis showed a moderately enlarged prostate gland indenting the bladder base. The seminal vesicles were normal.

The bony structures showed minimal degenerative osteophytes the lumbar spine with no suspicious osseous lesion.


Conclusions:
1. No evidence of mass, calculus, or hydronephrosis. Kidneys normal in size. Bilateral subcentimeter cortical hypodensities, too small to characterize but likely small cysts.
2. Brush border appearance of calyceal cups, consistent with medullary sponge kidney.
3. Moderate enlargement of prostate gland indenting the bladder base. Bladder otherwise normal.
4. Small hiatal hernia.
5. Diverticulosis

Dictated By: Mary A. Turner
Electronically Verified by: Mary A. Turner 8/7/2019 12:22 PM

## Medical Center

### Urology OP Estab Visit

**LUCAS, CASEL**
Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 01/03/20 11:57am   Author FOSTER PA, REGINA   Status Auth (Verified)   Source VCUHL7

VCU HEALTH SYSTEM
MCV HOSPITALS AND PHYSICIANS
Richmond, Virginia 23298
Urology Established Visit Note

NAME: LUCAS, CASEL
DOB: 08/08/1969
MRN: 4369269
VISIT DATE: January 03, 2020
ATTENDING: G/U, SURG

COLLABORATING PHYSICIAN: Dr. Riccardo Autorino.

REASON FOR VISIT: Followup on lower urinary tract symptoms.

HISTORY OF PRESENT ILLNESS: Mr. Lucas is a 50-year-old incarcerated veteran, that has had issues urinating for years. He had an STD many years ago and we set him up for a cystoscopy to check to see if there was a stricture, which can be as a result of an STD. However, his cystoscopy was normal except for an enlarged prostate and we did discuss that that is possibly a cause of some of the symptoms he is experiencing. He feels like with the addition of finasteride, he has had some improvement on the nocturia as well as the straining and weak stream. His stream is still splitting however and he is getting up about 4 times at night before it was every 20 to 30 minutes.

SOCIAL HISTORY: He is still incarcerated.

REVIEW OF SYSTEMS: A complete review of systems is done and it is negative except per HPI.

PHYSICAL EXAMINATION: VITALS: Blood pressure is 147/106, pulse is 85, and respirations are 17. GENERAL: He is not in any apparent distress. PSYCH: Alert and oriented x3. CARDIOVASCULAR: Adequate peripheral perfusion. No edema. PULMONARY: Normal respiratory effort on room air.

Personal review of imaging showed an enlarged prostate. Small lesions on the kidney, that appear to be cysts, concerning cysto again showed some enlargement, but the attending did not feel that surgical intervention was indicated at that time, so I will fill out this paperwork that he has for the VA. The patient feels like some of his symptoms are as a result of some exposure he had in the military, which is a possibility, but there is not a lot of ways we can determine if that is _____ or not. The paperwork will be sent back to the patient on the address that was provided.

Regina C. Foster, PA

RCF/MedQ D01/03/2020 T01/03/2020 R
J163555/866968548

==================================================================

Medical Center

## Urology OP Estab Visit

LUCAS, CASEL
Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577
Date/Time 01/03/20 11:57am   Author FOSTER PA, REGINA   Status Auth (Verified)   Source VCUHL7

PERFORM Performed By: REGINA C FOSTER 20200103132702 is COMPLETED
TRANSCRIBE Performed By: MEDRITE-RTF  CONTRIBUTOR_SYSTEM 20200103131900 is COMPLETED
SIGN Performed By: REGINA C FOSTER 20200103155826 is COMPLETED
MODIFY Performed By: REGINA C FOSTER 20200103155826 is COMPLETED
VERIFY Performed By: REGINA C FOSTER 20200103155826 is COMPLETED

Author: FOSTER PA, REGINA
Urology OP Estab Visit

VIRGINIA
DEPARTMENT OF CORRECTIONS    Health Services Complaint and Treatment Form  720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:**      Haynesville Correctional Center

**Offender Name:** Lucas                                    Casel                        **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| | (36) Briefs (7) Brown Bags | |
| 1/27/2020 @ 1315 | 36  7 Brown Bags | Casel T. Lucas AC) |
| 2-3-20 @ 0945 | 36 Briefs 7 Brown Bags | Casel T. Lucas |
| 10 Feb 2020 | 36 Brief 7 Bags | Casel T. Lucas |
| 17 Feb. 2020 | 36 Briefs 7 Bags | Casel T. Lucas |
| 2-24-2020 1338 | 36 Briefs 7 BAGS | Casel T. Lucas |
| 3/2/2020 | 36 Briefs 7 Bags   2 separate Bags | x Casel T. Lucas |
| 3/10/2020 | 36 Briefs 7 Bags | Casel T. Lucas |
| 3/16/2020 | 36 Briefs 7 Bags | Casel T. Lucas |
| 3/30/2020 | 36 Briefs 7 Bags | Casel T. Lucas |
| 4/6/2020 | 36 Briefs 7 Bags | Casel T. Lucas |
| 4/20/20 | 36 briefs 7 Bags | Casel T. Lucas |
| 5/20/20 | 36 Briefs 7 Bags | Casel T. Lucas |
| 6/8/20 | 36 Briefs 7 Bags | Casel T. Lucas |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

*Revision Date: 2/23/07*

VIRGIN
DEPARTMENT OF CORRECTIONS

Health Services Consultation Report   720_F23_7-12

# Health Services Consultation Report

**DO NOT TELL OFFENDER ABOUT APPOINTMENTS**

## *PLEASE BILL TO ANTHEM*

| | | | | |
|---|---|---|---|---|
| **Sending Facility:** | HAYNESVILLE CORRECTIONAL CENTER | | **Date:** | 1/3/2020 |
| **Offender Name:** | Lucas, Casel | | **Offender #:** | 1080673 |
| **SS#:** | 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 | **DOB:** 8/8/1969 | **T/D:** | 4369269 |
| **Allergies:** | | | | |
| **Current Medications:** | SEE MARS | | | |
| **Referred By:** | LEONARD LEVIN, MD | **Referred To:** | VCU General Surgery | |
| **Medical Complaint:** | Procedure | | | |

## *CONSULTING PHYSICIAN: PLEASE COMPLETE THE FOLLOWING:*

| | |
|---|---|
| **Findings:** | Post-Void Residual: 19 |
| **Lab or X-ray Results:** | |
| **Diagnosis:** | LUTS |
| **Treatment and Medications Recommended:** | Continue Finasteride + Flomax may add Oxybutynin will Complete VA Forms |
| **Restrictions:** | |
| **Consulting Physician:** | [signature]   **Date:** 1/3/20 |
| **Follow-up appointment date and time:** | 4 months follow up 5/1/2020 @ 8:00AM |

*Revision Date: 1/17/07*

**PLEASE FAX NOTES/RESULTS TO 804-333-3826**

## VIRGINIA DEPARTMENT OF CORRECTIONS/VCU MEDICAL CENTER
### PRE-REGISTRATION REQUEST FORM
(This form is to be used when requesting tests or clinic/telemedicine appointments)

### PATIENT INFORMATION

Date: 9|3|19   Demographic Sheet Included:

Name (last name, first name, middle initial): Lucas Casel

Date of Birth: 8|8|195   Sex: Male ☒   Female ☐   Race: Black   SSN: 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

Inmate ID #: 1080673   Release Date 4|22|2027   VCUHS MR #

### FACILITY INFORMATION

Correctional Facility: HAYNESVILLE CORRECTIONAL CENTER   Address: PO BOX 129

City: HAYNESVILLE   VA   Zip Code:22472

Phone:804-250-4136   Fax:804-333-3826

Facility Physician:   DR LEONARD LEVIN/DR ADAN DURRANI   Person completing form:

### REQUEST DETAILS   /   Needed Information

Appointment Request for

**Pulmonology** Clinic

☒ On-site   ☐ Telemedicine

☒ New Patient

☐ Follow up

Next available appointment will be given.

If checked, please forward information ASAP prior to scheduled appointment. NOTE:  Send Current MAR and recent lab/diagnostic reports in travel envelope for ALL OnSite visits.

- o   **Current Medication Record**
- o   **Recent labs**
- o   **EKG**
- o   **Films or x-rays with actual reports**
- o   **Immunization Record**
- o   **Vital Sign Sheet**
- o   **Neurosurgery Questionnaire**
- o   **MRI Checklist**
- o   **DISK – send with Pre-Reg**

VCU Medical Center         OR    VCU Medical Center
Department of Telemedicine       Security Care Clinic
P.O. Box 980531              P.O. Box 985879
Richmond, Va. 23298-0531       Richmond, VA  23298-0531

### Please provide DIAGNOSIS and/or REASON for the visit

See attached QMC – Hx of exposure to serine gas in gulf war – also nerve agents – SOB after walking

### SPECIAL NEEDS INFORMATION

**CHECK ALL THAT APPLY:**

☐ Yes or ☒ No   Are Sign Language Interpreter Services needed?       ☒ Other special needs:

☐ Yes or ☒ No   Is a Foreign Language Interpreter needed and if so what language?

☐ Yes or ☒ No   Is the Patient on a ventilator &/or on a stretcher?

☐ Yes or ☒ No   Does the Patient have a trachea tube?

☐ Yes or ☒ No   Is the Patient being transported by an ambulance?

| Appointment Process & Important Information | SCHEDULED APPOINTMENT (This section to be completed by VCUHS Staff) | |
|---|---|---|
| All requests for clinical services at VCUHS **must** be authorized and signed by the referring facility's authority. | [ ] TELEMEDICINE | [ ] ON-SITE at VCU-Medical Center |
| • Barbara Granderson – 628-0425,Naomi Boswell 628-4500, Lakita Boyd 628-3805 | Date: | Time:        AM  PM |
| • FAX this form to Barbara Granderson/Naomi Boswell: (804) 628-3932 to request Telemedicine service. | | |
| • FAX this form to Lakita Boyd: (804) 325-2923 to request Onsite service. | | |

VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Co..   ..ltation Report  720_F23_7-12

## Health Services Consultation Report

**DO NOT TELL OFFENDER ABOUT APPOINTMENTS**

*PLEASE BILL TO ANTHEM*

| Sending Facility: | HAYNESVILLE CORRECTIONAL CENTER | | Date: | 3/12/2020 | |
|---|---|---|---|---|---|
| Offender Name: | LUCAS, CASEL | | | Offender #: | 1080673 |
| SS#: | 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 | DOB: | 8/8/1969 | T/D: | 4369269 |
| Allergies: | | | | | |
| Current Medications: | SEE MARS | | | | |
| Referred By: | LEONARD LEVIN, MD | | Referred To: | VCU PULMONARY CLINIC | |
| Medical Complaint: | FOLLOW UP | | | | |

*(sideways text, right margin:)* LUCAS, CASEL 4369269 03/12/20 M B 50Y DEFAULT, PROVIDER VISH: 706 179724151 — VCHNS DOB: 08/08/69 B 50Y PULO

## CONSULTING PHYSICIAN: PLEASE COMPLETE THE FOLLOWING:

| Findings: | See attached |
|---|---|
| Lab or X-ray Results: | |
| Diagnosis: | ① Suspect COPD will obtain PFTs  ② Allergic rhinitis |
| Treatment and Medications Recommended: | ① Switch Alvesco to Advair or similar  ② Start nasal steroid spray |
| Restrictions: | |
| Consulting Physician: | Alpha Fowler | Date: | 3/12/20 |
| Follow-up appointment date and time: | 3 mos | | |

*(handwritten left margin:)* AV 3/16/2020

*Revision Date: 1/17/07*

## PLEASE FAX NOTES/RESULTS TO 804-333-3826

June 11th 2020 @ 8:00 AM



VIRGINIA DEPARTMENT OF CORRECTIONS

**Grievance Receipt**

866.1 A-3

DOC Location: HCC Haynesville Correctional Center

Report generated by Hand, P W

Report run on 06/16/2020 at 03:59 PM

Grievance Number: <u>HCC-20-INF-01137</u>

Next Action Date: <u>07/01/2020 12:00 AM</u>

| On this date: | 06/16/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | | 1080673 of | Haynesville Correctional Center HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| S Westman - Complaint about IERP has no mention to include offender with disabilities. | | | |
| PHand *(Signature)* | | | OSS *(Title)* |

Page 1 of 1

Rev. 03/30/2009

DEPARTMENT OF CORRECTIONS

Informal Complaint 866 F3 4-17

# Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.

**An Informal Complaint is not required for an alleged incident of sexual abuse.**

CABEL F. LUCAS _____ Offender Name

1082693 _____ Offender Number

**RECEIVED**

2·A·38·B _____ Housing Assignment

Warden Wicks _____ Individuals Involved in Incident

JUN 16 2020

2 Jun 2020 _____ Date/ Time of Incident

GRIEVANCE OFFICE

☐ Unit Manager/Supervisor
☐ Personal Property
☐ Medical Administrator

☐ Food Service
☐ Commissary
☒ Other (Please Specify): Discrimination in IERP Program Mental Health Nov:
BY:

☐ Institutional Program Manager
☐ Mailroom

Briefly explain the nature of your complaint (be specific): Discrimination Against Me Being Excluded in Discriminatory. Class 1 felonies and Violent Sex Offense to Discriminatory.

(1) The IERP. Has No Mention to "include Offenders With Disabilities. As much Pr Americans with Disabilities Act of ADA is Amended (42 U.S.C. §12001 et seq.) (2) Virginia with Disabilities Act (CON § 51.5-1 et seq.) (3) VADC DOP 801.3 Managing Offenders with Disabilities. I Sent A Reasonable Accommodations Request to Facility ADA Requesting that I C. Lucas Inmate with Disabilities be included into the IERP Program to go home. The 1yr or less is irrelevant. The fact that I'm a parole eligible inmate even year I should be included especially with my Mental Health Disabilities and Chronic Surg Disease. Heart Conditions, Hypertension, and Diabetes! This is what VADC Agreed to.

