Carol F. Lucas
VSP# 1082673
Tort Claim
Non Compliance to Stipulated Agreement
Exhibits

EXHIBIT
#
10

Virginia Dept of Corrections Legal Update Sheet
Virginia State Police Criminal Record

# VIRGINIA DEPARTMENT OF CORRECTIONS

*SHU B-3*

**OSC-105**                                    **Legal Update**

| | | |
|---|---|---|
| **DOC #:** 1080673 | **Offender:** Lucas, Casel Frank | **Date:** 07/31/2020 |
| **Status:** Active | **Location:** Haynesville Correctional Center | **Page:** 1 of 1 |

| | | | | |
|---|---|---|---|---|
| **Current Class Level:** 1 | | | | **CRD:** 02/25/1999 |
| | | | | **Parole Rev. Date:** |
| **Total Sentence:** | 42 Years | 6 Months | 0 Days | **Parole Violations:** 0 |

### Projected Dates

| | |
|---|---|
| **Discretionary Parole Eligibility:** | 02/04/2021 |
| **Mandatory Parole Release:** | 07/06/2026 |
| **Good Time Release:** | 11/04/2026 |
| **Adjusted Discharge:** | 30 days applied to MPRD |

The projected dates are based on the assumption that the offender will continue to earn good time at the present earning level and will not have earned good time taken from the offender as a result of misbehavior. Loss of earned good time, a change in good time earning level, or any other event that impacts the service of the total sentence may cause the projected dates to change.

Events listed below may impact the projected dates of eligibility and/or release since the last Legal Update dated 11/13/2009

| Date | Description | |
|---|---|---|
| 12/03/1996 to 03/18/1997 | **Detention Jail Credit:** | Arlington County Detention Center; Initial Jail Credit 105 Days |
| 03/18/1997 to 12/24/1997 | **Detention Jail Credit:** | Alexandria City Jail; Initial Jail Credit 281 Days |
| 12/17/1998 | **Sentence:** | Alexandria Circuit - Docket: 95-593<br>Offense: Robbery{NCIC-1200}<br>Offense Date: 07/04/1995<br>Good Time System: Earned Sentence Credit<br>Revoked; Original Date of Judgment: 06/06/1996<br>ConvConcurrent; Straight<br>Imposed: 3 Years 6 Months 0 Days<br>Comments: 95-593/CONC. W/98-463 |
| 07/31/2020 | **Memo:** | Available credit for period 12/3/1996 to 3/18/1997 from Arlington County Detention Center and for period 3/18/1997 to 12/24/1997 from Alexandria City Jail are applied to this record from a prior VDOC custody period, CRD 11/18/1997, during which time subject was held for the same offenses calculated under this current confinement period. |
| 07/31/2020 | **Memo:** | Upon an audit of the record, it was determined that case number 95-593 should have been reflected as a 3yr 6mos concurrent sentence. This update corrects and reflects. |

## VIRGINIA DEPARTMENT OF CORRECTIONS

| OSC-106 | | Sentence Summary | | |
|---|---|---|---|---|
| **DOC #:** 1080673 | **Offender:** Lucas, Casel Frank | | **Print Date:** | 08/07/2020 |
| **Status:** Active | **Location:** Haynesville Correctional Center | | **Page:** | 2 of 3 |

| Date of Judgment | Sentence Description |
|---|---|
| 12/17/1998 | Alexandria Circuit - Docket:<br>Offense: Statutory Burglary{NCIC-2210}<br>Offense Date: 05/28/1994<br>Good Time System: Good Conduct Allowance<br>Revoked; Original Date of Judgment: 04/11/1995<br>Consecutive; Straight<br>Felony Term Indicator: 2<br>Imposed: 5 Years 0 Months 0 Days<br>Comments: 94-575-00 |
| 12/17/1998 | Alexandria Circuit - Docket:<br>Offense: Larc-Grand{NCIC-2320}<br>Offense Date: 05/28/1994<br>Good Time System: Good Conduct Allowance<br>Revoked; Original Date of Judgment: 11/15/1994<br>ConvConcurrent; Straight<br>Felony Term Indicator: 2<br>Imposed: 5 Years 0 Months 0 Days<br>Comments: 94-576-01/CONC. W/94-567-00 |
| 12/17/1998 | Alexandria Circuit - Docket:<br>Offense: Larc-Grand{NCIC-2320}<br>Offense Date: 05/20/1994<br>Good Time System: Good Conduct Allowance<br>Revoked; Original Date of Judgment: 11/15/1994<br>ConvConcurrent; Straight<br>Felony Term Indicator: 2<br>Imposed: 5 Years 0 Months 0 Days<br>Comments: 94-577-01/CONC. W/94-577-00 |
| 12/17/1998 | Alexandria Circuit - Docket: 95-593<br>Offense: Robbery{NCIC-1200}<br>Offense Date: 07/04/1995<br>Good Time System: Earned Sentence Credit<br>Revoked; Original Date of Judgment: 06/06/1996<br>ConvConcurrent; Straight<br>Imposed: 3 Years 6 Months 0 Days<br>Comments: 95-593/CONC. W/98-463 |
| 12/17/1998 | Alexandria Circuit - Docket:<br>Offense: Kidnap/Abduct{NCIC-1000}<br>Offense Date: 03/19/1998<br>Good Time System: Earned Sentence Credit<br>ConvConcurrent; Straight<br>Imposed: 5 Years 0 Months 0 Days<br>Comments: 98-463-02<br>Memo: CONC. W/98-463-00,01&03. |

## VIRGINIA DEPARTMENT OF CORRECTIONS

OSC-106                                      **Sentence Summary**

| DOC #:  1080673 | Offender:  Lucas, Casel Frank | Print Date:  08/07/2020 |
|---|---|---|
| Status:  Active | Location:  Haynesville Correctional Center | Page:  3 of 3 |

| Date of Judgment | Sentence Description |
|---|---|

**12/17/1998**

Alexandria Circuit - Docket:
Offense: Sex Asslt-Attempted Rape{NCIC-1199}
Offense Date: 03/19/1998
Good Time System: Earned Sentence Credit
ConvConcurrent; Straight
Imposed: 5 Years 0 Months 0 Days
Comments: 98-463-03/18.2-67.5.A
Memo: CONC. W/98-463-00,01&02.

**12/17/1998**

Alexandria Circuit - Docket:
Offense: Larc-Grand{NCIC-2320}
Offense Date: 05/28/1994
Good Time System: Good Conduct Allowance
Revoked; Original Date of Judgment: 04/11/1995
ConvConcurrent; Straight
Felony Term Indicator: 2
Imposed: 5 Years 0 Months 0 Days
Comments: 94-575-01/CONC. W/94-575-00

**01/15/1999**

Arlington Circuit - Docket:
Offense: Robbery{NCIC-1200}
Offense Date: 07/12/1995
Good Time System: Earned Sentence Credit
Revoked; Original Date of Judgment: 03/07/1997
Consecutive; Straight
Imposed: 2 Years 6 Months 0 Days
Comments: CR95-1525
Memo: ORDER OF 5/17/96 RECONSIDERED 3/7/97

**01/15/1999**

Arlington Circuit - Docket:
Offense: Statutory Burglary{NCIC-2210}
Offense Date: 05/27/1994
Good Time System: Good Conduct Allowance
Revoked; Original Date of Judgment: 03/13/1995
Consecutive; Straight
Felony Term Indicator: 2
Imposed: 5 Years 0 Months 0 Days
Comments: CR95-304

**01/15/1999**

Arlington Circuit - Docket:
Offense: Larc-Grand{NCIC-2320}
Offense Date: 05/27/1994
Good Time System: Good Conduct Allowance
Revoked; Original Date of Judgment: 03/13/1995
ConvConcurrent; Straight
Felony Term Indicator: 2
Imposed: 5 Years 0 Months 0 Days
Comments: CR95-305 CONC W/CR95-304

PURPOSE OF THIS REQUEST (Check only one):

☐ DOMESTIC ADOPTION          ☐ INTERNATIONAL ADOPTION          COUNTRY          0069386530

☐ VISA (INTERNATIONAL TRAVEL)     ☒ OTHER (please specify)  EMPLOYMENT

NAME OF INDIVIDUAL TO BE SEARCHED: (Notarized Signature Required in Section 1 Below)

| LAST NAME | FIRST NAME | MIDDLE NAME | MAIDEN NAME |
|---|---|---|---|
| LUCAS | CASEL | | |

| RACE | SEX | DATE OF BIRTH | | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|
| B | M | 08 / 08 / 1969 | (MM/DD/YYYY) | |

**Section 1: AFFIDAVIT FOR RELEASE OF INFORMATION:**

I hereby give consent and authorize the Virginia State Police to search the files of the Central Criminal Records Exchange for a criminal history record and report the results of such search to the agent or individual authorized in this document to receive same.

_Casel Lucas_ Signature

State of _Virginia_  ☒ County ☐ City of _Richmond_ ; to wit: Subscribed and sworn to before me on: 05/06/2020 (MM/DD/YYYY)

_Catherine F. McKenney_ Signature of Notary Public
CATHERINE F. MCKENNEY
NOTARY PUBLIC
REG. #778613
COMMONWEALTH OF VIRGINIA

My commission expires: 5-31-22  My registration # is: 778613

**Section 2: SIGNATURE OF PERSON MAKING REQUEST (Notarized Signature Required)**

As provided in Section 19.2-389, Code of Virginia, I hereby request the criminal history record of the individual named above and swear or affirm I have the consent of the individual to obtain their record and will not further disseminate the information received, except as provided by law.

_Casel Lucas_ Signature of Agency/Individual Making Request

State of _Virginia_  ☒ County ☐ City of _Richmond_ ; to wit: Subscribed and sworn to before me on: 05/06/2020 (MM/DD/YYYY)

_Catherine A. McKenney_ Signature of Notary Public

My commission expires: 5-31-22  My registration # is: 778613

NAME AND MAILING ADDRESS OF AGENCY, INDIVIDUAL OR AUTHORIZED AGENT MAKING REQUEST: (If Agency or Agent is Receiving the Results, their Notarized Signature is Required in Section 2)

Mail Results To:

NAME
HAYNESVILLE CORRECTIONAL
ATTENTION
CASEL LUCAS  #1080673
ADDRESS
PO BOX 129

| CITY | STATE | ZIP CODE |
|---|---|---|
| HAYNESVILLE | VA | 22472 |

Please provide your contact information in case there is a discrepancy with your form.

Phone: [illegible]

Email:

**FEES FOR SERVICE:**

☐ $15.00 CRIMINAL HISTORY SEARCH
☒ $20.00 COMBINATION CRIMINAL HISTORY & SEX OFFENDER SEARCH

* FEES For Volunteers with Non-Profit Organizations:
☐ $8.00 CRIMINAL HISTORY SEARCH
☐ $16.00 COMBINATION CRIMINAL HISTORY & SEX OFFENDER SEARCH

* To be entitled to reduced price, services must be on volunteer basis for a non-profit organization with a tax exempt number. Attach documentation to form which supports volunteer status and include organization's name, address, and the tax exempt identification number.

**METHOD OF PAYMENT: (Note: Personal Checks Not Accepted)**
☒ Business or Certified check or Money order (payable to Virginia State Police)

CHARGE CARD: ☐ MasterCard  OR  ☐ Visa [VISA]

Account Number: _____ - _____ - _____ - _____     Expiration: ____ / ____

Signature of Cardholder: _____

Mail This Form To:

Virginia State Police
Central Criminal Records Exchange – NCJ
P. O. Box 85076
Richmond, Virginia 23261-3070

Virginia State Police NCJI Account Number: _____

---

**FOR STATE POLICE USE ONLY – DO NOT WRITE BELOW THIS LINE**

Response based on comparison of name information submitted in request against a master name index maintained in the Central Criminal Records Exchange only. Unless fingerprints are submitted, this request will only return Virginia Convictions.

☐ No Virginia Conviction Data – Does Not Preclude the Existence of an Arrest Record

☐ No Virginia Criminal Record – Name Search Only   ☐ No Virginia Criminal Record – Fingerprint Search

☐ No Virginia Criminal Record – Name Search Only   ☒ Virginia Criminal Record Attached

☐ No Virginia Sex Offender Registration Record

Purpose code:  ☐ C   ☐ N   ☐ O

Date: 5-29-20     By CCRE: 7405 sor record attached

```
                              BURGLARY
ALEXANDRIA CIRCUIT   04/11/1995  ALEXANDRIA                05/20/1994
                              GUILTY
ORI:VA0990015J
                              ==> FELONY
CCN:NOT RECORDED              BURGLARY
DCN:F561308                   1153/0640   1296/1527
--------------------
====================================
SO ALEXANDRIA VA    09/07/1994  FINGERPRINTED
ORI:VA0990100                   OCA:94010004
                                CHARGED WITH
                          #001 FELONY
                                STATUTORY BURGLARY
                                ALEXANDRIA              05/13/1994
ALEXANDRIA CIRCUIT   04/11/1995  GUILTY
ORI:VA099015J                 ==> FELONY
CCN:NOT RECORDED                STATUTORY BURGLARY
DCN:F656154                     1183/1833   1296/1325
--------------------
SO ALEXANDRIA VA    09/07/1994  FINGERPRINTED
ORI:VA0990100                   OCA:94010004
                                CHARGED WITH
                          #002 FELONY
                                LARCENY
                                ALEXANDRIA              05/13/1994
ALEXANDRIA CIRCUIT   04/11/1995  GUILTY
ORI:VA099015J                 ==> FELONY
CCN:NOT RECORDED                LARCENY
DCN:F656155                     1183/1834   1296/1350
--------------------
SO ALEXANDRIA VA    09/07/1994  FINGERPRINTED
ORI:VA0990100                   OCA:94010004
                                CHARGED WITH
                          #003 FELONY
                                STATUTORY BURGLARY
                                ALEXANDRIA              05/13/1994
ALEXANDRIA CIRCUIT   04/11/1995  GUILTY
ORI:VA099015J                 ==> FELONY
CCN:NOT RECORDED                STATUTORY BURGLARY
DCN:F656156                     1183/1837   1296/1470
--------------------
SO ALEXANDRIA VA    09/07/1994  FINGERPRINTED
ORI:VA0990100                   OCA:94010004
                                CHARGED WITH
                          #004 FELONY
                                LARCENY
                                ALEXANDRIA              05/13/1994
ALEXANDRIA CIRCUIT   04/11/1995  GUILTY
ORI:VA099015J                 ==> FELONY
CCN:NOT RECORDED                LARCENY
DCN:F656157                     1183/1832   1296/1469
--------------------
SO ALEXANDRIA VA    09/07/1994  FINGERPRINTED
ORI:VA0990100                   OCA:94010004
                                CHARGED WITH
                          #005 FELONY
                                LARCENY
                                ALEXANDRIA              05/20/1994
ALEXANDRIA CIRCUIT   04/11/1995  GUILTY
ORI:VA099015J                 ==> FELONY
CCN:NOT RECORDED                LARCENY
DCN:F656158                     1183/1831   1296/1471
```

```
                             CHARGED WITH
                        #002 FELONY 19.2-306
                             REVOCATION OF SUSPENDED SENTENCE AND PROBATION
                             ALEXANDRIA            03/24/1998
ALEXANDRIA CIRCUIT  12/17/1998 GUILTY
ORI:VA099015J             ==> FELONY
CCN:NOT RECORDED             PROBATION VIOLATION
DCN:P000340                  2027/1261   2191/0445
--------------------
===================================
PD ALEXANDRIA VA    08/05/1998 FINGERPRINTED  PHOTO:Y
ORI:VA0990C00                  OCA:98004595
                               CHARGED WITH
                          #001 FELONY 18.2-58
                               ROBBERY
                               ALEXANDRIA          03/19/1998
ALEXANDRIA CIRCUIT  12/17/1998 GUILTY
ORI:VA099015J             ==> FELONY
CCN:NOT RECORDED             ROBBERY
DCN:P000796                  2062/0727   2191/0449
--------------------
PD ALEXANDRIA VA    08/05/1998 FINGERPRINTED  PHOTO:Y
ORI:VA0990000                  OCA:98004595
                               CHARGED WITH
                          #002 FELONY 18.2-48
                               ABDUCTION -EXTORT MONEY OR IMMORAL PURPOSE
                               ALEXANDRIA          03/19/1998
ALEXANDRIA CIRCUIT  12/17/1998 GUILTY
ORI:VA099015J             ==> FELONY
CCN:NOT RECORDED             ABDUCTION
DCN:P000797                  2062/0727   2197/0424
--------------------
PD ALEXANDRIA VA    08/05/1998 FINGERPRINTED  PHOTO:Y
ORI:VA0990000                  OCA:98004595
                               CHARGED WITH
                          #003 FELONY 18.2-61
                               RAPE
                               ALEXANDRIA          03/19/1998
ALEXANDRIA CIRCUIT  12/17/1998 GUILTY
ORI:VA099015J             ==> FELONY
CCN:NOT RECORDED             ATTEMPTED RAPE
DCN:P000798                  2062/0727   2197/0426
--------------------


***********************************************************************
*                                                                     *
*                                                                     *
*                      CORRECTIONAL HISTORY                           *
*                                                                     *
***********************************************************************


FINGERPRINTED      DATE       STATUS
================== ========== ========================================
PEN FARM GOOCHLAND 02/25/1999 RECEIVED
ORI:VA037015C             ==> FELONY
INM:266497
EVN:I266497
FCN:SP850000183752 02/25/1999 FELONY 4CTS STATUTORY BURGLARY,2CTS
                                     ROBBERY,BURGLARY
                             2424/0287  SENT:  42 YRS   6 MOS
CSI:0000145648     02/25/1999 NEW PRISNER RCVD        POW RCP&CLSS CTR
--------------------
```

CASEY Y. LUCAS

VSP# 1080673

Tort Claim

NON Compliance to Stipulated Agreement

Exhibits

Exhibit

#

12

Grievance Appeal Denied Breathing Treatment



VIRGINIA DEPARTMENT OF CORRECTIONS

**Offender Grievance Response - Level I**

866.1 A-6

DOC Location: HCC Haynesville Correctional Center

Report generated by Brown, R T

Report run on 07/08/2020 at 03:49 PM

| Offender Name RECEIVED | DOC# | Location | Grievance Number |
|---|---|---|---|
| Lucas, Casel F  AUG 1 7 2020 | 1080673 | **Current** Haynesville Correctional Center | HCC-20-REG-00046 |
| Housing  OFFICE OF HEALTH SERVICES | | **Filed** Haynesville Correctional Center | |
| HU2-A-38-B | | | |

**LEVEL I:**   **WARDEN/SUPERINTENDENT'S RESPONSE**   (To be completed and mailed within 30 calendar days)

In your grievance, you state that you wanted to go to Medical for a breathing treatment and C/O Barnes violated HIPPA rules when he did not allow you to see the Nurses.

As a result of the grievance, you would like appropriate action taken against C/O Barnes.

The results of the informal process reveal Lt. R. Radabaugh responded to Informal Complaint #HCC-20-INF-00585 on May 1, 2020, stating "Medical had other offenders from another building at that time."

An investigation into your complaint indicates after Lt. R. Radabaugh interviewed C/O Barnes, it was revealed that there were other offenders from different housing units in Medical for triage. Due to the pandemic, C/O Barnes could not have offenders from different housing units in Medical.

Your grievance is govern by policy restricted to offender access.

After thoroughly reviewing the information presented to staff in response to your complaint and the policy governing the issue, I find your grievance to be UNFOUNDED as the statements contained within are unsubstantiated.

If you are dissatisfied with the Level I response, you may appeal within 5 calendar days to:

Regional Admin. 14545 Old Belfield Road, Capron, VA  23829

RECEIVED
JUL 20 2020
Ombudsman Unit
Eastern Region

Warden/Superintendent   T. HICKS, WARDEN          Date 7-10-2020

I wish to appeal the Level I response because:

This is Absolutely false. Lt. Kudabaugh, Ombudsman Ms. Person Never Interviewed Lt. Dobyns No Ms. Davis, And T/O Wright. C/O Barnes has lied He specifically from Ms. Davis Cb that He was to try And so Are the Nurses. He Said the Same thing To Lt. Dobyns. He Violated the DOP 801.3 Namely Offender with Disabilities Pg 6. 2(A) Under No Circumstance will a Non-Health Care Work Substitute their Judgment in place of the Health Care Provider. C/O Barnes Never Asked A Nurse or Doctor. He DID this on His OWN. He Has Abused Me An Offender With Disabilities by Making Me Struggle

Offender Signature  Casel Y. Lucas  1080673          Date 14 July 2020

for 2 days to Breath Because He was to Busy. He Put My life in Extreme Danger He Also Violated the DOP 801.3 He Has Also Violated the following Laws State & Federal Americans with Disabilities Act of 1990 As amended (42 U.S.C. § 12101) Virginians with Disabilities Act (COV. § 51.5-1 et Seq.)

I Am A Decorated Disabled Combat Veteran with Service Connected Disabilities, over and Severe Damage to My Lungs from Exposure to WMD's. C/O Barnes Abused Me →

2) For 2 Hours Denying Me My Treatment.

Then He Tried To intimidate Me by taking the Emergency Grievance and give it back to me Unprocessed. I Am being abused More by the Staff taking C/O Barns and Protecting Him and His Crimes.

He Abused Me A OLD Man

He Abused Me A Disabled Combat Veteran.

BY Making A Decision On His own NOT asking The Medical Staff Can I Get the Breathing Treatment

The Policy is right Here K. Cosby, DO Your Job

Interview C/o Ms. Davis Ombudswoman

Interview Lt. Dobyns 2.A. Supervisor

Interview T/officer Wright

This Man abused and tortured Me for 2 Hours Denying Me My Medically Prescribe breathing Treatment that I got A Service Connected Disability from the U.S. Army a Veterans Affairs. I will goto the Media I will not Allow this To Continue. It is never a Hard Choice To Make When you Choose To Do The right Thing Which is the right choice The Easy Choice.

DO the Interviews to Lt. Dobyns, C/o Ms. Davis, T/o Wright Ask Ms. Brown the Ombudsman Why She Never Questioned or interviewed Those Staff Members.

I WAS right I Did Not Get this On 5 July 2020 The Warden Didn't Signed it Until 10 July 2020 and I Didn't Get it Until Nov 14 July 2020

**VIRGINIA**
**DEPARTMENT OF CORRECTIONS**

Regular Grievance 866_F1_4-17

## REGULAR GRIEVANCE

Log Number: HCC-20-REG 00046

| CABEL F. LUCAS | 1086673 | 2 A | 2-A-38-B |
|---|---|---|---|
| Name, First | Number | Building | Cell/Bed Number |
| C/O BURNS | 13 April 2020   1515 Hrs | | |
| viduals Involved in Incident | Date/ Time of Incident | | |
| Witness: H. Dobyns, C/O MS DAVIS, Treatment officer Wright | | | |

**AT IS YOUR COMPLAINT?** (Provide information from the informal process. Attach Informal Complaint response or r documentation of informal process.) This Grievance was legitimate left 1000 not Responded to on Time. 4/29/2020. What you have done is not by Policy You Violate the DOP 866 Procedures C/O BURNS The Officer of Medical Violated the Hipa Law. I Requested my Recurring Treatment. C/O BURNS flat out "Denial me this Quote" I'm too Busy & so are the NURES. HE Repeated This to Officer ms DAVIS & Lt. Dobyns + Treatment officer Wright. At NO Time DiD He say to any of those officers that their were inmates from other Building He Did not ask the Nurses or Doctors about getting the Treatment. I waited 2 Hours & filed an Emergency Grievance. NURSE REID, Nurse Langford, Nurse Stewart was there that Day. Nurse Reid asked me about the Emergency Grievance at sick Process if Officer BURNS came to the Back of Medical a gain it BACK TO me. SAiD you Here you Do what you want with it.

at action do you want taken? ① NO Officer can Determine my Treatment or Another Inmate. Medical Staff is only able to Do this Hipa Law. This need to Never Happen Again. I Could have Died because my RESCUE INHALERS WERE Not Helping me. C/O BURNS Needs to be suspended 15 DAYS and Disqualified Toever Workly Medical again.

evant's Signature: Carol F Lucas   Date: 7 May 2020

rden/Superintendent's Office: _____

e Received: _____   By: _____ GRIEVANCE OFFICE

RECEIVED MAY - 8 2020

JUL 2 0 2020 Ombudsman Unit Eastern Region

Revision Date: 4/28/17

VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866 F1_4-17

**INSTRUCTIONS FOR FILING:** You are required per Operating Procedure 866.1 *Offender Grievance Procedure* to attempt to resolve your complaint in good faith prior to filing a regular grievance. You must submit your grievance within 30 days from the date of occurrence or discovery of incident. Only one issue per grievance will be addressed. Write your issue only in the space provided on the grievance form, preferably in ink. Regular grievances are submitted through the institutional mail to the facility Grievance Office and a receipt issued within 2 working days from received date if the grievance is not returned during intake.

**INTAKE:** Grievances should be accepted for logging unless returned for the following reason(s):

| | |
|---|---|
| ☐ | Non-Grievable. This issue has been defined as non-grievable in accordance with Operating Procedure 866.1. ☐ Disciplinary Procedure. You may appeal hearing decisions, penalties, and/or procedural errors under the provisions in Operating Procedure 861.1, *Offender Discipline*. ☐ Matters beyond the control of the Department of Corrections |
| ☐ | Does not affect you personally (This issue did not cause you personal loss or harm) |
| ☐ | Limited. You have been limited by the Warden/Superintendent |
| ☐ | More than one issue – resubmit with only one issue |
| ☐ | Expired Filing Period. Grievances are to be filed within 30 calendar days from date of occurrence/incident, or discovery of the occurrence/incident except in instances: 1) beyond the offender's control or, 2) where a more restrictive time frame has been established in Operating Procedures to prevent loss of remedy or the issue from becoming moot. |
| ☐ | Repetitive. This issue has been grieved previously in Grievance # |
| ☐ | Inquiry on behalf of other offenders. |
| ☐ | Group Complaints or Petitions   Grievances are to be submitted by individuals. |
| ☐ | Vulgar/Insolent or Threatening Language. YOU MAY BE CHARGED IN ACCORDANCE WITH OPERATING PROCEDURE 861.1 *OFFENDER DISCIPLINE* |
| ☐ | Photocopy/Carbon Copy. You must submit the original grievance for responses and appeals. |
| ☐ | Grievances Filed Regarding Another Institution. This grievance is being returned to you for you to submit to: |
| ☐ | Informal Procedure. You have not used the informal process to resolve your complaint |
| ☐ | Request for services |
| ☐ | Insufficient Information (Not to include Medical). You need to provide the following information to the Grievance Office within 5 days before the grievance can be processed: _____ |
| ☐ | The issue in the grievance is different from the issue in the informal complaint |

Institutional Ombudsman/Grievance Coordinator: _____

Date: _____

If you disagree with this decision, you have 5 calendar days from date of receipt to submit to the Regional Ombudsman for a review of the intake decision. The Regional Ombudsman's decision is final.

Regional Review of Intake (within 5 working days of receipt)

| | |
|---|---|
| ☐ | The intake decision is being upheld in accordance with Operating Procedure 866.1 *Offender Grievance Procedure*. |
| ☐ | The intake decision is being returned to you because the 5 day time limit for review has been exceeded. |
| ☐ | The grievance meets the criteria for intake and is being returned to the Warden/Superintendent for logging. |

Regional Ombudsman: _____

**WITHDRAWAL OF GRIEVANCE:** I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance, there will be no further action on this issue nor will I be able to file any other grievance in the future on this issue.

Date: _____

Offender Signature: _____

Staff Witness: _____   Date: _____

Date: _____

*Revision Date: 4/28/17*

*Where is My Answer & Resolution To This Grievance Past Due 5 Days*



**VIRGINIA DEPARTMENT OF CORRECTIONS**

## Grievance Continuance Receipt

866.1 TBD

DOC Location: HCC Haynesville Correctional Center

Report generated by Brown, R T

Report run on 06/05/2020 at 09:24 AM

Grievance Number: HCC-20-REG-00046

Next Action Date: 07/05/2020 12:00 AM

RECEIVED
JUL 17 2020
Ombudsman Unit
Eastern Region

### Continuance

| Level | Due Date | Reason | | By |
|-------|----------|--------|---|-----|
| 1 | 07/05/2020 | Awaiting information | | Brown, Rose T |
| 2 | | | | |
| 3 | | | | |

On this date: 05/08/2020     I have received a statement from:

Lucas, Casel F                    1080673          of     Haynesville Correctional Center

*(Offender Name and DOC#)*                              HU2-A-38-B

*(Filed Location and Housing)*

Setting out the following complaint:

He states that C/O Barnes violated HIPPA laws when he denied him the right to a breathing treatment.