Offender Signature Cabel F. Lucas

Date 14 Jun 2020

## Offenders – Do Not Write Below This Line

Date Received: 6-16-2020

Response Due: 7-1-2020

Action Taken/Response:

Tracking # HCC-20-INF-01137

Assigned to: S Westran IPM

_____

_____

_____

_____

_____

_____

_____

Respondent Signature _____ Printed Name and Title _____ Date

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____

Staff Witness Signature: _____ Date: _____

*Revision Date: 4/28/17*

Staff Witness I Smith On W Ji 2020

NON
Compliance
Tort
Claim
With Exhibits

*Non Complince Tort*

## NOTICE OF CLAIM
Pursuant to Virginia Code §8.01-195.6

CERTIFIED MAIL – RETURN RECEIPT

TO:

Attorney General of the Commonwealth of Virginia
900 East Main Street
Richmond, Virginia 23219

Director
Department of General Services
Division of Risk Management
109 Governor Street, 4th Floor
James Madison Building

Re:     Claimant: CASEL F. LUCAS

Date of Injury: 2 Jun 2020

Place of Injury: Haynesville Correctional Center VA DOC

To Whom It May Concern:

The Purpose of this correspondence is to make claim against the Commonwealth of Virginia and its departments or agencies and their responsible employees in regards to the damages and injuries as set forth in the accompanying Notice of Tort Claim Against the Commonwealth.

Please acknowledge receipt of this Notice and apprise me of your position in this matter.

Respectfully yours,

Date: 23 Jun 2021

Inmate# 1087673
Haynesville Correctional Center
Post Office Box 129
Haynesville, Virginia 22472

County/City of Richmond : Commonwealth of Virginia
The foregoing instrument was subscribed and sworn before me this
23 day of June , 2020

Casel F. Lucas
(Name of person seeking acknowledgement)

Catherine F. McKenney
Notary Public

My Commission expires: 5-31-22
Notary Reg. No. 7781613

NOTARY PUBLIC
CATHERINE F. MCKENNEY
REG. #7781613
MY COMMISSION EXPIRES
May 31 22
COMMONWEALTH OF VIRGINIA

3.   The date and location of the injury giving rise to this cause of action are:

Location:   Haynesville Correctional Center

Virginia Dept. of Corrections

Date:   2 June 2020

4.   The nature of this claim and injury or damage is described as follows:

1.) Mental breakdown NON COMPLIANCE of Stipulated Settlement Agreement Whorley etal V. Northam etal case No: 3:20 cv 00255

2.) Discrimination of An Inmate and Person with Disabilities to Participate in the Inmate Early Release Plan. I was Intentionally Excluded To Participate. There is No language to Include Persons with Disabilities.

3.) I Am Made to endure exposure of the Deadly COVID-19 with the Critical Medical Inquiries and Chronic Conditions.

   A.) Heart Condition blood is Regurgitating out of the Right Side of my Heart.

   B.) Hypertension

   C.) Irregular Heart rhythm. Enlarged Heart

   D.) Chronic Bronchitist

   E.) Asthmas, Reactive Airway Disease. Acute Respiratory Disease

   F.) Diabetes

   G.) Recurrent Upper Respiratory Infections. (H.) PTSD Military Service Connected 60% with My Chronic Respiratory Diseases & Disabilities. My Health Conditions Alone. Should Have Qualified Me. However NO official in VADOC. Adhered to the " Stipulated Settlement Agreement in Whorley V. Northam Pg. 2 ii VDOC is Also Considering in Individuals health Conditions. No One in VDOC. Has done this. When I ask to be considered under this Section of the agreement I am told I Do not Qualify because I Have More than 12 months. This is false. NO language In this part of the Agreement that stipulates 12 months or less. It Do Have language that Stipulates VDOC will consider An Individuals Health At being A Higher Risk.

Discrimination is not allowed ① ADA Americans with Disabilities Act of 1990 + VDA Virginia Disability Act. COV. § 51.5-1   42 USC. § 12.101 et seq.

5.   The State Agency or Agencies avered to be liable are:

Commonwealth of Virginia

Virginia Dept. of Homeland Security

Pg. 1

Statement Tort Claim.

CHIEF F. LUCAS

VBP# 1080673

4.A. 27. B. HCC

421 Barnfield Road

Haynesville, VA. 22472

24 Oct 2020

Continuation of the (4)
The Nature of this Claim
and Injury or Damage.

## NON Compliance of the
Stipulated Settlement Agreement
WHORLEY etal v. NORTHAM etal Case No: 3:20 cv 00255

4.) (A) There is A strict NO tolerance in VADOC Policy DOP
801.3 Managing Offenders with Disabilities.

(B) Americans with Disabilities Act of 1990 As Amended (42 USC § 12101 et seq.)

(C) Virginians with Disabilities Act (COV § 51.5-1 et seq.)

The Stipulated Settlement Agreement
WHORLEY etal v. NORTHAM etal., Case No. 3:20 cv 00255
Violates the DOP 801.3 Managing offenders with Disabilities,
ADA of 1990 As amended (42 U.S.C. § 12101 et seq)
Virginians with Disabilities Act (COV § 51.5-1 et seq)
Laws that Seek to Protect the Rights of all persons
with Disabilities to Include Sex offenders who are
governed under VA code § 37.2-901 to explicitly Provide, Control, Care,
and Treatment until such time as the Respondents Mental Abnormality or
Personality Disorder has changed. This is to civilly Protect Me, the Public
from my Mental Illness. My Mental Illness is A Disability.

(D) To Deny Me to a Sex offender, a Chronically Ill high Risk Disable Person who
Mental Illness.

Meets all of the CDC Guidelines As High Risk Person. I ERP
Early Release plan, Because I have more than 1 year. However I
Am a Parole Eligible Inmate. Therefore my Crimes That I am currently
Serving were committed in 1994 and I have 5 years to max out
My 20 year Sentence. With my Health Conditions should be given
The Early Release plan. All of my Health Problems
Come from my Service in the 1st Gulf War.
Let Me Be Absolutely Clear. When The United States
of America Asked Me to Fight. I Ran to the Front Lines

3.a

Into the Danger. I am No Coward and when they Asked me to Destroy Saddam Husseins Weapons of Mass Destruction I Ran to the Frontlines to do Exactly that. In doing my Duty for the United States of America I got Exposed to the Very Weapons I was Destroying Which Has Given me All of my Illnesses. To Tell me I Do not Qualify because of my Past Crime That I Have Completely Served that Sentence for. Is out Right Descrimination Violating State and Federal Disabilities Act Laws.

To Say I Don't Qualify because of my 5 years Remaining of a 80 year Sentence with my Disabilities Violates those laws. And It Also Violates the 1 Section of the Stipulated Settlement Agreement Page 2   3.a ii   VDOC Is Also Considering An Individual Health Condition along with Available Community Resources. I am a 100% Service Connected Disabled Combat Veteran Honorably Discharged. U.S. Dept. of Veterans Affairs Allots me A Service Connection Disability Compensation Pension. I am 51 years Old with Chronic Heart, Lung Diabetes Illnesses. A Parole Eligible Inmate Why I Have not been Released Under IERP. When I meet all of Eligibility Requirements of Page 2, 3.a ii that only States Considering An Individuals Health Condition My Health Condition Has never Been Considered Not by Haynesville Correctional staff, VADOC Regional Directors) VDOC HeadQuarters, Offender Management Services,

48.3

I Have Raised these Issues and was told I could not Grievance these Issues NON Grievable.

Therefore My Mental Health has Deteriorated My Respiratory Illnesses are Worser, and My Heart is leaking Blood On My Right side and It has Become Enlarged.

When will I Be Ever given a Second Chance?
When will I Be Ever Granted Parole?
When will I BE Granted A Pardon Under Conditional Terms?

I Am Deserving of All Three. I am Also Deserving of Inmate Early Release Plan.

I Have Been Transported To VCU Hospital In Richmond Virginia 5 Times During This Pandemic. 1.) Prostate biopsy , 2.) Pulmonary lung Specialist, 3.) Cardiologist, (4) Dermatology (5) Pulmonary lung Specialist

Each Time I Risk my life To Receive Treatment.

My Conditions are So extensive That I Must Risk my life for Treatments. This is a undue Hardship on the Commonwealth of Virginia Taxpayers. This burden lies on the U.S. Government The U.S. Army, and the Dept. of Veterans Affairs. I cannot use any of these while incarcerated. I can be taken To VCU as an Inmate billed to Virginia Taxpayers but not to a army Hospital or VA. Facility when It's the U.S. Governments Responsibility and Burden. I Am Scheduled for More VCU Appointments That I will Live And Should I Contract Covid19. I will

Pg. 21

Submit Another Bit Claim Against The Commonwealth / Virginia, Virginia Dept. of Homeland Security, VA Dept. of Corrections, Haynesville Correctional Center's Warden Willie Wells.

Casel F. Lucas

Respectfully
Submitted -

Commonwealth of Virginia
Virginia Dept of Homeland Security
Virginia Dept. of Corrections.
Haynesville Correctional Facility.

6. Pursuant to §8.01-195.5, Code of Virginia, 1950, as amended, the Commonwealth of Virginia has six (6) months to seek settlement of this claim, upon expiration of which, without a settlement being reached, this matter shall be ripe for the Claimant to seek judgment against the above-named defendant(s) in the appropriate State court.

WHEREFORE, TAKE NOTICE that the Claimant will seek judgment in the amount of $ 1,000,000.00 _____, against the defendant(s), or such amount as may be agreed on by the parties, in settlement of this claim.

Date: 23 Jun 2020 _____ Carl F. Elias _____

Inmate Number 1080673 _____
Haynesville correctional Center
Post Office box 129
Haynesville, Virginia 22472

STATE OF VIRGINIA
COUNTY OF RICHMOND

Subscribed and sworn to before me this 23rd day of June, 2020

Catherine F McKenney _____
Notary Public

My Commission Expires: 5-31-22 _____

Page 3 of 3

VIRGINIA:

IN THE OFFICE OF THE ATTORNEY GENERAL

CABEL F. LUCAS           , # 1080623

(Name and Inmate Number)

Claimant,

v.

COMMONWEALTH OF VIRGINIA, and

Virginia Dept. of Homeland Security

Virginia Dept. of Corrections

Haynesville Correctional Center       ,

Defendant.

CERTIFIED MAIL
RETURN RECEIPT
REQUESTED.

### AFFIDAVIT

STATE OF VIRGINIA,
COUNTY OF RICHMOND, to wit:

CABEL FRANK LUCAS           , being first duly sworn according to

law, deposes and states:

1.    That he is the Claimant in the above-entitled matter and who is currently

incarcerated at the Haynesville Correctional Center, 650 Barnsfield Road, Post Office

Box 129, Haynesville, Virginia 22472.

2.    That he has submitted herewith his Notice of Tort Claim Against the

Commonwealth in connection with the certain injuries and damages incurred while he

was in the custody and care of the Department of Corrections/Commonwealth of

Virginia, as a result of the alleged negligence of one or more agents of the

Commonwealth of Virginia.

3.      That he has attempted to resolve this matter by way of the adult

institutional inmate complaint/grievance procedures promulgated by the Virginia

Department of Corrections, having initiated the administrative grievance process on the

__2__ day of __June__, 20_20_; and that he filed his last grievance appeal on

the _25_ day of __June__, 20_20_, without receiving the requested relief or

otherwise resolving this matter;

4.      That he has attached hereto as enclosures, copies of all

complaints/requests, grievances and appeals filed in connection with the incident herein

stated as giving rise to this Tort Claim Against the Commonwealth of Virginia and its

agent(s).

I declare under penalty of perjury that the foregoing statement is true and correct

to the best of my knowledge and belief.


Date: 23 Sn 2020                    Carol F Gicou
                                                    _____
                                                    Claimant



STATE OF VIRGINIA
COUNTY OF RICHMOND

Subscribed and sworn to before me this 23rd day of __June__, 20_20_.

                    Catherine F McKenney
                    _____
                    Notary Public


My Commission Expires: ____5-31-22____

CASE F. LUCAS
VDOC# 1080673
Tort Claim
Exhibits
Table Of Contents

1.) Notice Of Tort Claim

2.) Notice of Tort Non Compliance of
Stipulated Settlement Agreement
Whorley et al V. Northam etal
Case No: 3:20 cv00255

3.) Evidence of Discrimination in Participation In
LERP Program & Pardon Receipt covid 19.

4.) Copy of Virginia Dept of Corrections Policy
Operating Procedure 801.3
MANAGING Offenders with Disabilities.

5.) Copy of Stipulated Settlement Agreement
Whorley etal v. Northam et al Case No: 3:20cv00255

6.) Memorandum Covid19 Inmate Early Release Plan
Information

7.) Reasonable accomodation Request

8.) Medical Records from Virginia Dept. of Corrections
Treatment of My Military Service Connected Disabilities
and Diagnosed Treatment of Medical Diseases and Injuries
From My 25 years of Incarceration.

9.) Medical Records & Diagnoses of Dept. of Veterins
Affairs Granting Service Connection for
(A) DIP Joints left & Right Hand  (B) Knure Injury  (C) T.BRD  (D) Head injury

Cabel F. Lucas
VDOP# 1030673
Tort Claim
Exhibits
Table of Contents

10.) Virginia Dept of Corrections Local Updated about
Virginia State Policy Criminal Records.

11.) Statement to Support my Appeal Inmate Early Release Plan.