*I Have A Right To Appeal This. I Have Not gotten the Response Mr. Brown Has Not given it To Me. My Counselor Ms. Robinson Called Her and She Said she Sent I Dont Have it*

_____
(Signature)

I U
_____
(Title)

*This Response Has Not been Given To Me by the Due Date. Also This Puts Me Past My 5 Days To Appeal it To Your Office. I Recieved Nothing but Uhr Answer dated 2 July 2020)*

*K Cosby*

Page 1 of 1

Rev. 03/30/2009

*DO NOT RETURN this because of the Attachment must be included as Proof of my filing the Reasonable Accommodations Request as the DOP 801.3 Demands THIS IS AN APPEAL To His Action*

**VIRGINIA**
**DEPARTMENT OF CORRECTIONS**

Informal Complaint 866-13-4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING**: Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

Offender Name: Carol F. Lucas
Offender Number: 1082673
Housing Assignment: 2-A-38-B

**RECEIVED JUL 17 2020 Ombudsman Unit Eastern Region**

Individual Involved in Incident: Facility ADA Coordinator Ms. Greenwood
Date/Time of Incident:

**RECEIVED JUN 24 2020**

- [ ] Unit Manager/Supervisor
- [ ] Personal Property
- [ ] Medical Administrator
- [ ] Food Service
- [ ] Commissary
- [ ] Other (Please Specify)
- [ ] Institutional Program Manager
- [ ] Mailroom

Briefly explain the nature of your complaint (be specific): APPEAL FOR Reasonable Accommodations REQUEST. I filed a Reasonable Accommodations REQUEST asking for an DOP 801.3 Accommodation to be made for me with the IERP Early Release Program which is Discriminatory in Nature language and being Practiced by VADOC Nottoway Employees by Not addressing my Reasonable Accommodation REQUEST Properly by the facility ADA Coordinator. The REQUEST I sent is attached Showing and Proving I made the written REQUEST as Policy Dictated yet the Correct Action was Not taken.

Offender Signature: Carol F. Lucas
Date: 21 of June 2020

**Offenders - Do Not Write Below This Line**

Date Received: 6-24-2020
Response Due: 7-9-2020
Tracking #: HCC 20-INF-01192
Assigned to: R. Brown IO

Action Taken/Response: I have told you on several documents that this is not a grievable issue. There is an appeal process that go to OMS who makes the final decision. Any further paperwork on this issue can result in you being limited due to the amount of time that is being spent in the office processing the same issue over and over again. This is considered abuse and misuse of the grievance procedure in accordance

Respondent Signature: Rose T Brown
Printed Name and Title: Rose T. Brown, IO
Date: 6-29-20

w/ DOP 866.1 Offender Grievance Procedure

**WITHDRAWAL OF INFORMAL COMPLAINT:**

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____
Staff Witness Signature: _____ Date: _____

**RECEIVED JUL 2 2020 Ombudsman Unit Eastern Region**

Witness by staff as submitted to Ombudsman and a Copy.

Revision Date: 4/28/17

CASEY F. LUCAS
VDOC# 1030073

Tort Claim

Non Compliance of Stipulated Agreement
Exhibits

Exhibit
#
13

Grievance Ombudsman Violations of
The Stipulated Agreement

**RECEIVED**

JUN 2 4 2020

By: _____



VIRGINIA
DEPARTMENT OF CORRECTIONS

**Informal Complaint** 866_F3_4-17

### Informal COMPLAINT

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

RECEIVED
JUL 17 2020
Ombudsman Unit
Eastern Region

| Offender Name | Offender Number | Housing Assignment |
|---|---|---|
| CAReL F. LUCAS | 1080673 | 2-A-38-18 |

| Individuals Involved in Incident | Date/Time of Incident |
|---|---|
| Ombudsman MS.Brown | April 2020, May 2020, Jun 2020 |

- [ ] Unit Manager/Supervisor
- [ ] Personal Property
- [ ] Medical Administrator
- [ ] Food Service
- [ ] Commissary
- [ ] Other (Please Specify):
- [ ] Institutional Program Manager
- [ ] Mailroom

Briefly explain the nature of your complaint (be specific) Ombudsman violations of the Stipulated Settlement Agreement Covid19 Whorley etal V. Northam Etal Case No: 3:20 CV00255 Pg.4 (C) "Defendants agree to provide written Guidance to grievance Coordinators at VDOC facilities Relating to grievance Related to Covid19 as will regards to abide by Covid19 Related Policies, and Protocols. This is not followed with those grievances HCC-20-Inf-00585, HCC-20-Inf-00559, HCC-20-Inf-00706, HCC-20-Inf-00545 these grievances are all Covid19 Related Policies & Protocols. All Denial intake because they violated the Safety & Health & Mental, SHP of all inmates this is the second Informal Complaint I have filed on this. No Receipt given on these 7/16/20

| Offender Signature | Date |
|---|---|
| Carol F. Lucas | 22 June 2020 |

---

**Offenders - Do Not Write Below This Line**

| Date Received: 6-24-2020 | Tracking # HCC-20-INF-01191 |
|---|---|
| Response Due: 7-9-2020 | Assigned to: R Brown ID |

Action Taken/Response:
My intake decision is not a grievable issue. Your next avenue is to submit your grievance to the Eastern Regional Ombudsman in Capron, VA for review.

| Respondent Signature | Printed Name and Title | Date |
|---|---|---|
| Rose T Brown | Rose T Brown, IO | 6-24-20 |

RECEIVED
JUN 2 2020
Ombudsman Unit
Eastern Region

**WITHDRAWAL OF INFORMAL COMPLAINT:**
I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____

Staff Witness Signature: _____ Date: _____

Witnessed by Staff Submitted to Ombudsman Institutional Mail This is my Second filing. LT.D

Revision Date: 4/28/17

VIRGINIA
DEPARTMENT OF CORRECTIONS

Offender Request 801_83_7-1

Offender Request

**DIRECTIONS**
1. Fill in your Name, Number, Full Housing Assignment
2. Please Print your request; KEEP IT BRIEF
3. Drop in the appropriate Mail Box

4. Requests may be returned unanswered if addressed to the wrong department or if duplicate requests are sent.

JUL 01 2020

| YOUR LAST NAME | FIRST | MI | NUMBER | BLDG/CELL |
|---|---|---|---|---|
| LUCAS | Casel | F | 1086673 | 2·A·38·B |

| WORK ASSIGNMENT | ASSIGNED COUNSELOR | TODAY'S DATE |
|---|---|---|
| 2·A· Unit Custodian | Ms. Robinson | 1 July 2020 |

TO: ☐ Unit Manager ☐ Medical ☐ Personal Property ☐ Law Library ☐ Security
☐ Treatment ☐ Mental Health ☐ Education ☐ Enterprise Shop ☐ Accounting
☐ Chaplain ☐ Assistant Warden ☐ Warden ☒ Other FACILITY ADA Coordinator

**CHECK PURPOSE** ☐ Appointment Request ☒ Question/Statement Ms. J. GREENWOOD

REASONABLE ACCOMMODATION REQUEST : I Am Disabled Veteran An Inmate with Disabil
I Am A Inmate with 15 military Disabilities that I Am Service Connected
For Receiving 90% Rating them the Veterans Affair Board Veterans Appeals And
The Court of Appeals for Veteran Claims Certification of PTSD Mental Illnesses
2). Depression (3). Anxiety (4) Anti Personality Disorders (5) Cardiovascular Problem that Cause A
Adult Diaper Blo per/1050 (6) Degenerative Joint Disease both knees (7). Dip Joint
left & Right Hand (8) Chronic Respiratory Illness & Acute Respiratory Disease
9 Diabetes.
My Request is to be Able To Participate In IERP
Release Program Die to my Chronic Disabilities

~~DO NOT ATTACH ADDITIONAL PAGES; DO NOT WRITE BELOW THIS LINE~~

**RESPONSE**

Request sent to correct department ☒ Yes ☐ No; Routed to: _____ Date: _____

You will need to speak to your Counselor.

RECEIVED
JUL 17 2020
Ombudsman Unit
Eastern Region

RECEIVED
JUL 2 2020
Ombudsman Unit
Region

RECEIVED
JUL 24 2020
By: GRIEVANCE OFFICE

Offender seen ☐ Yes ☒ No

Official Responding _____

6·2·2020
Date of Response

Revision Date: 7/16/12



# BOARD OF VETERANS' APPEALS

### DEPARTMENT OF VETERANS AFFAIRS
### WASHINGTON, DC 20038

Date: June 14, 2018                                    SS 228 29 8166

CASEL F. LUCAS

Dear Appellant:

The Board of Veterans' Appeals (Board) has made a decision in your appeal, and a copy is enclosed.

| If your decision contains a | What happens next |
|---|---|
| Grant | The Department of Veterans Affairs (VA) will be contacting you regarding the next steps, which may include issuing payment. Please refer to VA Form 4597, which is attached to this decision, for additional options. |
| Remand | Additional development is needed. VA will be contacting you regarding the next steps. |
| Denial or Dismissal | Please refer to VA Form 4597, which is attached to this decision, for your options. |

If you have any questions, please contact your representative, if you have one, or check the status of your appeal at http://www.vets.gov.

Sincerely yours,

*K. Osb—*

Kimberly Osborne
Deputy Vice Chairman

RECEIVED

JUN 2 4 2020

By:_____
GRIEVANCE OFFICE

Enclosures (1)
CC: Virginia Department of Veterans Services



RECEIVED
JUL 1 7 2020
Ombudsman Unit

RECEIVED
JUL - 2 2020

RECEIVED
MAY 2 6 2020
By:_____
GRIEVANCE OFFICE



# BOARD OF VETERANS' APPEALS
## DEPARTMENT OF VETERANS AFFAIRS



IN THE APPEAL OF
**CASEL F. LUCAS**
REPRESENTED BY
**Virginia Department of Veterans Services**

SS 228 29 8166
Docket No. 13-22 962

DATE: June 14, 2018



## ORDER

Service connection for post-traumatic arthritis, left elbow, to include as due to Gulf War environmental exposures, is denied.

Service connection for right elbow strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for flexion contracture, distal interphalangeal (DIP) joint, right fifth finger, is granted.

Service connection for flexion contracture, DIP joint, left fifth finger, is granted.

Service connection for right ankle strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for left ankle strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for chronic fatigue syndrome (CFS), to include as due to Gulf War environmental exposures, is denied.

Service connection for recurrent upper respiratory infections is granted.

Service connection for a sleep disorder, to include as due to Gulf War environmental exposures, is denied.

Service connection for gastroesophageal reflux disease (GERD) is granted.



IN THE APPEAL OF
**CASEL F. LUCAS**

SS 228 29 8166
Docket No. 13-22 962

Service connection for genitourinary problems, to include as due to Gulf War environmental exposures, is denied.

Service connection for impotency, to include as due to Gulf War environmental exposures, is denied.

Service connection for amyotrophic lateral sclerosis (ALS), to include as due to Gulf War environmental exposures, is denied.

Service connection for <u>headaches</u> is <u>granted</u>.

The appeal for an effective date earlier than August 25, 2010 for the grant of service connection for PTSD is dismissed.

**REMANDED**

RECEIVED
JUL - 2 2020
Ombudsman Unit
Eastern Region

Entitlement to service connection for patellofemoral syndrome, right knee, to include as due to Gulf War environmental exposures, is remanded.

Entitlement to an initial rating in excess of 10 percent for posttraumatic stress disorder (PTSD) is remanded.

RECEIVED
JUN 2 4 ...
By: _____
GRIEVANCE OFFIC...

**FINDINGS OF FACT**

1. The Veteran had active service in the Southwest Asia Theater of Operations during the Persian Gulf War.

2. The Veteran's left elbow pain has been linked to a diagnosis of post-traumatic arthritis, left elbow, and the preponderance of the evidence is against finding that his post-traumatic arthritis, left elbow, was manifested in service, within one year of his separation from service, or is due to a disease or injury in service, to include a specific in-service event, injury, or disease.

RECEIVED
MAY 2 6 2020
By: _____
GRIEVANCE OFFICE

2

IN THE APPEAL OF
CASEL F. LUCAS



SS 228 29 8166
Docket No. 13-22 962

3. The Veteran's right elbow pain has been linked to a diagnosis of right elbow strain, and the preponderance of the evidence is against finding that his right elbow strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease.

4. The Veteran's flexion contracture, DIP joint, right fifth finger, has been related to service.

5. The Veteran's flexion contracture, DIP joint, left fifth finger, has been related to service.

6. The Veteran's right ankle pain has been linked to a diagnosis of right ankle strain, and the preponderance of the evidence is against finding that his right ankle strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease

7. The Veteran's left ankle pain has been linked to a diagnosis of right ankle strain, and the preponderance of the evidence is against finding that his right ankle strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease

8. The Veteran has not manifested a diagnosis of CFS during the pendency of his appeal; nor has he been diagnosed with a medically unexplained chronic multi symptom illness.

9. The preponderance of the evidence of record establishes recurrent upper respiratory infections as a diagnosable but medically unexplained chronic multi symptom illness.

10. The preponderance of the evidence is against finding that the Veteran has a sleep disorder due to a disease or injury in service, to include specific in-service event, injury, or disease.

11. The Veteran's GERD began during active service.





3

IN THE APPEAL OF
**CASEL F. LUCAS**

RECEIVED
JUL 17 2020
Ombudsman Unit

SS 228 29 8166
Docket No. 13-22 962

been diagnosed with CFS or with any medically unexplained chronic multi-symptom illness. The existence of a current disability is the cornerstone of a claim for VA disability compensation. *See Brammer v. Derwinski, supra.* As such, without a current diagnosis, the Veteran lacks the evidence necessary to substantiate his claim for service connection. The Board acknowledges that the Veteran does appear to have experienced fatigue, particularly as a result of his difficulties sleeping, but that fact alone does not necessitate the diagnosis of CFS which requires a specific set of symptomatology beyond just fatigue.

**5. Entitlement to service connection for recurrent upper respiratory infections.**

The Veteran contends he has respiratory problems due to various exposures in Iraq during the Gulf War, including chemicals and toxins, and exposure to WMDs after the demolition of an arms facility. He also contends he has had recurrent upper respiratory infections, to include pneumonia, and bronchitis, requiring treatment, since his service in Desert Storm.

Service treatment records show that in April 1988, the Veteran was treated for asthmatic bronchitis, and in May 1988 he was hospitalized for acute respiratory disease.

On a VA examination in March 2011, the Veteran reported his respiratory condition had an onset in the 1990s, and that he had recurrent upper respiratory infections requiring treatment since Desert Storm. The diagnosis was recurrent upper respiratory infections, which the examiner indicated was, by VBA definition category # (2), a diagnosable but medically unexplained chronic multi symptom illness of unknown etiology. The examiner opined it was at least as likely as not the Veteran's recurrent upper respiratory infections were related to a specific exposure event he experienced during his service in Southwest Asia. The examiner noted that signs and symptoms that may be manifestations of both undiagnosed illnesses or diagnosed medically unexplained chronic multi-symptom illnesses include signs or symptoms involving the upper respiratory system.

As noted above, signs and symptoms which may be manifestations of medically unexplained chronic multi symptom illnesses include respiratory symptoms.

RECEIVED MAY 2 6 2020 By: GRIEVANCE OFFICE

RECEIVED
JUL -2 2020
Ombudsman Unit
Western Region

12

RECEIVED
JUL 2 4 2020
By: GRIEVANCE OFFICE

IN THE APPEAL OF
CASEL F. LUCAS



SS 228 29 8166
Docket No. 13-22 962

Service connection for genitourinary problems, to include as due to Gulf War environmental exposures, is denied.

Service connection for impotency, to include as due to Gulf War environmental exposures, is denied.

Service connection for amyotrophic lateral sclerosis (ALS), to include as due to Gulf War environmental exposures, is denied.

 Service connection for headaches is granted.

The appeal for an effective date earlier than August 25, 2010 for the grant of service connection for PTSD is dismissed.

## REMANDED

Entitlement to service connection for patellofemoral syndrome, right knee, to include as due to Gulf War environmental exposures, is remanded.

Entitlement to an initial rating in excess of 10 percent for posttraumatic stress disorder (PTSD) is remanded.

## FINDINGS OF FACT

1. The Veteran had active service in the Southwest Asia Theater of Operations during the Persian Gulf War.

2. The Veteran's left elbow pain has been linked to a diagnosis of post-traumatic arthritis, left elbow, and the preponderance of the evidence is against finding that his post-traumatic arthritis, left elbow, was manifested in service, within one year of his separation from service, or is due to a disease or injury in service, to include a specific in-service event, injury, or disease.

RECEIVED
JUL - 2 2020
Ombudsman Unit
Eastern Region

RECEIVED
MAY 2 6 2020
By: GRIEVANCE OF

RECEIVED
JUL 2 4
By: GRIEVANCE

2

3,4,6,7,1,10

| | |
|---|---|
|  **Virginia Department of Corrections** | **Offender Management and Programs** |
| | **Operating Procedure 801.3** |
| | *Managing Offenders with Disabilities* |
| | **Authority:** Directive 801, *Facility Administration* |
| | **Effective Date:** August 1, 2019 |
| | **Amended:** |
| | **Supersedes:** Operating Procedure 801.3, July 1, 2016 |
| | **Access:** ☒ Public   ☐ Restricted   ☒ Incarcerated Offender |
| | **ACA/PREA Standards:** 5-ACI-2C-02, 5-ACI-2C-11, 5-ACI-2C-12, 5-ACI-2C-13, 5-ACI-3D-04, 5-ACI-5E-02, 5-ACI-5E-03, 5-ACI-6C-06, 5-ACI-7A-01, 5-ACI-7B-10, 5-ACI-7D-13; 4-4133, 4-4142, 4-4143, 4-4144, 4-4277, 4-4399, 4-4429, 4-4429-1, 4-4448, 4-4475, 4-4497; 4-ACRS-5A-19, 4-ACRS-6A-01-1, 4-ACRS-6A-04, 4-ACRS-6A-04-1, 4-ACRS-6A-04-2, 4-ACRS-6B-01; 2-CI-5A-1 |

| | | | | |
|---|---|---|---|---|
| **Content Owner:** | Rose Durbin PREA/ADA Supervisor | *Signature Copy on File* | 6/14/19 | |
| | | Signature | Date | |
| **Reviewer:** | Jermiah Fitz Jr. Corrections Operations Administrator | *Signature Copy on File* | 6/17/19 | |
| | | Signature | Date | |
| **Signatory:** | A. David Robinson Chief of Corrections Operations | *Signature Copy on File* | 7/1/19 | |
| | | Signature | Date | |

## REVIEW

The Content Owner will review this operating procedure annually and re-write it no later than three years after the effective date.

## COMPLIANCE

This operating procedure applies to all units operated by the Virginia Department of Corrections. Practices and procedures must comply with applicable State and Federal laws and regulations, ACA standards, PREA standards, and DOC directives and operating procedures.

RECEIVED
JUL 1 7 2020

RECEIVED
JUL - 2 2020
Ombudsman Unit
Eastern Region

# PURPOSE

This operating procedure provides guidelines for management of and provision of reasonable accommodations to offenders with disabilities housed in Department of Corrections (DOC) facilities. It describes levels of available services, methods by which assignments are made, and appropriate security measures for offenders with disabilities in accordance with the *Americans with Disabilities Act of 1990*, as Amended (42 U.S.C. §12101 et seq.) and the *Virginians with Disabilities Act* (COV §51.5-1 et seq.).

# PROCEDURE

I.    Training and Responsibility

A. All staff, contract staff, interns, and volunteers who regularly interact with offenders will receive instruction related to the provisions of accommodations for offenders with disabilities and the requirements of this operating procedure.

B. All staff and contract staff must complete the mandatory *Americans with Disabilities Act (ADA)* on-line training, annually. Upon completion of the training, a copy of the certificate must be printed and submitted to unit training staff or the immediate supervisor for units without training staff.

C. Upon arrival and during formal orientation, all offenders, to include those offenders who are transferred immediately to the infirmary or restrictive housing upon intake, will be informed of their right to non-discrimination on the basis of a disability and the process for requesting a reasonable accommodation as outlined in this operating procedure. (See Operating Procedure 810.1, *Offender Reception and Classification*, and Operating Procedure 810.2, *Transferred Offender Receiving and Orientation*.) (5-ACI-3D-04; 4-4277; 4-ACRS-6B-01)

  1. Each offender, upon arrival will be provided a copy of Attachment 1, *Notice of Rights for Offenders with Disabilities*, which includes the DOC ADA Coordinator's contact information.

  2. The facility *Orientation Manual, Packet*, and/or other written orientation materials must include the facility ADA Coordinator's name and contact information.

D. Information on the nature and extent of an offender's disability and any reasonable accommodations related to the disability is considered protected health information. This information is confidential and will only be disclosed to staff as necessary to provide assistance to the offender or as authorized and/or permitted by the offender.

E. ADA Coordinator

  1. Staff and offenders have access to the DOC ADA Coordinator and a facility ADA Coordinator. (5-ACI-5E-03; 4-4429-1; 4-ACRS-6A-01-1)

    a. The DOC ADA Coordinator is an appropriately trained and qualified individual, educated in the problems and challenges faced by offenders with physical and/or mental impairments, programs designed to educate and assist offenders with disabilities, and all legal requirements for the protection of offenders with disabilities.

    b. The facility ADA Coordinator is trained by the DOC ADA Coordinator in mandated legal requirements regarding disability accommodations.

  2. The DOC ADA Coordinator will serve as the authority on all issues related to offenders with disabilities, reasonable accommodations, and the application of this operating procedure.

  3. The facility ADA Coordinator will review all offender requests for a reasonable accommodation and, in consultation with appropriate staff, make a determination on the request and maintain documentation of the facility accommodation process to include approvals, denials, and appeals.

    a. The following requirements will be considered when making a determination for an accommodation:

      i. The disability, as recognized by the ADA, must be known to the DOC

      ii. The accommodation must not pose an undue hardship on the facility or to the safety, and

Operating Procedure 801.3, *Managing Offenders with Disabilities*                                    Effective Date: August 1, 2019

JUL 17 2020

2. If the medical equipment or assistive device required to address and accommodate an offender's disability poses an undue hardship to the facility or to the safety and security of the offender or any other person, the Facility Unit Head, in collaboration with the Health Care Practitioner, will make a decision regarding an alternate appropriate accommodation.

a. Under no circumstances will non-health care providers substitute their judgment for that of a health care provider where an accommodation needed to address a physical or mental disability has been prescribed.

b. If there are unclear issues about an accommodation, the DOC ADA Coordinator may discuss with facility staff whether the proposed accommodation poses an undue hardship to the facility or to the safety and security of the offender or any other person prior to a final decision regarding the requested accommodation.

c. The DOC ADA Coordinator will resolve the issue if the facility Health Care Practitioner and the Facility Unit Head cannot come to an agreement.

d. The DOC ADA Coordinator, as necessary, will provide written documentation to the Facility Unit Head and facility ADA Coordinator regarding the offender's protection under ADA and/or the accommodation to be provided.

D. Physical therapy will be available on or off-site, as appropriate, and will be carried out, subject to the offender's consent, as prescribed by the facility Medical Practitioner.

E. All offender requests for diagnosis of a disability, determinations about an offender having a disability, and whether the offender will receive medical accommodations for the disability must be recorded in the offender's Health Record.

F. A copy of the decisions, including but not limited to diagnoses, regarding the disability determination, the reasons for denial or modification of the request, and reasonable accommodations will be provided to the offender.

IV. Offender Requests for Accommodation

A. Offenders may request a reasonable accommodation for their disability by submitting a *Reasonable Accommodation Request* 801_F7 to the facility ADA Coordinator. Offenders who have difficulty in communicating, understanding, or writing a *Request* should contact their counselor for assistance.

B. The facility ADA Coordinator will review the *Request* and, in consultation with appropriate staff, make a determination on the *Request*.

1. *Reasonable Accommodation Requests* will be acted upon in writing within ten business days, or a shorter time if necessary, by either granting the request, denying it, requesting further investigation, or granting it with modification. A specific reason must be stated if the request is denied or modified.

2. All *Accommodation Requests* with respect to medical care will be placed in the offender's Health Record with a copy forwarded to the offender and a copy maintained by the facility ADA Coordinator.

3. *Accommodation Requests* not specifically involving medical care will be maintained by the institutional ADA Coordinator with a copy forwarded to the offender.

C. If a facility Health Care Practitioner determines that a medically prescribed accommodation is warranted, facility health care providers will make provisions to provide for the medical accommodation.

JUL - 2 2020

1. Medically prescribed accommodations must be reviewed to address any facility safety and security concerns.

2. If facility health care providers have safety or security concerns regarding the medical accommodation, the facility ADA Coordinator or Facility Unit Head will be consulted.

Operating Procedure 801.3, *Managing Offenders with Disabilities*                    Effective Date: August 1, 2019

G. Use of Force

1. Force may be used on offenders with disabilities in instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, or to maintain or regain control as provided in Operating Procedure 420.1, *Use of Force* (Restricted).

2. When such use must be preceded by the provision of an appropriate warning, this warning must be communicated by means that offenders with communication disabilities can observe and understand.

# DEFINITIONS OF TERMS USED IN THIS OPERATING PROCEDURE

**ADA Coordinator** - A Department of Corrections employee assigned to coordinate the Department's efforts to comply with and carry out its responsibilities under the provisions of Title II of the *Americans with Disabilities Act* to include the review of complaints alleging non-compliance with requirements of non-discrimination for offenders with disabilities and coordination of DOC's efforts to comply.

**Auxiliary Aids and Services** - Assistance provided through services, equipment, or modifications to provide equal access for disabled or impaired individuals to activities, programs, and privileges, these aids and services may include, but are not limited to:

- Qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments
- Qualified readers, taped texts, audio recordings, Brailed materials, large print materials, or other effective methods of making visually delivered materials available to individuals who are blind or have visual impairments
- Functional devices to increase mobility including but not limited to walkers, canes, crutches, and manual or powered wheelchairs for individuals with mobility impairments
- Acquisition or modification of equipment or devices and other similar services and actions

**Communication Disability** - Any impairment related to speech, language, and/or auditory processing; it includes hearing impairments, visual impairments, and cognitive impairments evidenced by an inability to speak, read, and/or understand written or oral communications of information provided at the facility.