12.) Grievance Appeal Denial Breathing Treatment

13.) Grievance Ombudsman Violations of the Stipulated Agreement

14.) Regional Director Appeal Reasonable Accomodation Denial

15.) Grievances Discrimination IERP
Dec-20-Inf-01197 IERP Discrimination
Dec-20-Inf-01198 IERP Reasonable Accomodation
Dec-20-Inf-0.0706 Food Service Contamination
Dec-20-HL-Inf-00545 CLPP Refusal to Wear P.P.E
Dec-20-Inf-00585 Cb Davis Refusal to Breathing Treatment
Dec-20-Inf-00559 A. Bennett VaDOC Parole Board Prioritize Early Release under COVID 19.

16.) Appeal To STANDE Americans with Disabilities Act
Coordinator B. MARANO Reasonable Accomodation Request
Denial

EXHIBIT
#2

NON Compliance of Stipulated
Agreement

CASE1 Frank LUCAS
Petitioner   Inmate Virginia Dept. of Corrections Haynesville.
VSP# 1080673

V.

Whorley et al V. Northam et al
CASE NO: 3:20 cv00255
S Tailored Settlement Agreement

Honorable Judge DAVID NOVAK
United States District Court
Eastern District of Virginia

1 NOV.
2020

NOTICE of Substantial NON- Compliance

1.) Complaint of NON Compliance

2.) Complaint of Discrimination against Case1 F. LUCAS
A Disabled Combat Veteran Incarcerated at Haynesville
Correctional Center. The IERP Excludes from
Language and Implimentation of Persons
With Disabilities. Which Violates The

A.) Americans With Disabilities ACT of 1990
AS Amended (42 U.S.C. § 12101 et seq)

B.) Virginians with Disabilities ACT (COV §51.5-1 et seq)

C.) Dept of Corrections Policy DOP 801.3 Managing Offenders with
Disabilities. Page 4 II Offenders with Disabilities (b) 4(C)

(b) Facility Staff Must ensure that an Individual with Disabilities
Will not be excluded from Participation in or be Denied
The Benefits of, the Services, Programs, or activities of
The Facility or be Subject to Discrimination.

(c) Reasonable Accommodations Must Be Made for Offenders with
Disabilities. Consistent With and as Required by the Americans
with Disabilities ACT of 1990, as Amended (42 U.S.C. § 12101 et seq)
and the Virginians with Disabilities Act (Cov 851.5-1 et seq)

I Am To Be Afforded The Protections Guaranteed
And Contained in the laws of ... cov ....

Pg. 2.

I HAVE EXHAUSTED All ADMINISTRATIVE Remedies Under 42 USC. 8 1997e(a)

NON Compliance Violations Of The Stipulated Settlement Agreement

(No: 1) Part 3. In consideration thereof, Defendants Agree to the following.

3.a Early Release Plan

ii Under The Early Release Plan, VDOC is Also Considering An Individuals Health Condition - along with Available Community Resources when Deciding whether to exercise its Discretion To Release an Inmate Pursuant To the Budget Amendment By Health Condition" VDOC Specifically Agrees to give Priority Consideration for Approval of Release to those Individuals Who Have Health Condition enumerated by Centers for Disease Control and Prevention (CDC) as Being At a Higher Risk of Health Complications if that Individual Were to Contract COVID-19.

I Specifically Requested This An was Denied.
I Filed Grievances On this And was told NON Grievable And that I Do Not Meet this Requirements of IERP.
I Am Not 1 year or less.

No Where In this Part of the Early Release Plan 3 a ii. Does "it State You must be 1 year or Less. This clause is Very Specific " VDOC is also Considering an Individuals Health Conditions". And "VDOC Specifically Agrees To Give Priority Consideration to those Individuals Who Have Health Conditions of being at Higher Risk.
I Was Denied this Consideration of my Current Health Conditions. And was Never Reviewed, Interviewed, Or Told I was being Considered because of My Chronic Lung Conditions + Heart Condition, Diabetes, Hypertension

Grievance 8
In 2 June 2020 I Red Dice for this Grievance    [ HCC - 20 - IUF - 01137    HCC - 20 - IUF - 01192
                                                  [ Is Directly About my Health    HCC - 20 - IUF - 01150
                                                  Conditions And Asking to be considered

Pg. 3

(NO: 2)   NON Compliance Violations of Stipulated Settlement Agreement

ON 13 April 2020 I filed Grievance HCC-20-REG-00046
C/O Burrus refused me himself of my Chronic Care
Medical Breathing Treatment Require and Prescribed
Nebulizer Breathing Machine Two-Web.

HCC-20-REG-00046

Violating 3(G) Grievances Part of Stipulated Settlement Agreement
Per DOP 801.3 Page 6 2(A) Under No Circumstances will a NON-Health Care Provider
Substitute their Judgment for that of the Health Care Provider.

(NO: 3)   NON Compliance Violations of Stipulated Settlement Agreement

ON 11 April 2020 I filed Grievance HCC-20-INF-00545
Correctional Officer Refused To Wear their Mask During Morning
Head Count At 0630 Doing PPE Covering.

HCC-20-INF-00545

Violating 3(F) 3(h) 3(i)
3(F) Hygiene and Sanitation
3(h) PPE
3(i) Staffing and Housing.

(NO: 4)   NON Compliance of Stipulated Settlement Agreement Violations

3(C) Grievances
Regarding COVID 19
Policies, Protocols
PPE.

3(F) Hygiene and
Sanitation

3(h) PPE

(I) Staffing &
Inmate Housing

Food Service Area Intentionally Contaminated by
Medical Staff, Food Service Staff, Security, Administration.

ON 24 April 2020 I filed HCC-20-INF-00706
Inmates Were Taken Into Food Service That Were COVID 19
Positive and Given Medical Triage, Testings, and Treatments
by Medical Staff During The Preperation, Distribution of the
Actual loading food onto the Trays, During The
Lunch and Dinner Meals. This Was Reckless, Irreporable,
and Unprofessional. This Act Put Every One at Risk.

Pg. 4

(NO:4) NON Compliance Violations of Stripulated Settlement Agreement

I could not risk Eating the Lunch Meal or Dinner Meal I Witnessed this when I was Returning from Medical after my Breathing Treatment, as I walked Past the Kitchen DOOR looked Through the Window of the DOOR and Was Shocked to See the Medical Staff taking Temperatures Administering Test etc. All of this in Food Service Area While The Lunch and Dinner Meal were Prepared and Served To Population.

Only After all the Inmates from Building 6B had Returned To The Housing Unit Was the Kitchen Decontaminated by a Team of Workers in Full Meopan Oriented Proctive Posture Decontamination Suites With Breathing Devices. In the Military This is known as MOPP 4.

I was told That My Grievance Was and DID Not Personally affect me Nor DID it Cause me Personal loss or Harm. To father Explain When I DID the Ombudsman and I Assumed This would happen and Grievances are Based on Facts not assumptions.

Fact: They took Infected Inmates Into Food Service The Kitchen During Lunch and Dinner Meals were Prepared and Served to General Population.

Fact: The Kitchen Was NOT Decontaminated Until After 6th Count

Fact: 24 April 2020 The Infection Rate Went Up + Down.

Pg. 5

(NO:4) NON Compliance Violations of Stipulated Settlement Agreement

Fact: The Infection Rate would Not Have Increased and Spread Throughout The Compound had the Food Service Staff, Medical Dept., Security Staff, and Administration had NOT Been Reckless by Intentionally Exposing The Food Service Kitchen Employee inmates, Food Service Staff, Food Service Prep, and the Lunch and Dinner Meals being Prepared. This Should Have Never Happen, I WAS Directly Affected by The Facts Of What I Witnessed with my EYES I Physically Stood At the Chow Hall DOOR Looked Through The DOOR Window And Witnessed EVErything I Have Stated, There Is NO Assumption Only Facts. Look At the Infection Rate After 24 April 2020 Of Nottoway Correctional Center. Look At 141 Days from 24 April 2020 How Many Inmates from 6-B Test Positive During this Incident.

(NO:5) NON Compliance Violations of Stipulated Settlement Agreement

3(A):∵
Under Early Release law VDOC 53.06 ordering Individual Early?

On 2 June 2020 I Submitted A IDOP BOI.3 Medical Reasonable Accommodations Request To Be Considered for Early Release Under The IERP Due to my Chronic Medical Conditions. I was told Bee my Counselor Ms. Robinson I Did As Told She Told Me if I Think or Believe I Should be Considered for Early Release file An Appeal. I Did So 30 Days Ago No Answer from the Warden On the IERP Appeal.
I filed A Grievance Appeal of the Reasonable Accommodation Request #CC-20-INF-01192. On 21 July 2020 No Answer I Filed

Pg. 6

(NO:5) NON Compliance of Violations of Stipulated Settlement Agreement

I Have exhausted all Administrative Remedies. I Will file a Notice of Tort against To Commonwealth of Virginia at The Division of Risk Management With the Commonwealth of Virginia Attorney Generals office.

I am a Honorably Discharged Disabled Combat Veteran With Service Connected Disabilities. The Reasonable Accommodations Request To Have me Considered for Early Release Should Have Been Granted.

(NO:6) NON Compliance Violations of Stipulated Settlement Agreement

3(C) Grievance   On 22 June 2020 I filed a Grievance On the Institutional Ombudsman (Grievance Coordinator) MS. BROWN Of Her Bias Intake Process on Every Grievance and Informal Complaint about Violations of the Stipulated agreement. She also Deliberately Hindered The Process by Not Returning The Grievances by there DUE Dates and Denying All Intakes of

HCC-20-INF-01192   HCC-20-INF-01191
HCC-20-REG-000X6   HCC-20-INF-00559
HCC-20-INF-00706   HCC-20-INF-01187
                   HCC-20-INF-00545.

All Ombudsman The Grievance Coordinators facilities With Written Guidance Instructing Them To Prioritize for Review any Grievance alleging Delay in Medical assessment, treatment Related to COVID19 as well as Policies, Protocols, and such as Deficiencies in Personal Protective Equipment

The Ombudsman MS. BROWN Also Refused To Address The ISSUES in the 7 Informal Complaints & Grievances. NO- Corrective Action & NO Favorable Resolution. To my Injury

Pg 7

(NO: 6) Non Compliance Violations of Stipulated Settlement Agreement

Mr. Brown Direct interference to Hinder Delay, and NON Directly enforce the COVID 19 Protocols Procedures, Regulations Up Staff to Directly Covering Up The Violations of DOC Policies, Federal and State Laws.

Especially The Americans with Disabilities Act of 1990 as amended (42 U.S.C. § 12101 et seq.)

The Virginians with Disabilities Act (COV § 51.5-1 et seq.)

The Dept. of Corrections Policy DOP 801.3 Managing Offenders with Disabilities

Mr. Brown, HCC Grievance Coordinator and K. Cosby Regional Ombudsman blatantly Told Me That I DID not Submit Evidence. Whereas by the Regional Stamp On the Documents. K. Cosby Did Not READ One Page not One informal Complaint that I Submitted About This Violations. K. Cosby Help Mr. Brown Illegally Cover Up The Violations of COVID 19 Stipulated Agreement, Federal Law of ADA, State Law VDA Cov § 51.5-1 ), DOC-Policies of 801.3 Managing Offenders with Disabilities.

(NO: 7)      Non Compliance Violations of Stipulated Settlement Agreement
3 (b) Conditional Pardons      I Submitted A Conditional Pardon I Clearly
                              MARK This PARDON COVID 19 Due
                              To Chronic Medical Problems.

The Reciept I Have only Says I filed Executive Clemency No Mention of COVID 19 & My Medical Issues.

Pg. 8

(NO: 8) NON-Compliance of Violations Of Stipulated Settlement Agreement

The Inmate Early Release Plan Directly Discriminates Against Me A Disabled Honorably Discharged Combat Veteran. I have Asked For this Discrimination To Stop Through All Of the Channels Available To Me.

(A) DOP 801.3 Reasonable Accommodation Request Denied

(B) Through The Grievance Process All Denied
Never Once Addressing IERP Discrimination of Disabled Persons.
IERP Has No Mention of Inmates With Disabilities.

(C) I filed An IERP Appeal To The Warden by Completing The Appeal form No Answer Or Response From Warden Hicks. Hindering My Ability To File An Appeal To Offender Management Services Director James Parks.

The IERP Is Bias And Discriminatory In language, Implementation, And Practice. I Violates Federal And State Laws ① Americans With Disabilities Act Of 1990 As amended (42 U.S.C. § 12101 et seq) ② Virginians With Disabilities Act (Cov § 51.5-1 et seq) And Dept. of Corrections Policy 801.3.

I Am A Disabled Combat Veteran, I Am A Parole Eligible Inmate, ^v23Dec21
I Have been incarcerated Since 1997 in VADOC. 24 Years. My Max Sentence Release Date 2Ldy. 2027. The IERP Is Highly Discriminatory Against ME An Inmate With 7 Years Remaining on my Sentence That I Am Currently Parole Eligible For. There Is Not One Sentence Written in the IERP To Even Consider Someone As myself To Be Fairly Considered. However the ADA Federal Law, VDA State law, And VADOC Policy 801.3 Provides Guaranteed Protection of Discrimination

Pg. 9

(No. 8)   NON-Compliance Of Violations of Stipulated Settlement Agreement from being Excluded from the Benefits Of Participation In or be Denied the Services, Programs, or Activities of the facilities or be subjected to Discrimination Persons with Disabilities.

I Request That The Court Upholds To The Guaranteed Protections Provide To This Disabled Combat Veteran Entry into I.E.R.P. And Be Granted EARLY Release Due to My Chronic Conditions with My Lungs, Diabetes, Heart condition, Hypertension, Asthma, Chronic Bronchitis, Recurrent Upper Respiratory Infections, I take 34 Medications for my other Illnesses which I Suffer to include Mental Health Problems of PTSD, Anxiety, Depression, and Suicidal Ideations, of Mental Health Medications. I AM DAV. 50% Service Connected Disabled with the VA. I will Recieve a 100% Rating for TDIU Total Disability Individual Unemployibility. I Have All The Resources needed Through U.S. Dept of Veterans Affairs.