**Co-payment** - The amount paid by the offender for health care service, treatment, prosthesis, or orthotic

**Health Care Practitioner** - A clinician trained to diagnose and treat patients, such as physician, psychiatrist, dentist, optometrist, nurse practitioner, physician assistant, and psychologist

**Health Care Provider** - An individual whose primary duty is to provide health services in keeping with their respective levels of licensure, health care training, or experience

**Major Life Activities** - Include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, toileting, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working

**Medical Practitioner** - A physician, nurse practitioner or physician's assistant

**Mobility Impairments** - Inability to move about without the aid of a cane, splint, crutches, wheelchair, walker, or any other form of support or because of limited functional ability to ambulate, climb, descend, sit, rise, or perform any related function

**Offender with a Disability** - Any offender who has a physical or mental impairment that substantially limits one or more of their major life activities, has a record of such impairment, or is perceived as having such impairment

**Physical or Mental Impairment** - Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organ, respiratory (including speech organs), cardiovascular, reproductive, immune, digestive, genitourinary, hemic or lymphatic, skin and endocrine; or any mental or psychological disorder, such as mental retardation (Developmental Disorder), organic brain syndrome, emotional or mental illness, and specific learning disabilities. The phrase "physical or mental impairment" includes, but is not limited to, such contagious and non-contagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental

1 copy



VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form  720_F17_7-12

# Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** _Lucas_ (Last)    _Casel_ (First)    **Number:** _1080673_

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 9/11/20  730p | Offender requesting renewal of D-Cerin and Visine. Chart to MD/NP. | K Langford, RN |
| 9/14/2020  618 | Emollients are available in the Commissary Memo * Visine tear drops, 2 drops ea eye BID x90days EMP | Abrantes |
| Noted 2020 @ 9/17/2020 0000 LP. Boehler en | | |
| 9/28/2020  754 | Labs from 9/21/2020 Acceptable 9/28/20 11AM | J Small MD |
| noted TJohnson | | |
| 10/1/2020  1515 | Renew Biotene Mouthspray 2 spray QD PRN Dry mouth await approval for non formulary med. previously Rx Dental. | S Shin APRN DNP-C |
| 10-2-2020  9A 1937  97⁸  18 | | |
| 10/29  72  956 | | |
| 10/6/2020  0730 117/75  69  97.6 ±189.16 ⊕98.7  16 | pt seen and evaluated for f/u from pulmonology visit by telephone 9/10/2020 PFTs completed by specialist, reviewed med list and current inhalers, discussed risk/benefits of meds. Review all notes from specialty noted request to add medication for allergy symptoms and Δ Atrovent to LAMA, TTE completed mild regurgitation EF (65-70%). Obstructive COPD D Stop Atrovent c̄ LAMA Obstructive COPD 2) Start increase ellipta 1 puff inhaled QD x90days Allergic Rhinitis 1) Zyrtec 10mg PO QD x 90 days ✓ CN: KNR, luxop CTABL Today ABD soft/tender Skin warm/dry ⊕ ROM ⊕ Cap refill <2sec | S Shin APRN DNP-C |
| noted TJohnson 10/6/20 11P | | |
| 10/8/2020  1245 | Emollients are available in commissary please bring receipts for eval of medical need for D-cerin cream refill per 9/14/2020 note | S Shin APRN DNP-C |
| noted 10/13/20 cep | | K Langford RN |



VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form 720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** Lucas (Last) Casey (First)    **Number:** 1088673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 08/21/2020 2:50 | 2D Echo cardigram Done on Site | [signature] |
| Noted, 8/25/20 1:30am [signature] | Uses Advair as directed Renew Advair 45/21 BID 1/3 Flonase 0.05 T BID Proair 5mg qd Ourietis 5mg BID x 180d Crestor 10mg HS Flonase 0.4mg qd Flomax | X 180 [signature] |
| 9/1/2020 1050 Noted q1-2020 @ q1-2020 1120 Q Gandhi | Refill request received, please advise pt saline spray, eye drops and lotion need to be purchased from commissary. 1) Senna Plus II PO QD PRN constipation x 30 tabs 2) Oystercal 1 tab PO QD x 90 days 3) Voltaren gel Use 4g to pain site QID PRN MAX 16g x 3 tubes 4) all others have valid Rx, need refills completed by pharmacy. | [signature] APRN, ONP-C |
| 9/7/2020 822 Noted [signature] 9/7/20 | Labs from 9/3/2020 Acceptable *Redo Ct, Ng, Trich vag ✓ 9/7/20 11A | [signature] MD |



VIRGINIA
DEPARTMENT OF CORRECTIONS
Health Services Complaint and Treatment Form 720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** *Lucas* (Last) *Casel* (First)    **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 8/7/20 | Pulm function test of 8/6/20 — | acceptable |
| noted 8/7/20 | 8/7/20 GP | Leon RN |
| 8/11/20 2:40 pm 97.9 96% 99 P 114/80 (cold coffee) | To review PFT. Feels pretty good & used nasal spray (lots of help opens sinuses & no epistaxis) + inhaler. Not exercising but plans to walk. NAD &250& & cough. Airpasses H&222 clear full resp. & prolong expir. Smoker's lungs, gas exposure. Will avoid severe heat & overexertion. Use albuterol continuously & Xopenex prn. Also, QA request STD screen, ne. Ostas HIV screen, RPR, Chlamydia & Trichomoniasis | Feels pretty good & Leon RN |
| noted 8/11/20 GP HP | | |
| 8/12/2020 1352 | 8/4/2020 Labscreen for COVID negative | |
| noted 8/17/20 GP | Acceptable lab | SRein APRN, DNP-C |
| | 5P | |
| 8/18/2020 0900 95y 97.8 T 114/76 HR 68 RR 16 | Pt seen to release Quarantine, no S/s of COVID. No temp 14 days complete release from quarantine Isolation no longer needed, Neg COVID screen | SRein APRN, DNP-C |
| | noted 8/18/20 0943 Am Lucas | |
| 8/18/20 730 pm | Spoke c Sgt Young, in RHU concerning release release — | Lucas |



VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form  720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:**      HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:**   LUCAS _Last_   CASEL _First_    **Number:** 10 8 0673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 7/23/2020 9408 99.3, 94, 96% 18, 153/91 | Pt seen and screened for symptoms of COVID s/p med run. Pt has been in medical Isolation since his run. Denies all symptoms of COVID-19 CVS: S, 4S, Lungs: CTABL Asymptomatic *Release back to compound | Adraulf MD |
| 7/27/2020 951 | *Renew Amlodipine 10mg PO q day x 180 days *Renew Xopenex 45 mcg 5 puffs q id PRN SOB x 180 days *Renew Atrovent 1ml 2 puffs q id PRN SOB x 180 days *Renew Atenolol 50mg PO BID x 180 days | Adraulf MD |
| 7/29/2020 1355 | Reviewed results CXR dated 7/28/2020 - no acute finding - Acceptable | Sclera APRN, DNP-C |
| 7/28/20 2000 | Offender requesting renewal of Senna plus. Chart to MD/NP. | K Langford, RN |
| 7/28/20 | Per Derm consult of 7/9/20 - advised Clinda gel, No additional lotions (Schron?) No chronic ? BS ? tented u Lengos & occasional ? Rx Senna Plus 2 po q pm x 30 D | Schron MD |
| 8/4/2020 | Ey, Exam Today | [signature] |



**VIRGINIA
DEPARTMENT OF CORRECTIONS**

Health Services Complaint and Treatment Form  720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:**  HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** _Lucas_ (Last)   _Casel_ (First)   **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 7/20/20 2PM | Notes from Pulm & Derm reviewed. Pulm on 7/16/20 = ? COPD. Schedule PFTs & COVID test ordered. CXR & Theophase ordered. Increased Omeprazole 20mg BID x/Pod. Keep Pulm appt. | |
| Noted Johnson 7/20/20 | Derm — 3 macules — hyperpigmented. Possibly 2ary to folliculitis — Cleocin T Clindamycin 1% gel qd.   No follow up V Derm | |
| | | Lewis MD |
| 7/21/20 1000 AM 982 89 94% 16 Noted Johnson 7/21/20 | Reviewed Pulm & Derm consults. Discussed need to outpatient testing (PFT, Theophase echo) at hospital. On get C/o at HCC. Will inquire about pulm referral. Reviewed skin — draw orders. No more new findings on Derm eval. All questions answered. | Lewis, MD |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

COPY

Cabel F. Lucas
VDP# 1032673
Port Clean
NON Complaince to Stipulated Agreement
Exthibits 73

# EXHIBIT
# 8

Medical Records from VADOC Treatment
of my Military Service Connected Disabilities
and Diagnosis Treatment of Medical Diseases and
Injuries from my 25 years of Continuous Incarceration

Lung, Heart, Diabetes, HTN,

# Chronic Disease Clinic Follow-Up
## HAYNESVILLE CORRECTIONAL CENTER

Offender Name: _LUCAS, CASEL_

Number: _1080673_

**List chronic diseases:**

| 1) HTN | 3) COPD | 5) BPH |
| 2) DM-2 | 4) I.B.D | 6) PTSD |

**List current medications:** _____

_See MAR (attached)_

**Subjective: (Yes or No)**

Asthma: # attacks in last month? _____ ∅
# short acting beta agonist canisters in last month? _____
# times awakening with asthma symptoms per week? _∅_
Any wheezing? _N_ Any night sweats? _∅_
Any systemic steroids use? _N_ Any hemoptysis? _N_

Seizure disorder: # seizures since last visit? _____
Diabetes mellitus: # of hypoglycemic reactions since last visit? _____
Any polyuria? _____ Any nocturia? _____ Any orthopnea? _____
Weight loss/gain ↓↑ _____ #lbs
Palpitations? _N_ Ankle or leg edema? _N_

(CV) Hypertension (Y/N): Chest pain? _N_ | SOB? _N_

Any dizziness since last appointment? _N_ Any foot problems since last appointment? _N_
Any blurred vision? _N_ Any claudication? _N_ Any headaches? _N_ Any nausea/vomiting? _N_
Rashes/Lesions? _N_ Any abdominal pain/swelling? _N_ Diarrhea? _N_

For all diseases, since last visit, describe new symptoms:
_COVID-19 neg 8/4/2020_
_Echo done. 8/21/2020: EF 68%_
_Mild pulmonic regurg. Mild Tricuspid regurg. Mild ⊕ atrial enlargement._
_Possible outlet vsb._

**Patient adherence (Y/N): with medications?** _Y_ with follow up appointments? _Y_ with diet? _Y_
**Vital signs:** Temp _98.6_ BP _105/68_ Pulse _61_ Resp _18_ Wt _203_ PEFR _____ Pain scale _____

**Past Labs:**
Hgb A1C _7.5 95%_ BMP _____ CMP _6/2020_ INR _____ CD4 _-_ Total Chol _90_ LDL _30_ HDL _40_
Trig _101_ Hct _52.3_ Hgb _16.9_ AST _19_ ALT _29_ BUN _11_ Creatinine _1.04_
Micro albumin _____ UA _wbc_ CBC _6/8_ EKG _3/2020 wNL_ LFT _____
Drug level: _____ Other: _____ Fibroscan score: _____

Range of fingerstick glucose: _____ BP monitoring range: _90 -196 mg/dL_
_90/68, 130/84._

**Procedure:**
Annual Funduscopic eye exam completed ☐ Yes ☐ No ☑ N/A
Annual dilated eye exam completed ☐ Yes ☐ No ☑ N/A
Annual foot exam completed ☐ Yes ☐ No ☑ N/A
E:

| HEENT/neck: NC/AT, EOMI, PERRLA, ∅ bruits | Extremities: ∅ edema |
| Heart: S₁+S₂ No RMG | Neurological: CN2-12 grossly intact |
| Lungs: CTA BL | GU/rectal: deferred |
| Abdomen: Soft NT/ND, BSt | Other: |

**Assessment Diagnosis:**

| | | Degree of Control | | | | Clinical Status | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | G | F | P | NA | I | S | W | NA |
| 1 | HTN | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 2 | DM-2 | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 3 | COPD | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 4 | BPH | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |

LUCAS, CASEL

1080673

**Plan/Orders:**

Medication: _____

Diagnostics/Procedures: _MAR 2021: EKG_ ✓

Labs: _DEC: CBC, CMP, lipids, HbA1c, B12, folate, UA, vitD, PSA._ ✓

Special needs: _____none_____   Work Code _____

☑ Administer Influenza vaccine   ☐ Administer Pneumonia vaccine
                92 months

**Monitoring:** BP: _____ X day/week/month   Accucheck: _____ X day/week/month   Peak flow: _____

Offender questioned regarding presence of depression and suicidal thoughts while on seizure therapy? ☐ Yes  ☐ No  ☐ N/A

**Education provided:** ☐ Nutrition  ☐ Exercise  ☐ Smoking  ☑ Test results  ☑ Medication management  ☐ Lab results
☑ Disease process

**Referral:** (list type & priority level): Specialist: _____

**# Days to next visit?** ☐ 1 year  ☑ 180  ☐ 90  ☐ 60  ☐ 30  ☐ Other: _____

**Additional information:**

**GTRD** _____11/4/2026_____

**LOC** _____D_____

**MED** ___A, 11, 12, 3, 4, 8A, 9___

**MH** _____2_____

COPY

| Provider Signature: | Adnan Huo | Date: | 9/14/2020 |

I copy

## VCU Medical Center

*Printed:* 10/8/20 10:44 AM
*By:* HAYES (REFH015), BRITNEY

### Pulmonary OP Estab Visit

LUCAS, CASEL
**Age:** 51Y   **Gender:** M   **DOB:** 08/08/1969   **MRN:** 4369269   **Phone:** 8043333577

Date/Time 09/10/20 10:45am      Author MYTINGER, ANDREA      Status Preliminary      Source VCUHL7

PCP:MATHEW MD, ALEXANDER
Visit conducted via telephone in light of COVID-19 pandemic. Haynesville Correctional Center. 804-250-4136
Reason for Follow Up: dyspnea on exertion, reactive airways disease
CC: I'm feeling better.
HPI: 51 yo male with ho HTN, GERD, allergic rhinitis, and reactive airways disease in the setting of multiple military gas inhalational exposures
who is scheduled for follow up. last seen by me 7/16 with plan to obtain PFTs and better control GERD, PPI increased to BID dosing.
since last visit, patient is feeling better. states his chest isn't as tight as it used to be. breathing is improved though still having to use inhalers
(xopenex and atrovent) at least 3 times daily. still with nasal congestion. congestion is daily. using nasal spray (saline and flonase). also taking
singulair. has never been on allergy pill.
increase in PPI dosing has helped with acid reflux and dyspnea.
Social History:
direct exposure to burn pits and saren gas with chemicals to make mustard gas x 3 times monthly.
destroying weapons of mass destruction, without masks as the time, exposed to mustard gas, saren gas
updated smoking history: occasional marijuana, smoked 6 years, a pack would last around 3 days at least.
ROS: Complete systems review performed, please see HPI for pertinent positives and negatives
Medical History:
- Problem List (Active Medical Only) This information was current as of 09/10/20 @ 10:46:00.


Active:
-BP+ - Hypertension
-DM - Diabetes mellitus
-Pain with urination
-Urinary frequency
-Urinary hesitancy
- reactive airways disease
- allergic rhinitis


Home Medications  This information was current as OF 09/10/20 @ 10:57:00.

Prescriptions Documented Meds By Hx:
-amlodipine(Hx): 10 mg, PO, daily
-atenolol(Hx): 50 mg, PO, twice daily
-bisacodyl (bisacodyl 5 mg oral delayed release tablet)(Hx): 5 mg, PO, daily
-calcium carbonate (Oyster Shell 500 (1250 mg calcium carbonate) oral tablet)(Hx): 1,250 mg, PO, daily
-chlorthalidone (chlorthalidone 25 mg oral tablet)(Hx): mg, PO, daily
-diclofenac topical (diclofenac 1% topical gel)(Hx): 4 g, Topical, four times daily, as needed, as needed for pain
-docusate-senna (Senna Plus)(Hx): PO, bedtime
-duloxetine(Rx): 60 mg, PO, daily
-emollients, topical (DermaCerin topical cream)(Hx): 1 application, Topical, twice daily
-emollients, topical (Hydrocerin)(Hx): Topical
-finasteride(Hx): 5 mg, PO, daily
-fluticasone nasal(Hx): Nasal, daily
-fluticasone-salmeterol (Advair HFA 45 mcg-21 mcg/inh inhalation aerosol)(Hx): Inhalation, twice daily
-fluticasone-salmeterol (Advair HFA 45 mcg-21 mcg/inh inhalation aerosol)(Rx): 2 PUFF, Inhalation, twice daily
-gabapentin(Hx): 200 mg, PO, twice daily
-gabapentin (gabapentin 100 mg oral capsule)(Rx): 200 mg, PO, four times daily
-glipizide(Hx): 5 mg, PO, twice daily



# VCU Medical Center

Printed: 10/8/20 10:44 AM
By: HAYES (REFH015), BRITNEY

## Pulmonary OP Estab Visit

**LUCAS, CASEL**

Age: 51Y    Gender: M    DOB: 08/08/1969    MRN: 4369269    Phone: 8043333577

Date/Time 09/10/20 10:45am      Author MYTINGER, ANDREA      Status Preliminary      Source VCUHL7

-hydroxyzine(Hx):  25 mg, PO, four times daily, as needed, as needed for anxiety
-ipratropium (Atrovent HFA)(Hx):  Inhalation, four times daily
-ipratropium (Atrovent HFA 17 mcg/inh inhalation aerosol)(Rx):  2 PUFF, Inhalation, four times daily
-levalbuterol (Xopenex HFA 45 mcg/inh inhalation aerosol)(Hx):  2 PUFF, Inhalation, four times daily, as needed, as needed for wheezing
-linaclotide (Linzess 145 mcg oral capsule)(Hx):  mcg, PO, daily
-mirtazapine(Hx):  45 mg, PO, bedtime
-montelukast(Hx):  10 mg, PO, daily
-omeprazole(Hx):  20 mg, PO, daily
-oxybutynin(Hx):  5 mg, PO, three times a day
-polycarbophil (Fiber Laxative)(Hx):  0.52 gm, PO, daily
-rosuvastatin(Hx):  10 mg, PO, bedtime
-saliva substitutes (Biotene Mouthwash)(Hx):  2 sprays, PO, daily, as needed, as needed for dry mouth
-tamsulosin(Hx):  0.4 mg, PO, daily
-tetrahydrozoline ophthalmic (Visine)(Hx):  2 Drops, Both Eyes, twice daily, as needed, as needed for dry eyes
-trazodone(Hx):  50 mg, PO, bedtime


Allergies as charted in the allergies profile as of 09/10/20 11:16:13.
  lithium - Hives, Hypertension
  Trilafon - Hives
  valproic acid - Hives


Physical Exam:
deferred given telephone visit
Labs:
Cr 0.9
Imaging:
CXR: none in system
CT: A/P from 8/2019 available.  lung bases with mild bronchiectasis, otherwise unremarkable
TTE: patient declined to show to last appointment
PFT: 8/2020
[IMAGE REMOVED]
[IMAGE REMOVED]
Sleep Study:  none in system
Assessment/Plan: 51 yo male with ho HTN, GERD, allergic rhinitis, and reactive airways disease in the setting of multiple military gas
inhalational exposures who is scheduled for follow up.
>>reactive airways disease:  in the setting of multiple military gas exposures.  PFTs consistent with mild obstruction, symptoms relieved with
BDs though not BD responsive.  given obstruction on PFTs, please add on LAMA such as tiotropium or equivalent.  can dc atrovent once LAMA
added.  continue advair and PRN xopenex.
- pending symptoms at follow up visit, will consider CT imaging.  CXR not performed, patient not wanting to come to MCV if can avoid it

>>PND, lower extremity edema:  as per reported at last visit.  no showed TTE yesterday.  patient and nurse informing me that ultrasound tech
will be present at facility tomorrow.  please obtain full transthoracic echocardiogram, will also place order in cerner.

>>GERD:  symptoms improved, continue BID PPI



**VCU** Medical Center

*Printed:* 10/8/20 10:44 AM
*By:* HAYES (REFH015), BRITNEY

### Pulmonary OP Estab Visit

LUCAS, CASEL

Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 09/10/20 10:45am   Author MYTINGER, ANDREA   Status Preliminary   Source VCUHL7

>>allergic rhinitis: still with daily rhinitis. on singulair, ocean nasal spray and singulair. please add on anti-histamine such as cetirizine or equivalent.

RTC 4 months.

Discussed with Dr. Fowler, pulmonary attending.

Andrea Mytinger, DO
Pulmonary/Critical Care Fellow


=====================================================================
PERFORM Performed By: ANDREA KATHERINE MYTINGER 20200910110018 is COMPLETED
MODIFY Performed By: ANDREA KATHERINE MYTINGER 20200910110555 is COMPLETED
SIGN Performed By: ANDREA KATHERINE MYTINGER 20200910112836 is COMPLETED
MODIFY Performed By: ANDREA KATHERINE MYTINGER 20200910112836 is COMPLETED

Author: MYTINGER, ANDREA
Pulmonary OP Estab Visit



Page 3 of 3

## VCU HEALTH SYSTEM

| | | | | | |
|---|---|---|---|---|---|
| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: 2.08 | Date: 08/06/2020 |
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: 50 | DOB: 08/08/1969 |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: Male | Race: Black |

Diagnosis: R06.0
Tbco Prod:                 Yrs Smk:           Pks/Day:              Yrs Quit:
Medications:

Pre Test Comments:

Post Test Comments:    Inconsistant patient effort and cooperation ; results did not meet ATS criteria for
acceptability and repeatability. Post-bronchodilator completed after 2.5 mg albuterol
nebulized.    Inspiratory volume < 90% VC on DLCO attempted mesurement not
reportable .

| | Pre-Bronch | | | Post-Bronch | | |
|---|---|---|---|---|---|---|
| | **Actual** | **Pred** | **%Pred** | **Actual** | **%Pred** | **%Chng** |
| **---- SPIROMETRY ----** | | | | | | |
| FVC (L) | 4.68 | 4.50 | 103 | 4.57 | 101 | -2 |
| FEV1 (L) | 3.16 | 3.60 | 87 | 2.97 | 82 | -6 |
| FEV1/FVC (%) | 68 | 80 | 84 | 65 | 81 | -3 |
| FEF 25% (L/sec) | 5.66 | 7.82 | 72 | 4.44 | 56 | -21 |
| FEF 50% (L/sec) | 2.63 | 4.73 | 55 | 2.25 | 47 | -14 |
| FEF 75% (L/sec) | 0.65 | 1.69 | 38 | 0.58 | 34 | -11 |
| FEF 25-75% (L/sec) | 1.88 | 3.53 | 53 | 1.68 | 47 | -10 |
| FEF Max (L/sec) | 5.72 | 9.33 | 61 | 4.44 | 47 | -22 |
| FIVC (L) | 4.48 | | | 3.79 | | -15 |
| FIF Max (L/sec) | 4.56 | | | 2.43 | | -46 |
| FIF 50% (L/sec) | 4.54 | 4.98 | 91 | 2.24 | 44 | -50 |
| Expiratory Time (sec) | 7.03 | | | 6.37 | | -9 |
| | | | | | | |
| **---- LUNG VOLUMES ----** | | | | | | |
| SVC (L) | 5.03 | 4.49 | 112 | | | |
| IC (L) | 1.53 | 2.96 | 51 | | | |
| ERV (L) | 3.49 | 1.53 | 228 | | | |
| TGV (L) | 5.34 | 3.53 | 151 | | | |
| RV (Pleth) (L) | 1.84 | 2.00 | 92 | | | |
| TLC (Pleth) (L) | 6.87 | 6.48 | 105 | | | |
| RV/TLC (Pleth) (%) | 27 | 30 | 90 | | | |
| Trapped Gas (L) | | | | | | |

Post-Test Comments:

Inconsistant patient effort and cooperation ; results did not meet ATS criteria for acceptability and repeatability.  Post-bronchodilator
completed after 2.5 mg albuterol nebulized.    Inspiratory volume < 90% VC on DLCO attempted mesurement not reportable .

Complete w/Interp                                                                                                         Page 1 of 3

# VCU HEALTH SYSTEM

| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: | 2.08 | Date: | 08/06/2020 |
|-------|--------------|-----|---------|------|------|-------|------------|
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: | 50 | DOB: | 08/08/1969 |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: | Male | Race: | Black |



Graphs FVC/DLCO/FRC

## VCU HEALTH SYSTEM

| | | | | | | |
|---|---|---|---|---|---|---|
| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: | 2.08 | Date: 08/06/2020 |
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: | 50 | DOB: 08/08/1969 |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: | Male | Race: Black |

Spirometry reveals mild obstructive lung disease. Lung volumes are within normal limits. The flow volume loop indicates obstructive lung disease. Interpret with caution given the patietn'sdifficulty with performance of pulmonary function studies.

Alpha A. Fowler, III, MD, #8510
««This interpretation has been electronically signed: Fowler, Alpha 08/10/2020 02:52:52 PM»»

## VCU Medical Center

Printed: 10/19/20 11:20 AM
By: HAYES (REFH015), BRITNEY

**CV: Echo Transthoracic-Adult**

LUCAS, CASEL
Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577
Date/Time 10/16/20 02:14pm   Author MYTINGER, ANDREA   Status Auth (Verified)   Source VCUHL7

VCU Medical Center
1200 E. Marshall Street
Richmond, VA 23298
Phone: 804-828-9986

Transthoracic Echocardiography Report
Name: LUCAS, CASEL         Study Date: 10/16/2020 02:14 PM
Attending Physician: MYTINGER,
ANDREA                    Accession#: AH2026003
MRN: 4369269              Patient Location: KAHS...VCUHS
DOB: 08/08/1969           Gender: Male
Age: 51 yrs               BP: 129/93 mmHg
Height: 71.5 in           Weight: 201 lb

BSA: 2.1 m2
Heart Rate: 58
Reason For Study: Dyspnea
History: Hypertension, diabetes
mellitus

PROCEDURE
Procedure(CPT Code): TTE Complete (93306-26) 2D with Doppler and Color Flow:
No add on codes required).

Interpretation Summary
Normal left ventricular dimensions with normal segmental function, ejection
fraction, global longitudinal strain, and diastolic function.
The right ventricle is normal in size and function with mildly elevated
systolic pressure.
Normal valves.
Normal atrial and inferior vena caval dimensions.



LEFT VENTRICLE
Normal left ventricular dimensions with normal segmental function, ejection
fraction, global longitudinal strain, and diastolic function. LV ejection
fraction = 60%.

RIGHT VENTRICLE
The right ventricle is normal in size and function.



LEFT ATRIUM
The left atrial size is normal.

RIGHT ATRIUM

Page 1 of 4

# VCU Medical Center

Printed: 10/19/20 11:20 AM
By: HAYES (REFH015), BRITNEY

## CV: Echo Transthoracic-Adult

LUCAS, CASEL
Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577
Date/Time 10/16/20 02:14pm   Author MYTINGER, ANDREA   Status Auth (Verified)   Source VCUHL7

Right atrial size is normal.

**AORTIC VALVE**
The aortic valve is normal in structure and function.

**MITRAL VALVE**
Structurally normal mitral valve with trivial regurgitation.

**TRICUSPID VALVE**
Structurally normal tricuspid valve with mild regurgitation. Tricuspid
regurgitation peak velocity is 2.8 m/sec. Estimated right atrial pressure is 5
mmHg. Estimated right ventricular systolic pressure is 36 mmHg. Mild elevation
of right ventricular systolic pressure.

**PULMONIC VALVE**
Structurally normal pulmonic valve. Trace pulmonic valvular regurgitation.

**ARTERIES**
The aortic root is normal size. The proximal ascending aorta appears normal.
The transverse aorta appears normal. The proximal decending aorta appears
normal. The pulmonary artery is normal size.

**VENOUS**
The inferior vena cava is normal in size.

**EFFUSION**
Insignificant pericardial effusion or subepicardial fat.
Normal Values
IVSd: 0.7cm - 1.2cm  LVIDd: 3.5cm - 5.5cm    LVIDs: 2.5cm - 4.0cm
LVPWd: 0.7cm - 1.1cm LA: 1.9cm - 3.8cm    Ao: 2.0cm - 3.7cm
EF: (55 - 75%)    LA Area: <>    RA Area: <>
RVd: 4.3cm    LV Mass(Men): <>    LV Mass(Women): <>
        LV Mass Index(Men): <116g>  LV Mass Index(Women): <96g>

MMode/2D Measurements \T\ Calculations
RVDd: 3.7 cm    LVIDd: 4.8 cm    LV mass(C)d: 144.5 grams
IVSd: 0.85 cm    LVIDs: 3.4 cm    LV mass(C)di:
        LVPWd: 0.91 cm    68.0 grams/m2



Ao root diam: 3.6 cm  asc Aorta Diam: 3.0 cm    LA/Ao: 0.74
LA dimension: 2.7 cm  desc Ao Diam: 1.4 cm    LVOT diam: 2.3 cm

COPY

MPA diam: 1.8 cm    LVLs ap4: 7.2 cm    TAPSE: 1.7 cm

# VCU Medical Center

Printed: 10/19/20 11:20 AM
By: HAYES (REFH015), BRITNEY

## CV: Echo Transthoracic-Adult

LUCAS, CASEL

Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 10/16/20 02:14pm   Author MYTINGER, ANDREA   Status Auth (Verified)   Source VCUHL7

IVC Diam_: 1.4 cm   RA ESA: 14.4 cm2   LA A4Cs: 15.7 cm2

LA ESV (MOD-BP):   LA volume MOD BP Indexed:
44.0 ml
            20.7 ml/m2

Time Measurements
Aortic R-R: 1.0 sec
Aortic HR: 59.0 BPM

Doppler Measurements \T\ Calculations
MV E max vel: 46.2 cm/sec MV dec slope: 145.5 cm/sec2Ao V2 max: 89.5 cm/sec
MV A max vel: 39.9 cm/sec MV dec time: 0.32 sec   Ao max PG: 3.0 mmHg
MV E/A: 1.2                     Ao V2 mean: 62.2 cm/sec
                               Ao mean PG: 1.8 mmHg
                               Ao V2 VTI: 19.5 cm
                               AVA(I,D): 3.1 cm2

                               AVA(V,D): 3.2 cm2

LV V1 max PG: 2.0 mmHg   CO(LVOT): 3.5 l/min   TR max vel: 278.3 cm/sec
LV V1 mean PG: 1.0 mmHg   SV(LVOT): 60.1 ml   TR max PG: 31.3 mmHg
LV V1 max: 71.1 cm/sec
LV V1 mean: 47.2 cm/sec
LV V1 VTI: 15.0 cm

AV VR: 0.79   MV P1/2t-pr_: 93.0 msec   RV S Vel: 9.4 cm/sec
AVA(VTI)/BSA: 1.5

MV LAT E': 10.3 cm/sec   MV LAT E/E': 4.5   MV MED E': 8.8 cm/sec

MV MED E/E': 5.2

Electronically Signed By:
        Walter Paulsen, MD  on 10/17/2020 03:52 PM
Performed By: Cara Martin
MRN: 4369269
Please click on link to see image.