I ask to Be Granted EARLY Release Due to My Many Chronic Illness All Related to My Military Service To This Country When I was needed I answered The Call Of the United States. I Now Ask That Very Same Call To my Country The United States To Grant ME The Relief in which I Seek.   To Hold All Accountable of ADA, VRS, and DOJ 801.3. Federal & State Laws Violated against this Disabled Combat veteran that is suppose to Protect Me.

I must Add That The Ombudsman Ms. Brown and Staff Are Currently active in Retaliation against ME Refusing To Give ME The response to My Grievance.  ILCC-20-RATG-00046

Pg. 10

This is yet another Criminal act of Hiding the Records that Staff here caused Harm to Me and My Disabilities.

I can not and will not stop Until I Receive Justice from this Unjust System within the Virginia Dept of Corrections.

I Also Sent a Reasonable Accommodations Request To The Statewide Americans With Disabilities Coordinator B. MARANO. In Richmond No Response Nor Answer to that Request I Have Provided a Copy to the Court.

Respectfully Submitted,

Casel 7. Lucas



# COMMONWEALTH *of* VIRGINIA

### *Secretary of the Commonwealth*
June 12, 2020

POST OFFICE BOX 2454                                                                RICHMOND, VIRGINIA 23218-2454

Casel Frank Lucas
# 1080673
421 Barn Field Rd
Haynesville, VA 22472

Re: Casel Frank Lucas

Dear Casel Frank Lucas:                                                )

This is to acknowledge receipt of your clemency petition on behalf of the above
named petitioner.

The petition for executive clemency will be thoroughly investigated and when the
investigation is complete, you will be contacted by this office as to the decision of
the Governor. Investigations may take two years or longer.

The decision of the Governor on a petition for executive clemency is final and there
is no appeal. There is no opportunity for a hearing or meeting; all information to be
considered must be submitted to this office in writing. If a petition is denied, another
cannot be filed for three years from the date of denial.

Unless additional information is requested, you will not receive further
correspondence regarding your petition from this office until you are notified of the
Governor's decision.

Sincerely,

Pardons Specialist

Capel F. Lucas
VA P# 1080673
Tort Claim
Non Compliance To Stipulated Agreement
Discrimination IERP

EXHIBIT

#3

Grievance of Discrimination
in Participating to IERP
Copy Pardon Board

4-17    VIRGINIA                       Regular Grievance 866_Fi_4-17

PARTMENT OF CORRECTIONS

ve
Of
he
a

# REGULAR GRIEVANCE

Log Number: _____

| LABEL F. LUCAS | 1080673 | 2 A | 2.A.38.B |
|---|---|---|---|
| ume, First | Number | Building | Cell/Bed Number |
| WARDEN Hicks, Counselor Ms. Robinson, Mr. Greenwood | 25 June 2020 | | |
| luals Involved in Incident | Date/ Time of Incident | | |

IS YOUR COMPLAINT? (Provide information from the informal process: Attach Informal Complaint response or documentation of informal process.) DISCrimination in IERP PARTicipation 3Program Supervisor's

~~Per DOP 801.3 Pay 4 Part II B or C I will Not be denied Access to Programs IERP IS A Program~~

ARE Not Following the Stipulated Settlement Agreement in (Whorley Etal V. Northam)

tal Case No: 3:20 cv 00255 pg #2, Part II (VADOC will Need to Consider an Individuals Health)

t hee in this part NO language of 1 year or less; it has No language of Persons With Disabilities.

The Staff at HCC Refuses to grant ME A REASONAble Accommodation REQuest to Participate in

This EARly RELEASE Program. Due to the Severity of MY Individual Health Conditions v I have

Multiple Recongnized Disabilities. ① Hypertension ② Diabetes ③ Mental illnesses PTSD, Anxiety, Chronic Depression

④ Chronic Bronchitis (lung Disease, ⑤ Asthma) ⑥ Acute Respirdory Disease ⑦ I am Incontinency I wear Adult Diapers.

Fibromyalgia, Musculoskeletal Disease... I should have been granted Eligibility into IERP Program

Regardless of Not being 1 year or less. Per that Stipulated Settlement Agreement part II. Has No time

Restrictions, Yet I Am Excluded from Participation in IERP because I Am Not 1 year or less.

Thats DISCrimination.

action do you want taken? ① Be granted Eligible to be Released Early Due to my Qualifying

Chronic Medical Conditions. ② VADOC must include Offenders with Disabilities

No Matter the length of time Remaining ③ I Must be given An Home Plan to be approved

④ I must be given An ICOT to Kittle Maryland Participate in A Special Veterans Hobby Program

for incarcerated Veterans MCVET ~~Be~~

RECEIVED

JUN 25 2020

GRIEVANCE OFFICE

| /ant's Signature: Carol F. Bilica | Date: 25 June 2020 |
|---|---|
| /en/Superintendent's Office: | |
| Received: | By: |



VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance  866_F1

**INSTRUCTIONS FOR FILING:** You are required per Operating Procedure 866.1 *Offender Grievance Procedure* to attempt to resol your complaint in good faith prior to filing a regular grievance. You must submit your grievance within 30 days from the date occurrence or discovery of incident. Only one issue per grievance will be addressed. Write your issue only in the space provided on ti grievance form, preferably in ink. Regular grievances are submitted through the institutional mail to the facility Grievance Office and receipt issued within 2 working days from received date if the grievance is not returned during intake.

**INTAKE:** Grievances should be accepted for logging unless returned for the following reason(s):

*See below*

| | |
|---|---|
| ☑ | Non-Grievable. This issue has been defined as non-grievable in accordance with Operating Procedure 866.1. |
| | ☐ Disciplinary Procedure. You may appeal hearing decisions, penalties, and/or procedural errors under the provisions in Operating Procedure 861.1, *Offender Discipline.* |
| | ☐ Matters beyond the control of the Department of Corrections |
| ☐ | Does not affect you personally (This issue did not cause you personal loss or harm) |
| ☐ | Limited. You have been limited by the Warden/Superintendent |
| ☐ | More than one issue – resubmit with only one issue |
| ☐ | Expired Filing Period. Grievances are to be filed within 30 calendar days from date of occurrence/incident, or discovery of the occurrence/incident except in instances:  1) beyond the offender's control or, 2) where a more restrictive time frame has been established in Operating Procedures to prevent loss of remedy or the issue from becoming moot. |
| ☐ | Repetitive. This issue has been grieved previously in Grievance # |
| ☐ | Inquiry on behalf of other offenders. |
| ☐ | Group Complaints or Petitions. Grievances are to be submitted by individuals. |
| ☐ | Vulgar/Insolent or Threatening Language. YOU MAY BE CHARGED IN ACCORDANCE WITH OPERATING PROCEDURE 861.1 *OFFENDER DISCIPLINE* |
| ☐ | Photocopy/Carbon Copy. You must submit the original grievance for responses and appeals. |
| ☐ | Grievances Filed Regarding Another Institution. This grievance is being returned to you for you to submit to: |
| ☐ | Informal Procedure. You have not used the informal process to resolve your complaint |
| ☐ | Request for services |
| ☐ | ~~Insufficient Information (Not to include Medical).~~ You need to provide the following information to the Grievance Office ~~within 5 days before the grievances can be processed:~~ *There is no appeal process through the grievance procedure for early release. The facility* |
| ☐ | The issue in the grievance is different from the issue in the informal complaint |

Institutional Ombudsman/Grievance Coordinator: *Rose C Brown, IO*                Date: *6-25-20*

If you disagree with this decision, you have 5 calendar days from date of receipt to submit to the Regional Ombudsman for a review of the intake decision. The Regional Ombudsman's decision is final.

Regional Review of Intake (within 5 working days of receipt)

| | |
|---|---|
| ☐ | The intake decision is being upheld in accordance with Operating Procedure 866.1 *Offender Grievance Procedure.* |
| ☐ | The intake decision is being returned to you because the 5 day time limit for review has been exceeded. |
| ☐ | The grievance meets the criteria for intake and is being returned to the Warden/Superintendent for logging. |

Regional Ombudsman:

**WITHDRAWAL OF GRIEVANCE:** I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance, there will be no further action on this issue nor will I be able to file any other grievance in the future on this issue.

Offender Signature: _____                Date: _____

Staff Witness: _____                Date: _____

*decision is sent to OMS for review where they make*                Date: _____
*the final decision.*

Revision Date: 4/28/17

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| CABEL F. LUCAS | 1086673 | 2.A.38.B |
|---|---|---|
| Offender Name | Offender Number | Housing Assignment |
| Warden Nicks | | 2 Jun 2020 |
| Individuals Involved in Incident | | Date/ Time of Incident |

☐ Unit Manager/Supervisor    ☐ Food Service    ☐ Institutional Program Manager
☐ Personal Property    ☐ Commissary    ☐ Mailroom
☐ Medical Administrator    ☒ Other (Please Specify): _Discrimination in IERP Program Health Dav Fac Condit_

Briefly explain the nature of your complaint (be specific): _Discrimination Against Me Being Excluded in_
Class 1 Felonies and Violent Sex Offense is Discriminatory
The IERP. Has NO mention to include Offenders with Disabilities. As mandated for
① Americans with Disabilities ACT of PAO to Amend (42 U.S.C § 12101 et seq) Virginia with
Disabilities ACT (COV § 51.5-1 et seq.) ③ VADC DOP 801.3 Managing Offenders with Disabilit
I Sent A Reasonable Accommodations Request to Facility ADA Requesting that I C.Lucas Inmate with
Disabilities be included into the IERP Program to go home. The 1yr or less is irrelevant to
The fact that I'm a parole eligible inmate every year I should be included especially with my Mental Health
Disabilities and Chronic Surg Disease. Heart Condition, Hypertension, and Diabetes. This is what VADOC Agreed to.

Offender Signature _Cabel F. Lucas_    Date _14 Jun 2020_

### Offenders - Do Not Write Below This Line

Date Received: _____    Tracking # _____

Response Due: _____    Assigned to: _____
Action Taken/Response:

_____

_____

_____

_____

_____

_____

RECEIVED
JUL 20 2020
Ombudsman Unit
Eastern Region

Respondent Signature _____    Printed Name and Title _____    Date _____

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____    Date: _____

Staff Witness Signature: _____    Date: _____

RECEIVED
JUL - 2 2020
Ombudsman Unit
Eastern Region

Revision Date: 4/28/17

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint  866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| | | |
|---|---|---|
| CASEL F. LUCAS | 1086093 | 2·A·38·B |
| Offender Name | Offender Number | Housing Assignment |
| Warden Nicks | | 2 Jun 2020 |
| Individuals Involved in Incident | | Date/ Time of Incident |

RECEIVED

JUN 15 2020

By GRIEVANCE OFFICE

☐ Unit Manager/Supervisor
☐ Personal Property
☐ Medical Administrator
☐ Food Service
☐ Commissary
☒ Other (Please Specify): Discrimination in IERP Program Health Condition, Health flaw; Priority

Briefly explain the nature of your complaint (be specific): Discrimination Against Me Being Excluded in Class 1 Felonies and Violent Sex Offence is Discriminatory

① The IERP Has No Mention to include Offenders with Disabilities As Mandate Per Americans with Disabilities ACT of 1990 as amended (42 U.S.C § 12901 et seq) ② Virginia's with Disabilities ACT (Cov §51.5-1 et seq.) ③ VADC DOP 801.3 Managing Offenders with Disabilities I Sent A Reasonable Accommodations Request to Facility ADA Requesting that I C. Lucas Inmate with Disabilities be included into ④ the IERP Program to go home. The 1 yr or less is irrelevant. The fact that I'm a parole eligible inmate every year I should be included especially with my Mental Health Disabilities and Chronic Surg Disease. Heart Condition, Hypertension, and Diabetes. This is what VADOC Agreed to.

Offender Signature  Casel F. Lucas                          Date  14 Jun 2020

### Offenders – Do Not Write Below This Line

Date Received: 6-16-2020

Response Due: 7-1-2020

Action Taken/Response:

Tracking # HCC-20-INF-01137

Assigned to: S Westman IPM

The Department of Corrections looks at many factors but the offender must have ~~____~~ less than 1 year left to serve of his Sentence Please See attached

S Westman                          S. Westman / IPM          6-23-2020
Respondent Signature               Printed Name and Title      Date

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____   RECEIVED   Date: _____

Staff Witness Signature: _____   JUN 25 2020   Date: _____

By: GRIEVANCE OFFICE

Revision Date: 4/28/17

## Purpose:

Pursuant to legislation, the Inmate Early Release Plan was developed and implemented by the Department of Corrections (DOC), under the authority of the Director of Corrections, and in response to the Governor's state of emergency declaration related to the COVID-19 pandemic, a communicable disease and current public health threat to the residents of the Commonwealth of Virginia as defined in §44-146.16 of the Code of Virginia.

The Inmate Early Release Plan provides a procedure for implementing legislation to allow for the discharge of inmates who meet the eligibility criteria from incarceration, prior to their scheduled release date consistent with guidance provided in the legislative mandate. The legislation authorizes the Director, during the duration of the declared emergency, to (i) discharge from incarceration or (ii) place into a lower level of supervision, including probation supervision, home electronic incarceration, or other forms of community corrections, any prisoner committed to the Department who has less than one year of his sentence remaining to be served prior to his scheduled release if the Director determines that (a) any such discharge or placement during the declared emergency will assist in maintaining the health, safety, and welfare of any prisoner discharged or placed or the prisoners remaining in state correctional facilities and (b) any such discharge or placement is compatible with the interests of society and public safety.

The Inmate Early Release Plan is only in force during the period declared by the Governor as a state of emergency pursuant to §44-146.17 of the Code of Virginia.