**VCU** Medical Center

*Printed:* 10/19/20 11:20 AM
*By:* HAYES (REFH015), BRITNEY

## CV: Echo Transthoracic-Adult

LUCAS, CASEL

Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 10/16/20 02:14pm     Author MYTINGER, ANDREA     Status Auth (Verified)     Source VCUHL7

=================================================================

ORDER Performed By: ANDREA KATHERINE MYTINGER 20201016141446 is COMPLETED
PERFORM Performed By: WALTER H.J. PAULSEN 20201016141446 is COMPLETED
VERIFY Performed By: WALTER H.J. PAULSEN 20201016141446 is COMPLETED

Author: MYTINGER, ANDREA
CV: Echo Transthoracic-Adult





CABEL F. LUCAS

VOP # 1080073

Tort Claim

NON Compliance of Stipulated Agreement

Exhibits

Exhibit

# 14

Regional Director Appeal
Reasonable Accomodation Denial



## COMMONWEALTH OF VIRGINIA
### Department of Corrections
*Division of Operations*
*Eastern Region*

Gregory L. Holloway
Regional Operations Chief

14545 Old Belfield Road
Capron, VA 23829
(434) 658-4368

July 2, 2020

C. Lucas 1080673
Haynesville Correctional Center
P.O. Box 129
Haynesville, Virginia 22472

Dear C. Lucas:

*[handwritten: You Never read any of the Documents I sent to you in this envelope. There were 2 Grievances 2 were for you to review the Intake Decision]*

Although your concerns are appreciated and noted, there was no evidence enclosed to suport the proper utilization of the *Offender Grievance Procedure (OP 866.1)*. In addition, HCC20-REG-00046 is due a response to you on July 5, 2020. Please note the below information wich you can use as guidance when attempting to have your issues addressed via the grievace procedure.

*[handwritten: No Evidence Really All the Evidence to the North your Stamp]*

Before a grievance issue can be reviewed outside the institutional level, an exhaustion of that level must be demonstrated which begins with the submission of an informal complaint. If the staff fails to respond, you can still choose to submit your regular grievance to the Institutinal Ombudsman by attaching the complaint form and/or receipt with the grievance. If aff determines that your *grievance* does not meet the intake criteria, you can *then* forwardthe package to this office for appeal review. If no receipt was issued to you within two woing days, then you are advised to speak with your Unit Manager either in person or via request rm so that he/she can inquire into the status of your document(s). Please utilize the procare designed to investigate and bring resolution to grievable matters. With only a few excepts, remember grievances must be filed within thirty days from date of occurrence of the alled incident.

If you have questions regarding filing procedure, you may direct them to the Grievance st at your facility and/or refer to OP 866.1.

Sincerely

K. Cosby, Regional Ombudsman
Eastern Regional Office

/kwc

*[handwritten: to put with Whorley etal. v. Northam etal Case No: 3:20cv00255 Stipulated Settlement Agreement]*

VIRGINIA
DEPARTMENT OF CORRECTIONS

Offender Request #01_F3_7-1

**Offender Request**

RECEIVED
JUN 01 2020
~~JACKSONVILLE~~
CORRECTIONAL
MAIL ROOM

JUN. 01. 2020

**DIRECTIONS**
1. Fill in your Name, Number, Full Housing Assignment
2. Please Print your request; KEEP IT BRIEF
3. Drop in the appropriate Mail Box

4. Requests may be returned unanswered if addressed to the wrong department or if duplicate requests are sent.

OPERATIONS OFFICE

| YOUR LAST NAME | FIRST | MI | NUMBER | BLDG/CELL |
|---|---|---|---|---|
| LUCAS | Casel | F | 1086673 | 2·A·38·B |
| WORK ASSIGNMENT | ASSIGNED COUNSELOR | | TODAY'S DATE | |
| 2·A·Unit Custodian | Ms. Robinson | | 1 July 2020 | |

TO: ☐ Unit Manager  ☐ Medical  ☐ Personal Property  ☐ Law Library  ☐ Security
☐ Treatment  ☐ Mental Health  ☐ Education  ☐ Enterprise Shop  ☐ Accounting
☐ Chaplain  ☐ Assistant Warden  ☐ Warden  ☒ Other  FACILITY ADA Coordinator

CHECK PURPOSE  ☐ Appointment Request  ☒ Question ☒ Statement  Mr. J. GREENWOOD

REASONABLE ACCOMMODATION REQUEST : I Am Disabled Veteran An Inmate with Disabl
I Am A Inmate with 15 military Disabilities that I Am Service Connected
For. Recently 80% Rating from the Veterans Affairs Board Veterans Appeals And
The Court of Appeals For Veterans Claims Certification 1) PTSD Mental Illnesses
2) Depression, 3) Anxiety 4) Anti Personality Disorders 5) Continuing Problem Must Wear A
ADULT Diaper 36 per costs 6) Deterioration Joint Disease both knees (7) DIP Joint
left & Right Hand, (8) Chronic Respiratory Illness & acutes Respiratory Disease
9) Diabetes.
My Request is to be Able To Participate In IERP
Release Program Due to my Chronic Disabilities

DO NOT ATTACH ADDITIONAL PAGES; DO NOT WRITE BELOW THIS LINE

**RESPONSE**

Request sent to correct department ☒ Yes ☐ No; Routed to: _____  Date: _____

You will need to speak to your Counselor.

A

Offender seen ☐ Yes ☒ No

[signature] Official Responding

6-2-2020
Date of Response



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Receipt

866.1 A-3

DOC Location: HCC Haynesville Correctional Center

Report generated by Hand, P W

Report run on 06/24/2020 at 10:29 AM

Grievance Number: <u>HCC-20-INF-01192</u>

Next Action Date: <u>07/09/2020 12:00 AM</u>

| On this date: | 06/24/2020 | | I have received a statement from: |
|---|---|---|---|
| | | | Haynesville Correctional Center |
| Lucas, Casel F | 1080673 | of | HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| R Brown, IO - Complaint about reasonable accommodations regard IERP. | | | |
| P Hand | | | 6SS |
| *(Signature)* | | | *(Title)* |

Rev. 03/30/2009

*DO NOT RETURN This Because of the Attachment MUST be included As Proof of Request the Reasonable Accommodations As In DOP801.3 Demands. THIS IS An APPEAL To This Action*

VIRGINIA
DEPARTMENT OF CORRECTIONS                                    Informal Complaint 866 F3 4n7

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.

**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| Offender Name | Offender Number | Housing Assignment |
|---|---|---|
| Carol F. Lucas | 1080673 | 2.A.38.B |

Individuals Involved in Incident: Facility ADA Coordinator (Ms. Linnehood)     RECEIVED     Date/ Time of Incident

JUN 24 2020

☐ Unit Manager/Supervisor     ☐ Food Service          ☐ Institutional Program Manager
☐ Personal Property            ☐ Commissary            ☐ Mailroom
☐ Medical Administrator        ☐ Other (Please _____)    GRIEVANCE OFC

Briefly explain the nature of your complaint (be specific): A APPEAL FOR REASONABLE ACCOMMODATIONS REQUEST. I filed a Reasonable Accommodations REQUEST Asking for An DOP801.3 Accommodation to Be Made for ME. with the IERP Early Release Program Which is Discriminatory in Written language and being Practiced by VADOC N$\ldots$ville Employees by Not Addressing my REASONABLE ACCOMMODATION REQUEST Properly by the facility ADA Coordinator. The REQUEST I sent is Attached Showing and Proving I MADE the Written REQUEST As Policy Dictated Yet then Correct Action Was Not Taken.

Offender Signature: Carol F. Lucas          Date: 21 of June 2020

---

**Offenders - Do Not Write Below This Line**

Date Received: 6-24-2020                         Tracking # HCC 20-INF-01192

Response Due: 7-9-2020          Assigned to: R. Brown IO

Action Taken/Response:

_____

_____

_____

_____

_____

_____

_____

Respondent Signature _____  Printed Name and Title _____  Date _____

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____  Date: _____

Staff Witness Signature: _____  Date: _____

Witness by Staff as Submitted to Ombudsman $\ldots$

Revision Date: 4/28/17

CASE F. LUCAS

VSP# 1082613

Tort Claim

NON Compliance To Stipulated Settlement

EXHIBIT

EXHIBIT
#
10

Grievances Discrimination IERP

Alcc-20-Inf-01137    IERP Discrimination

Alcc-20-Inf-01192    IERP Reasonable accomodation

Alcc-20-Inf-00706    Food Service Contamination

Alcc-20-Inf-00545    Staff Refusal To Wear PPE

Alcc-20-Inf-00585    C/o RARKS Refusal To Breathing Treatments

Alcc-20-Inf-00359    A. Bennett Warden Parole Board Denial
                      Request Early Release Under COVID-19



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Receipt Report

VACORIS C - #.0

DOC Location: HCC Haynesville Correctional Center

Report generated by Brown, R T

Report run on 04/28/2020 at 04:01 PM

Grievance Number: HCC-20-INF-00706

Next Action Date: 5/13/2020 12:00:00 AM

| On this date: | 04/28/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | 1080673 | of | Haynesville Correctional Center |
| | | | HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| He states he was denied food because he was in Medical being triaged and 6A was in the chow on B-side while their building was being decontaminated. He states he decided not to get his meal because of this; therefore, he was denied a meal. ( Rose T. Brown, IO) | | | |
| *Rose T Brown* | | | IO |
| *(Signature)* | | | |

Officer Initials: _____



VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

CABEL F. LUCAS                    1080013                    2-A-38-B
Offender Name _____   Offender Number _____   Housing Assignment _____

Food Service Supervisor, Security Hre, Administration          24 April 2020   10:41 Am
Individuals Involved in Incident _____   Date/ Time of Incident _____

☐ Unit Manager/Supervisor      ☒ Food Service
☐ Personal Property            ☐ Commissary            ☐ Institutional Program Manager
☐ Medical Administrator        ☐ Other (Please Specify):  ☐ Mailroom

Briefly explain the nature of your complaint (be specific): Denied Food + Food Service Housing 6-A Inmates in chem He
at 1030 Am Friday 24 April 2020. After my Medical Treatment I Witnessed inmates
from Housing Unit 6-A Being moved within B Side Chow Hall. This is a Food
Service Hazzard. The Potiential Contamination of the Food, Food Equipment, Food Service Personnel
to cross Contaminate the Trays being Prepared for Lunch the Trays arrived at my
Dorm at 11:17 Am. The Chow Hall still had inmates from 6-A inside without being
Properly Decontaminated, Sterilized, & Sanitized. I'm left Sick wards with Chronic Sinus Disease Upper Recurrent
Hypertension, Diabetic, Heart Condition. I Had to Refuse the Meat, Penalment, Nutrition & Service Prefered Infection
Offender Signature Cabel F. Lucas                    Date 24 April 2020  Violations Satisfactory

---

**Offenders - Do Not Write Below This Line**

Date Received: _4-28-20_                          Tracking # HCG20-INF-00706

Response Due: _5-13-20_            Assigned to: Bosct Brown, FO

Action Taken/Response:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Respondent Signature          Printed Name and Title          Date

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____
Staff Witness Signature: _____   Date: _____
                                                    Date: _____

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

**Grievance Receipt**

866.1 A-3
DOC Location: HCC Haynesville Correctional Center
Report generated by Hand, P W
Report run on 06/24/2020 at 10:29 AM

Grievance Number: <u>HCC-20-INF-01192</u>

Next Action Date: <u>07/09/2020 12:00 AM</u>

| On this date: | 06/24/2020 | I have received a statement from: | |
|---|---|---|---|
| Lucas, Casel F | 1080673 | of | Haynesville Correctional Center HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| R Brown, IO - Complaint about reasonable accommodations regard IERP. | | | |
| P Hand | | 65S | |
| *(Signature)* | | *(Title)* | |

Rev. 03/30/2009

*Do Not Return This because of the Attachment must be included as Proof of Request the Reasonable Accommodation informal Complaint 866 1/3 4-17 as in DOP801.3 Demands. This is an Appeal to this Action*

VIRGINIA
DEPARTMENT OF CORRECTIONS

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

Offender Name: Abel F. Lucas
Offender Number: 1080673
Housing Assignment: 2-A-38-B

Individual/Involved in Incident: Facility ADA Coordinator Ms. Emma Shoe

RECEIVED

Date/Time of Incident: 2 June 2020

JUN 2 4 2020

GRIEVANCE OFFICE

☐ Unit Manager/Supervisor      ☐ Food Service          ☐ Institutional Program Manager
☐ Personal Property            ☐ Commissary             ☐ Mailroom
☐ Medical Administrator        ☐ Other (Please          )

Briefly explain the nature of your complaint (be specific): Appeal for Reasonable Accommodations REquest I filed. A Reasonable Accommodation REquest asking for An DOP801.3 Accommodation to Be Made for ME, with the IERP Early Release Program Which is Discriminatory in Written language and being Practiced by VADOC Haynesville Employees by Not Addressing my Reasonable Accommodation Request Properly by the facility ADA Coordinator. The REquest I sent is Attached Showing And Proving I Made the Written REquest as Policy Directed Yet the Correct Action was Not taken.

Offender Signature: Abel F. Lucas          Date: 21 June 2020

---

**Offenders - Do Not Write Below This Line**

Date Received: 6-24-2020                    Tracking # HCC 20-INF-01192
Response Due: 7-9-2020          Assigned to: R. Brown IO
Action Taken/Response:

_____

_____

_____

_____

_____

_____

Respondent Signature _____    Printed Name and Title _____    Date _____

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____

Staff Witness Signature: _____ Date: _____

Witness by Staff as Submitted to Ombudsman and a copy.          L.T. V.C.

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Receipt

866.1 A-3
DOC Location: HCC Haynesville Correctional Center
Report generated by Hand, P W
Report run on 06/16/2020 at 03:59 PM

Grievance Number: <u>HCC-20-INF-01137</u>

Next Action Date: <u>07/01/2020 12:00 AM</u>

| On this date: | 06/16/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | 1080673 | of | Haynesville Correctional Center |
| | | | HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| S Westman - Complaint about IERP has no mention to include offender with disabilities. | | | |
| *PHand* | | *OSS* | |
| *(Signature)* | | *(Title)* | |

Page 1 of 1

Rev. 03/30/2009

DEPARTMENT OF CORRECTIONS

*Informal Complaint 866_F3_4-17*

# Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.

**An Informal Complaint is not required for an alleged incident of sexual abuse.**

Offender Name: CASEL F. LUCAS

Offender Number: 1081693

Housing Assignment: 2·A·38·B

RECEIVED

Individuals Involved in Incident: Warden Nicks

Date/ Time of Incident: 2 Jun 2020

JUN 16 2020

By: GRIEVANCE OFFICE

☐ Unit Manager/Supervisor
☐ Personal Property
☐ Medical Administrator

☐ Food Service
☐ Commissary
☒ Other (Please Specify): Discrimination in IERP Program, Health Condition; Prior

☐ Institutional Program Manager
☐ Mailroom

**Briefly explain the nature of your complaint (be specific):** DISCRIMINATION AGAINST ME, Being Excluded in Class I Felonies and Violent Sex Offense is Discriminatory

The IERP HAS NO Mention to include Offenders with Disabilities as mandated Per (1) Americans with Disabilities ACT of 1990 as amended (42 U.S.C. §12101 et seq) (2) Virginia with Disabilities Act (Cov. §51.5-1 et seq.) (3) VADOC DOP 801.3 Managing Offenders with Disabilities. I seek a Reasonable Accommodations Request to Facility 501 Requesting that I C. Lucas Inmate with Disabilities be included into the IERP Program to go home. The 1 yr or less is irrelevant to The fact that I'm a parole eligible inmate every year I should be included especially with my Mental Health Disabilities and Chronic Surg Disease. Heart Conditions, Hypertension, and Diabetes. This is what VADOC Agreed to.

Offender Signature: Casel F. Lucas          Date: 14 Jun 2020

---

### Offenders - Do Not Write Below This Line

Date Received: 6-16-2020

Response Due: 7-1-2020

Action Taken/Response:

Tracking # HCC-20-INF-01137

Assigned to: S Westron IPM

---

Respondent Signature: _____     Printed Name and Title: _____     Date: _____

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____     Date: _____

Staff Witness Signature: _____     Date: _____

*Revision Date: 4/28/17*

Staff Witness I _____



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Receipt

866.1 A-3

DOC Location: HCC Haynesville Correctional Center

Report generated by Hand, P W

Report run on 04/13/2020 at 12:15 PM

Grievance Number: HCC-20-INF-00545

Next Action Date: 04/28/2020 12:00 AM

| On this date: | 04/13/2020 | | I have received a statement from: |
|---|---|---|---|
| | | | Haynesville Correctional Center |
| Lucas, Casel F | | 1080673 of | HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| Lt. Dobyns - Complaint officer was not wearing a mask during count on 4-11-2020. | | | |
| P Hand | | | DSS |
| *(Signature)* | | | *(Title)* |

Rev. 03/30/2009

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

RECEIVED

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
An Informal Complaint is not required for an alleged incident of sexual abuse.

GRIEVANCE OFFICE

| | | |
|---|---|---|
| CASEL F. LUCAS | 1080673 | 2-A-38-B |
| Offender Name | Offender Number | Housing Assignment |
| Unit Officer | | 11 April 2020   1-30 Am |
| Individuals Involved in Incident | | Date/ Time of Incident |

☐ Unit Manager/Supervisor      ☐ Food Service      ☐ Institutional Program Manager
☐ Personal Property            ☐ Commissary        ☐ Mailroom
☐ Medical Administrator        ☒ Other (Please Specify): Officer NOT WEARing MASK
during count at 630 AM.

Briefly explain the nature of your complaint (be specific):
On 11 April 2020, the Officer during count was asked
Why are you Mask. He Said He's didn't know -
NO - One Here is Sick, WE can only get it from
a Staff Member.

| | | |
|---|---|---|
| Offender Signature | Casel F. Lucas | Date 11 April 2020 |

### Offenders - Do Not Write Below This Line

| | | |
|---|---|---|
| Date Received: 4-13-2020 | | Tracking # HCC-20-INF-00545 |
| Response Due: 4-28-2020 | Assigned to: Lt Dobyns | |

Action Taken/Response:

_____

_____

_____

_____

_____

_____

| | | |
|---|---|---|
| Respondent Signature | Printed Name and Title | Date |

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____   Date: _____

Staff Witness Signature: _____   Date: _____

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Receipt

866.1 A-3
DOC Location: HCC Haynesville Correctional Center
Report generated by Hand, P W
Report run on 04/14/2020 at 10:25 AM

Grievance Number: <u>HCC-20-INF-00585</u>

Next Action Date: <u>04/29/2020 12:00 AM</u>

| On this date: | 04/14/2020 | | I have received a statement from: |
|---|---|---|---|
| | | | Haynesville Correctional Center |
| Lucas, Casel F | 1080673 | of | HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |

Setting out the following complaint:

Capt. White - Complaint about C/O Barns not letting him medical for breathing treatment.

| *(Signature)* | *(Title)* |
|---|---|
| *P Hand* | DSS |

**RECEIVED**

MAY - 7 2020

By:_____
GRIEVANCE OFFICE

Page 1 of 1

Rev. 03/30/2009



VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| Casey T. Lucas | 1080673 | 2-A-39-B |
|---|---|---|
| Offender Name | Offender Number | Housing Assignment |
| C/O Burns Medical Officer. | | 13 April 2020 1515 Hrs |
| Individuals Involved in Incident | | Date/ Time of Incident |

- [ ] Unit Manager/Supervisor
- [ ] Personal Property
- [ ] Medical Administrator
- [ ] Food Service
- [ ] Commissary
- [x] Other (Please Specify): C/O Burns Violated the HIPPA Law when I Requested a Breathing Treatment.
- [ ] Institutional Program Manager
- [ ] Mailroom

Briefly explain the nature of your complaint (be specific): On 13 April 2020 at 1515 Hrs, I Request to See Medical for a Breathing Treatment, C/O Ms. Davis Called Medical and was told by C/O Burns He was Busy Because all of the Nurses. Ms Davis told Lt Dodd she has call C/O Burns and was told the same thing I was sent by Ms Davis and when I got to Medical, I Bang on the Door for 10 minutes, Officer Burns Did not come to the Door. Ms Noel Report Officer Called Him Still No answer, I Returned to the Build. My Breathing Treatment is Prescribed to me by HIPPA Law. Security Cannot Dictate my Treatment, Nor Deny Me. This is Between Me and my Doctor.

| Offender Signature Casey T Lucas | 1080673 | Date 13 April 2020 |
|---|---|---|

---

### Offenders - Do Not Write Below This Line

| Date Received: 4-14-2020 | | Tracking # HCC-20-INF-00585 |
|---|---|---|
| Response Due: 4-29-2020 | Assigned to: Capt White | |

Action Taken/Response:

RECEIVED
MAY - 7 2020
By GRIEVANCE OFFICE

| Respondent Signature | Printed Name and Title | Date |
|---|---|---|

### WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____

Staff Witness Signature: _____ Date: _____

Revision Date: 4/28/17



VIRGINIA
DEPARTMENT OF CORRECTIONS

Emergency Grievance 866_F4_4-16

## Emergency Grievance   Log # __8951__

*Emergency Grievances* are provided for offender reporting and expedited staff responses to allegations that an offender is subject to a substantial risk of imminent sexual abuse and to situations or conditions which may subject the offender to immediate risk of serious personal injury or irreparable harm.

| LUCAS | CABEL | 1180673 | Hcc | 2-A-88-B |
|---|---|---|---|---|
| Offender Last Name | First | Number | Facility | Building-Cell/Bed |

### PART A- OFFENDER CLAIM

What is the emergency? On 13 April 2020 at 1515 hrs, I Requested that I
Goto MEDICAL for BREathing treatment By C/o Ms Davis. She Called and Spoke to
C/o BARNS. Refused Me my treatment Said He was Busy so were the Nurses.
The Lt Dobyns also Called him again. He Refuse. I was Sent By C/o Davis whom
I ARRived at Medical I Banged on the door for 10 minutes. C/o Barns
Refused to Come to the door. I told C/o Nolen Cell on Radio Still Did Not Come.
He violated the HIPPA Law. By Declaring what Medical type is sawed not my doctor.

13 April 2020 Date/Time 15:93 AR                    (X) Offender Signature and Number 1180673

### PART B- STAFF RESPONSE
(This part is to be completed and returned to the offender within eight (8) hours.)

☐ Your grievance does not meet the definition for an emergency.  Action Taken/Recommended:
  ☐ Submit Informal Complaint          ☐ Evaluated by Medical: Date Seen _____
  ☐ Submit Sick Call Request           ☐ Send an Offender Request To: _____
  ☐ Submit Request to Dental           ☐ Other  (Provide detailed explanation below)

_____

_____

☐ Your grievance has been determined to be an emergency and the following action has been taken:
  ☐ Sent to Hospital: Date Transported _____   ☐ Other  (Provide detailed explanation below)

_____

| Date/Time | Respondent Signature | Name/Title Printed |
|---|---|---|

☐ **PREA** - Alleged incident of sexual abuse or sexual harassment; Shift Commander, Facility Unit Head or Administrative Duty Officer, and facility PREA Compliance Manager notified
Alleged sexual abuse or sexual harassment   ☐ Will be referred for Investigation

Determination by: _____

| | Signature | Name/Title Printed | Date/Time |
|---|---|---|---|

Distribution:  Original Grievance returned to Offender, Copy forwarded to Institutional Ombudsman/Grievance Coordinator

---

[Detach here]

### PART C- RECEIPT   Log #: __8951__

| Lucas | Casel | 1180673 | HCC | 2A-38B |
|---|---|---|---|---|
| Offender Last Name | First | Number | Facility | Building-Cell/Bed |

I acknowledge receipt of this complaint from the above offender. [Complete and issue to offender if taking from his/her presence for response.]

| 4/13/2020  1535 | S  2.1 A | D. Wight  T/O |
|---|---|---|
| Date/Time | Recipient's Signature (Staff Member) | Name/Title Printed |

Revision Date: 4/25/16



VIRGINIA DEPARTMENT OF CORRECTIONS

**Grievance Receipt**

866.1 A-3
DOC Location: HCC Haynesville Correctional Center
Report generated by Hand, P W
Report run on 06/24/2020 at 09:58 AM

Grievance Number: <u>HCC-20-INF-01191</u>

Next Action Date: <u>07/09/2020 12:00 AM</u>

| On this date: | 06/24/2020 | | I have received a statement from: |
|---|---|---|---|
| | | | Haynesville Correctional Center |
| Lucas, Casel F | 1080673 | of | HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| R Brown, IO - Ombudsman violations of the stipulated settlement agreement COVID19 Whorley v Northam. | | | |
| *P Hand* <br> *(Signature)* | | | OSS <br> *(Title)* |

Rev. 03/30/2009



RECEIVED

JUN 24 2020

By: _____
GRIEVANCE OFFICE

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| Carol F. Lucas | 1080673 | 2-A-08-B |
|---|---|---|
| Offender Name | Offender Number | Housing Assignment |

Ombudsman A.B. Brown
Individuals Involved in Incident

April 2020, 26 May 2020, Jun 2020
Date/Time of Incident

☐ Unit Manager/Supervisor
☐ Personal Property
☐ Medical Administrator
☐ Food Service
☐ Commissary
☐ Other (Please Specify):
☐ Institutional Program Manager
☐ Mailroom

Briefly explain the nature of your complaint (be specific) Ombudsman violations of the Stipulated Settlement Agreement COVID19 Wharley etal V. Northam Etal Case No: 3:20cv00255 Pg 4 (C) Defendants agree to provide written guidance to grievance coordinators at VDOC facilities Relating to grievances related to COVID19 as will regards to abide by COVID19 related policies and Protocols. This is not followed with those grievances HCC-20-INF-00585, HCC-20-INF-00559, HCC-20-INF-007106, HCC-20-INF-00945 these grievances are all COVID19 related policies & Protocols All Denied intake because they violated the Safety & Health of myself staff and all inmates. This is the second informal complaint I have filed on this. No Receipt given on these either.

Offender Signature Carol F. Lucas    Date 22 June 2020

### Offenders – Do Not Write Below This Line

| Date Received: | 6-24-2020 | Tracking # HCC-20-INF-01191 |
|---|---|---|
| Response Due: | 7-9-2020 | Assigned to: R Brown IO |

Action Taken/Response:

_____
_____
_____
_____
_____
_____
_____
_____

| Respondent Signature | Printed Name and Title | Date |
|---|---|---|

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____    Date: _____

Staff Witness Signature: _____    Date: _____

Witnessed by staff Submitted to Ombudsman institutional Mail This is my Receipt...

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

**Grievance Receipt**

866.1 A-3

DOC Location: HCC Haynesville Correctional Center

Report generated by Hand, P W

Report run on 04/13/2020 at 12:15 PM

Grievance Number: <u>HCC-20-INF-00545</u>

Next Action Date: <u>04/28/2020 12:00 AM</u>

| On this date: | 04/13/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | | 1080673 | Haynesville Correctional Center |
| | | | of HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| Lt. Dobyns - Complaint officer was not wearing a mask during count on 4-11-2020. | | | |
| *P Hand* | | | *OSS* |
| *(Signature)* | | | *(Title)* |

Rev. 03/30/2009

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint  866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.

RECEIVED
BY: _____
GRIEVANCE OFFICE

**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| | | |
|---|---|---|
| CASEL F. LUCAS | 1080673 | 2-A-38-B |
| Offender Name | Offender Number | Housing Assignment |

Unit Officer
Individuals Involved in Incident

11 April 2020  6:30 Am
Date/ Time of Incident

☐ Unit Manager/Supervisor ☐ Food Service ☐ Institutional Program Manager
☐ Personal Property ☐ Commissary ☐ Mailroom
☐ Medical Administrator ☒ Other (Please Specify): Officer NOT WEARing MasK during count at 6:30 Am.

Briefly explain the nature of your complaint (be specific):

On 11 April 2020, The Officer Qviy Count was asked why are you Mask. He Said He didn't Know—

NO - One Here is Sick, WE Can only get it from a Staff Member.

Offender Signature  Casel F. Lucas      Date  11 Apr. 2020

### Offenders - Do Not Write Below This Line

Date Received:  4-13-2020            Tracking # HCC-20-INF-00545

Response Due:  4-28-2020      Assigned to:  Lt Dobyns

Action Taken/Response:

_____

_____

_____

_____

_____

_____

_____

_____

| Respondent Signature | Printed Name and Title | Date |
|---|---|---|

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____  Date: _____

Staff Witness Signature: _____  Date: _____

Revision Date: 4/28/17

Casel F. Lucas
VQP# 10880673
Tort Claim
NON Compliance of Stipulated Agreement
Exhibits


EXHIBIT
#
16
Appeal To StateWIDE Americans with
Disabilities LAW Coordinator B. MARANO
REMONAble Accomodation REQuest Denial

②

(6) Knees Degenerative Joint Disease of Both Knees + Ankles.

I am Issued Knee Braces with Metal Rods on both Sides and Joints. I — Ankle Braces to Prevent Me from Damaging my Ankles. These are All I am issued a Walking Cane for added support and mobility. That issued Special insoles and Arch supports from my Military Service for added support and mobility. Bottom bunk Profile. in the DOP 801.3    Procedure P8.3 Part E ADA Coordinator #1
A + B.

P8. 4 Part II offenders with Disabilities (b) Facility staff must ensure that an individual with Disabilities will not be Excluded from Participation in or denied the benefits of Services, Programs, or activities of the facility, or be subjected to Discrimination.