## Contributing Factors

While a segment of the inmate population is at a higher risk for severe illness and potentially life-threatening complications if exposed to COVID-19, the Department has the necessary resources to treat the virus to include 24-hour trained health care staff and access to emergency medical care if necessary, subject to the availability of resources in hospitals or other advanced care settings. It is imperative that upon release inmates who are at a higher risk of developing severe forms of COVID-19 have the resources and access to care in their community needed to mitigate the severe health risks to the inmate. Inmates at a higher risk for COVID-19 complications, who meet the eligibility criteria for release, will only be released if the necessary community support and resources are available.

There are many additional contributing factors and mitigating circumstances, which the Department must consider when establishing the criteria for releasing an inmate early from incarceration. Such factors include the risk to public safety, the safety and well-being of the offender and the inmate's family, available community resources, and access to proper health care for the treatment of an inmate's medical and mental health needs.

Therefore, this plan provides for the early release of eligible inmates who have a viable home plan and must have a risk of recidivism of medium or low.

RECEIVED

JUN 2 5 2020

By: GRIEVANCE OFFICE

1 | Page

Cabel F. Lucas
VBP# 1080073
Fact Claim
Non compliance to stipulated agreement
Discrimination IERP

EXHIBIT

# 4

Copy of Virginia Dept of Corrections Policy
Operating Procedure 801.3
Managing offenders with Disabilities

*See Page 3, 4, 6, 7, 11, 12*



**Virginia Department of Corrections**

| | |
|---|---|
| | **Offender Management and Programs** |
| | **Operating Procedure 801.3** |
| | *Managing Offenders with Disabilities* |
| | **Authority:**<br>Directive 801, *Facility Administration* |
| | **Effective Date:** August 1, 2019 |
| | **Amended:** |
| | **Supersedes:**<br>Operating Procedure 801.3, July 1, 2016 |
| | Access: ☒ Public ☐ Restricted<br>☒ Incarcerated Offender |
| | **ACA/PREA Standards:**<br>5-2C-4133, 5-2C-4142, 5-2C-4143, 5-2C-4144,<br>5-3D-4277, 5-5E-4429, 5-5E-4429-1, 5-6C-4399,<br>5-7A-4448, 5-7B-4475, 5-7D-4497-2; 4-4133, 4-4142, 4-4143, 4-4144, 4-4277, 4-4399, 4-4429, 4-4429-1, 4-4448, 4-4475, 4-4497; 4-ACRS-5A-19, 4-ACRS-6A-01-1, 4-ACRS-6A-04, 4-ACRS-6A-04-1, 4-ACRS-6A-04-2, 4-ACRS-6B-01 |

| Content Owner: | Rose Durbin<br>PREA/ADA Supervisor | *Signature Copy on File*<br>Signature | 6/14/19<br>Date |
|---|---|---|---|
| Reviewer: | Jermiah Fitz Jr.<br>Corrections Operations Administrator | *Signature Copy on File*<br>Signature | 6/17/19<br>Date |
| Signatory: | A. David Robinson<br>Chief of Corrections Operations | *Signature Copy on File*<br>Signature | 7/1/19<br>Date |

**REVIEW**

The Content Owner will review this operating procedure annually and re-write it no later than three years after the effective date.

**COMPLIANCE**

This operating procedure applies to all units operated by the Virginia Department of Corrections. Practices and procedures must comply with applicable State and Federal laws and regulations, ACA standards, PREA standards, and DOC directives and operating procedures.

RECEIVED

JUN 25 2020

By: _____
GRIEVANCE OFFICE

Operating Procedure 801.3, *Managing Offenders with Disabilities*                    Effective Date: August 1, 2019

# Table of Contents

PURPOSE ....................................................................................................................... 3

PROCEDURE ................................................................................................................. 3

   I.   Training and Responsibility ......................................................................... 3

   II.   Offenders with Disabilities............................................................................ 4

   III.   Determination of Disability and Reasonable Accommodations ................. 5

   IV.   Offender Requests for Accommodation....................................................... 6

   V.   Housing for Offenders with Disabilities ..................................................... 7

   VI.   Durable Medical Equipment, Disability Aids, and Prostheses ................. 8

   VII.   Offender Services........................................................................................... 8

   VIII.  Special Considerations.................................................................................. 9

DEFINITIONS OF TERMS USED IN THIS OPERATING PROCEDURE...................... 11

REFERENCES................................................................................................................ 12

ATTACHMENTS ........................................................................................................... 13

FORM CITATIONS ....................................................................................................... 13



Operating Procedure 801.3, *Managing Offenders with Disabilities*                    Effective Date: August 1, 2019

## PURPOSE

This operating procedure provides guidelines for management of and provision of reasonable accommodations to offenders with disabilities housed in Department of Corrections (DOC) facilities. It describes levels of available services, methods by which assignments are made, and appropriate security measures for offenders with disabilities in accordance with the *Americans with Disabilities Act of 1990*, as Amended (42 U.S.C. §12101 et seq.) and the *Virginians with Disabilities Act* (COV §51.5-1 et seq.).

## PROCEDURE

I.    Training and Responsibility

A. All staff, contract staff, interns, and volunteers who regularly interact with offenders will receive instruction related to the provisions of accommodations for offenders with disabilities and the requirements of this operating procedure.

B. All staff and contract staff must complete the mandatory *Americans with Disabilities Act (ADA)* on-line training, annually. Upon completion of the training, a copy of the certificate must be printed and submitted to unit training staff or the immediate supervisor for units without training staff.

C. Upon arrival and during formal orientation, all offenders, to include those offenders who are transferred immediately to the infirmary or restrictive housing upon intake, will be informed of their right to non-discrimination on the basis of a disability and the process for requesting a reasonable accommodation as outlined in this operating procedure. (See Operating Procedure 810.1, *Offender Reception and Classification*, and Operating Procedure 810.2, *Transferred Offender Receiving and Orientation*.) (5-3D-4277; 4-4277; 4-ACRS-6B-01)

1. Each offender, upon arrival will be provided a copy of Attachment 1, *Notice of Rights for Offenders with Disabilities*, which includes the DOC ADA Coordinator's contact information.

2. The facility *Orientation Manual, Packet*, and/or other written orientation materials must include the facility ADA Coordinator's name and contact information.

D. Information on the nature and extent of an offender's disability and any reasonable accommodations related to the disability is considered protected health information. This information is confidential and will only be disclosed to staff as necessary to provide assistance to the offender or as authorized and/or permitted by the offender.

E. ADA Coordinator

1. Staff and offenders have access to the DOC ADA Coordinator and a facility ADA Coordinator. (5E-4429-1; 4-4429-1; 4-ACRS-6A-01-1)

   a. The DOC ADA Coordinator is an appropriately trained and qualified individual, educated in the problems and challenges faced by offenders with physical and/or mental impairments, programs designed to educate and assist offenders with disabilities, and all legal requirements for the protection of offenders with disabilities.

   b. The facility ADA Coordinator is trained by the DOC ADA Coordinator in mandated legal requirements regarding disability accommodations.

2. The DOC ADA Coordinator will serve as the authority on all issues related to offenders with disabilities, reasonable accommodations, and the application of this operating procedure.

3. The facility ADA Coordinator will review all offender requests for a reasonable accommodation and, in consultation with appropriate staff, make a determination on the request and maintain documentation of the facility accommodation process to include approvals, denials, and appeals.

   a. The following requirements will be considered when making a determination for an accommodation:
      i. The disability, as recognized by the ADA, must be known to the DOC.
      ii. The accommodation must not pose an undue hardship on the facility or to the safety and

RECEIVED JUN 25 2020 By GRIEVANCE OFFICE

Operating Procedure 801.3, *Managing Offenders with Disabilities*                    Effective Date: August 1, 2019

security of the offender or any other person.

b. .The facility ADA Coordinator will maintain a current listing of all facility accommodations provided to offenders.

c. The facility ADA Coordinator will make rounds twice per month to be available to offenders. These rounds should be documented in facility logbooks.

II.    Offenders with Disabilities

A. Offenders are essentially dependent on the physical conditions of and services provided by the facility.

B. Facility staff must ensure that an individual with a disability will not be excluded from participation in, or be denied the benefits of, the services, programs, or activities of the facility, or be subjected to discrimination. (5-3D-4277, 5-5E-4429; 4-4277, 4-4429; 4-ACRS-6B-01)

C. Reasonable accommodations must be made for offenders with disabilities, consistent with and as required by the *Americans with Disabilities Act of 1990, as Amended* (42 U.S.C. §12101 et seq.) and the *Virginians with Disabilities Act* (COV §51.5-1 et seq.)

D. Such accommodations will allow for participation in services, programs, and activities that may include but not be limited to:

1. Provision of medical and mental health care, medication, auxiliary aids and services, and protection from weather related injury

2. Removal of barriers to physical plant access or transfer to a facility that meets the offender's needs

3. Modification to procedure and/or facility practice, unless the facility can demonstrate that making the modification would fundamentally alter the nature of the service, program or activity

E. Offenders with disabilities must be provided education, durable medical equipment, supplies and facilities, and the support necessary to perform self-care and personal hygiene in a reasonably private environment. (5-2C-4144; 4-4144; 4-ACRS-6A-04-2)

1. Toilet access will be provided for offenders consistent with their medical needs as determined by a facility Medical Practitioner.

2. Appropriately trained individuals should be assigned to assist offenders who cannot otherwise perform major life activities. (5-2C-4143; 4-4143; 4-ACRS-6A-04-1)  Offender helpers should be limited to providing assistance in such matters as ambulation and should not provide personal care such as bathing.

F. Staff and contract staff are responsible to communicate information, announcements, procedures, and other directions to offenders with communication disabilities in a manner that will maximize the offender's ability to comprehend and understand the information.

1. When a disability hinders an offender's ability to communicate, facility staff must ensure that the offender is provided with necessary accommodations to assist them during orientation, medical, psychological, educational testing and evaluation, and in explanation of facility rules and procedures.

2. Offenders with communication disabilities must be made aware of all facility announcements and alerts such as work call, emergencies, school, meals, count, etc.

3. Offenders with communication disabilities must be provided reasonable accommodations to ensure the offender and health care providers are able to communicate effectively during all scheduled appointments at the facility to include but not limited to review of medical history, medical appointments, follow-up appointments, and treatment sessions.

a. When offenders are transported for medical care, facility health care providers will inform the offsite health care provider as far in advance of the offsite appointment as possible that an offender with a communication disability, such as deafness, that requires a qualified interpreter or other auxiliary aids and services will be seeking medical care.

b. In the case of an emergency, a facility health care provider will inform offsite medical providers


BY:_____ JUN 25 2020 _____ OFFICE

RECEIVED

that an offender with a communication disability such as deafness that requires an in-person qualified interpreter or other auxiliary aids and services is being transported to them on an urgent basis. Notification will include the estimated time of arrival.

    c. For all offenders transported for offsite health care, a facility health care provider will ensure that the offender's communication disability and the need for an accommodation is documented on the *Offender Gate Pass* and recorded in the offender's Health Record.

4. A conspicuous notice of any communications disabilities (i.e. hard of hearing, speech impairment, language translation, vision impairment) must be noted on the Health Record of any offender whose disability affects their ability to communicate and an appropriate advisory regarding this disability must be provided to facility staff and designated in VACORIS.

III.    Determination of Disability and Reasonable Accommodations

A. All offenders receive a medical and mental health screening by a qualified Health Care Provider or health trained staff in accordance with Operating Procedure 720.2, *Medical Screening, Classification, and Levels of Care*, and the *Nursing Guideline* for *Medical/Location Codes*.

1. Offenders must be afforded the opportunity to disclose their present and prior disabilities and needs and request an accommodation(s) for their disability during their medical and mental health screening. The qualified Health Care Provider will:

    a. Question the offender regarding any previous accommodation(s)

    b. Discuss modified or additional accommodations as appropriate

    c. Make appropriate notations in the offender's Health Record.

2. When an offender arrives at a facility with an approved accommodation, medical equipment or an assistive device that presents any concerns, the Facility Unit Head, in consultation with the facility Medical Practitioner and ADA Coordinator, will make a decision regarding the removal of the item to minimize risk and provide alternate appropriate accommodations.

3. The facility Health Care Practitioner may consult with the facility ADA Coordinator and DOC ADA Coordinator, as needed to determine if a requested accommodation is within the scope of the ADA.

B. The facility Medical Practitioner, in consultation with qualified health care practitioners or specialists, and in conjunction with the affected offender, will diagnose any disability, not previously diagnosed.

1. After the initial medical screening and a comprehensive health appraisal are completed and the findings evaluated, offenders will be medically classified and assigned a location code.

2. The offender's medical classification code and location code should be reviewed during the intrasystem transfer process, and any time a change of the offender's condition is identified to ensure it reflects the current medical status of the offender.

3. The facility Medical Practitioner will assign a medical/disability code, which indicates if the offender has an impairment that qualifies as a disability (i.e. legally blind, deaf, mobility impaired). This determination is based on the *Americans with Disabilities Act of 1990, as Amended* (42 U.S.C. §12101 et seq.) and *The Virginians with Disabilities Act* (COV §51.5-1 et seq.).

4. The Health Authority or designee will assign the medical location code, which indicates the offender's requirements for physical accommodations and access to health care services.

C. After a disability is diagnosed, a qualified health care practitioner or specialist will determine the level of medical accommodation needed and provide appropriate medical treatment as is required by the offender's condition.

1. The facility Health Care Practitioner (i.e. physician, optometrist, dentist, psychology associate) will make a determination on the specific accommodation provided and will determine the type of auxiliary aid and/or service to be provided, considering the request of the offender with a disability, but the offender's request, although not determinative, is given priority. This information will be recorded in the offender's Health Record.