P8. 8 Part VI Durable Medical Equipment; Disability AIDS, and Prosthesis A + B.

Page. 8 part VII offender Services (A) Accommodation will be Provided to Access and fully participate in the Programs and Services.

On Part VI page 8 has been given to Me, My Braces for Knees, Ankles and a cane, and insoles, arch supports and a Medical Bottom bunk Profile. No one else Addressed My Accommodation Into I ERP. I was Told To file an IERP Appeal with the Warden by the Counselor. How come ADA Coordinator Mr. Greenhead Miss All of these Basic Rules of Managing offenders with Disabilities. I filed a Reasonable Accommodation Request ⊘ knew this would happen. NO-One would Address My Reasonable Accommodation Request that Inmates with Disabilities WERE Excluded from the language of the IERP When brought to the attention ⊘ To The Grievance coordinator, Warden, Counselor, ADA coordinator ⊘ has been Brushed off, Ignored, and Told I Am Wrong You dont know what you are talking about, etc. I am just being Done Exactly as instructed by DOP 801.3. Yet the Discrim...

I Wrote to you when I first sent the Accommodations Request. either informed you about what would happen and that has come to pass.

Now I am asking you to address these Violations of the VDOC DOP 801.3 Managing Offenders with Disabilities, Americans with Disabilities Act, and the Virginians with Disability Act.

I am not wrong and will not accept being treated so adversely by an State Government Employee of the Commonwealth of Virginia. It is completely Illegal this blatant Acts of Discrimination by these Virginia Dept. of Corrections employees.

I ask that you immediately intervene on my behalf. And Immediately Grant my accommodations Request of I ERP and be granted approval for: Early Release. of COVID19 Declaration and The Stipulated Settlement Agreement in Whorley etal V. Northam etal Case No: 3:20 cv 00255

Pg. 2 Part ii(A) Under the Early Release Plan, VDOC is also considering an individuals Health Condition. This has not been done in my case.

Pg. 4 of the Agreement b.v.c. Conditional Pardons I filed one under COVID19. On 5 June 2020 No Acknowledgement of Receiving this Pardon by the Secretary of the Commonwealth.

(c.) Grievance the Grievance Coordinator also failed to abide by this Agreement of Whorley v. Northam.

My concerns are unequivocally to benefit my own purpose. I have no intentions of including anyone else

el help another simple do the same. The Last time
I thought to Help Other People. I was Denied for 20 years
the very injuries I suffered for my Service in the Miltary in
The Middle East. Thank You for your Service is an insult to Me personally.
especially if it does not come from a fellow Veteran or Service Members families.
el am Shamed every single Day the Thanks for my Service in Somalia, Djibouti,
Iraq, and Kuwait. Therefore being for myself I am only Concerned for Me.
Because again NO One who wrote that Idiotic IERP thought
To include the Language To include Some As myself with Disabilities.
This Directly affects me, it Directly Discriminates against Me A
Disabled Combat Vetran Honorably Discharged from the U.S. Army.

Please Address my Concerns, As soon As Possible.
el am Parole Eligible 23 Dec. 2021 is my 1st Parole Hearing
& Early Hearly under IERP would be Accepted As Inclusion
in IERP and that would Resolve this Issue. Or the
Status Quo can continue and We go through the motions
of the Grievance Procedure, Fort Clain, 1983, and So on. el am
A Reasonable Man with a higher than Average level of intelligence.
again We Can Negotiate A Reasonable Settlement that will Satisfy those
individual for above your Pay Grade. Without having Me Released, I will even stay a HCC
There is WORK RELEASE & Even CADRE Positions that would
be acceptable to The Veterans Affairs for the Purpose of Me Getting my
Full benefits issued. I am Still in the Custody of VADOC el am
however, Working a Real Job. Paying my Court Cost & Fines and preparing myself
A Substancial Savings to ensure my Success upon my Release from Prison.
This is my Goal el will Achieve this goal for myself.
el thank you inadvance, el eagerly Await your RESPONSE and Action

Sincerely,
Carol F. Lucas

TURN OVER —

fence work-up at the Warehouse As a Stock Clerk Or Order filler Loading and Unloading Trucks. This is A Simple solution to a Very Complex Problem.

I have enclosed the form to be Completed
Send a copy of the Completed form to ME and One Copy the Original To the Dept of Veterans Affairs   210 Franklin Rd S.W., Roanoke Va. 24011

The CADRE Program is effectively A Work Release Program, I am working outside of the Security Perimeter of the Institution in a Warehouse using a Fork Lift and Other equipments to Complete the Job as a Truck unloader, Dock worker or Warehouse Clerk without carrying a Corrections Officer stand over me guarding ME with a Fire Arm. That is what the CADRE Workers in the Warehouse Here at HCC Do. This is going An EASY Solution to The Complex Problem that is before you today. The Warden MUST Agree to The CADRE Position in the Warehouse. I Do not want to Hear you Don't Qualify Due to Current Crimes Or Past Criminal history. Per DOP 830.5

P.S. 4 Part D CADRE Assignments Transfers within the last 10 yrs. it has been 22 years since my Conviction and 5 year Sentence Saw Withdrawn
(2) Eligibility Criterion.   + Pg. 18 (4) Part 7 eligibility Criteria
Criteria is you can see following the Policy is NOT the way of the Employees of this Institution in the Dept of Corrections. Mr OMB
Dr. Parks DO An interim Review of my Classification. I am Now A Security Level 1 inmate with 6 Security Pts. As of today. Rather 30 April 2020.
See the Request forms + Grievance. I tell you I am within this Criteria I am
Your Staff Does Not Respect this Policy. Or 801.3. They DID I would Not belong this to you because it would have everything I Requested.
Per Policy Supports my Position.

The EASY Solution To A Very Complex Problem. State Wide this
IS A Nightmare to Solve and extremely Problematic and Burdensome.
Which I have no interest in. What I Am requesting IS Very Reasonable.
Double and legal and it Keeps ME In custody with No Hardship.
I Wait your Response. Please acknowledge the ...

VA State Bar

Deliberate
Indifference

Wreckless
Endangerment

Tort Claim

NOTICE OF CLAIM
Pursuant to Virginia Code §8.01-195.6

CERTIFIED MAIL – RETURN RECEIPT

TO:

Attorney General of the Commonwealth of Virginia
900 East Main Street
Richmond, Virginia 23219

Director
Department of General Services
Division of Risk Management
109 Governor Street, 4th Floor
James Madison Building

Re:   Claimant: CASEL F. LUCAS

Date of Injury: 13 April 2020

Place of Injury: Virginia Dept of Corrections Haynesville Correctional Center

To Whom It May Concern:

The Purpose of this correspondence is to make claim against the Commonwealth of Virginia and its departments or agencies and their responsible employees in regards to the damages and injuries as set forth in the accompanying Notice of Tort Claim Against the Commonwealth.

Please acknowledge receipt of this Notice and apprise me of your position in this matter.

Respectfully yours,

Date: 23 June 2020

Inmate# 1050073
Haynesville Correctional Center
Post Office Box 129
Haynesville, Virginia 22472

County/City of Richmond : Commonwealth of Virginia
The foregoing instrument was subscribed and sworn before me this 23 day of June , 20 20
Casel F Lucas
(Name of person seeking acknowledgement)
Catherine F McKenney
Notary Public
My Commission expires: 5-31-22
Notary Reg. No. 7781613

3. The date and location of the injury giving rise to this cause of action are:

Location:  Haynesville Correctional Center Virginia Dept of Corrections

Lungs, Heart, and Mental Injuries.

Date:  13 April 2020

The nature of this claim and injury or damage is described as follows:

Deliberate Indifference 4.

W/Reckless Endangerment

Correctional officer BARNS Denied Me Critical Chronic Care Treatment. I have sustained Aggravation onto the Military Disabilities that are Service Connected at 100% Disability Ratin Schedule for 1.) Recurrent Upper Respiratory Infections, 2.) My Heart has suffered greatly Because of the Strain and Stress of my Breathing and Respiratory Distress) has caused the Right Side of My Heart to leak and Regurgitate Blood Making my Heart swell inside my Chest and My Hypertension) go out of control When I am having Dizzy Spells where as I cannot get out of bed because of My Service Connected PTSD which I suffer Extreme Anxiety as a Result of the Trauma) I had to endure by fighting terrorist war aggravated by Correctional officer Barns when He Denied my my Scheduled Chronic Care Treatment on the Breathing Machine DA Nebulizers. C/o Barns Did not consult Medical Staff, C/o Barns made this decision on his own Violating the Virginia Dept of Corrections Operating Procedure 801.3 Managing Offenders with Disabilities Page 3, 4, 6 under Procedures II. A, B, C. Staff must ensure that no Individual dependant on a Physical Disability Conditions of Services Provided by the facility. Staff ensure that individual with Disabilities will not be Excluded from participation in; Or be denied the benefits of services. Reasonable accommodations Must be Made for offenders as Required Americans with Disabilities Act of 1990, as amended (42 U.S.C. 12101 et seq.) and the Virginians with Disabilities Act (COV § 51.5-1 et seq)

Part III Determination of Disability and Reasonable Accommodations C. 2a. Under No Circumstances will a NON-Health Care Provider Substitute their Judgement for that of a Health Care provider Where an accommodation needed to address a physical or mental Disability has been Prescribe. C/o Barns did Exactly this When He Denied Me my Scheduled Chronic Care Breathing Treat on the Nebulizer Machine - Continued Next Pg.

5. The State Agency or Agencies avered to be liable are:

VBP# 1080673
Statement Continuation
Tort Claim. Part 4.

On 13 April 2020, I Inmate Casel F. Lucas began to have breathing difficulties so I used the 3 Different Rescue Inhalers that I am prescribe as Keep on Person Medication. I Did not RECEIVE any Relief from the 3 Different Inhalers. I immediately went to the Control Booth to Inform the officer at that Time C/O Ms. Davis Older Afroamerican was the officer. She called the Medical officer to Inform him I needed to access My Reasonable Accommodation Prescribe by the Doctor to Kist the Chronic Care Treatment of the Breathing Nebulizer Machine. This entire Time I was gasping and wheezing Thinking I'm going to Die. C/O Burns said no He's to Play & So are the NURSES.

C/O Ms. Davis then advised Me She and I went into the Lt. DOBYNS office. Lt. Dobyns call C/O Burns the Medical officer He Repeated the Same Thing He's to Play & So are the NURSES. Lt. Dobyns informed him He cannot Do that and He was Sending Me over there Immediately. Treatment officer Wright, C/O Ms. Davis Witnessed this. I went to Medical and C/O Burns Refused to answer the door to let me In for the Breathing Treatment, I waited 20 minutes Struggling to Breath the entire Time. I Made it back to the Dorm and Quickly filled out a Emergency Grievance Gave it to Lt. Dobyns who gave it to the Blvd. officer who took it to Medical. I Hour later, I Am at Medical getting My Breathing Treatment. C/O Burns Says you are Here now Take this and Do what you want with it and He gives Me Back the Unanswered Emergency Grievance. Medical Nurse Ms. REID was There and witnessed this. I DID my Treatment took My Unanswered Emergency Grievance Left Medical. I then filed an Informal Complaint and Grievance. The Grievance Coordinator Ms. Brown NEVER Interviewed My Staff Witnesses Ms. DAVIS, the treatment officer Wright and Building Supervisor Lt. DOBYNS

Daniel F. Lucas
VSP# 1086673
Statement of Continuation
Tort Claim.

I was Interviewed by Lt. Radabaugh in Lt. Dobyns office while Lt. Dobyns was Present. When I Repeated the Events To Lt. Radabaugh he refused to act. Lt. Dobyns why Questions He also Did not Interview Staff witness C/O Mr. Davis Nor Treatment Officer Wright. He said To Me, that The Reason I was denied Access To Medical and the Breathing Treatment is because other Inmates from Another Building were inside. I looked through the Medical DOOR window No inmates Came out in the Waiting Area or in Any of the offices. Nor out the Medical Exit Doors. I Appealed my level 1 Response of Denial to Regional Again I informed them No one interview my Staff witness C/O Mr. Davis, Treatment officer C/O Wright, and Building Supervisor Lt. Dobyns ① The Ombudsman Ms. Brown, ② Lt. Radabaugh, ③ Warden Tikkie Arioko, ④ Regional Ombudsman K. Cosby, ⑤ Health Services Director All Refused to Not only Interview my Staff witnesses There is no mention of the in Any of the Grievance Responses. They conspired to 'Cover' up this officers C/O Burns Reckless behavior that Violated Several D.O.C. Policies To Include State laws of Disabled persons Virginians with Disabilities Acts Code 51.5- Federal Americans with Disabilities Act of 1990 As Amended 42 U.S.C. 12101 et seq. And Dept. of Correction Operation Procedure 801.3 Managing offenders with Disabilities Make No Mistake I Am A Service Connected 100% Disabled Combat Veteran with Service Connect Chronic Lung Disabilities from Exposure to Chemical Weapons During The Persian Gulf War at A chemical weapons Arms facility in Khamisiyah IRAQ Weapons Depot of Suddam Hussein. See Attachments & Medical Documents. I Am not WRONG I AM NOT lying. I Am

48

VSP# 1080673
Statement Continuation
Tort Claim.

Entitled Under the Protections of Dept of Correction Operating Procedure 801.3 Managing offenders with Disabilities.

I am Entitled to the Protections of the State law Virginians with Disabilities Act COV§ 51.5-1 et seq.

I Am entitled to The Protections of Federal law Americans with Disabilities Act of 1990 As Amended 42 U.S.C. § 12101 et seq.

All of which Have been Violated by C/O Burns, Ombudsman Ms. Brown, Lt. Radabaugh, Warden Hicks Haynesville, Regional Ombudsman K. Cosby, Health Services Director VADOC.

The Investigations of Staff witness Lt. Dobyns, C/O Ms. Davis, C/O treatment officer Wright Must be Done They witness Everything. Mr. Wright Signed My Emergency Grievance Receipt. He's the One I Gave it to. Look At it.

If I Do not Receive acknowledgement of the Division of Risk Managements Possession & Investigation of my Tort Claim I will goto Court And Seek A Motion of Summary Judgement And A Motion of Discovery To Get the Staff Witness Deposed Statements. I will not Stop Until it Have some Type of Justice. I almost Died And All of My Chronic Lung Disabilities That I Receive A VA Pension for were Extremely aggravated to A worsend State increasing the Damage to my lungs and Causing My Current Heart Condition of Blood Regurgitating into My Heart Making it Act up.

I will not Stop I Promise you this Therefore Make A Settlement offer.

Page 4

Creel F. Lucas
VSP# 1080673
Krt Claim Continuation
Statement

Part II

Food Service Contamination During Lunch and Dinner Meals

On 24 April 2020, I Creel F. Lucas witnessed Infected Covid 19 Positive Inmates enter the Food Service Kitchen Area While The Lunch Meal was Being Prepared to RECEIVE Examinations Treatment and Testing. This continued During the Dinner Meal was being Prepped & Served to Population. I witnessed A team of These COVID 19 Positive Inmates Doctors and Health Care Staff Treating Testing and Examining Door Window thats 20 feet from Medical Door, When it was Returning to my Dorm After My Chronic Care Lung Treatment on The Nebulizer Breathing Machine. I Returned to my Dorm and Informed The Entire Dorm that there is A Risk to our Health and safety because they have Infected Inmate in the Kitchen Being tested, Treated, examined. This was at 1130 am. I HAD to Refuse the Trays so did the entire Dorm. When the Dinner Meal was served I Refused it because of Possible Contamination. So did the entire Dorm. WE All Myself Included Watched 75 Inmates from 16 Building Return to there Dorm And an Entire Decontamination Team Entered Food Service in White Tyvek Suits, & Masks with Oxegen Hoses Decontaminate the food service at 8 PM After all of the Meals for Lunch and Dinner was Served to population.

I was force to Not Eat because of the wreckless Endangerment Food Service, Medical Staff and Security Staff

795

VSP A 1080673
Continuation of Statement
Tort Claim.

Allowed Contaminated Inmates Into food Service While the
Lunch And Dinner Meals were Being Cooked And Food
Being put into Styrofoam Trys for Consumption of General Population
This Violates DOC Policy of Food Service, Local Health Dept. Codes Laws + Regulations
Federal Food Safty Laws & Regulations, And All of the ServSafe
Rules and Regulations.

This wreckless act endangered my life and Well Being, With All of
My Chronic Medical Issues and Disabilities I Am at the Highest
of the Highest at Risked Person for COViD 19 to Kill.
Chronic Multiple Lung Disabilities Asthma, Severe Shortness of Breathe Dyspnea,
Chronic Bronchitis, Heart Conditions, Diabetes, Hypertension etc.

I was torture by having to Refuse 2 Meals because of Contamination
Should I Catch COViD 19 I Have a 98% Death Rate. That IS Completely
True Therefore No Meal causing my Anxiety to the Extreme Causing my
Hypertension + Heart Problems To Be Aggravated into A Worsen State
I Reported All of This To The VADOC COViD 19 HotLine.
Adding Injury To my Service Connected PTSD & Extreme Anxiety
To add I take STARX Medication for Anxiety. Adding More Injury To My
Heart Conditions Anxiety + Stress also made my Right Side of my Heart
Bleed back into my Heart. All of this from C/O Barns
Denying Me my Chronic Care Breathing Treatment
To Staff Allow my Food to be Contaminated Causing Severe
PTSD, Anxiety, and Fear Causing my Mental Health to Completely Be
Unmanageble And Deteriorate.
Therefore I filed Grievances and New Tort Claim. I REQUEST A Immediate Settlement.

*Commonwealth of Virginia*
*Virginia Dept. of Homeland Security Security*
*Virginia Dept. of Corrections*
*Haynesville Correctional Center.*

6.      Pursuant to §8.01-195.5, Code of Virginia, 1950, as amended, the

Commonwealth of Virginia has six (6) months to seek settlement of this claim, upon

expiration of which, without a settlement being reached, this matter shall be ripe for the

Claimant to seek judgment against the above-named defendant(s) in the appropriate State

court.

WHEREFORE, TAKE NOTICE that the Claimant will seek judgment in the

amount of $ 1,000,000.00 , against the defendant(s), or such amount as

may be agreed on by the parties, in settlement of this claim.

Date: 23 Jun 2020

Inmate Number 1082073
Haynesville correctional Center
Post Office box 129
Haynesville, Virginia  22472

STATE OF VIRGINIA
COUNTY OF RICHMOND

Subscribed and sworn to before me this 23rd day of June, 2020

Notary Public

My Commission Expires: 5-31-22

CATHERINE F. MCKENNEY
NOTARY
PUBLIC
REG. #7781613
MY COMMISSION
EXPIRES
May 31 2022
COMMONWEALTH OF VIRGINIA

Page 3 of 3

VIRGINIA:

IN THE OFFICE OF THE ATTORNEY GENERAL

CABel F. LUCAS_____, #1080673 ,
(Name and Inmate Number)

Claimant,

CERTIFIED MAIL
RETURN RECEIPT
REQUESTED.

v.

COMMONWEALTH OF VIRGINIA, and

Virginia Dept of Homeland Security Atty. Mr.Brian Moran
Virginia Dept of Corrections Dir Mr. H. Clarke
Haynesville Correctional Cntr, Warden Hinds.

Defendant.

**AFFIDAVIT**

STATE OF VIRGINIA,
COUNTY OF RICHMOND, to wit:

CABEL FRANK LUCAS_____, being first duly sworn according to

law, deposes and states:

1.      That he is the Claimant in the above-entitled matter and who is currently

incarcerated at the Haynesville Correctional Center, 650 Barnsfield Road, Post Office

Box 129, Haynesville, Virginia 22472.

2.      That he has submitted herewith his Notice of Tort Claim Against the

Commonwealth in connection with the certain injuries and damages incurred while he

was in the custody and care of the Department of Corrections/Commonwealth of

Virginia, as a result of the alleged negligence of one or more agents of the Commonwealth of Virginia.

    3.    That he has attempted to resolve this matter by way of the adult institutional inmate complaint/grievance procedures promulgated by the Virginia Department of Corrections, having initiated the administrative grievance process on the 13 day of April , 2020 ; and that he filed his last grievance appeal on the 28 day of August , 2020 , without receiving the requested relief or otherwise resolving this matter;

    4.    That he has attached hereto as enclosures, copies of all complaints/requests, grievances and appeals filed in connection with the incident herein stated as giving rise to this Tort Claim Against the Commonwealth of Virginia and its agent(s).

    I declare under penalty of perjury that the foregoing statement is true and correct to the best of my knowledge and belief.

Date: 23 Jun 2020          _____
                                              Claimant

STATE OF VIRGINIA
COUNTY OF RICHMOND

Subscribed and sworn to before me this 23rd day of June , 2020.

_____
Notary Public

My Commission Expires: 5-31-22

VSP# 1030673

Tort Claim

Deliberate Indifference, Reckless Endangerment
Of Contaminating the FoodService Area During
Lunch and Dinner meals Preparation & Served to Population

ExHiBit
Table of contents



1.) Grievance

2.) Acc-20-REG-00046    S/o Barns Denial of Medical Treatment

3.) Acc-20-REG-00046 Appeal Respond

4.) Complaint to L.M. Brown Special Agent VADOC

5.) Complaint Appeal K. Cooley Regional Ombudsman

6.) Dept. of Corrections Operating Policy
801.3 Managing Offenders with Disabilities

7.) U.S. Dept. of Veterans Affairs
Service Connected Disabilities

8.) VADOC Medical Treatment Records
of Chronic Care Illnesses Diseases,
and Military Disabilities Treatment In VADOC

9.) Grievance Acc-20-Inf-00700
Denial

VBP# 1080673

Tort Claim

Deliberate Indifference, Wreckless Endagerment
of Contamination The Food Service Area
During Sunday old Dinner Preparation.

ExHiBiT-2

# ExHiBiT
# #
## 1

ItRievance

Ncc-20 Reg: 000416
c/o EARNS Refusal of my Chronic Care Breathing Treatment

VIRGINIA DEPARTMENT OF CORRECTIONS

866.1 A-7

## Offender Grievance Response - Level II

DOC Location: C00 Central Office, Administration

Report generated by HR

Report run on 08/21/2020 at 09:23 AM

| Offender Name | DOC# | Location | | Grievance Number |
|---|---|---|---|---|
| Lucas, Casel F | 1080673 | **Current** | Haynesville Correctional Center | HCC-20-REG-00046 |
| **Housing** | | **Filed** | Haynesville Correctional Center | |
| HU4-A-33-B | | | | |

LEVEL II: REGIONAL DIRECTOR, HEALTH SERVICES DIRECTOR OR CHIEF OF OPERATIONS FOR OFFENDER MANAGEMENT SERVICES RESPONSE (To be completed and mailed within 20 calendar days)

**LEVEL II HEALTH SERVICES DIRECTOR:**

Your grievance appeal complaint has been reviewed along with the response from Level I and your complaint that C/O Barnes would not allow you access into Medical for a breathing treatment on 04/13/20.

Based on the information provided and upon further investigation, I concur with the Level I response and have determined your grievance **UNFOUNDED.** Please note that during the COVID crisis, the institutional physician may determine if your condition is essential to warrant a medical visit. The physician has the clinical discretion to recommend you specific treatment as well. It is reported that you received treatment from the HCC healthcare professional for your respiratory condition in April 2020. This issue is governed by **OP 720.2.**

**If you have any further issues, please resubmit a sick call request for further evaluation of your medical needs and treatment plan. You are encouraged to follow the recommendations of the health care staff as well. There is no violation of policy/procedure regarding this issue. No further action is needed from this level. In accordance with OP 866.1 governing the Offender Grievance Procedure, Level II is the last level of appeal for this complaint. All administrative remedies have been exhausted regarding this issue.**

| Health Services Director, or Chief of Operations for Health Services | Date |
|---|---|
| *JND/mc* | *28 Aug 20* |

RECEIVED

SEP - 4 2020

By: GRIEVANCE OFFICE

Offender Grievance Response - Level II

Report run on 08/21/2020 at 09:23 AM

Rev. 05/31/2007



VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.

**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| Carel T. Lucas | 1080073 | 2-A-38-B |
|---|---|---|
| Offender Name | Offender Number | Housing Assignment |

| C/o Burns Medical officer. | 13 April 2020 15 15 Hrs. |
|---|---|
| Individuals Involved in Incident | Date/Time of Incident |

- ☐ Unit Manager/Supervisor
- ☐ Personal Property
- ☐ Medical Administrator
- ☐ Food Service
- ☐ Commissary
- ☒ Other (Please Specify): C/o Burns Violated the Hippa Law
- ☐ Institutional Program Manager
- ☐ Mailroom

Briefly explain the nature of your complaint (be specific): When I Requested a Breathing Treatment. ON 13 April 2020 at 15 15 Hrs, I Request To See Medical for a Breathing Treatment. C/o Ms. Davis called Medical and was told by C/o Burns He was Busy & Because All of the Nurses. Ms. Davis Told Lt Dodlyns he call C/o Burns and was told the same thing I was Sent by Ms. Davis. And when I got to Medical I Bang on the Door for 10 minutes office Burns Did not come to the Door. Ms. Noel Reeporty officer called Him Still No answer. I Returned to the Build. My Breathing Treatment is Prescribed Under HIPPA Law. Security cannot Dictate my treatment. Nor Deny Me. That is between Me And My Doctor.

Offender Signature Carel T. Lucas  1080673  Date 13 April 2020

---

**Offenders - Do Not Write Below This Line**

| Date Received: 4-14-2020 | Tracking # HCC-20-INF-00585 |
|---|---|
| Response Due: 4-29-2020 | Assigned to: Capt White   LT Radabaugh |

Action Taken/Response:

Medical had other offenders from another building at that time.

RECEIVED
MAY - 8 2020
BY: GRIEVANCE OFFICE

Lt. Radabaugh                    Lt. Radabaugh
Respondent Signature    Printed Name and Title              Date

RECEIVED
JUL 2 0 2020
Ombudsman Unit
Eastern Region

**WITHDRAWAL OF INFORMAL COMPLAINT:**
I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: HCC-20-Reg-00046

Staff Witness Signature: _____ Date: _____

*Revision Date: 4/28/17*



VIRGINIA
DEPARTMENT OF CORRECTIONS

Emergency Grievance 866_F4_4-16

## Emergency Grievance    Log # __8951__

*Emergency Grievances* are provided for offender reporting and expedited staff responses to allegations that an offender is subject to a substantial risk of imminent sexual abuse and to situations or conditions which may subject the offender to immediate risk of serious personal injury or irreparable harm.

| LUCAS | CAERL | 1580673 | Hee | 2-A-88-B |
|---|---|---|---|---|
| Offender Last Name | First | Number | Facility | Building-Cell/Bed |

### PART A- OFFENDER CLAIM

What is the emergency? On 13 April 2020 at 1515 hrs. I Requested that I goto MEDical for Breathing Treatment By C/o Ms Davis. She called and spoke to C/o BARNS. Refused Me my treatment said it was illegal so i spoke to the Nurses. The lt Dobyns also called him again. He Refuse. I was Sent By C/o Davis when I Arrived At Medical I Banged On the door for 10 minutes. C/o Barns refused to come to the door. I Had C/o Noenu tell on Radio still did not come. He violated the #1 PRA law By dectating my decidig my treatment this is security not my doctor.

13 April 2020 Date/Time 15.93 HR   C/o/Offender Signature and Number 1580673

### PART B- STAFF RESPONSE
(This part is to be completed and returned to the offender within eight (8) hours.)

- [ ] Your grievance does not meet the definition for an emergency.  Action Taken/Recommended:
  - [ ] Submit Informal Complaint
  - [ ] Submit Sick Call Request
  - [ ] Submit Request to Dental
  - [ ] Evaluated by Medical: Date Seen _____
  - [ ] Send an Offender Request To: _____
  - [ ] Other  (Provide detailed explanation below)

- [ ] Your grievance has been determined to be an emergency and the following action has been taken:
  - [ ] Sent to Hospital: Date Transported
  - [ ] Other  (Provide detailed explanation below)

RECEIVED
MAY - 7 2020

| Date/Time | Respondent Signature: | Name/Title Printed |
|---|---|---|

RECEIVED
GRIEVANCE OFFICE
JUL 20 2020
Ombudsman Unit

- [ ] **PREA** - Alleged incident of sexual abuse or sexual harassment; Shift Commander, Facility Unit Head or Administrative Duty Officer, and facility PREA Compliance Manager notified
- Alleged sexual abuse or sexual harassment  [ ] Will be referred for Investigation

Determination by: _____

| Signature | Name/Title Printed | Date/Time |
|---|---|---|

Distribution:   Original Grievance returned to Offender, Copy forwarded to Institutional Ombudsman/Grievance Coordinator

[Detach here]    ### PART C- RECEIPT    Log #: 8951

| Lucas | Casel | 1580673 | HCC | 2A - 38B |
|---|---|---|---|---|
| Offender Last Name | First | Number | Facility | Building-Cell/Bed |

I acknowledge receipt of this complaint from the above offender. [Complete and issue to offender if taking from his/her presence for response.]

| 4/13/2020  1535 | D 2.14 | D Wright  T/O |
|---|---|---|
| Date/Time | Recipient's Signature (Staff Member) | Name/Title Printed |

HCC-20-REG-00074   Page: 4/25/16



# COMMONWEALTH OF VIRGINIA
## Department of Corrections
### Division of Operations
### Eastern Region

Gregory L. Holloway
Regional Operations Chief

14545 Old Belfield Rd
Capron, VA 23829
(434) 658-4368

July 22, 2020

C. Lucas 1080673
Haynesville Correctional Center
PO Box 129
Haynesville, Virginia 22472

Dear C. Lucas:

This letter comes to advise you that your appeal package to Grievance Log # HCC-20-REG-00046 has been forwarded to the Office of Health Services in Richmond, Virginia for review and response. Operating Procedure 866.1, Offender Grievance Procedure, states that grievances relating to medical, dental, and mental health care are reviewed and responded to by the Director of Health Services.