RECEIVED
JUN 25 2020
BY GRIEVANCE OFFICE

2. If the medical equipment or assistive device required to address and accommodate an offender's disability poses an undue hardship to the facility or to the safety and security of the offender or any other person, the Facility Unit Head, in collaboration with the Health Care Practitioner, will make a decision regarding an alternate appropriate accommodation.

a. Under no circumstances will non-health care providers substitute their judgment for that of a health care provider where an accommodation needed to address a physical or mental disability has been prescribed.

b. If there are unclear issues about an accommodation, the DOC ADA Coordinator may discuss with facility staff whether the proposed accommodation poses an undue hardship to the facility or to the safety and security of the offender or any other person prior to a final decision regarding the requested accommodation.

c. The DOC ADA Coordinator will resolve the issue if the facility Health Care Practitioner and the Facility Unit Head cannot come to an agreement.

d. The DOC ADA Coordinator, as necessary, will provide written documentation to the Facility Unit Head and facility ADA Coordinator regarding the offender's protection under ADA and/or the accommodation to be provided.

D. Physical therapy will be available on or off-site, as appropriate, and will be carried out, subject to the offender's consent, as prescribed by the facility Medical Practitioner.

E. All offender requests for diagnosis of a disability, determinations about an offender having a disability, and whether the offender will receive medical accommodations for the disability must be recorded in the offender's Health Record.

F. A copy of the decisions, including but not limited to diagnoses, regarding the disability determination, the reasons for denial or modification of the request, and reasonable accommodations will be provided to the offender.

IV.    Offender Requests for Accommodation

A. Offenders may request a reasonable accommodation for their disability by submitting a *Reasonable Accommodation Request* 801_F7 to the facility ADA Coordinator. Offenders who have difficulty in communicating, understanding, or writing a *Request* should contact their counselor for assistance.

B. The facility ADA Coordinator will review the *Request* and, in consultation with appropriate staff, make a determination on the *Request*.

1. *Reasonable Accommodation Requests* will be acted upon in writing within ten business days, or a shorter time if necessary, by either granting the request, denying it, requesting further investigation, or granting it with modification. A specific reason must be stated if the request is denied or modified.

2. All *Accommodation Requests* with respect to medical care will be placed in the offender's Health Record with a copy forwarded to the offender and a copy maintained by the facility ADA Coordinator.

3. *Accommodation Requests* not specifically involving medical care will be maintained by the institutional ADA Coordinator with a copy forwarded to the offender.

C. If a facility Health Care Practitioner determines that a medically prescribed accommodation is warranted, facility health care providers will make provisions to provide for the medical accommodation.

1. Medically prescribed accommodations must be reviewed to address any facility safety and security concerns.

2. If facility health care providers have safety or security concerns regarding the medical accommodation, the facility ADA Coordinator or Facility Unit Head will be consulted.

RECEIVED
JUN 25 2020
GRIEVANCE OFFICE

the testing procedure is not discriminatory to offenders with disabilities based on the disability. Reasonable accommodation includes extended time to complete the test, reading aides, interpreters, and/or tape recorded questions.

C. Operating Procedure 803.3, *Offender Telephone Service*, provides specific guidance to all offenders for access and use of the telephones. Telephones at wheelchair height and, where needed, special equipment suitable for use by the hearing impaired, including videophones, are provided. (5-7D-4497-2; 4-4497; 4-ACRS-5A-19)

1. Offenders with hearing and/or speech disabilities, and offenders who wish to communicate with parties who have such disabilities, are afforded access to a Telecommunications Device for the Deaf (TDD), or comparable equipment.

2. Public telephones with volume control are also made available to offenders with a hearing impairment.

D. Offenders with disabilities will be provided the same access to recreation as other offenders in the same housing status as provided in Operating Procedure 841.6, *Recreation Programs*, and Operating Procedure 841.4, *Restrictive Housing Units*.

1. Such opportunities for recreation will include, but are not limited to, provision of reasonable accommodations so that disabled offenders may participate in recreational programs to the greatest extent possible.

2. In addition, disabled offenders may seek and be granted accommodations in scheduling such that they may experience and participate in recreation in a safe environment.

E. Offenders with disabilities will be provided the same access to visitation as other offenders in the same housing status as provided in Operating Procedure 851.1, *Visiting Privileges*, and Operating Procedure 841.4, *Restrictive Housing Units*. Reasonable accommodations will be provided for offenders with disabilities to allow for effective communication with their visitor. The institution will provide auxiliary aids and devices as necessary to allow disabled offenders to communicate effectively with their visitor.

F. Offenders with disabilities will be reviewed and approved for job assignments in accordance with Operating Procedure 841.2, *Offender Work Programs*. (5-7A-4448; 4-4448)

1. Offenders with disabilities, subject to reasonable accommodations with respect to their disability, must meet the requirements and be able to perform the specific job duties and responsibilities provided on the *Offender Work Program Position Description*. Discrimination based on the offender's disability is prohibited. (5-3D-4277; 4-4277; 4-ACRS-6B-01)

2. Offenders with a disability will be offered accommodations, in order to meet the requirements of the position and to be able to perform the specific job duties and responsibilities, to be considered for the job assignment.

3. Under no circumstance, will offenders be placed in a job assignment that jeopardizes their safety or security or the safety and security of others.

VIII. Special Considerations

A. The Facility Unit Head or a designee in addition to the facility ADA Coordinator will consult with the facility Medical Practitioner or designee prior to taking action regarding chronically, ill, physically disabled, geriatric, seriously mentally ill, or developmentally disabled offenders in the following areas: (5-6C-4399; 4-4399)

1. Housing assignments

2. Program assignment

3. Disciplinary measures

4. Transfer to other facilities

RECEIVED JUN 25 2020 BY GRIEVANCE OFFICE



5. When immediate action is required, consultation to review the appropriateness of the action occurs as soon as possible, but no later than 72 hours.

B. Operating Procedure 802.1, *Offender Property*, governs the purchase and possession of offender property items. Offenders with disabilities will be considered on a case-by-case basis for a reasonable accommodation for special property items that are consistent with the disability being addressed.

C. Offenders with disabilities are subject to Operating Procedure 861.1, *Offender Discipline, Institutions*. Staff should take into account that an offender's disability may affect their understanding of institutional procedure; efforts should be made to communicate with the offender in a manner that will maximize the offender's ability to comprehend and understand the information.

D. Operating Procedure 410.2, *Count Procedures* (Restricted), will be followed in order to determine the total number of and location of offenders at all times. Offenders who have a disability, which interferes with their ability to follow normal count procedures, will be reasonably accommodated to provide for the effective performance of count.

E. Operating procedure 411.1, *Offender Transportation* (Restricted), provides the requirements for the secure transportation of institutional offenders; and these requirements will apply when transporting offenders with disabilities.

1. Any offender who has a mobility impairment that makes it difficult to enter the secure transport must have use of the lift.

2. Transport of offenders in wheelchairs:

   a. Any offender confined to a wheelchair will be transported by a lift-equipped vehicle with the wheelchair properly secured in the vehicle.

   b. For the convenience and safety of staff and offenders, offenders with limited mobility may be transported in a wheelchair by a lift-equipped vehicle with the wheelchair properly secured in the vehicle.

   c. Correctional Officers will not lift offenders (either with their wheelchairs or without their wheelchairs).

   d. Ambulatory offenders may be transported in the same vehicle with offenders in a wheelchair provided seats and safety restraints are available for each offender and the wheelchair is properly secured in the vehicle.

F. Restraining Offenders with Disabilities

1. Before restraining an offender who may have a medically documented disability, security staff should consult with a Medical Practitioner (or designee) to determine any restrictions on applying restraints.

2. Unless there is a medically documented restriction regarding the use of restraints, restraints should be applied to offenders with disabilities taking into account any illness or disability that adversely affects an offender's stability, balance, and/ or coordination in accordance with Operating Procedure 420.2, *Use of Restraints and Management of Offender Behavior* (Restricted), in the same manner as any other offender.

3. Restraints should be applied to deaf offenders with handcuffs in front to allow some communication unless there is a significant security issue.

4. Force multipliers (chemical agents, impact weapons, canines, etc.) may be used on offenders with disabilities if necessary to protect the staff, visitors, and other offenders or to control disruptive behavior. When offender notification is required for the use of a force multiplier, offenders with communication disabilities must be notified in a manner that the offender can observe and understand.

5. Offenders with disabilities will be restrained as authorized in Operating Procedure 420.2, *Use of Restraints and Management of Offender Behavior* (Restricted).

RECEIVED
JUN 25 2020
BY: GRIEVANCE OFFICE

Operating Procedure 801.3, *Managing Offenders with Disabilities*                    Effective Date: August 1, 2019

### G. Use of Force

1. Force may be used on offenders with disabilities in instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, or to maintain or regain control as provided in Operating Procedure 420.1, *Use of Force* (Restricted).

2. When such use must be preceded by the provision of an appropriate warning, this warning must be communicated by means that offenders with communication disabilities can observe and understand.

# DEFINITIONS OF TERMS USED IN THIS OPERATING PROCEDURE

**ADA Coordinator** - A Department of Corrections employee assigned to coordinate the Department's efforts to comply with and carry out its responsibilities under the provisions of Title II of the *Americans with Disabilities Act* to include the review of complaints alleging non-compliance with requirements of non-discrimination for offenders with disabilities and coordination of DOC's efforts to comply.

**Auxiliary Aids and Services** - Assistance provided through services, equipment, or modifications to provide equal access for disabled or impaired individuals to activities, programs, and privileges, these aids and services may include, but are not limited to:

- Qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments
- Qualified readers, taped texts, audio recordings, Brailed materials, large print materials, or other effective methods of making visually delivered materials available to individuals who are blind or have visual impairments
- Functional devices to increase mobility including but not limited to walkers, canes, crutches, and manual or powered wheelchairs for individuals with mobility impairments
- Acquisition or modification of equipment or devices and other similar services and actions

**Communication Disability** - Any impairment related to speech, language, and/or auditory processing; it includes hearing impairments, visual impairments, and cognitive impairments evidenced by an inability to speak, read, and/or understand written or oral communications of information provided at the facility.

**Co-payment** - The amount paid by the offender for health care service, treatment, prosthesis, or orthotic

**Health Care Practitioner** - A clinician trained to diagnose and treat patients, such as physician, psychiatrist, dentist, optometrist, nurse practitioner, physician assistant, and psychologist

**Health Care Provider** - An individual whose primary duty is to provide health services in keeping with their respective levels of licensure, health care training, or experience

**Major Life Activities** - Include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, toileting, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working

**Medical Practitioner** - A physician, nurse practitioner or physician's assistant

**Mobility Impairments** - Inability to move about without the aid of a cane, splint, crutches, wheelchair, walker, or any other form of support or because of limited functional ability to ambulate, climb, descend, sit, rise, or perform any related function

**Offender with a Disability** - Any offender who has a physical or mental impairment that substantially limits one or more of their major life activities, has a record of such impairment, or is perceived as having such impairment

**Physical or Mental Impairment** - Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organ, respiratory (including speech organs), cardiovascular, reproductive, immune, digestive, genitourinary, hemic or lymphatic, skin and endocrine; or any mental or psychological disorder, such as mental retardation (Developmental Disorder), organic brain syndrome, emotional or mental illness, and specific learning disabilities. The phrase "physical or mental impairment" includes, but is not limited to, such contagious and non-contagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental

RECEIVED
JUN 25 2020
ADVANCE OFFICE

retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

**Prosthesis or Orthotic** - An artificial device to replace a missing body part or to compensate for a defective body function, including, but not limited to:

- Artificial limbs
- Eyeglasses
- Contact lenses
- Dentures
- Hearing aids
- Orthopedic shoes
- Crutches, wheelchair, braces, support bandages, girdles, etc.

**Qualified Individual with a Disability** - An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the facility.

**Reasonable Accommodation** - A modification, action, or adjustment that will assist an offender with a disability in the performance of essential functions or that is necessary to prevent an offender with a disability from being excluded from participation in or being denied the benefits of the services, programs and/or activities of the facility or subjected to discrimination by the facility without causing an undue hardship to the facility or to the safety and security of the offender, or any other person

**TDD Devices, Videophones, Video Relay Services** - Devices and services that assist hearing impaired offenders to communicate through the Offender Telephone Service

**Undue Hardship** - An accommodation that would be unduly costly, extensive, substantial, or disruptive; undue hardship refers not only to financial difficulty, but to accommodations that would fundamentally alter the nature of operation of the business or work performed by or at the facility or creates a direct threat to the health and safety or others. Undue hardship is an extremely high legal standard to establish for a state agency.

**REFERENCES**

COV §51.5-1 et seq., *The Virginians with Disabilities Act*

42 U.S.C. §12101 et seq., *Americans with Disabilities Act of 1990*

*Nursing Guideline* for *Medical &Location Codes*

Operating Procedure 410.2, *Count Procedures* (Restricted)

Operating procedure 411.1, *Offender Transportation* (Restricted)

Operating Procedure 420.1, *Use of Force* (Restricted)

Operating Procedure 420.2, *Use of Restraints and Management of Offender Behavior* (Restricted)

Operating Procedure 425.4, *Management of Bed and Cell Assignments* (Restricted)

Operating Procedure 601.4, *Educational Testing*

Operating Procedure 601.5, *Academic Programs*

Operating Procedure 601.6, *Career and Technical Education Programs*

Operating Procedure 720.2, *Medical Screening, Classification, and Levels of Care*

Operating Procedure 720.4, *Co-Payment for Health Care Services*

Operating Procedure 720.6, *Dental Services*

Operating Procedure 750.3, *Prostheses*

Operating Procedure 802.1, *Offender Property*

Operating Procedure 803.3, *Offender Telephone Service*

Operating Procedure 810.1, *Offender Reception and Classification*

Casel F. Lucas
V 8pH 1082673
Tort Claim
Non Compliance to Stipulated Agreement
Discrimination : I ERP

ExHiBiT

# 5

Copy of Stipulated Settlement
Agreement

Whorley et al v. Northam

CASE NO: 3:20 cv 00255

## STIPULATED SETTLEMENT AGREEMENT

This Stipulated Settlement Agreement is entered into by the parties in *Whorley et al. v. Northam et al.*, Case No. 3:20cv00255, currently pending in the United States District Court for the Eastern District of Virginia.