The response time limit will commence upon their receipt of your appeal package. However, it was noted that accurate appeal instructions were not given to you by institutional staff. The receipt of your appeal package by Health Services will be at their discretion.

Sincerely,

K. Cosby, Regional Ombudsman
Eastern Regional Office

/kwc

cc:   Office of Health Services *w/original attachments*
      File

RECEIVED
JUL 30 2020
OFFICE OF HEALTH SERVICES



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Continuance Receipt

866.1 TBD
DOC Location: HCC Haynesville Correctional Center
Report generated by Brown, R T
Report run on 06/05/2020 at 09:24 AM

Grievance Number:  HCC-20-REG-00046

Next Action Date:  07/05/2020 12:00 AM

### Continuance

| Level | Due Date | Reason | By |
|-------|----------|--------|-----|
| 1 | 07/05/2020 | Awaiting information | Brown, Rose T |
| 2 | | | |
| 3 | | | |

On this date:  05/08/2020          I have received a statement from:

Lucas, Casel F                    1080673       of      Haynesville Correctional Center

_(Offender Name and DOC#)_                    HU2-A-38-B

_(Filed Location and Housing)_

Setting out the following complaint:

He states that C/O Barnes violated HIPPA laws when he denied him the right to a breathing treatment.

RECEIVED
JUL 2 0 2020
Ombudsman Unit
Eastern Region

_____ (Signature)          _____ (Title)

RECEIVED
JUL - 2 2020
Ombudsman Unit
Eastern Region

Rev. 03/30/2009

VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866_F1_4-17

RECEIVED

**REGULAR GRIEVANCE**

MAY 1 - 2020

By: _____

GRIEVANCE OFFICE

Log Number: _____

| Name, First | Number | Building | Cell/Bed Number |
|---|---|---|---|
| CABEL F. LUCAS | 1080673 | 2-A-38B | 2-A-38-B |

| iduals Involved in Incident | Date/ Time of Incident |
|---|---|
| C/o BARNS | 13 April 2020   15:15 Hrs |

T IS YOUR COMPLAINT? (Provide information from the informal process: Attach Informal Complaint response or documentation of informal process.) C/o Barns was the Officer in Charge of Medical Violate the Hippa law When I Requested to Come to Medical fse A Breathing Treatment On the NEBULIZER Machine He Denied this to Me this Ap. C/o Ms Davis 2-A 6th officer Called him and asked him for Me, to get A Breathing Treatment He told Ms Davis c/o that He was Busy and So Were all the Nurses He Did not ask any one of the Nurses He Made that Decision on His own So I then asked Lt Dobyns to Call He was told the Same He was advised C/o Barns of what he was doing was hurting he Still Denied Me Access I filed A Emergency gRievance and after 2 Hours I was Called Over for my breathing Treatment the Emergency Grievance was not Answered He gave me the Emergency Grievance Back and sAID you are Over here illno. Do what you want with This THis 18 I was DonE to ME During the COVID19 Pandemic on HCC 146 cases.

t action do you want taken? No Medical Officer has A Right To Decide When I Recive A Breathing Treatment that is Medical Doctor or Nurse. He Violated The Hippa Law When He Made A Decision to Deny Me My Treatment Without to Asking Medical Professionals 1st. He Caused Me more Pain and Trauma m/ Rescue Inhalers Could Not Be available as I Could have Died because of his Negligence.

Honored to Tanisha

| vant's Signature: Cabel F. Lucas | Date: 30 April 2020 |
|---|---|

JUL -2 2020                                    JUL 2 0 2020

Jen/Superintendent's Office: _____
: Received: _____

Ombudsman Unit
astern Region

Ombudsman Unit

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

**Grievance Receipt**

866.1 A-3

DOC Location: HCC Haynesville Correctional Center

Report generated by Hand, P W

Report run on 04/14/2020 at 10:25 AM

Grievance Number: <u>HCC-20-INF-00585</u>

Next Action Date: <u>04/29/2020 12:00 AM</u>

| On this date: | 04/14/2020 | I have received a statement from: |
|---|---|---|
| Lucas, Casel F | 1080673 | Haynesville Correctional Center of HU2-A-38-B |
| *(Offender Name and DOC#)* | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | |
| Capt. White - Complaint about C/O Barns not letting him medical for breathing treatment. | | |
| *(Signature)* | | DSS *(Title)* |



RECEIVED
MAY - 7 2020
By: _____
GRIEVANCE OFFICE

Page 1 of 1

Rev. 03/30/2009

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

Offender Name: Carel F. Lucas
Offender Number: 1080673
Housing Assignment: C-A-38-B

Individuals Involved in Incident: C/O Burns Medical Officer.
Date/Time of Incident: 13 April 2020 15 15 Hrs

☐ Unit Manager/Supervisor ☐ Food Service ☐ Institutional Program Manager
☐ Personal Property ☐ Commissary ☐ Mailroom
☐ Medical Administrator ☒ Other (Please Specify): C/O Burns Violated the HIPAA Law

Briefly explain the nature of your complaint (be specific): When I Requested a Breathing Treatment. On 13 April 2020 at 15 15 Hrs, I Requested To See Medical for a Breathing Treatment. C/o Ms. Davis called Medical and was told by C/o Burns He was Busy or Broke. All of the Nurses, Ms. Davis Told Lt. Dologue to call C/o Burns and was Told the Same thing. I was Sent by Ms. Davis and when I got to Medical I Rang on the Door for 10 minutes. Officer Burns Did not come to the Door. Ms. Noel Requested Officer called him Still No answer. I Returned to the Build. My Breathing Treatment is Prescribed under HIPAA Law Security cannot Dictate my Treatment, Nor Deny Me. That is between Me and My Doctor.

Offender Signature: Carel F. Lucas   1080673
Date: 13 April 2020

---

### Offenders - Do Not Write Below This Line

Date Received: 4-14-2020
Response Due: 4-29-2020
Tracking #: HCC-20-INF-00585
Assigned to: Cap T White

Action Taken/Response:

RECEIVED
JUL 20 2020
Ombudsman Unit
Eastern Region

RECEIVED
MAY - 7 2020
BY GRIEVANCE OFFICE

RECEIVED
JUL 2 2020
Ombudsman Unit
Eastern Region

Respondent Signature                Printed Name and Title

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____

Staff Witness Signature: _____ Date: _____

*Revision Date: 4/28/17*



VIRGINIA
DEPARTMENT OF CORRECTIONS

Emergency Grievance 866_F4_4-16

## Emergency Grievance    Log # ___8951___

*Emergency Grievances* are provided for offender reporting and expedited staff responses to allegations that an offender is subject to a substantial risk of imminent sexual abuse and to situations or conditions which may subject the offender to immediate risk of serious personal injury or irreparable harm.

| LUCAS | Cael | 1080673 | Hcc | 2-A-88-B |
|---|---|---|---|---|
| Offender Last Name | First | Number | Facility | Building-Cell/Bed |

### PART A- OFFENDER CLAIM

What is the emergency? On 13 April 2020 at 1515 hrs. I Requested that I goto Medical for Breathing Treatment By C/o Ms Davis. She Called and Spoke to Yo Barns. Refused me my treatment said He was Busy so were The Nurses. The Lt Dobyns Also Called him again He Refuse. I was sent By C/o Davis When I Arrived at Medical I Banged on the Door for 10 Minutes C/o Barns Refused to Come to the Door. I Had C/o Nord Call on Radio Still Did Not Come. He violated the hippa Law By Dictating my Medicine my treatment this is Between me and my Doctor

13 April 2020 Date/Time 15.93 HR    Offender Signature and Number 1080673

### PART B- STAFF RESPONSE

(This part is to be completed and returned to the offender within eight (8) hours.)

☐ Your grievance does not meet the definition for an emergency.  Action Taken/Recommended:
  ☐ Submit Informal Complaint    ☐ Evaluated by Medical: Date Seen _____
  ☐ Submit Sick Call Request    ☐ Send an Offender Request To: _____
  ☐ Submit Request to Dental    ☐ Other  (Provide detailed explanation below)

☐ Your grievance has been determined to be an emergency and the following action has been taken:
  ☐ Sent to Hospital: Date Transported      ☐ Other  (Provide detailed explanation below)

RECEIVED
JUL 2 0 2020
Ombudsman Unit

| _____ | _____ | _____ |
| Date/Time | Respondent Signature | Name/Title Printed |

☐ **PREA** - Alleged incident of sexual abuse or sexual harassment; Shift Commander, Facility Unit Head or Administrative Duty Officer, and facility PREA Compliance Manager notified
Alleged sexual abuse or sexual harassment  ☐  Will be referred for Investigation

RECEIVED
JUL - 2 2020
Ombudsman Unit
Eastern Region

Determination by: _____

| _____ | _____ | _____ |
| Signature | Name/Title Printed | Date/Time |

Distribution:   Original Grievance returned to Offender, Copy forwarded to Institutional Ombudsman/Grievance Coordinator

[Detach here]

### PART C- RECEIPT    Log #: ___8951___

| Lucas | Cael | 1080673 | Hcc | 2A-38B |
|---|---|---|---|---|
| Offender Last Name | First | Number | Facility | Building-Cell/Bed |

I acknowledge receipt of this complaint from the above offender. [Complete and issue to offender if taking from his/her presence for response.]

| 4/13/2020   1535 | 2.14 | D wright  T/O |
|---|---|---|
| Date/Time | Recipient's Signature (Staff Member) | Name/Title Printed |

Revision Date: 4/25/16

VSP# 1090673

Tort Claim

Deliberate Indifference
reckless Endangerment contaminated
food service down lunch & Dinner Meal
Preparation and Served to Population

ExHiBit
#
2

Complaint To Special Agent VADOC
C/o BARNS Denial of my Chronic Care
Breathing Treatment complaint &
Retaliation and Hindrance of the
Grievance Process.
By Refusing Interviews
of my staff Witnesses

Sgt. DOUYNS

C/o President Officer Wright
C/o Ms. DAVIS Udder Blodenamow.

CABEL F. LUCAS
VSP# 1080673
7B17   ACC Quarantined
421 BARNfield Road
Waynesville, VA. 22472

18 July 2020

K. Cooby
Regional Ombudsman

RE: Appeal of ACC-20-RET-00046

ROWS, Retaliation, Hinderin the Process
Ombudsman Ms, Bracey of Acc Refuses to Give me
a Response to my complaint in the time allotted by 866.1

c/o Bonus Refused me my Chronic Care
Treatment for Breathing.

RECEIVE

JUL 2 0 2020

Ombudsman Unit

No Resolution was been given to me
Per 866.1 In the time frame of the
Continuance Grievance Receipt There fore
I Am Appealing The NO Decision Made
at the institutional Level.

Again c/o Bonus Made a Decision On his OWN
without Regard for my life. Per Policy DOP 801.3
Managing offenders With Disabilities Page 6 2 (A)
Under No Circumstances Will A NON-health Care Provider
Substitute their Judgement for That of A HealthCare

(2) ...breathing Treatment That I need Chronic Use

Provider Where an accommodation needed to address a Physical or Mental Disability has been Prescribed.

This is a Direct Violation of this Policy To Add

My Breathing Condition's Are Chronic Bronchitis, Vigorous Asthma, Bronchial Diagnosed U.S. Army Recurrent Upper Respiratory Infections All listed by th DOP 801.3 Pages 11 & 12 Physical and Mental Impairments.

Correctional Officer BARNS Also Violated the following Laws

Hippa Law, Americans with Disabilities About, The Virginians with Disabilities Law.
VA DOC Employee ethics and Rules of Conduct Under DOP. 211.
This employee HAD NO Regard for My life and By His Actions and Violations of the Law That Protects ME, A Disabled Person.

Correctional Officer Barn Should Be ── Immediately Terminated for These Blatant Violations of State and Federal Laws and the Number of Virginia Dept of Corrections Policies DOP 801.3 & DOP 211 Employee Conduct.
I Have filed A Formal Employee Disciplinary Complaint against C/o Barns.
I Have filed A Complaint also to M. Brown Special Agent Special Investigators Unit 6900 Atmore Drive Suite 1020 Richmond Virginia 23225
I Will Not Let This Go. You Should Have Done the Right thing So Should MS Brown I Will Now Seek the Help of those who will Investigate This

Chad P. Lucas
VSP# 1080073
Tort Claim

Deliberate Indifference, Wreckless
Endangerment of Contaminating Food Service
Area during Lunch & Dinner Meal
Preparations and Served to Population

Fod:BA

Exhibit
#
3

Complaint to L.M. Brown
Special Agent VADOC
against C/O Barns

(1) Jacob X 3000
VDP# 1081113
7B1-7 QHU Medical Quarantine
dcc
421 Beaufort Road
Haymesville, VA. 22472

**RECEIVED**

16 July 2020

**JUL 2 8 2020**

**OMBUDSMAN SERVICES UNIT**

L. M. Brown
Special Agent
Dept. of Corrections
6900 Atmore Dr.
Suite 1000
Richmond VA. 23225

RE: I Require your help with filing a complaint against an employee of Virginia Dept. of Corrections of Haymesville Correctional Center.
C/O Deans. HCC-20-REG-00046
I have filed a grievance on this issue against
C/O Deans and I have been denied the response
to my Grievance by the institutional Ombudsman
Ms. Brown. Whose very statement that
was sent me the response.

1.) My original response was due @ 8 June 2020.
2) I was sent a Grievance Continuance Receipt New Date
for response 5 July 2020.
3.) On 7 July 2020 I asked my Counselor Ms. Robinson
to inquire to Ms. Brown why I have not received
a response. Ms. Brown informed Ms. Robinson that
I would receive my response that night at mail call.
This did not happen, yet it was 2 days past due.
I have not got the Grievance response. And I have
Contacted everyone about getting it.
The Investigating Wright's Kind

(B)

He is now being Protected by the administration and Staff.

DOP 801.3 Managing Offenders with Disabilities Clearly States

On Pg. 6  2 A. Under No Circumstances will non-Health Care Providers
Substitute their judgment for that of the Health Care Provider Where an
Accommodation needed to Address A Physical or Mental Disability has been
Prescribed.

The institutional Doctor Made A Special Accommodation of Prescribing Me
To Use The Breathing Nebulizer Machine At Least 3 times A Day
or when in need.

C/o Bowens DID exactly so this policy states Not to DO.

Very Policy On 11 & 12 Physical Or Mental Impairments
al Meet Several..

Please   Interview The following Staff. of NCC
Lt. Jobyne   2 A Unit Supervisor.
C/o Ms Davis   cellblock lady
T/o Wright.

C/o Bowens Made those statements And Decisions
without Medical Authorization from a Nurse or Doctor.

He Violated Policy the ADA Law, VDA Law COV §51.5-1. et sq.

Please Help Me. Make sure something is Done
and have my employee Complaint filed.

I am A Disabled Offender, and al was Abused by C/o Bowens Denying Me My
Breathing treatments and Refused for 2 days Unable to Breath
The WARDEN DID not sign the Response until 10 Jul 2020  5 Days After the Response Date.

RECEIVED
JUL 2 8 2020
OMBUDSMAN SERVICES UNIT

She Has Absolutely No Proof She Sent it

I Have Absolutely No Proof of Receiving it.

I DO HAVE This Proof.

My Counselor Mrs. Robinson Called Mrs. Brown On 7July2020 Tuesday Morning around 8am to 8:30am And inquired about this Grievance dcc-20-Reg-00046. This was 2Days Past the 5 July 2020 Extortion Dated. Mrs. Brown Said I would Get it Tonight NoSuch act so that IT DID NOT Come. NOR DID it Wed. 8 July, 9 July, NSay, So on. There's A Record of that Call in the system. I'll be sure to inform the Investigators of that Piece of Material and to ensure they Question Mrs Robinson. Let all things in order Because I will not Stop, I will not give up, I am relentless And I will Get Justice for What this employee of DOC Illegally has done. You would have Served Your Job and Done well Had You made sure Mrs. Brown gave me my Response. You Took Her Side without knowing all the facts and Deci't that she's been going on around & about this with Hcc-20-Reg-00046 Or are you Completely Complicit You may always Capitulate We Can Work the Details of it out. Call Me So always I am Available Mrs. OMyth SHU Counselor is my Current Counselor Because I went out of SHU To VCU Medical Center for Appointments With the Dermatologist and Pulmonary Specialist lung Doctor. My Breathing Difficulties are Extreme And What Was Done to Me Could have Been Fatal. You really should Have READ What I Sent to You & the VA DOCuments of my Exposure To Weapons of Mass Destruction And the Damage that Has Haurmed my Lungs, Body and Health From My Service & U.S. Government DO NoChadr AllHienson

Will I allow this Illegal Act Committed by a VADOC Employee to go Unpunished Properly. I Broke the law I pled guilty to all of My Crimes because I was guilty and DID them NO Matter the Cost of My freedom. How is it that I feel I am truly the only Person honorable and with integrity. Officers had a Way out Jack Lt. Dobyns & A Unit Supervisor. All he had to do was admit What he Did to Me & to Ms. Brown and Apologize to Me. Therefore His Actions and Punishment would have Remained Contained with a Slap on the wrist. His Unwillingness to admit His Mistakes and Errors and to Apologize does it's own Consequences That will not be so forgiving. I told You that there was information That You Don't know. If You Can't bring Yourself to believe An Inmate and You Certainly will absolutely Not Defend Me against the abuse of A fellow Colleague. Public Service is not so easy especially when You are faced with Doing Whats Right at some point. Every One Must Make the hard Choice no matter the Cost or Consequence and No Matter how Unpleasant. I'm the Victim this Time, I showed my abuser Compassion and He Could not do Apologize. Tell Me Who is the Better Person. I am I, Saved my Victims. Them the traits of Trial & B.S. I accounted for my despicable acts and atrocities and accepted the Punishment given to Me and You Still think I am A liar, Untrustworthy, Without Honor and Integrity. Not So K. Cook. Had You actually Read the Documents You would know this of Me. Yet You Did something so incredulous That I Had Presented No Evidence of the Grievance Process. When Infact I Did Not that I was appealing The No Intake Decision of The Grievance + Informal Complaint with all the Correct Documents to Support My Position. How this DD this with the First Grievance, the Discrimination Grievance appeal & Request of Reasonable Accommodations Requests all legitimate And All Very Valid. I Should Remind You of this I also Sent to You a Copy of My Certification of 80 Credit Hours of EEOC Because That the U.S. Army →

JUL 2 0 2020
Ombudsman Unit
Eastern Region

*CAsel FrANK, LUCAS*
*VADOC# 1080673*
*Haynesville Correctional Center*
*7 B 17 Isolation Quarantine*
*Due to Visit to VCU Appointments*

13 July 2020

**RECEIVED**

JUL 2 8 2020

<u>THIS IS A COMPLAINT</u>

*OMBUDSMAN SERVICES INC.*

It is the policy of the Virginia Department of Corrections that **ALL EMPLOYEES WILL AT ALL TIMES CONDUCT THEMSELVES IN THE HIGHEST STANDARDS OF ETHICS AND IN A MANNER APPROPRIATE TO PROFESSIONS IN THE FIELD OF CORRECTIONS.** Employee behavior on duty, appearance and bearing will be conductive to effective and positive relations with inmates, staff, and the public, and will reflect credit upon the institution assigned to, The Department of Corrections and The Commonwealth of Virginia.

The employee mentioned in this complaint **HAS BLATANTLY VIOLATED ONE OR MORE OF THE RULES OF CONDUCT STIPULATED IN D.O.P. 211 (EMPLOYEE CONDUCT.** "**STAFF ARE TO CONDUCT THEMSELVES IN A PROFES-SIONAL MANNER AT ALL TIMES.**" This does not mean acting in a humor-less or overly officious manner, it means primarily avoiding excessively familiar behavior **OR THE USE OF INNAPPROPRIATE LANGUAGES, GESTURES, OR FACIAL EXPRESSIONS.** Such actions are not only unprofes-sional but can endanger the safety of staff and inmate alike.

**SHOULD ANY ALL OF A SUDDEN SPONTANEOUS MISFORTUNES OCCUR TO THE WRITER OF THIS COMPLAINT OR WITNESSES** (e.g. Charges, Shakedowns, Harassments, Denial of State required necessities, Urine test, etc.) **IT MUST BE NOTED THAT IT IS AN ACT OF REPRISAL AGAINST THE COMPLAIN-ANT(S) BE IT AT THE HANDS OF THE EMPLOYEE MENTIONED IN THIS COMPLAINT OR FRIENDS OF THE EMPLOYEE WHO MAY SEEK TO REPRISE ON BEHALF OF THE EMPLOYEE (IN ACCORDANCE WITH D.O.P. 866 PAGE 8 PARAGRAPH 4).**

A photocopy of this complaint should be placed into the active on duty (work) disciplinary file of the employee and should follow him/her throughout the remainder of his/her active employment with **THE VIRGINIA DEPARTMENT OF CORRECTIONS.**

**NOTE:   PLEASE BE ADVISED.** Should the writer of this complaint need additional space to provide accurate details of the description of the offense the writer will add an additional page or pages or to supplement this report.

*The Medical Correctional Officer DBRNS*
*Used his own judgement as a Non Healthcare*
*Provider To Decide To Refuse Inmate*
*Casel F. Lucas his Prescribed Medical*
*Accommodation DAONEB Breathing Treatment*
*That is a Chronic Care Treatment*
*For his Several Respiratory Disabilities.*
*Violating VADOC Policies 801.3 Pg. 6 2.A. And DOP 211.*
*The Americans with Disabilities Act, Virginia with Disabilities Act (COV § 51.5-1 et Seqs)*
*He HAD NO REGARD for Inmate LUCAS Life When He Decided He Would Not let him Get his Treatment.*

Thank you.

*Casel F. Lucas*

## VIRGINIA DEPARTMENT OF CORRECTIONS

### EMPLOYEE DISCIPLINARY COMPLAINT

EMPLOYEE'S NAME: _Barns_     TITLE: _Correctional Officer_

INSTITUTION: _Haynesville Correctional Center_   DATE: _13 July 2020_

OFFENSE TITLE: _Conduct & Hippa Law Violation_   ADA VRA Laws   OFFENSE CODE: _211 & DOP 801.3_

DATE: _13 April 2020_   TIME: _13:00 Hrs_   DAY: _Monday_

AREA OF OFFENSE (LOCATION): _Medical_

DESCRIPTION OF COMPLAINT/OFFENSE: _C/o Barns Violated Inmate C. Lucas #1086673 Right To Offer Prescribed Medical Breathing Treatment Without asking the Health Care Providers. This is in Violation VADOC Policy 801.3 Pg.6 R.A. NON-Health Care Will not substitute their Judgement Over the Health Care Provider, DOP 211, Hippa Laws, ADA Law, Virginia with Disabilities Act C/o Davis & Lt. Dobyns informed C/o Barns You can not deny the inmate the Breathing Treatment He C/o Barn Told Them Both He's to busy and so are the Nurses._

WITNESSES: _Lt. Dobyns_ ; _T/o Wright_ ; _C/o MS. Davis_

COMPLAINANT'S SIGNATURE: _Carol F. Lucas_

COMPLAINANT'S NAME PRINTED: _Carol F. Lucas_

DATE: _13 July 2020_   TIME: _11:50 Am_

**RECEIVED**

**JUL 2 8 2020**

**OMBUDSMAN SERVICES UNIT**

### I.O.P. 211 VIOLATION

211-7.1   STAFF AND INMATE RELATIONS

¶ 1.  All staff members must remember that inmates are human beings and as such are deserving of fair and humane treatment.  Abuse or any form of corporal punishment is prohibited.  No profane, demeaning, indecent or insulting language or words with racial or ethnic connotations shall be directed towards the inmate.  At all times employees will be respectful, polite and courteous in their contact with inmates.

¶ 3.  To the greatest extent possible, staff members are to avoid involvement in the personal lives of inmates.  Staff will not ask questions of a personal nature except as a part of authorized treatment procedures.  Staff members are to respect the rights of each inmate to hold his own philosophical, political and riligious beliefs however disagreeable such beliefs are or may be to the staff member.  Likewise, employees will not share personal information with inmates.

VSP# 1080672

Tort Claim

Deliberate Indifference, Wreckless
Endangerment of Contaminating the
Food Service areas during Lunch
and Dinner Meal Preparation and
Served to Population.

Exhibit

# 5

Complaint Appeal To K. Cosby
Regional Ombudsman Bias
Retaliation Hindering The Process

CABEL F. LUCAS
VSP# 1080673
7B17 JCC Quarantineb
421 BARnfield Road
Jaynesville VA. 22472

RECEIVED
JUL 28 2020
OMBUDSMAN SERVICES UNIT

18 July 2020

K. Cosby
Regional Ombudsman

RE: Appeal of JCC-20-REG-00046

Issue: Resolution Hindering To Process
Ombudsman Mrs. Braun of JCC Refuses to give me
a Response to my complaint in the Time allotted by 866.1

c/o Braun Refused me my Chronic Care
Treatment for Breathing.

No Resolution was been given to me
Per 866.1 In the Time frame of the
Continuance Grievance Receipt Therefore
I am Appealing The NO Decision Make
at the institution level.

Again c/o Braun Made a Decision On His QLN
without Regard for my life. Per Policy DOP 801.3
Managing Offenders With Disabilities Page 6 2 (A)
Under NO Circumstances Will A NON-health Care Provider
Substitute their ... State own Hat or Attending Physician

②

Provider where an accommodation needed to Address a Physical or Mental Disability has been Prescribed.

This is A Direct Violation of this Policy To Add

My Breathing Condition's Are Chronic Bronchitis, Emphysema, Asthma, Bronchial Diagnosed U.S. Army Recurrent Upper Respiratory Infections. All listed by the DOP 801.3 Pages 11 & 12 Physical and Mental Impairments.

**RECEIVED**
**JUL 28 2020**
**OMBUDSMAN SERVICES UNIT**

Correctional Officer BARNS Also Violated the following Laws

Hippa Law, Americans with Disabilities Act, The Virginians with Disabilities Law.

VA DOC Employee ethics And Rules of Conduct Under DOP. 211.

This employee Had No Regard for my life and by His Actions and Violations of the Law That Protects Me A Disabled Person.

Correctional Officer Barn Should Be Immediately Terminated for These Blatant Violations of State and Federal Laws and the Number of Virginia Dept of Corrections Policies DOP 801.3 & DOP 211 Employee Conduct.

I Have filed A Formal Employee Disciplinary Complaint Against C/O Barns

I Have filed A Formal Employee Disciplinary Complaint Against C/O Barns with Tami Brown Investigator Special Investigative Unit 6/4 Office Dr. Suite 1030 Richmond VA. I Will Not Let This go. you Should have Done the Right thing So Shall I have Ms. Brown is Warden. →
I Will Be Killed at those who will Investigate this

...as Reg. 000No or else you completely complicit you may always capitulate. We will work the details of it out. Call me. I'm always... I'm invisible

Ms. Smith shall consider in my current counselor because I don't feel safe...

To VCU Medical Center for appointments with the Dermatologist and Pulmonary Specialist lung doctor. My breathing difficulties are extreme and what was done to me could have been fatal. You really should have read what was sent to you, the VA documents of my exposure to weapons of mass destruction and the damage that it has done to my lungs, body and health from my service.

To U.S. Government so NO Under's reason will or allow this illegal act committed by a VADOC employee to go unpunished properly. I broke the law I plead guilty to all of my crimes because I was guilty and DID no matter, the cost of my freedom. How is it that I feel I am truly the only person honorable and with integrity. C/O Barns Did I ever ask Lt. DeLayne 2-A-Unit supervisor did he did to do was Snitch what he did to me or to Mr. Drumm and agreeing to be... Therefore this actions and punishment would have remained contained with a slap...

No unwillingness to admit his mistakes and errors and to apologize this...