The plaintiffs are twenty-seven individuals incarcerated in the custody of the Virginia Department of Corrections (VDOC): Brooke Whorley, Brenda van Emmenis, Gale Jones, Candace Blankenship, Olivia Ivashin, Lartaija Banks, Alonzo Williams, Ennis Stewart, Felipe Franco, Jesse Davenport, Matthew Mosher, Bruce Harris, Jonathan McMillan, Anthony Vicks, Warren Medley-Green, Antonio Perryell, Da'Von Walker, Warren Brooks, Larog Trowell, Benjamen Fyfe, Michael Sullivan, Courtney Stroble, Dwight Horton, Milton Williams, Frank Fairchild, Timothy Brummett, and Donnie Offenbacker.

The defendants are Ralph Northam, Governor of Virginia; Brian Moran, Secretary of Public Safety and Homeland Security; Harold Clarke, Director of the Virginia Department of Corrections; and the wardens of the following correctional facilities: Virginia Correctional Center for Women, Indian Creek Correctional Center, State Farm Correctional Center, State Farm Enterprise Unit, Haynesville Correctional Center, Coffeewood Correctional Center, Greensville Work Center, Fluvanna Correctional Center for Women, Dillwyn Correctional Center, Caroline Correctional Unit, Deerfield Correctional Center, Patrick Henry Correctional Center, and Augusta Correctional Center. All defendants are named in their official capacities.

The parties to this Agreement believe that, in order to avoid protracted, costly, and time-consuming litigation, it is in their respective interests to resolve the issues in the above-captioned case.

Accordingly, the parties to this Agreement, by and through their respective counsel, jointly stipulate and agree to the following:

1. **Dismissal of Case No. 3:20cv255:** The Plaintiffs shall, by and through their attorneys, cause the Complaint filed in the Eastern District of Virginia, Case No. 3:20cv255, to be voluntarily dismissed, in accordance with the terms of this Agreement, with each side bearing their own fees and costs. The parties consent to the reservation and exercise of jurisdiction by the U.S. District Court over all disputes between and among the Parties arising out of this Agreement.

2. **Dismissal of Harold Clarke from Va. Sup. Ct. Case No. 200551:** Counsel for the Plaintiffs agree to dismiss Harold Clarke, Director of the Virginia Department of Corrections, from the mandamus petition filed in the Virginia Supreme Court, Docket No. 200551. Each side shall bear their own fees and costs.

3. In consideration thereof, Defendants agree to the following:

     a. **Early Release Plan:** On April 22, 2020, the Virginia General Assembly adopted a Budget Amendment that allows a certain category



1

of incarcerated individuals to be considered for discharge from incarceration prior to their scheduled release dates during the Governor's declared state of emergency. The Budget Amendment vests the Virginia Department of Corrections with the authority to make discharge determinations for early release. The Virginia Department of Corrections has developed a policy entitled *COVID-19 Response: Inmate Early Release Plan*, to implement the terms of the Budget Amendment. Pursuant to this Agreement, VDOC agrees to amend or otherwise clarify its existing *Early Release Plan* as follows:

i. The *Early Release Plan*, as adopted, provides that individuals who have less than 12 months remaining on their sentence will be considered for possible release as long as they have not been convicted of a Class 1 felony or a violent sex offense. Among other eligibility criteria, VDOC also requires that the individual have a viable home plan, which means that—as defined in VDOC Operating Procedure 820.2(VII)(A)(1)—the inmate must be able to provide an address where the individual will be able to live without violating any conditions of a court order (*e.g.*, a no-contact order or order not to reside with minor children), and that will adhere to any lease restrictions in terms of the individuals allowed to live in that residence (*e.g.*, restrictions for subsidized housing). Defendants agree to amend the *Early Release Plan* to provide reference to the home plan criteria defined in OP 820.2(VII)(A)(1), and to specify that any address provided may be verified by a local probation and parole officer, rather than the re-entry counselor normally used under OP 820.2(VII)(A)(1). VDOC will also document that, for the purposes of inmates considered for release pursuant to the Budget Amendment or any COVID-19-related conditional pardon, it is suspending the requirement of OP 820.2(VII)(A)(1), which ordinarily specifies that a home plan will not be verified more than 6 months before the individual's anticipated release date.

ii. Under the *Early Release Plan*, VDOC is also considering an individual's health condition—along with available community resources—when deciding whether to exercise its discretion to release an inmate pursuant to the Budget Amendment. By "health condition," VDOC specifically agrees to give priority consideration for approval of release to those individuals who have a health condition enumerated by the Centers for Disease Control and Prevention (CDC) as being at higher risk of health complications if that individual were to contract COVID-19.

iii. Pursuant to this Agreement, VDOC agrees to amend its existing *Early Release Plan* to specify that it will make all

2

RECEIVED

JUN 25 2020

BY: _____
GRIEVANCE OFFICE

This HAS Not been Afforded to ME. I Meet ALL Requirements of this. Yet MY Individual HealthCondition HAS Not been given Priority Consideration Due to the Severity of My illnesses That ARE Disabilities Per Policy 801.3

There is No language Here stating I must be 1 year or less. Therefore ANY REASONable ACCommodation REQUEST Must be Granted to Participate

reasonable efforts to review eligible individuals prior to the expiration of the declaration of emergency. If the agency elects not to exercise its discretion to discharge an individual who was potentially eligible for release under the *Early Release Plan*, that inmate will be notified of the decision not to release by written document providing the reason that the inmate is not being released, which will be mailed to the inmate within 48 hours of the final decision not to release. The individual will also be provided with information about requesting a COVID-19-related conditional pardon, in accordance with part 3(b), below.

iv.  VDOC agrees that it will exercise its authority to consider the review and release of eligible individuals on a rolling basis, meaning VDOC will consider those who are or become eligible for release at any point during the period of the emergency declaration, or any emergency declaration that meets the conditions of the Budget Amendment, not just those who became eligible at a static time period when the policy was adopted.

v.  VDOC has disseminated to all incarcerated individuals and staff information about the *Early Release Plan* and requirements for eligibility, and will continue to make such information available as updates or changes may occur. The informational materials include an appeal document that the inmates may use to address disagreements or concerns with their calculations, scores, or assessments on particular criteria described in VDOC's *Early Release Plan.*

**RECEIVED**

JUN 2 5 2020

By:_____
　　GRIEVANCE OFFICE

vi.  VDOC also agrees to update its COVID-19 webpage to report, on a daily basis, the number of individuals who have been released under the Budget Amendment.

vii.  For the duration of this Agreement, Counsel for the Defendants shall report to the Court and Counsel for the Plaintiffs, on a weekly basis, as follows: (1) the number of individuals reviewed for release; (2) the number of individuals granted release; and (3) the number of individuals denied release.

viii.  VDOC agrees that, if the state of emergency expires, it will continue to review individuals with less than a year remaining on their sentence over the following ninety (90) days to determine whether they might be eligible for release in the event that there is a subsequent declaration of emergency that would revive their authority to release individuals from incarceration under the *Early Release Plan.*

3

b. **Conditional Pardons:** The Office of the Secretary of the Commonwealth reviews all pardon petitions on an individual basis so that unique circumstances surrounding an individual's case may be considered. This allows for the Secretary and Defendants to expedite petitions as deemed appropriate, including the processing of conditional pardons requesting release because of the COVID-19 pandemic. Defendants represent and warrant that the Office of the Secretary of the Commonwealth is actively identifying and expediting consideration of petitions that reference medical concerns both related and unrelated to the COVID-19 pandemic.

There are currently no eligibility criteria or restrictions for conditional pardons; petitioners should provide all relevant information, including any medical conditions or other specific health concerns that would factor into the consideration of their petition for clemency. The Defendants and the Office of the Secretary of the Commonwealth agree to prioritize conditional pardons at this time, in order to expedite petitions from individuals currently incarcerated.

Defendants represent and warrant that the Office of the Secretary of the Commonwealth has agreed to consider conditional pardons relating to the COVID-19 pandemic even if the requestor had a previous, unrelated pardon request denied within the preceding 2 years, a factor that would normally result in the automatic denial of the successive petition. Any individual who has a request for clemency currently pending review may supplement their existing application with new information regarding medical conditions or concerns related to the COVID-19 pandemic. By way of this agreement, Defendants agree to provide the Office of the Secretary of the Commonwealth with any assistance that they might need to complete expedited consideration of conditional pardons requesting release because of the COVID-19 pandemic, including—but not limited to—making sure that information about any new procedures is disseminated to inmates within the custody of VDOC.

c. **Grievances:** Defendants agree to provide written guidance to the grievance coordinators at VDOC facilities, instructing them to prioritize for review any grievances alleging delay in medical assessment or treatment related to COVID-19, as well as any grievances regarding failure to abide by COVID-19-related policies and protocols, such as deficiencies in personal protective equipment ("PPE"), sanitation, or access to personal hygiene or cleaning supplies. Defendants agree to share the proposed written guidance with counsel for Plaintiffs prior to its dissemination. For purposes of this agreement, "grievance" includes both informal complaints and regular grievances. If an inmate complains of symptoms related to COVID-19, a supervisor should meet with the inmate immediately to initiate the

RECEIVED
· JUN 2 5 2020
By:———————————
GRIEVANCE OFFICE

process of referring the inmate to a medical provider for screening. If the supervisor does not believe the reported symptoms qualify for COVID-19, and the inmate disagrees, then the inmate should immediately file an emergency grievance, which will be responded to by a medical provider. Defendants shall continue to document the dates and times of all sick calls and emergency grievances related to medical concerns, the inmate's reported symptoms, the dates and times the inmate is seen by medical professionals, and the outcome, to allow for tracking of the response to complaints of COVID-19 symptoms.

d. <u>Medical Co-pays:</u> Defendants agree to continue, for the duration of this Agreement, the suspension of co-pays for all sick calls, health-related emergency grievances, and medical assessments to ensure cost is not a deterrent to seeking medical care.

e. <u>Testing:</u> Defendants will continue to work with the Virginia Department of Health (VDH) and local health departments to procure and allocate as many tests as possible to VDOC facilities, prioritizing the testing of inmates and staff in VDOC facilities identified by VDH as "outbreak" locations. Defendants agree to report to Plaintiff's counsel, every week, the total number of VDOC inmates tested during the preceding week.

f. <u>Hygiene and Sanitation:</u> VDOC agrees to continue providing all inmates with enhanced access to showers and handwashing opportunities, as well as providing up to two bars of soap per week, free of charge. In accordance with their existing COVID-19 sanitation plan, Defendants shall also continue to require high interval sanitation of all equipment of common usage at all facilities, such as tables and chairs, telephones, video screens, gym equipment, bathrooms, vending machines, microwaves, laundry machines, keyboards, remote controls, and doors. Defendants also agree to continue providing access to cleaning supplies for each housing area, including in quantities sufficient for each inmate to clean and disinfect the floor and all surfaces of their housing unit or cell.

g. <u>Laundry:</u> VDOC shall continue to ensure that the facemasks that have been provided to inmates are laundered daily, and all inmates have access to enough clean clothing to allow them to change clothes on a daily basis. VDOC further agrees that, during the duration of the Agreement, the laundry schedule for bedding shall be amended so that bed linens are laundered twice per week, rather than once per week.

h. <u>PPE:</u> Defendants will continue to ensure that all correctional staff are informed about the types of PPE required to perform the various staff functions; the proper donning, removing, and disposal of PPE; the appropriate receptacles for disposal of PPE; and an explanation of the



5

related rationale. Defendants shall also continue to communicate expectations around the frequent sanitizing of correctional staff equipment, such as restraints, handcuffs, and other equipment potentially used on multiple inmates.

i. **Staffing & Inmate Housing:** Defendants agree to continue to restrict the movement of staff from facility-to-facility and building-to-building within facilities, to the greatest extent possible, to minimize the risk of virus transmission by staff. Defendants shall also continue to restrict the transfer of inmates from facility-to-facility unless necessary to transport an inmate for security reasons and/or a pending court appearance. Defendants shall continue to require all staff to wear appropriate PPE when entering an area housing individuals who are suspected or known to have tested positive for COVID-19, and to change their PPE, in compliance with applicable CDC and VDH guidance, when leaving those housing units to limit the risk of exposure to and transmission of the virus. Staff shall document when they enter and leave specific facilities or housing units so that their movements can be retraced in the event of infection. Staff shall wear appropriate protective items at all times in facilities where infection has been confirmed.

j. **Inmate Education:** VDOC shall continue to educate inmates on the COVID-19 pandemic by providing information about the pandemic, symptoms, virus transmission, and how to protect oneself from the virus. VDOC staff shall continue to post signage and information in common areas that provide (1) general updates and information about the COVID-19 pandemic; (2) information on how inmates can protect themselves from contracting COVID-19; and (3) instructions on how to properly wash hands. Among other locations, signage must be posted in every housing area.

k. **Confidential Attorney Communications:** VDOC shall continue to ensure that inmates, including those in medical isolation or quarantine, will be provided the opportunity to conduct confidential legal calls, at no cost to the inmate, through the inmate telephone system, and shall continue to require that the facility disable the automatic recording system to ensure that the legal call is not recorded. Such calls shall be permitted to be of sufficient duration to discuss confidential legal matters. Defendants agree to provide written guidance to VDOC facilities requesting that the facilities expedite any request to add an attorney phone number to the automatic block list, which will serve as an additional safeguard to ensure confidentiality of the attorney-client communication. Such guidance will also provide that a request to add an attorney phone number to the automatic block list may be made by an inmate or an attorney. If the facility's telephone provider is causing a delay greater than 48 hours in adding attorney phone numbers to the

RECEIVED

JUN 25 2020

By: _____
GRIEVANCE OFFICE

6

block list, the facility shall provide interim access to confidential legal calls by another avenue appropriate in that facility.

l. **Language Assistance:** VDOC agrees to provide language translation services or other accommodations, as necessary, for incarcerated individuals who may not be able to otherwise access any of the written materials discussed in this section.