RECEIVED
JUL 2 8 2020
OMBUDSMAN SERVICES UNIT

That will not be. So forgiving. I told you that there was information that you didn't know yet you can't bring yourself to believe an inmate and you certainly will absolutely not defend me against the abuse of a fellow colleague. Public service is not so easy especially when you are faced with doing what's right. At some point everyone must make the hard choice no matter the cost or consequence and no matter how unpopular it is. I'm the victim this time, I showed my abuser compassion and he cared not to apologize. Tell me who is the better person. I am I saved them my victims. The trouble of trial or B.S. I accepted for my despicable acts and atrocities and accepted the punishment given to me and you still think I am a liar, untrustworthy, without honor and integrity. Not so K. Cooby had you actually read the documents you would know this of me. Yet you said I did not that I did not present no evidence of the grievance process. Wherein my complaint with all of the correct documents to support my position. Your office did this with the Food Service Grievance, the discrimination grievance, appeal of request of reasonable accommodation request all legitimate and all very valid. I should remind you I also sent to you a copy of my certification of 30 credit hours of EEOC & unmet deserves that the U.S. Army 4th Infantry Division

CHAD F. KUCHG
VDP# 1080673
Tort Claim
Deliberate Indifference / Reckless
Endangerment of Contaminating Food Service
Area Derving of Lunch & Dinner Preparation
Served for the Population

Exhibit
#

6

Dept. of Corrections Operating Procedure
801.3 Managing Offenders
With Disabilities. ✓



| | |
|---|---|
| | **Offender Management and Programs** |
| | **Operating Procedure 801.3** |
| | *Managing Offenders with Disabilities* |
| | **Authority:** Directive 801, *Facility Administration* |
| | **Effective Date:** August 1, 2019 |
| | **Amended:** |
| | **Supersedes:** Operating Procedure 801.3, July 1, 2016 |
| | **Access:** ☒ Public   ☐ Restricted   ☒ Incarcerated Offender |

**Virginia Department of Corrections**

**ACA/PREA Standards:**
5-ACI-2C-02, 5-ACI-2C-11, 5-ACI-2C-12,
5-ACI-2C-13, 5-ACI-3D-04, 5-ACI-5E-02,
5-ACI-5E-03, 5-ACI-6C-06, 5-ACI-7A-01,
5-ACI-7B-10, 5-ACI-7D-13; 4-4133, 4-4142,
4-4143, 4-4144, 4-4277, 4-4399, 4-4429, 4-4429-1,
4-4448, 4-4475, 4-4497; 4-ACRS-5A-19,
4-ACRS-6A-01-1, 4-ACRS-6A-04,
4-ACRS-6A-04-1, 4-ACRS-6A-04-2,
4-ACRS-6B-01; 2-CI-5A-1

| | | | | |
|---|---|---|---|---|
| **Content Owner:** | Rose Durbin<br>PREA/ADA Supervisor | *Signature Copy on File* | | 6/14/19 |
| | | Signature | | Date |
| **Reviewer:** | Jermiah Fitz Jr.<br>Corrections Operations Administrator | *Signature Copy on File* | | 6/17/19 |
| | | Signature | | Date |
| **Signatory:** | A. David Robinson<br>Chief of Corrections Operations | *Signature Copy on File* | | 7/1/19 |
| | | Signature | | Date |

## REVIEW

The Content Owner will review this operating procedure annually and re-write it no later than three years after the effective date.

## COMPLIANCE

This operating procedure applies to all units operated by the Virginia Department of Corrections. Practices and procedures must comply with applicable State and Federal laws and regulations, ACA standards, PREA standards, and DOC directives and operating procedures.

ARCHIVED
JUL 2 0 2020
Ombudsman Unit
Eastern Region

Operating Procedure 801.3, *Managing Offenders with Disabilities*　　　　　　　Effective Date: August 1, 2019

# PURPOSE

This operating procedure provides guidelines for management of and provision of reasonable accommodations to offenders with disabilities housed in Department of Corrections (DOC) facilities. It describes levels of available services, methods by which assignments are made, and appropriate security measures for offenders with disabilities in accordance with the *Americans with Disabilities Act of 1990*, as Amended (42 U.S.C. §12101 et seq.) and the *Virginians with Disabilities Act* (COV §51.5-1 et seq.).

# PROCEDURE

I.　Training and Responsibility

　　A. All staff, contract staff, interns, and volunteers who regularly interact with offenders with disabilities will receive instruction related to the provisions of accommodations for offenders with disabilities and the requirements of this operating procedure.

　　B. All staff and contract staff must complete the mandatory *Americans with Disabilities Act (ADA)* on-line training, annually. Upon completion of the training, a copy of the certificate must be printed and submitted to unit training staff or the immediate supervisor for units without training staff.

　　C. Upon arrival and during formal orientation, all offenders, to include those offenders who are transferred immediately to the infirmary or restrictive housing upon intake, will be informed of their right to non-discrimination on the basis of a disability and the process for requesting a reasonable accommodation as outlined in this operating procedure. (See Operating Procedure 810.1, *Offender Reception and Classification*, and Operating Procedure 810.2, *Transferred Offender Receiving and Orientation*.) (5-ACI-3D-04; 4-4277; 4-ACRS-6B-01)

　　　　1. Each offender, upon arrival will be provided a copy of Attachment 1, *Notice of Rights for Offenders with Disabilities*, which includes the DOC ADA Coordinator's contact information.

　　　　2. The facility *Orientation Manual, Packet,* and/or other written orientation materials must include the facility ADA Coordinator's name and contact information.

　　D. Information on the nature and extent of an offender's disability and any reasonable accommodations related to the disability is considered protected health information. This information is confidential and will only be disclosed to staff as necessary to provide assistance to the offender or as authorized and/or permitted by the offender.

　　E. ADA Coordinator

　　　　1. Staff and offenders have access to the DOC ADA Coordinator and a facility ADA Coordinator. (5-ACI-5E-03; 4-4429-1; 4-ACRS-6A-01-1)

　　　　　　a. The DOC ADA Coordinator is an appropriately trained and qualified individual, educated in the problems and challenges faced by offenders with physical and/or mental impairments, programs designed to educate and assist offenders with disabilities, and all legal requirements for the protection of offenders with disabilities.

　　　　　　b. The facility ADA Coordinator is trained by the DOC ADA Coordinator in mandated legal requirements regarding disability accommodations.

　　　　2. The DOC ADA Coordinator will serve as the authority on all issues related to offenders with disabilities, reasonable accommodations, and the application of this operating procedure.

　　　　3. The facility ADA Coordinator will review all offender requests for a reasonable accommodation and, in consultation with appropriate staff, make a determination on the request and maintain documentation of the facility accommodation process to include approvals, denials, and appeals.

　　　　　　a. The following requirements will be considered when making a determination for an accommodation:

　　　　　　　　i. The disability, as recognized by the ADA, must be known to the DOC.

　　　　　　　　ii. The accommodation must not pose an undue hardship on the facility or to the safety and

that an offender with a communication disability such as deafness that requires an in-person qualified interpreter or other auxiliary aids and services is being transported to them on an urgent basis. Notification will include the estimated time of arrival.

    c. For all offenders transported for offsite health care, a facility health care provider will ensure that the offender's communication disability and the need for an accommodation is documented on the *Offender Gate Pass* and recorded in the offender's Health Record.

4. A conspicuous notice of any communications disabilities (i.e. hard of hearing, speech impairment, language translation, vision impairment) must be noted on the Health Record of any offender whose disability affects their ability to communicate and an appropriate advisory regarding this disability must be provided to facility staff and designated in VACORIS.

III. Determination of Disability and Reasonable Accommodations

A. All offenders receive a medical and mental health screening by a qualified Health Care Provider or health trained staff in accordance with Operating Procedure 720.2, *Medical Screening, Classification, and Levels of Care*, and the *Nursing Guideline* for *Medical/Location Codes*.

1. Offenders must be afforded the opportunity to disclose their present and prior disabilities and needs and request an accommodation(s) for their disability during their medical and mental health screening. The qualified Health Care Provider will:

    a. Question the offender regarding any previous accommodation(s)

    b. Discuss modified or additional accommodations as appropriate

    c. Make appropriate notations in the offender's Health Record.

2. When an offender arrives at a facility with an approved accommodation, medical equipment or an assistive device that presents any concerns, the Facility Unit Head, in consultation with the facility Medical Practitioner and ADA Coordinator, will make a decision regarding the removal of the item to minimize risk and provide alternate appropriate accommodations.

3. The facility Health Care Practitioner may consult with the facility ADA Coordinator and DOC ADA Coordinator, as needed to determine if a requested accommodation is within the scope of the ADA.

B. The facility Medical Practitioner, in consultation with qualified health care practitioners or specialists, and in conjunction with the affected offender, will diagnose any disability, not previously diagnosed.

1. After the initial medical screening and a comprehensive health appraisal are completed and the findings evaluated, offenders will be medically classified and assigned a location code.

2. The offender's medical classification code and location code should be reviewed during the intra-system transfer process, and any time a change of the offender's condition is identified to ensure it reflects the current medical status of the offender.

    JUL 2 0 2020

3. The facility Medical Practitioner will assign a medical/disability code, which indicates if the offender has an impairment that qualifies as a disability (i.e. legally blind, deaf, mobility impaired). This determination is based on the *Americans with Disabilities Act of 1990, as Amended* (42 U.S.C. §12101 et seq.) and *The Virginians with Disabilities Act* (COV §51.5-1 et seq.).

4. The Health Authority or designee will assign the medical location code, which indicates the offender's requirements for physical accommodations and access to health care services.

C. After a disability is diagnosed, a qualified health care practitioner or specialist will determine the level of medical accommodation needed and provide appropriate medical treatment as is required by the offender's condition.

1. The facility Health Care Practitioner (i.e. physician, optometrist, dentist, psychology associate) will make a determination on the specific accommodation provided and will determine the type of auxiliary aid and/or service to be provided, considering the request of the offender with a disability, but the offender's request, although not determinative, is given priority. This information will be recorded in the offender's Health Record.

3. If a medically prescribed accommodation poses an undue hardship on the facility or to the safety and security of the offender or any other person, the facility ADA Coordinator must notify a facility health care provider of the safety/security concerns so that the prescribed accommodation can appropriately modified.

D. In determining whether an offender's disability or accommodation poses an undue hardship to the health or safety of themselves or others, the facility ADA Coordinator must make an individualized assessment based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence to ascertain:

1. Nature, duration, and severity of the risk

2. Probability that the potential injury will actually occur

3. Whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids and services will mitigate the risk

E. Any offender who believes, they were discriminated against because of their disability, or decides to appeal their *Accommodation Requests* may do so in accordance with Operating Procedure 866.1, *Offender Grievance Procedure*. Grievances of this type must be initially reviewed by the facility ADA Coordinator, who should consult with the Facility Unit Head and, ultimately, the DOC ADA Coordinator.

V.   Housing for Offenders with Disabilities

A. Facility staff will use information from the offender's *Classification Assessment* and the *Cell Compatibility Assessment* to determine appropriate housing and bed assignments for offenders with disabilities in accordance with Operating Procedure 425.4, *Management of Bed and Cell Assignments* (Restricted). When necessary, single occupancy cells should be made available for offenders with severe medical disabilities. (5-ACI-2C-02; 4-4133)

B. Offenders with disabilities will be housed in a manner that provides for their safety and security. Housing used by offenders with disabilities, is designed for their use and provides for integration with other offenders. Programs and services will be made accessible to offenders with disabilities who reside in the facility. (5-ACI-2C-11; 4-4142; 4-ACRS-6A-04)

1. To the extent feasible, offenders with disabilities should be placed in general population settings. Offenders with disabilities requiring special health care and services will be placed in settings that provide health services appropriate to the offender's health needs.

2. Offenders with disabilities should be housed in the most integrated setting appropriate to the needs of the individuals, unless it is deemed necessary to make an exception.

   a. Offenders who require handicap accessible cells or beds will not be placed in inappropriate security classifications due to their disability.

   b. Offenders with disabilities will only be placed in designated medical areas when necessary to provide medical care or treatment.

   c. Offenders with disabilities will not be placed in facilities that do not offer the same programs as the facilities where they would otherwise be housed.

   d. Offenders with disabilities will not be deprived of visitation with family members by placing them in distant facilities where they would not otherwise be housed; this does not preclude gathering groups of offenders with similar special needs (i.e. dialysis, geriatric, deaf and hard of hearing) into one or more locations where special resources can be provided to meet those needs.

C. Offenders Housed in the Infirmary

1. Offenders admitted to the infirmary may have access to one or more programs and services i.e., education, work, religious services, library access, and commissary, temporarily suspended as deemed appropriate by the facility Medical Practitioner based on the offender's medical condition and level of medical care needed.

G. Use of Force

1. Force may be used on offenders with disabilities in instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, or to maintain or regain control as provided in Operating Procedure 420.1, *Use of Force* (Restricted).

2. When such use must be preceded by the provision of an appropriate warning, this warning must be communicated by means that offenders with communication disabilities can observe and understand.

# DEFINITIONS OF TERMS USED IN THIS OPERATING PROCEDURE

**ADA Coordinator** - A Department of Corrections employee assigned to coordinate the Department's efforts to comply with and carry out its responsibilities under the provisions of Title II of the *Americans with Disabilities Act* to include the review of complaints alleging non-compliance with requirements of non-discrimination for offenders with disabilities and coordination of DOC's efforts to comply.

**Auxiliary Aids and Services** - Assistance provided through services, equipment, or modifications to provide equal access for disabled or impaired individuals to activities, programs, and privileges, these aids and services may include, but are not limited to:

- Qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments
- Qualified readers, taped texts, audio recordings, Brailed materials, large print materials, or other effective methods of making visually delivered materials available to individuals who are blind or have visual impairments
- Functional devices to increase mobility including but not limited to walkers, canes, crutches, and manual or powered wheelchairs for individuals with mobility impairments
- Acquisition or modification of equipment or devices and other similar services and actions

**Communication Disability** - Any impairment related to speech, language, and/or auditory processing; it includes hearing impairments, visual impairments, and cognitive impairments evidenced by an inability to speak, read, and/or understand written or oral communications of information provided at the facility.

**Co-payment** - The amount paid by the offender for health care service, treatment, prosthesis, or orthotic

**Health Care Practitioner** - A clinician trained to diagnose and treat patients, such as physician, psychiatrist, dentist, optometrist, nurse practitioner, physician assistant, and psychologist

**Health Care Provider** - An individual whose primary duty is to provide health services in keeping with their respective levels of licensure, health care training, or experience

**Major Life Activities** - Include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, toileting, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working

**Medical Practitioner** - A physician, nurse practitioner or physician's assistant             JUL 2 0 2020

**Mobility Impairments** - Inability to move about without the aid of a cane, splint, crutches, wheelchair, walker, or any other form of support or because of limited functional ability to ambulate, climb, descend, sit, rise, or perform any related function

**Offender with a Disability** - Any offender who has a physical or mental impairment that substantially limits one or more of their major life activities, has a record of such impairment, or is perceived as having such impairment

**Physical or Mental Impairment** - Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organ, respiratory (including speech organs), cardiovascular, reproductive, immune, digestive, genitourinary, hemic or lymphatic, skin and endocrine; or any mental or psychological disorder, such as mental retardation (Developmental Disorder), organic brain syndrome, emotional or mental illness, and specific learning disabilities.  The phrase "physical or mental impairment" includes, but is not limited to, such contagious and non-contagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental

Carel F. LUCAS
VSP# 1080073
Tort Claim
Deliberate Indifference, Needless
Endangerment of Contaminating The
Food Service area During
Lunch + Dinner Meal
Preparation Served To Population

EXHibit

#

7

U.S. Dept of Vetrans
Affairs Service
Connected Disabilities



# BOARD OF VETERANS' APPEALS

### DEPARTMENT OF VETERANS AFFAIRS
### WASHINGTON, DC 20038

Date: June 14, 2018                                     SS 228 29 8166

CASEL F. LUCAS

Dear Appellant:

 The Board of Veterans' Appeals (Board) has made a decision in your appeal, and a copy is enclosed.

| If your decision contains a | What happens next |
|---|---|
| Grant | The Department of Veterans Affairs (VA) will be contacting you regarding the next steps, which may include issuing payment. Please refer to VA Form 4597, which is attached to this decision, for additional options. |
| Remand | Additional development is needed. VA will be contacting you regarding the next steps. |
| Denial or Dismissal | Please refer to VA Form 4597, which is attached to this decision, for your options. |

 If you have any questions, please contact your representative, if you have one, or check the status of your appeal at http://www.vets.gov.

Sincerely yours,

Kimberly Osborne
Deputy Vice Chairman

RECEIVED
JUN 2 4 2020
By:_____
GRIEVANCE OFFICE

Enclosures (1)
CC: Virginia Department of Veterans Services

RECEIVED
MAY 2 6 2020
By:_____
GRIEVANCE OFFICE



# BOARD OF VETERANS' APPEALS
## DEPARTMENT OF VETERANS AFFAIRS

IN THE APPEAL OF                                           SS 228 29 8166
**CASEL F. LUCAS**                                  Docket No. 13-22 962
REPRESENTED BY
**Virginia Department of Veterans Services**

DATE:       June 14, 2018

## ORDER

Service connection for post-traumatic arthritis, left elbow, to include as due to Gulf War environmental exposures, is denied.

Service connection for right elbow strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for flexion contracture, distal interphalangeal (DIP) joint, right fifth finger, is granted.

Service connection for flexion contracture, DIP joint, left fifth finger, is granted.

Service connection for right ankle strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for left ankle strain, to include as due to Gulf War environmental exposures, is denied.

Service connection for chronic fatigue syndrome (CFS), to include as due to Gulf War environmental exposures, is denied.

Service connection for recurrent upper respiratory infections is granted.

Service connection for a sleep disorder, to include as due to Gulf War environmental exposures, is denied.

Service connection for gastroesophageal reflux disease (GERD) is granted.

RECEIVED
MAY 2 6 2020
By: GRIEVANCE OFFIC

RECEIVED
JUN 2 4 2020
By:
GRIEVANCE OFFICE

IN THE APPEAL OF                                    SS 228 29 8166
    **CASEL F. LUCAS**                        Docket No. 13-22 962

Service connection for genitourinary problems, to include as due to Gulf War environmental exposures, is denied.

Service connection for impotency, to include as due to Gulf War environmental exposures, is denied.

Service connection for amyotrophic lateral sclerosis (ALS), to include as due to Gulf War environmental exposures, is denied.

Service connection for headaches is granted.

The appeal for an effective date earlier than August 25, 2010 for the grant of service connection for PTSD is dismissed.


**REMANDED**

Entitlement to service connection for patellofemoral syndrome, right knee, to include as due to Gulf War environmental exposures, is remanded.

Entitlement to an initial rating in excess of 10 percent for posttraumatic stress disorder (PTSD) is remanded.

**FINDINGS OF FACT**

1. The Veteran had active service in the Southwest Asia Theater of Operations during the Persian Gulf War.

2. The Veteran's left elbow pain has been linked to a diagnosis of post-traumatic arthritis, left elbow, and the preponderance of the evidence is against finding that his post-traumatic arthritis, left elbow, was manifested in service, within one year of his separation from service, or is due to a disease or injury in service, to include a specific in-service event, injury, or disease.

RECEIVED
JUN 2 4 2020
BY: GRIEVANCE OFFICE

RECEIVED
JUN 2 6
By:_____
GRIEVANCE OFFICE

RECEIVED
MAY 2 6 2020
By:_____
GRIEVANCE OFFICE

IN THE APPEAL OF                                                    SS 228 29 8166
    **CASEL F. LUCAS**                             Docket No. 13-22 962

been diagnosed with CFS or with any medically unexplained chronic multi-symptom illness.  The existence of a current disability is the cornerstone of a claim for VA disability compensation.  *See Brammer v. Derwinski, supra.*  As such, without a current diagnosis, the Veteran lacks the evidence necessary to substantiate his claim for service connection.  The Board acknowledges that the Veteran does appear to have experienced fatigue, particularly as a result of his difficulties sleeping, but that fact alone does not necessitate the diagnosis of CFS which requires a specific set of symptomatology beyond just fatigue.

## 5. Entitlement to service connection for recurrent upper respiratory infections.

The Veteran contends he has respiratory problems due to various exposures in Iraq during the Gulf War, including chemicals and toxins, and exposure to WMDs after the demolition of an arms facility.  He also contends he has had recurrent upper respiratory infections, to include pneumonia, and bronchitis, requiring treatment, since his service in Desert Storm.

Service treatment records show that in April 1988, the Veteran was treated for asthmatic bronchitis, and in May 1988 he was hospitalized for acute respiratory disease.

On a VA examination in March 2011, the Veteran reported his respiratory condition had an onset in the 1990s, and that he had recurrent upper respiratory infections requiring treatment since Desert Storm.  The diagnosis was recurrent upper respiratory infections, which the examiner indicated was, by VBA definition category # (2), a diagnosable but medically unexplained chronic multi symptom illness of unknown etiology.  The examiner opined it was at least as likely as not the Veteran's recurrent upper respiratory infections were related to a specific exposure event he experienced during his service in Southwest Asia.  The examiner noted that signs and symptoms that may be manifestations of both undiagnosed illnesses or diagnosed medically unexplained chronic multi-symptom illnesses include signs or symptoms involving the upper respiratory system.

As noted above, signs and symptoms which may be manifestations of medically unexplained chronic multi symptom illnesses include respiratory symptoms.

RECEIVED
MAY 26 2020
By:_____ GRIEVANCE OFFICE

RECEIVED
JUN 24 2020
By:_____
GRIEVANCE OFFICE

Cabel F. Lucas

VSP# 1080673

Tort Claim

Deliberate Indifference, Wreckless Endangerment as Contaminating the Food Service Area During Lunch and Dinner MEALS Preparations and served to Population

Exhibit

#

8

VADOC Medical Records of Chronic Care Illnesses, Diseases and Military Disabilities Treatment in VADOC

# Chronic Disease Clinic Follow-Up
## HAYNESVILLE CORRECTIONAL CENTER

Offender Name: __LUCAS, CASEL__

Number: __1080673__

**List chronic diseases:**

| | | | | | |
|---|---|---|---|---|---|
| 1) HTN | | 3) COPD | | 5) BPH | |
| 2) DM-2 | | 4) I.B.D | | 6) PTSD | |

**List current medications:**

_See MAR (attached)_

**Subjective: (Yes or No)**

Asthma: # attacks in last month? __∅__
# short acting beta agonist canisters in last month? ____
# times awakening with asthma symptoms per week? __∅__
Any wheezing? __N__ Any night sweats? __∅__
Any systemic steroids use? __N__ Any hemoptysis? __N__
CV (hypertension &/N): Chest pain? __N__ | SOB? __N__

Seizure disorder: # seizures since last visit? ____
Diabetes mellitus: # of hypoglycemic reactions since last visit? ____
Any polyuria? ____ Any nocturia? ____ Any orthopnea? ____
Weight loss/gain ↓↑ ____ #lbs ____
Palpitations? __N__ Ankle or leg edema? __N__

Any dizziness since last appointment? __N__ Any foot problems since last appointment? __N__
Any blurred vision? __N__ Any claudication? __N__ Any headaches? __N__ Any nausea/vomiting? __N__
Rashes/Lesions? ____ Any abdominal pain/swelling? __N__ Diarrhea? __N__

For all diseases, since last visit, describe new symptoms:
COVID-19 neg 8/4/2020
Echo done. ○ 8/21/2020: EF 68%
Mild pulmonic regurg. Mild Tricuspid regurg. Mild ○ atrial enlargement.
Possible outlet vsb. ○

**Patient adherence (Y/N):** with medications? __Y__  with follow up appointments? __Y__  with diet? __Y__
**Vital signs:** Temp __98.6__ BP __105/68__ Pulse __61__ Resp __18__ Wt __203__ PEFR ____ Pain scale ____

95%

**Past Labs:**
Hgb A1C __7.5__ BMP ____ CMP __6/2020__ INR ____ CD4 _-_ Total Chol __90__ LDL __30__ HDL __40__
Trig __101__ Hct __52.3__ Hgb __16.9__ AST __19__ ALT __29__ BUN __11__ Creatinine __1.04__
Micro albumin ____ UA __wbc__ CBC __6/8__ EKG __3/2020 wnl__ LFT ____
Drug level: ____ Other ____ Fibroscan score: ____

Range of fingerstick glucose: ____ BP monitoring range: __90 - 196 mg/dL__
__90/68, 130/84.__

**Procedure:**
Annual Funduscopic eye exam completed ☐ Yes ☐ No ☑ N/A
Annual dilated eye exam completed ☐ Yes ☐ No ☑ N/A
Annual foot exam completed ☐ Yes ☐ No ☑ N/A
**E:**

| HEENT/neck: NC/AT, EOMI, PERRLA, ∅ bruits | Extremities: ∅ edema |
|---|---|
| Heart: S1+S2, No RMG | Neurological: CN 2-12 grossly intact |
| Lungs: CTA BL | GU/rectal: deferred |
| Abdomen: Soft NT/ND, BSt | Other: |

**Assessment Diagnosis:**

| | | Degree of Control | | | | Clinical Status | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | G | F | P | NA | I | S | W | NA |
| 1 | HTN | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 2 | DM-2 | ☑ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ |
| 3 | COPD | ☑ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ |
| 4 | BPH | ☑ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ |

COPY

**Plan/Orders:**

1080673

Medication: _____ ∅

Diagnostics/Procedures: __MAR 2021: EKG__ ✓

Labs: __DEC: CBC, CMP, Lipids, HbA1c, B12, folate, UA, vit D, PSA.__ ✓

Special needs: ___none___          Work Code _____

☑ Administer Influenza vaccine ☐ Administer Pneumonia vaccine

92 months

Monitoring: BP: _____ X day/week/month  Accucheck: _____ X day/week/month  Peak flow: _____

Offender questioned regarding presence of depression and suicidal thoughts while on seizure therapy? ☐ Yes ☐ No ☐ N/A

**Education provided:** ☑ Nutrition ☐ Exercise ☐ Smoking ☑ Test results ☑ Medication management ☐ Lab results ☑ Disease process

**Referral:** (list type & priority level): Specialist: _____

# Days to next visit? ☐ 1 year ☑ 180 ☐ 90 ☐ 60 ☐ 30 ☐ Other: _____

**Additional information:**

GTRD ___11/4/2026___

LOC ___D___

MED ___A, 11, 12, 3, 4, 8A, 9___

MH ___2___

Provider Signature: _Adnan H MD_          Date: _9/14/2020_

1 copy



VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form 720_F17_7-12

# Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** Lucas                    Casel
                   *Last*                    *First*

**Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|-----------|-------------------------|---------------------|
| 9/11/20 730p | Offender requesting renewal of D-Cerin and Visine. Chart to MD/NP. | KLangford, RN |
| 9/14/2020 618 Noted 9/14/2020 @ 0000 Q. Boeh, RN | Emollients are available in the commissary Memo * Visine tear drops, 2 drops ea eye BID x90days EMP | Abrantus |
| 9/28/2020 754 noted Johnson GP 9/28/20 11AM | Labs from 9/21/2020 Acceptable | Adnanll MD |
| 10/1/2020 1515 | Renew Biotene Mouth spray 2 spray QDPRN Dry mouth - SSfin APRN DNP-C await approval for non-formulary med. previously Rx Dental. | |
| 10-2-2020 9A 193⁴ 97⁸ 18 107/79 72 95⁶ | | |
| 10/6/2020 0730 117/75 69 97% ⊕189.16 ⊖98.7 16 | pt seen and evaluated for f/u from pulmonology visit by telephone 9/10/2020 PFTs completed by specialist, reviewed med list and current inhalers, discused risk/benefits of meds. Review all notes from specialty noted request to add mediation for allergy symptoms and △ Atrovent to LAMA, TTE completed mild regurgitation EF 65-70%. Obstructive COPD ⊘Stop Atrovent ⊙ LAMA Obstructive COPD ⊙ Start incruse ellipta 1 puff inhaled QD x90days Allergic Rhinitis 1) Zyrtec long PO QD x 90 days √ CN: WNL, lungs CTABL Today ABD soft/tender Skin warm/dry ⊕ROM ⊕ CAP refill<2sec - SSfin APRN DNP-C | |
| | noted Johnson GP 10-6-20 11P | |
| 10/8/2020 1245 | Emollients are available in commissary please bring receipts for eval of Medical need for Decin cream refill per 9/14/2020 note - SSfin APRN DNP-C | |
| | noted 10/13/20 cep KLangford, RN | |