4. Plaintiffs' counsel shall have reasonable access to the documents and information necessary to properly evaluate whether Defendants are complying with the provisions of this Agreement. Defendants agree to provide counsel for the Plaintiffs with access to policies, procedures, plans, regulations, rules, guidance, or directives implementing the terms of this Agreement. Defendants agree that if there is a material change to the terms of their existing COVID-19 policies and procedures, including but not necessarily limited to the specific policies discussed above, those changes shall be communicated to counsel for the Plaintiffs. The parties shall cooperate as best as possible to accommodate any additional requests for documents and information for Plaintiffs in a timely manner, without unduly burdening Defendants. If the Parties fail to agree, either party may contact Judge David Novak and request mediation of the dispute.

5. In the event that either party fails to substantially comply in some significant respect with this Agreement, counsel shall provide a written statement describing the alleged non-compliance. ("Notice of Substantial Non-Compliance"). The other party shall provide a written response to the Notice of Substantial Non-Compliance within five (5) calendar days from receipt of that Notice. Within five (5) calendar days of receipt of the written response, the parties shall confer in a good faith effort to resolve their dispute informally.

6. In the event that a Notice of Substantial Non-Compliance cannot be resolved informally, counsel for the parties shall request that Judge David Novak mediate the dispute. In the event that Judge Novak is no longer available, the parties shall jointly request the assignment of another Judge or Magistrate Judge. If the dispute has not been resolved through mediation in conformity with this Agreement within 20 calendar days, either party may file a motion to enforce the Agreement in the District Court.

7. Parties to this Agreement are not required to exhaust administrative remedies under 42 U.S.C. § 1997e(a) in order to seek relief pursuant to this Agreement. For all other individuals, a Notice of Substantial Non-Compliance in this matter shall not constitute a substitute for the exhaustion of administrative remedies requirement set forth in 42 U.S.C. § 1997e(a).

8. **Reservation of Jurisdiction:** The parties consent to the reservation and exercise of jurisdiction by the United States District Court for the Eastern

RECEIVED

JUN 2 5 2020

y:

GRIEVANCE OFFICE

7

District over all disputes between and among the Parties arising out of this Agreement. In the event the Court finds that either party has not complied with the Agreement, the Court may: (1) require the allegedly breaching party to submit a plan to remedy the deficiencies identified by the Court; (2) require the parties to mediate the dispute, which may result in entry of a supplemental or modified settlement agreement; (3) upon motion of the non-breaching party, declare the settlement agreement null and void; or (4) engage in any other such actions as the Court might deem appropriate to resolve the pending dispute.

9. <u>Duration of Agreement:</u> The parties agree that the Court shall retain jurisdiction to resolve issues arising from implementation of this Agreement, in accordance with paragraph (8), above, until such time as the Court determines that its implementation is no longer necessary, after taking into consideration the spread of the virus in VDOC facilities, the impacts of contamination on the inmate population, and mitigation efforts.

10. <u>No Admission of Liability:</u> Plaintiffs acknowledge that this Agreement does not constitute an admission by the Defendants of any: (a) liability; (b) violation of any federal, state or local statute, law, regulation, order or other requirement of law; (c) breach of contract, actual or implied; (d) commission of any tort; or (e) other civil wrong.

11. <u>Virginia Law Applies:</u> This Agreement shall be deemed to have been made within the Commonwealth of Virginia and shall be interpreted, construed and enforced in accordance with the laws of the Commonwealth of Virginia.

12. <u>Attorney's Fees:</u> The prevailing party may be entitled to an award of attorneys' fees in any action commenced to enforce this Agreement or any provision therein.

13. <u>Severability:</u> If one or more provisions of this Agreement shall be ruled unenforceable or void, the parties may enforce the remainder of this Agreement.

**RECEIVED**

**JUN 2 5 2020**

By:_____
GRIEVANCE OFFICE

14. <u>Non-Waiver:</u> Failure of either Party to enforce any provision of this Agreement shall not be construed as a waiver of that or any other provision.

15. <u>Voluntary Agreement:</u> The parties have had an opportunity to consult with an attorney before signing this Agreement. The Plaintiffs acknowledge that, in signing this Agreement, they relied only on the promises set forth in this Agreement and not on any other promise made by the Defendants. This Agreement has been entered into freely, knowingly, and voluntarily and not as a result of coercion, duress, or undue influence.

16. <u>Entire Agreement:</u> This Agreement constitutes the entire understanding and agreement between the Parties hereto with respect to its subject matter. This Agreement supersedes all other understandings, agreements, communications

8

or negotiations (whether written or oral) between the Parties hereto with respect to such subject matter. Each party represents, warranties, and covenants that it has the full legal authority to enter into this Agreement and to perform the duties and obligations arising under this Agreement.

17. **Written Amendment Required:** This Agreement may not be amended, changed or altered, except by a writing signed by the Parties.

18. **Binding Obligations:** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, assigns, estate, heirs and personal representatives.

19. **Counterparts:** This Agreement may be executed in counterparts or with electronic signatures, and if so executed each such counterpart shall have the force and effect of an original. A facsimile or copy of an original signature transmitted to the other Party is effective as an original document.

**IN WITNESS WHEREOF,** the Parties hereto have executed this Agreement as of the day and year written below.

**Entered:**

Elliott Harding
Harding Counsel, PLC
608 Elizabeth Ave.
Charlottesville, VA 22901
Tel: (434) 962-8465
Email: hardingcounsel@gmail.com

5/11/2020
Date

Eden Heilman
Vishal Agraharkar
Nicole Tortoriello
Jennifer Safstrom
ACLU FOUNDATION OF VIRGINIA
701 E. Franklin St., Suite 1412
Richmond, VA 23219
Tel: (804) 523-2152
Email: eheilman@acluva.org
vagraharkar@acluva.org
ntortoriello@acluva.org
jsafstrom@acluva.org

*Counsel for Plaintiffs*

May 11, 2020
Date

**RECEIVED**

JUN 2 5 2020

By:_____
GRIEVANCE OFFICE

9

5/11/2020

_____
Date

_____

Margaret Hoehl O'Shea
Office of the Attorney General
Criminal Justice & Public Safety
Division 202 North 9th Street
Richmond, Virginia 23219
(804) 225-2206
Email: moshea@oag.state.va.us

*Counsel for Defendants*

Capel F. Lucas
VaP# 1082073
Tort Claim

Non compliance to Stipulated Agreement
Discrimination ?ERP

Exhibit 3

Exhibit
#
6

Memorandum
COVID19 Inmate Early Release Plan Information

# COMMONWEALTH of VIRGINIA

*Department of Corrections*

HAROLD W. CLARKE
DIRECTOR

P.O BOX 26963
RICHMOND VIRGINIA 23261
(804) 674-3000

April 26, 2020

**MEMORANDUM**

**RECEIVED**

JUN 2 5 2020

By:_____
GRIEVANCE OFFICE

To:         Inmate Population

From:     Harold W. Clarke
            Director of Corrections

Subject:  COVID-19: Inmate Early Release Plan Information

I wish to inform you of the Inmate Early Release Plan (IERP) developed by the Virginia Department of Corrections (DOC).  Legislation passed this week by the General Assembly authorizes the Director of Corrections to discharge certain offenders who meet eligibility criteria, prior to their scheduled release date.  This authority is temporary and is only in effect during the state of emergency declared by Governor Northam related to the COVID-19 pandemic, which expires June 10, 2020.   The Governor may choose to extend the duration of the state of emergency.

DOC's Offender Management Services (OMS) is managing the decision process.  A review of all eligible inmates is already underway and there is no action needed on your part.  Staff will meet with eligible inmates approved for release on an individual basis.

The eligibility criteria and decision process are contained in IERP.  You will receive access to the plan through J-Pay, bulletin boards, and other communication options used at your facility on April 27, 2020.

After you have read the IERP and reviewed the specific criteria for eligibility, staff will be available to answer your questions and discuss your specific circumstances.  They will provide you an appeals form at your request if you are not being considered and believe you are eligible.

Your families and other concerned citizens can access this information on the VADOC COVID Information Webpage. https://vadoc.virginia.gov/news-press-releases/2020/covid-19-updates/.

The Unit Head will review appeal forms received from inmates. If it is determined you do not meet the criteria, the Unit Head will notify you.  If the Unit Head agrees that you meet the criteria, your appeal will be forwarded to the DOC OMS and Director of Corrections for final review. You will receive a copy of the final decision.

cc: Executive Team
     Regional Administrators
     Jim Parks, Offender Management Director

Cecel F. Lucas
VA#-1030673
Total Chem
Non Compliance To Stipulated Agreement
Exhibits

EXHIBIT
#
7

Reasonable Accomodation Request

VIRGINIA
DEPARTMENT OF CORRECTIONS

Offender Request #01_F3_7-1

**Offender Request**

DIRECTIONS
1. Fill in your Name, Number, Full Housing Assignment
2. Please Print your request; KEEP IT BRIEF
3. Drop in the appropriate Mail Box

4. Requests may be returned unanswered if addressed to the wrong department or if duplicate requests are sent.

JUN 01 2020

| YOUR LAST NAME | FIRST | MI | NUMBER | BLDG/CELL |
|---|---|---|---|---|
| LUCAS | CASEL | F | 1086673 | 2·A·38·B |

| WORK ASSIGNMENT | ASSIGNED COUNSELOR | TODAY'S DATE |
|---|---|---|
| 2·A·Unit Custodian | Ms. Robinson | 1 July 2020 |

TO:  ☐ Unit Manager   ☐ Medical   ☐ Personal Property   ☐ Law Library   ☐ Security
     ☐ Treatment   ☐ Mental Health   ☐ Education   ☐ Enterprise Shop   ☐ Accounting
     ☐ Chaplain   ☐ Assistant Warden   ☐ Warden   ☒ Other FACILITY ADA Coordinator

CHECK PURPOSE   ☐ Appointment Request   ☒ Question (Statement)   Ms. J. GREENWOOD

REASONABLE ACCOMMODATION REQUEST : I Am Disabled Veteran An Inmate with Disability
That Receiving 80% Better than the Veterans Affairs Board Veterans Appeals and
The Court of Appeals For Veteran Claims Certification. 1) PTSD Mental Illnesses
2). Depression (3). Anxiety (4) Anti Personality Disorder 5) Genitourinary Problem That I Need A
Adult Diaper 3lb per Weeks (6) Degenerative Joint Disease both knees (7). Dip Joint
Left & Right Hand, (8) Chronic Respiratory Illness & acute Respiratory Disease
9) Diabetes. My Request is to be Able To Participate In IERP
Release Program Due To My Chronic Disabilities.

DO NOT ATTACH ADDITIONAL PAGES; DO NOT WRITE BELOW THIS LINE

RESPONSE

Request sent to correct department ☒ Yes ☐ No: Routed to: _____ Date: _____

You will need to speak to your Counselor.

RECEIVED
JUN 25 2020

RECEIVED
JUN 25 2020

By: _____
GRIEVANCE OFFICE

Offender seen ☐ Yes ☒ No

Official Responding _____

6·2·2020
Date of Response

Revision Date:7/16-12



# COMMONWEALTH OF VIRGINIA

## Department of Corrections
### Division of Operations
### Eastern Region

Gregory L. Holloway
Regional Operations Chief

14545 Old Belfield Rd
Capron, VA 23829
(434) 658-4368

July 20, 2020

C, Lucas 1080673
Haynesville Correctional Center
P.O. Box 129
Haynesville, Virginia 22472

Dear C. Lucas:

I received your correspondence on July 17, 2020 regarding the status of HCC-20-REG-00046. According to CORIS, the Level I grievance response was sent back to you on July 13, 2020.

Your concerns are important. You will need to contact the institutional ombudsman, R, Brown, at your facility for additional questions.

Sincerely

K Cosby, Regional Ombudsman
Eastern Regional Office

/kwc

cc: File

CASE 17. NVCRB
VBP# 1080673
7 B 17 HCC
421 Beanfield Road
Waynesville VA-22472

RECEIVED
JUL 17 2020
Ombudsman Unit
Eastern Region

10 June 2020

Regional Ombudsman
K. Cosby.

RE: This Grievance has Not been Answered
In the Bldg. 1 Time Allotted.
HCC-20-Req-000416.

M.B. Brown The Institutional Ombudsman
Has intentional Hinder the Process of this
Grievance. Pass Due 5 Days from the Date On the Continum
Further it I Can't effectively File An Appeal
To your Office Without the Original with
Response.

I AM Now Past The Date To File My Appeal
To your Office Due to M.B.Brown's Negligene
And Interference with The Fair Process.

I AM Currently In Isolation Due To
Quarantine of Covid19. I Went To My Hospital Appt.

at VCU. I Recieved Your Letter Date
2 July 2020 On 10 July 2020.
Friday Night.

1) My first letter To you WAS not about the Issue
   Of HCC-20-REG-00046.
   It was About these Issues of

2) Hcc-20-Inf-01192    Intake Decision

3) Hcc-20-Inf-01191    Intake Decision.

PLEASE ADDRESS this Refusals of Intake of
Hcc-20-Inf-01192 and Reasonable Accomodation Request Appeal.
Hcc-20-Inf-01191 Ombudsman failed To comply with the
& Figulated Agreement.

I followed Every Policy Correctly. You Somehow Misconstrued
Everything therefore Again I Am Resubmitted these Intake Decisions.

I Am Also Notifying You of the Not Recieving My
Grievance Answer As I Should Have On the Due.
Please Do the Right thing.

Sincerely
Carol J. Owen

I Am in Isolation. 7B17 because I went to the Hospital