VIRGINIA
DEPARTMENT OF CORRECTIONS

**Health Services Complaint and Treatment Form** 720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** Lucas _Last_   Casel _First_   **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 08/21/2020 2:50 | 2D Echo cardigan Done on Site | (illegible) |
| Noted 8/25/20 1:30pm (illegible) PRN | Uses Advan as directed Renew advan 4 5B1 BID ↑ ✓ Flonas 0.05% T BID ✓ Prosean 5mg qd ✓ Glucotal 5mg BID X 1900 ✓ Caston 10mg HS Flonas 0.4mg qd · Promx | (illegible) MD |
| 9/1/2020 1050 Noted @ 2020 qd 1200 A. Bradsher | Refill request received, please advise pt saline spray, eye drops and lotion need to be purchased from commissary. 1) Senna Plus II PO QD PRN constipation X 30 tabs 2) Oystecal 1 tab PO QD X 90 days 3) Voltaren gel Use 4G to pain site QID PRN MAX 16g X 3 tubes 4) all others have valid Rx, Need refills completed by pharmacy. | (illegible) APRN, DNP-C |
| 9/7/2020 822 Noted (illegible) 9/7/20 11A | Labs from 9/3/2020 Acceptable *Redo Ct, Ng, Trich vag ✓ | Adnan MD |

COPY

VIRGINI
DEPARTMENT OF CO    CTIONS          Health Services Complaint and Treatment Form   720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** _Lucas_ (Last)   _Casel_ (First)   **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 8/7/20 | Pulm function test on 8/6/20 — acceptable | |
| | 8/7/20 | Leon, M |
| 8/11/20 2:40 pm | To review PFT. Feels pretty good & used nasal spray (lots of *illegible* coming sinuses &/o epistaxis) + inhaler. Not exercising but plans to walk. NAD. *illegible* lungs Acute *illegible* HS 782 clear full resp *illegible* prolonged expir. Smoking, lungs, gas exposure. Will avoid *illegible* Overexertion. Use albuterol continuously & *illegible*. Also, pt requests STD screen. Obtain HIV screen, RPR, Chlamydia/*illegible* Trichomonas | |
| 8/11/20 | | Leon, M |
| 8/12/2020 1350 | 8/4/2020 Lab screen for COVID negative. Acceptable lab. | SO'Neiu APRN, DNP-C |
| 8/18/2020 0900 | Pt seen to release Quarantine, no s/s of COVID. No temp 14 days complete release from quarantine. Isolation no longer needed, Neg COVID screen - SO'Neiu APRN, DNP-C | |
| 95% 97.8 T 114/76 HR 68 RR 16 | noted 8/18/20 0942 Am *illegible* | |
| 8/18/20 730 pm | Spoke c Sgt Young, in RHU concerning *illegible* release. | *illegible* |

COPY



VIRGINIA
DEPARTMENT OF CORRECTIONS   Health Services Complaint and Treatment Form 720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** LUCAS (Last)    CASEL (First)    **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 7/23/2020 94 oa 99.3, 94, 96% 18, 153/91 | Pt seen and screened for symptoms of COVID s/p med run. Pt has been in medical isolation since her run. Denies all symptoms of COVID-19 CHS: S, 45 Lungs: CTAB Asymptomatic    * Release back to compound | Adnan MD |
| 7/27/2020 951 | * Renew Amlodipine 10mg PO qday x 180 days * Renew Xopenex 45 mcg 2 puffs q12 PRN SOB x 180 days * Renew Atrovent 1 inh 2 puffs tid PRN SOB x 180 days * Renew Atenolol 50mg PO BID x 180 days | Adnan MD |
| 7/29/2020 1355 | Reviewed results CXR dated 7/28/2020 - no acute finding - Acceptable | Sfeir APRN, DNP-C |
| 7/29/20 2000 | Offender requesting renewal of Senna plus. Chart to MD/NP. | K Langford, RN |
| 7/30/20 | Per Derm consult of 7/8/20 - avoid Clinda gel, No additional lotions (Sebron?) has chronic itch 185 treated w Zyrtec & occasional Benadryl 5 Rx Senna Plus 2 po qdpm x 30 √ ok | [signature] MD |
| 8/4/2020 | Ey, Exam Tody | [signature] |



VIRGINIA
DEPARTMENT OF CORRECTIONS    Health Services Complaint and Treatment Form  720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:**   HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:**  *Lucas*    *Casel*    **Number:** 1080673
                    Last         First

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 7/20/20 2PM | Notes from Pulm & Derm reviewed Pulm on 7/16/20 = ? COPD Schedule PFTs & COVID test ordered, CXR & Transthora echo Increased Omeprazole 20mg BID X 30d Keep Pulm apot. | |
| Noted Johnson 7/20 | Derm — 3 macules — hyperpigmented possibly 2ndy to folliculitis — Cleanser clindamycin 1% gel qd    No follow up V Derm KP | [signature] MD |
| 7/21/20 1000 AM 982 89 94% 120 16 / [illegible] | Reviewed Pulm & Derm consults. Discussed need for outpatient testing (PFT Transthora echo at hospital. ae + CXR at HCC | |
| Noted Johnson 7/21 | Will inquire about pulm tolenol Reviewed skin aw Derm orders. No ominous finding on Derm consl. All questions answered, [signature] MD | |

VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form 720_F17_7-12

## Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** _Lucas_ (Last)   _Casel_ (First)   **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 7/15/20 11:30 am | Please verify if my own toenail on 6/26/20 has resolved. | |
| | ✓ CU Derm appt on 7/9/20 → uneven coverage of unknown etiology, assoc'd Clinda 1% gel/pad B10pm. u to follow up by Derm needed. Confirms darkened beard area, low back & anterior thigh — excoriated. Appear in D crease application rather than scratching. Rx Clinda 1% gel ② B10pm x 60. Rx Linzess 145 mcg qd. Pending Optho & Pulm consults. | _Levinson, PA_ |
| 7/16/2020 1046AM | Telephone App't CU pulmonary clinic. ② Dr Mustinger orders chest CT, PFT's ↑ Prilosec to bid arrange U.S. Hold off on chest CT until ⊕ PFTS results are available | _Dr. Von Campen_ |
| 2/16/20 11am (US of toenail) (acceptable, pedias,) | Toenail assessment. Had my own toenail excised once & treated on own. Bilat all ⓝ toenails, ⊕ mycosis, ⊕ then accept for pedias, & burns on callus. No to for feet — WNL. Above Pulm recommendations acceptable | Toenail but "It's healed." _Levinson, PA_ |

# LabCorp

**Patient Report**

**Specimen ID:** 247-245-0730-0
**Control ID:** TSJ45311290

**Acct #:** 45311290          **Phone:** (804) 333-3577          **Rte:** 05

**LUCAS, CASEL**

Haynesville Correctional Ctr
PO Box 129
Haynesville VA 22472

---

**Patient Details**
**DOB:** 08/08/1969
**Age(y/m/d):** 051/00/26
**Gender:** M
**Patient ID:** 1080673

**Specimen Details**
**Date collected:** 09/03/2020 0000 Local
**Date received:** 09/03/2020
**Date entered:** 09/03/2020
**Date reported:** 09/05/2020 1135 ET

**Physician Details**
**Ordering:** L LEVIN
**Referring:**
**ID:**
**NPI:** 1679545792

---

**General Comments & Additional Information**
Total Volume: Not Provided                    **Fasting:** Yes

**Ordered Items**
HIV Ag/Ab with Reflex; RPR; Request Problem

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| **HIV Ag/Ab with Reflex** | | | | | |
| HIV Screen 4th Generation wRfx | | | | | |
| | Non Reactive | | | Non Reactive | 01 |
| **RPR** | Non Reactive | | | Non Reactive | 01 |
| **Request Problem** | | | | | |
| No specimen received. | | | | | 01 |
| TEST:  183160  Ct, Ng, Trich vag by NAA | | | | | |

| | | | | |
|---|---|---|---|---|
| 01 | BN | LabCorp Burlington 1447 York Court, Burlington, NC 27215-3361 | | Dir: Sanjai Nagendra, MD |

For inquiries, the physician may contact Branch: 800-873-7251 Lab: 800-762-4344



---

This document contains private and confidential health information protected by state and federal law.
If you have received this document in error, please call 800-762-4344

© 1995-2020 Laboratory Corporation of America® Holdings
All Rights Reserved - Enterprise Report Version: 1.00



**VCU Medical Center**

*Printed:* 10/8/20 10:44 AM
*By:* HAYES (REFH015), BRITNEY

## Pulmonary OP Estab Visit

LUCAS, CASEL

Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 09/10/20 10:45am   Author MYTINGER, ANDREA   Status Preliminary   Source VCUHL7

PCP:MATHEW MD, ALEXANDER

Visit conducted via telephone in light of COVID-19 pandemic. Haynesville Correctional Center. 804-250-4136

Reason for Follow Up: dyspnea on exertion, reactive airways disease

CC: I'm feeling better.

HPI: 51 yo male with ho HTN, GERD, allergic rhinitis, and reactive airways disease in the setting of multiple military gas inhalational exposures who is scheduled for follow up.  last seen by me 7/16 with plan to obtain PFTs and better control GERD, PPI increased to BID dosing.

since last visit, patient is feeling better.  states his chest isn't as tight as it used to be.  breathing is improved though still having to use inhalers (xopenex and atrovent) at least 3 times daily.  still with nasal congestion.  congestion is daily.  using nasal spray (saline and flonase).  also taking singulair.  has never been on allergy pill.

increase in PPI dosing has helped with acid reflux and dyspnea.

Social History:

direct exposure to burn pits and saren gas with chemicals to make mustard gas x 3 times monthly.

destroying weapons of mass destruction, without masks as the time, exposed to mustard gas, saren gas

updated smoking history: occasional marijuana,  smoked 6 years, a pack would last around 3 days at least.

ROS: Complete systems review performed, please see HPI for pertinent positives and negatives

Medical History:

- Problem List (Active Medical Only)  This information was current as of 09/10/20 @ 10:46:00.


Active:

-BP+ - Hypertension

-DM - Diabetes mellitus

-Pain with urination

-Urinary frequency

-Urinary hesitancy

- reactive airways disease

- allergic rhinitis


Home Medications  This information was current as OF 09/10/20 @ 10:57:00.


Prescriptions Documented Meds By Hx:

-amlodipine(Hx):  10 mg, PO, daily

-atenolol(Hx):  50 mg, PO, twice daily

-bisacodyl (bisacodyl 5 mg oral delayed release tablet)(Hx):  5 mg, PO, daily

-calcium carbonate (Oyster Shell 500 (1250 mg calcium carbonate) oral tablet)(Hx):  1,250 mg, PO, daily

-chlorthalidone (chlorthalidone 25 mg oral tablet)(Hx):  mg, PO, daily

-diclofenac topical (diclofenac 1% topical gel)(Hx):  4 g, Topical, four times daily, as needed, as needed for pain

-docusate-senna (Senna Plus)(Hx):  PO, bedtime

-duloxetine(Rx):  60 mg, PO, daily

-emollients, topical (DermaCerin topical cream)(Hx):  1 application, Topical, twice daily

-emollients, topical (Hydrocerin)(Hx):  Topical

-finasteride(Hx):  5 mg, PO, daily

-fluticasone nasal(Hx):  Nasal, daily

-fluticasone-salmeterol (Advair HFA 45 mcg-21 mcg/inh inhalation aerosol)(Hx):  Inhalation, twice daily

-fluticasone-salmeterol (Advair HFA 45 mcg-21 mcg/inh inhalation aerosol)(Rx):  2 PUFF, Inhalation, twice daily

-gabapentin(Hx):  200 mg, PO, twice daily

-gabapentin (gabapentin 100 mg oral capsule)(Rx):  200 mg, PO, four times daily

-glipizide(Hx):  5 mg, PO, twice daily



Page 1 of 3

## VCU HEALTH SYSTEM

| | | | | | | |
|---|---|---|---|---|---|---|
| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: 2.08 | Date: 08/06/2020 | |
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: 50 | DOB: 08/08/1969 | |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: Male | Race: Black | |

Diagnosis:   R06.0
Tbco Prod:                    Yrs Smk:              Pks/Day:                    Yrs Quit:
Medications:

Pre Test Comments:

Post Test Comments:    Inconsistant patient effort and cooperation ; results did not meet ATS criteria for
acceptability and repeatability. Post-bronchodilator completed after 2.5 mg albuterol
nebulized.   Inspiratory volume < 90% VC on DLCO attempted mesurement not
reportable .

| | Pre-Bronch | | | Post-Bronch | | |
|---|---|---|---|---|---|---|
| | **Actual** | **Pred** | **%Pred** | **Actual** | **%Pred** | **%Chng** |
| ---- SPIROMETRY ---- | | | | | | |
| FVC (L) | 4.68 | 4.50 | 103 | 4.57 | 101 | -2 |
| FEV1 (L) | 3.16 | 3.60 | 87 | 2.97 | 82 | -6 |
| FEV1/FVC (%) | 68 | 80 | 84 | 65 | 81 | -3 |
| FEF 25% (L/sec) | 5.66 | 7.82 | 72 | 4.44 | 56 | -21 |
| FEF 50% (L/sec) | 2.63 | 4.73 | 55 | 2.25 | 47 | -14 |
| FEF 75% (L/sec) | 0.65 | 1.69 | 38 | 0.58 | 34 | -11 |
| FEF 25-75% (L/sec) | 1.88 | 3.53 | 53 | 1.68 | 47 | -10 |
| FEF Max (L/sec) | 5.72 | 9.33 | 61 | 4.44 | 47 | -22 |
| FIVC (L) | 4.48 | | | 3.79 | | -15 |
| FIF Max (L/sec) | 4.56 | | | 2.43 | | -46 |
| FIF 50% (L/sec) | 4.54 | 4.98 | 91 | 2.24 | 44 | -50 |
| Expiratory Time (sec) | 7.03 | | | 6.37 | | -9 |
| | | | | | | |
| ---- LUNG VOLUMES ---- | | | | | | |
| SVC (L) | 5.03 | 4.49 | 112 | | | |
| IC (L) | 1.53 | 2.96 | 51 | | | |
| ERV (L) | 3.49 | 1.53 | 228 | | | |
| TGV (L) | 5.34 | 3.53 | 151 | | | |
| RV (Pleth) (L) | 1.84 | 2.00 | 92 | | | |
| TLC (Pleth) (L) | 6.87 | 6.48 | 105 | | | |
| RV/TLC (Pleth) (%) | 27 | 30 | 90 | | | |
| Trapped Gas (L) | | | | | | |

Post-Test Comments:

Inconsistant patient effort and cooperation ; results did not meet ATS criteria for acceptability and repeatability. Post-bronchodilator
completed after 2.5 mg albuterol nebulized.   Inspiratory volume < 90% VC on DLCO attempted mesurement not reportable .

Complete w/Interp                                                                                              Page 1 of 3

# VCU HEALTH SYSTEM

| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: | 2.08 | Date: | 08/06/2020 |
|---|---|---|---|---|---|---|---|
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: | 50 | DOB: | 08/08/1969 |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: | Male | Race: | Black |



## VCU HEALTH SYSTEM

| Name: | LUCAS, CASEL | ID: | 4369269 | BSA: | 2.08 | Date: | 08/06/2020 |
|---|---|---|---|---|---|---|---|
| Tech: | Sandiford, Michelle | Height: | 72.00 | Age: | 50 | DOB: | 08/08/1969 |
| Doctor: | ADULT PULM CONSULT | Weight: | 188.00 | Sex: | Male | Race: | Black |

Spirometry reveals mild obstructive lung disease. Lung volumes are within normal limits. The flow volume loop indicates obstructive lung disease. Interpret with caution given the patietn'sdifficulty with performance of pulmonary function studies.

Alpha A. Fowler, III, MD, #8510
««This interpretation has been electronically signed: Fowler, Alpha 08/10/2020 02:52:52 PM»»

# VCU Medical Center

Printed: 10/19/20 11:20 AM
By: HAYES (REFH015), BRITNEY

## CV: Echo Transthoracic-Adult

LUCAS, CASEL
Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 10/16/20 02:14pm     Author MYTINGER, ANDREA     Status Auth (Verified)     Source VCUHL7

VCU Medical Center
1200 E. Marshall Street
Richmond, VA 23298
Phone: 804-828-9986

Transthoracic Echocardiography Report
Name: LUCAS, CASEL            Study Date: 10/16/2020 02:14 PM
Attending Physician: MYTINGER,
ANDREA              Accession#: AH2026003
MRN: 4369269            Patient Location: KAHS...VCUHS
DOB: 08/08/1969          Gender: Male
Age: 51 yrs          BP: 129/93 mmHg
Height: 71.5 in          Weight: 201 lb

BSA: 2.1 m2
Heart Rate: 58
Reason For Study: Dyspnea
History: Hypertension, diabetes
mellitus

## PROCEDURE
Procedure(CPT Code): TTE Complete (93306-26) 2D with Doppler and Color Flow:
No add on codes required).

Interpretation Summary
Normal left ventricular dimensions with normal segmental function, ejection
fraction, global longitudinal strain, and diastolic function.
The right ventricle is normal in size and function with mildly elevated
systolic pressure.
Normal valves.
Normal atrial and inferior vena caval dimensions.

## LEFT VENTRICLE
Normal left ventricular dimensions with normal segmental function, ejection
fraction, global longitudinal strain, and diastolic function. LV ejection
fraction = 60%.

## RIGHT VENTRICLE
The right ventricle is normal in size and function.



COPY

## LEFT ATRIUM
The left atrial size is normal.

## RIGHT ATRIUM

# VCU Medical Center

## CV: Echo Transthoracic-Adult

LUCAS, CASEL
Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 10/16/20 02:14pm      Author MYTINGER, ANDREA      Status Auth (Verified)      Source VCUHL7

---

IVC Diam_: 1.4 cm      RA ESA: 14.4 cm2      LA A4Cs: 15.7 cm2

---

LA ESV (MOD-BP):      LA volume MOD BP Indexed:
44.0 ml
        20.7 ml/m2

Time Measurements
Aortic R-R: 1.0 sec
Aortic HR: 59.0 BPM

Doppler Measurements \T\ Calculations
MV E max vel: 46.2 cm/sec MV dec slope: 145.5 cm/sec2Ao V2 max: 89.5 cm/sec
MV A max vel: 39.9 cm/sec MV dec time: 0.32 sec    Ao max PG: 3.0 mmHg
MV E/A: 1.2                    Ao V2 mean: 62.2 cm/sec
                              Ao mean PG: 1.8 mmHg
                              Ao V2 VTI: 19.5 cm
                              AVA(I,D): 3.1 cm2

                              AVA(V,D): 3.2 cm2

---

LV V1 max PG: 2.0 mmHg    CO(LVOT): 3.5 l/min      TR max vel: 278.3 cm/sec
LV V1 mean PG: 1.0 mmHg  SV(LVOT): 60.1 ml        TR max PG: 31.3 mmHg
LV V1 max: 71.1 cm/sec
LV V1 mean: 47.2 cm/sec
LV V1 VTI: 15.0 cm

---

AV VR: 0.79        MV P1/2t-pr_: 93.0 msec    RV S Vel: 9.4 cm/sec
AVA(VTI)/BSA: 1.5

---

MV LAT E': 10.3 cm/sec   MV LAT E/E': 4.5      MV MED E': 8.8 cm/sec

---

MV MED E/E': 5.2

---

COPY

Electronically Signed By:
    Walter Paulsen, MD  on 10/17/2020 03:52 PM
Performed By: Cara Martin
MRN: 4369269
Please click on link to see image.

**VCU** Medical Center

*Printed:* 10/19/20 11:20 AM
*By:* HAYES (REFH015), BRITNEY

### CV: Echo Transthoracic-Adult

LUCAS, CASEL
**Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577**

Date/Time 10/16/20 02:14pm     Author MYTINGER, ANDREA     Status Auth (Verified)     Source VCUHL7

====================================================================

ORDER Performed By: ANDREA KATHERINE MYTINGER 20201016141446 is COMPLETED
PERFORM Performed By: WALTER H.J. PAULSEN 20201016141446 is COMPLETED
VERIFY Performed By: WALTER H.J. PAULSEN 20201016141446 is COMPLETED

Author: MYTINGER, ANDREA
CV: Echo Transthoracic-Adult





**VCU** Medical Center

Printed: 10/8/20 10:44 AM
By: HAYES (REFH015), BRITNEY

### Pulmonary OP Estab Visit

LUCAS, CASEL

Age: 51Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 09/10/20 10:45am     Author MYTINGER, ANDREA     Status Preliminary     Source VCUHL7

>>allergic rhinitis: still with daily rhinitis. on singulair, ocean nasal spray and singulair. please add on anti-histamine such as cetirizine or equivalent.

RTC 4 months.

Discussed with Dr. Fowler, pulmonary attending.

Andrea Mytinger, DO
Pulmonary/Critical Care Fellow

==================================================================
PERFORM Performed By: ANDREA KATHERINE MYTINGER 20200910110018 is COMPLETED
MODIFY Performed By: ANDREA KATHERINE MYTINGER 20200910110555 is COMPLETED
SIGN Performed By: ANDREA KATHERINE MYTINGER 20200910112836 is COMPLETED
MODIFY Performed By: ANDREA KATHERINE MYTINGER 20200910112836 is COMPLETED

Author: MYTINGER, ANDREA
Pulmonary OP Estab Visit

COPY

# VCU Medical Center

Printed: 5/29/20 12:52 PM
By: KING (REFH015), BRANDY

## Urology Procedure Note

LUCAS, CASEL

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 09/04/19 04:03pm     Author HAMPTON MD, LANCE     Status Auth (Verified)     Source VCUHL7

Urology Clinic Procedure

| LUCAS, CASEL |PROCEDURE DATE: September 04, 2019 ||
| DOB: 08/08/1969|||
| MRN: 4369269|||
ATTENDING: Lance J. Hampton, MD

HISTORY: Mr. Lucas is a 50-year-old man, who is an inmate, who was sent to me by Regina Foster for cystoscopy for microscopic hematuria and also for rule out stricture because of his history of STDs and his urethral discomfort, and difficulty urinating. After obtaining informed consent, he was taken to the procedure room, prepped and draped in usual sterile fashion. Flexible cystourethroscopy was performed. This revealed no abnormalities of bladder mucosa, tumors, lesions, or stones. The urethra was normal. He has mildly enlarged bilobar hyperplasia of the prostate. He tolerated the procedure without any difficulty or complications and was discharge in stable condition. He will follow up as needed.

Lance J. Hampton, MD
Chairman, Division of Urology
Barbara and William Thalhimer Professor of Urology
VCU Medical Center
PO Box 980118
Richmond, VA 2329
(Ph):  804-828-9331
(Fax):  804-828-2307
(Email): lhampton@mcv-vcu.edu

LJH/MedQ D09/04/2019 T09/04/2019 R
J267609/852972160

======================================================================
PERFORM Performed By: LANCE J HAMPTON 20190904184752 is COMPLETED
TRANSCRIBE Performed By: MEDRITE-RTF  CONTRIBUTOR_SYSTEM 20190904184400 is COMPLETED
SIGN Performed By: LANCE J HAMPTON 20190905112724 is COMPLETED
VERIFY Performed By: LANCE J HAMPTON 20190905112724 is COMPLETED

Author: HAMPTON MD, LANCE
Urology Procedure Note

Page 1 of 1

**VCU** Medical Center

Printed: 5/29/20 1:11 PM
By: KING (REFH015), BRANDY

### Urology OP Estab Visit

LUCAS, CASEL
Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 05/01/20 10:16am   Author FOSTER PA, REGINA   Status Auth (Verified)   Source VCUHL7

VCU HEALTH SYSTEM
MCV HOSPITALS AND PHYSICIANS
Richmond, Virginia 23298
UROLOGY ESTABLISHED VISIT NOTE

NAME: LUCAS, CASEL
DOB: 08/08/1969
MRN: 4369269
VISIT DATE: May 01, 2020
ATTENDING: G/U, SURG

COLLABORATING PHYSICIAN: Lance J. Hampton, MD

REASON FOR VISIT: BPH.

HISTORY OF PRESENT ILLNESS: Mr. Lucas is a 50-year-old incarcerated gentleman with a past medical history of an enlarged prostate and lower urinary tract symptoms. He has had an STI many years ago, while he was in the Military and he believes that all his symptoms started after that, despite being told many times that with his age an enlarged prostate that is likely contributing to some of his symptoms. The patient still believes that a lot of this started as a result of the STI he obtained. He has had significant improvement. However, on Flomax, finasteride, and oxybutynin, on his irritative and obstructive symptoms, he gets up about 3 times at night which is a great improvement because he was getting up about every 20 to 30 minutes before starting on medication, and the oxybutynin helped him even more. He is still getting postvoid incontinence, and he states that is not just a trickle when he thinks he has done, he pulls up his garments, and he soaks completely. This is significantly in fact affecting his quality of life and the patient states that he is possibly interested in surgical intervention.

SOCIAL HISTORY: He is still incarcerated.

REVIEW OF SYSTEMS: A complete review of systems is done and negative except per HPI.

PHYSICAL EXAMINATION: Physical exam not done because this is a telemedicine service.

PERSONAL REVIEW OF LABS: Most recent PSA was back in July of last year, it was 0.7.

ASSESSMENT AND PLAN: This is a 50-year-old incarcerated gentleman found to have an enlarged prostate on a cystoscopy. He has lower urinary tract symptoms that did improve with Flomax, finasteride, and oxybutynin but he continues to get up about 3 times a night which is not as bothersome as the postvoid incontinence that he is still experiencing. He feels that is affecting his quality of life significantly and is hoping that surgical intervention may resolve those symptoms. He had a scope again back in September, so we probably should repeat that maybe this coming September or October at least a year from the previous one to see what type of growth he may have had and at that point, we can determine if he is a candidate for a photovaporization of the prostate.

I personally spent about 15 minutes providing above services or telemedicine and I explained the patient expressed an understanding that this was in place of an in-person visit. Date of the call was 05/01/2020. I did send a message to our clerical team asking that they mail his VA paperwork that I filled out a few months ago to the patient's facility directly as he stated that he needs that information.

Regina C. Foster, PA

# VCU Medical Center

## Urology OP Estab Visit

LUCAS, CASEL

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 01/03/20 11:57am      Author FOSTER PA, REGINA      Status Auth (Verified)      Source VCUHL7

PERFORM Performed By: REGINA C FOSTER 20200103132702 is COMPLETED

TRANSCRIBE Performed By: MEDRITE-RTF  CONTRIBUTOR_SYSTEM 20200103131900 is COMPLETED

SIGN Performed By: REGINA C FOSTER 20200103155826 is COMPLETED

MODIFY Performed By: REGINA C FOSTER 20200103155826 is COMPLETED

VERIFY Performed By: REGINA C FOSTER 20200103155826 is COMPLETED

Author: FOSTER PA, REGINA

Urology OP Estab Visit

## VCU Medical Center

### CT: Abd/Pelvis (urography) w/o

**LUCAS, CASEL**

Age: 50Y   Gender: M   DOB: 08/08/1969   MRN: 4369269   Phone: 8043333577

Date/Time 08/07/19 12:22pm       Status Auth (Verified)       Source VCUHL7

CT: Abd/Pelvis (urography) w/o
Procedure: CT: Abd/Pelvis (urography) w/o
Reason For Study: Hematuria
Ordering Physician: FOSTER PA, REGINA C

Abdomen pelvis CT scan without and with IV contrast material and CT urogram dated 8/2/2019

COMPARISON: None.

TECHNIQUE: CT scans were obtained throughout the abdomen and pelvis without oral contrast material and initially without intravenous contrast material. Scans were then repeated following uneventful intravenous administration of 150 mL of Omnipaque 300. Delayed images through the abdomen and pelvis were also obtained. Sagittal and coronal reconstructions as well as the reconstructed 3-D urogram image was also obtained and submitted.

FINDINGS: Limited imaging of the lung bases showed no abnormality. The heart size was normal. The liver was normal in size with no focal defects. The gallbladder, pancreas, and spleen all had a normal appearance.

The adrenal glands were normal. Both kidneys were normal in size with no perinephric soft tissue stranding. No radiopaque calculus was noted. There were bilateral subcentimeter cortical hypodensities, too small to characterize but likely small cysts. Excretory phase imaging showed the ureters and bladder to be normal. The calyces had brush border throughout consistent with medullary sponge kidney. There was an enlarged prostate gland indenting the bladder base.

The abdominal aorta showed minimal scattered calcifications with scattered calcifications in the common iliac arteries. There was no evidence of aneurysm.

A small hiatal hernia was noted. The stomach, small bowel, and colon had a normal appearance aside from the presence of sigmoid and descending colon diverticulosis.

Images the pelvis showed a moderately enlarged prostate gland indenting the bladder base. The seminal vesicles were normal.

The bony structures showed minimal degenerative osteophytes the lumbar spine with no suspicious osseous lesion.

Conclusions:
1. No evidence of mass, calculus, or hydronephrosis. Kidneys normal in size. Bilateral subcentimeter cortical hypodensities, too small to characterize but likely small cysts.
2. Brush border appearance of calyceal cups, consistent with medullary sponge kidney.
3. Moderate enlargement of prostate gland indenting the bladder base. Bladder otherwise normal.
4. Small hiatal hernia.
5. Diverticulosis

Dictated By: Mary A. Turner
Electronically Verified by: Mary A. Turner 8/7/2019 12:22 PM