VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form  720_F17_7-12

# Health Services Complaint and Treatment Form

**Facility:**  Haynesville Correctional Center

**Offender Name:** Lucas (Last)   Casel (First)   **Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| | (36) Briefs (7) Brown Bags | |
| 1/27/2020 @ 1315 | 36 7 Brown Bags | Casel L. Lucas (AK) |
| 2-3-20 @ 0945 | 36 Briefs / 7 Brown Bags | Casel L. Lucas |
| 10 Feb 2020 @ 0955 | 36 Briefs 7 Bags | Casel L. Lucas |
| 17 Feb 2020 | 36 Briefs 7 Bags | Casel L. Lucas |
| 2-24-2020 @ 38 | 36 Briefs 7 Bags | Casel L. Lucas |
| 3/2/2020 | 36 Briefs 7 Bags  2 separate Bags | x Casel L. Lucas |
| 3/10/2020 | 36 Briefs 7 Bags | Casel L. Lucas |
| 3/16/2020 | 36 Briefs 7 Bags | Casel L. Lucas |
| 3/30/2020 | 36 Briefs 7 Bags | Casel L. Lucas |
| 4/6/2020 | 36 Briefs 7 Bags | Casel L. Lucas |
| 4/20/20 | 36 briefs 7 Bags | Casel L. Lucas |
| 5/20/20 | 36 Briefs 7 Bags | Casel L. Lucas |
| 6/8/20 | 36 Briefs 7 Bags | Casel L. Lucas |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

VIRGIN
DEPARTMENT OF CORRECTIONS

Health Services Consultation Report 720_F23_7-12

## Health Services Consultation Report

**DO NOT TELL OFFENDER ABOUT APPOINTMENTS**

### *PLEASE BILL TO ANTHEM*

| | | | |
|---|---|---|---|
| **Sending Facility:** | HAYNESVILLE CORRECTIONAL CENTER | **Date:** | 1/3/2020 |
| **Offender Name:** | Lucas, Casel | **Offender #:** | 1080673 |
| **SS#:** | 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   **DOB:** 8/8/1969 | **T/D:** | 4369269 |
| **Allergies:** | | | |
| **Current Medications:** | SEE MARS | | |
| **Referred By:** | LEONARD LEVIN, MD | **Referred To:** | VCU General Surgery |
| **Medical Complaint:** | Procedure | | |

### *CONSULTING PHYSICIAN: PLEASE COMPLETE THE FOLLOWING:*

| | |
|---|---|
| **Findings:** | Post-Void Residual: 19 |
| **Lab or X-ray Results:** | |
| **Diagnosis:** | LUTS |
| **Treatment and Medications Recommended:** | Continue Finasteride & Flomax may add Oxybutynin Will Complete VA Forms |
| **Restrictions:** | |
| **Consulting Physician:** | **Date:** 1/3/20 |
| **Follow-up appointment date and time:** | 4 months follow up 5/1/2020 @ 8:00AM |

*Revision Date: 1/17/07*

## PLEASE FAX NOTES/RESULTS TO 804-333-3826

## VIRGINIA DEPARTMENT OF CORRECTIONS/VCU MEDICAL CENTER
### PRE-REGISTRATION REQUEST FORM
(This form is to be used when requesting tests or clinic/telemedicine appointments)

**PATIENT INFORMATION**

Date: 9\3\19    Demographic Sheet Included:

Name (last name, first name, middle initial): Lucas Casel

Date of Birth: 8\8\1965   Sex: Male ☒   Female ☐   Race: Black   SSN: 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

Inmate ID #: 1080673   Release Date: 4\22\2027   VCUHS MR #

**FACILITY INFORMATION**

Correctional Facility: HAYNESVILLE CORRECTIONAL CENTER   Address: PO BOX 129

City: HAYNESVILLE | VA | Zip Code:22472

Phone:804-250-4136 | Fax:804-333-3826

Facility Physician:   DR LEONARD LEVIN/DR ADAN DURRANI   Person completing form:

**REQUEST DETAILS** | **Needed Information**

Appointment Request for

_Pulmonology_ Clinic

☒ On-site  ☐ Telemedicine

☒ New Patient

☐ Follow up

Next available appointment will be given.

If checked, please forward information ASAP prior to scheduled appointment. NOTE:  Send Current MAR and recent lab/diagnostic reports in travel envelope for ALL OnSite visits.

- o  **Current Medication Record**
- o  **Recent labs**
- o  **EKG**
- o  **Films or x-rays with actual reports**
- o  **Immunization Record**
- o  **Vital Sign Sheet**
- o  **Neurosurgery Questionnaire**
- o  **MRI Checklist**
- o  **DISK – send with Pre-Reg**

VCU Medical Center          OR     VCU Medical Center
Department of Telemedicine          Security Care Clinic
P.O. Box 980531          P.O. Box 985879
Richmond, Va. 23298-0531          Richmond, VA  23298-0531

**Please provide DIAGNOSIS and/or REASON for the visit**

See attached QMC – Hx of exposure to serine gas in gulf war – also nerve agents – SOB after walking

**SPECIAL NEEDS INFORMATION**

CHECK ALL THAT APPLY:

☐ Yes or ☒ No  Are Sign Language Interpreter Services needed?          ☒ Other special needs:

☐ Yes or ☒ No  Is a Foreign Language Interpreter needed and if so what language?

☐ Yes or ☒ No  Is the Patient on a ventilator &/or on a stretcher?

☐ Yes or ☒ No  Does the Patient have a trachea tube?

☐ Yes or ☒ No  Is the Patient being transported by an ambulance?

| Appointment Process & Important Information | SCHEDULED APPOINTMENT<br>(This section to be completed by VCUHS Staff) |
|---|---|
| All requests for clinical services at VCUHS **must** be authorized and signed by the referring facility's authority.<br>• Barbara Granderson – 628-0425, Naomi Boswell 628-4500, Lakita Boyd 628-3805<br>• FAX this form to Barbara Granderson/Naomi Boswell: (804) 628-3932 to request Telemedicine service.<br>• FAX this form to Lakita Boyd: (804) 325-2923 to request Onsite service. | [ ] TELEMEDICINE     [ ] ON-SITE at VCU-Medical Center<br><br>Date:          Time:        AM  PM |

VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Co..  ..ltation Report 720_F23_7-12

## Health Services Consultation Report

**DO NOT TELL OFFENDER ABOUT APPOINTMENTS**

### *PLEASE BILL TO ANTHEM*

| Sending Facility: | HAYNESVILLE CORRECTIONAL CENTER | | Date: | 3/12/2020 |
|---|---|---|---|---|
| Offender Name: | LUCAS, CASEL | | Offender #: | 1080673 |
| SS#: | 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 | DOB: 8/8/1969 | T/D: | 4369269 |
| Allergies: | | | | |
| Current Medications: | SEE MARS | | | |
| Referred By: | LEONARD LEVIN, MD | Referred To: | VCU PULMONARY CLINIC | |
| Medical Complaint: | FOLLOW UP | | | |

LUCAS, CASEL:
4369269
03/12/20    M   B 50Y
DEFAULT, PROVIDER
VISN: 706 175724351

### *CONSULTING PHYSICIAN: PLEASE COMPLETE THE FOLLOWING:*

| Findings: | See attached |
|---|---|
| Lab or X-ray Results: | |
| Diagnosis: | ① Suspect COPD w/obstr PFTs ② Allergic rhinitis |
| Treatment and Medications Recommended: | ① Switch Alvesco to Advair or similar ② Start nasal steroid spray |
| Restrictions: | |
| Consulting Physician: | Alpha Fowler |
| | Date: 3/12/20 |
| Follow-up appointment date and time: | 3 mos |

AV 3/16/2020

**PLEASE FAX NOTES/RESULTS TO 804-333-3826**

Revision Date: 1/17/07

JUNE 11th 2020 @ 8:00 AM



VIRGINIA
DEPARTMENT OF CORRECTIONS

Health Services Complaint and Treatment Form 720_F17_7-12

# Health Services Complaint and Treatment Form

**Facility:** HAYNESVILLE CORRECTIONAL CENTER

**Offender Name:** Lucas (Last) Casel (First)

**Number:** 1080673

| Date/Time | Complaint and Treatment | Signature and Title |
|---|---|---|
| 9/11/20 730p | Offender requesting renewal of D-Cerin and visine. Chart to MD/NP. | K.Langford, RN |
| 9/14/2020 618 Noted 9/18/2020 @ 9:37 0000 Q. Baell, RN | Emollients are available in the commissary Memo * Visine tear drops, 2 drops ea eye BID x90 days EMP | EMP Alexan? W W? ADuan? NP |
| 9/28/2020 759 Noted John NP 9/28/20 11AM | Cats from 9/21/2020 Acceptable | ADuan? NP |
| 10/1/2020 1515 | Renew Biotene Mouth spray 2 spray QD PRN Dry mouth - SBrim APRN DNP-C await approval for non formulary med. previously Rx Dental. | SBrim APRN DNP-C |
| 10-2-2020 9A 193# 97.8 18 107/79 72 96% | | |
| 10/6/2020 0730 117/75 69 97.6 189.6 98.7 16 | pt seen and evaluated for flu from pulmonology visit by telephone 9/10/2020 PFTs completed by specialist, reviewed med list and current inhalers, discussed risk/benefits of meds. Review all notes from specialty, noted request to add medication for allergy symptoms and △ Atrovent to LAMA, TTE completed mild regurgitation EF 65-70%. Obstructive COPD 1) Stop Atrovent ō LAMA Obstructive COPD 2) Start increase ellipta 1 puff inhaled QD x10 days Allergic Rhinitis 3) Zyrtec 10mg PO QD x 90 days ✓ CV: RRR, lungs CTABL Today ABD soft ötendo Skin warm/dry ⊕ ROM ⊕ Cap refill <3 sec - SBrim APRN DNP-C | SBrim APRN DNP-C |
| Noted Johnson QD 10-6-20 NP | | |
| 10/8/2020 1245 | Emollients are available in commissary please bring receipts for renewal of Medical need for Deerin cream refill per 9/14/2020 note - SBrim APRN DNP-C | SBrim APRN DNP-C |
| Noted 10/13/20 CEP | | K.Langford RN |

# LabCorp

**Patient Report**

**Specimen ID:** 247-245-0730-0
**Control ID:** TSJ45311290

**Acct #:** 45311290     **Phone:** (804) 333-3577     **Rte:** 05

**LUCAS, CASEL**

Haynesville Correctional Ctr
PO Box 129
Haynesville VA 22472

| **Patient Details** | **Specimen Details** | **Physician Details** |
|---|---|---|
| **DOB:** 08/08/1969 | **Date collected:** 09/03/2020 0000 Local | **Ordering:** L LEVIN |
| **Age(y/m/d):** 051/00/26 | **Date received:** 09/03/2020 | **Referring:** |
| **Gender:** M | **Date entered:** 09/03/2020 | **ID:** |
| **Patient ID:** 1080673 | **Date reported:** 09/05/2020 1135 ET | **NPI:** 1679545792 |

**General Comments & Additional Information**
**Total Volume:** Not Provided                                    **Fasting:** Yes

**Ordered Items**
HIV Ag/Ab with Reflex; RPR; Request Problem

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| **HIV Ag/Ab with Reflex** | | | | | |
| HIV Screen 4th Generation wRfx | | | | | |
| | Non Reactive | | | Non Reactive | 01 |
| **RPR** | Non Reactive | | | Non Reactive | 01 |
| **Request Problem** | | | | | |
| No specimen received. | | | | | 01 |
| TEST: 183160  Ct, Ng, Trich vag by NAA | | | | | |

| 01 | BN | LabCorp Burlington | Dir: Sanjai Nagendra, MD |
|---|---|---|---|
| | | 1447 York Court, Burlington, NC 27215-3361 | |

For inquiries, the physician may contact Branch: 800-873-7251 Lab: 800-762-4344



This document contains private and confidential health information protected by state and federal law.     © 1995-2020 Laboratory Corporation of America® Holdings
If you have received this document in error, please call 800-762-4344.                              All Rights Reserved - Enterprise Report Version: 1.00

VSP# 1080673

Tort Claim

Deliberate Indifference, Recklless Endangerment of Contaminated Food Service Area During Lunch & Dinner Meal Preparation and Served To Population

Exhibit

Exhibit #9

Grievance

NCC-20-Inf-00706

Denial of Intake of Grievance Refused.

VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866_F1_4-17

RECEIVED

## REGULAR GRIEVANCE

JUN 17 2020
Ombudsman Unit
Eastern Region

Log Number:

| LUCAS CASEL | 1080073 | 2A | 2·A·38 B |
|---|---|---|---|
| st Name, First | Number | Building | Cell/Bed Number |

| FOOD SERVICE, Security, Medical Hcc Administration | 24 April 2020 | 1041 Am | Hcc. |
|---|---|---|---|
| lividuals Involved in Incident | Date/ Time of Incident | | |

**HAT IS YOUR COMPLAINT?** (Provide information from the informal process: Attach Informal Complaint response or ler documentation of informal process.) Food Service Area Contaminated by Dorm 6.A Entire Dorm of 75 COVID 19 infected inmates. While The Compound Lunch Meal was being Prepared and Served. The Dinner Meal was also Prepared & Served while These Inmates were being Seen by Medical Staff at Hcc. + Outside Medical Staff. This was Done While My TRAY was being Prepared. This is a SenSible Violation, Health Dept Violation, & Federal Health Code Violations. I am an Inmate with Dire Medical Issues. I Am Identified by Medical Staff As A Critical + Chronically At Risk Inmate. COVID 19 will kill Me. 1) Chronic Lung issue from Exposure of Chemical Nerons Mustard Gus + Sarin Gas. (2) I Am A Diabetic. (3) Hypertension 4) Irregular Heart Rythem. The Haynesville Kitchen was NOT Decontaminated Until Sometime 5 PM. + it was Done by an Outside Source. My Sister Dorm 2 A. Watched The Decontaminatin Team Clean the Kitchen.

**What action do you want taken?** 1) To Never Contaminate Any Part of the Kitchen + Food Service. To Conduct any COVID19 Exams or Any Medical Treatment. That's what the Medical Dept's for. I was Denied my 2 meals by law that should not have been Purposely Exposed to COVID19 Contamination. I want my 2 meals that was loss to be given to Me. I must be Protected from Wreckless Contamination and My food must be Protected.

| rievant's Signature: Carol F. Sylvan | RECEIVED Date: 21 May 2020 |
|---|---|
| Varden/Superintendent's Office: | MAY 26 2020 |
| ate Received: | By: |

GRIEVANCE OFFICE

Revision Date: 4/28/17



**VIRGINIA
DEPARTMENT OF CORRECTIONS**

**Regular Grievance** 866_P1_4-17

**INSTRUCTIONS FOR FILING:** You are required per Operating Procedure 866.1 *Offender Grievance Procedure* to attempt to resolve your complaint in good faith prior to filing a regular grievance. You must submit your grievance within 30 days from the date of occurrence or discovery of incident. Only one issue per grievance will be addressed. Write your issue only in the space provided on the grievance form, preferably in ink. Regular grievances are submitted through the institutional mail to the facility Grievance Office and a receipt issued within 2 working days from received date if the grievance is not returned during intake.

**INTAKE:** Grievances should be accepted for logging unless returned for the following reason(s):

| | |
|---|---|
| ☐ | Non-Grievable. This issue has been defined as non-grievable in accordance with Operating Procedure 866.1.<br>☐ Disciplinary Procedure. You may appeal hearing decisions, penalties, and/or procedural errors under the provisions in Operating Procedure 861.1, *Offender Discipline.*<br>☐ Matters beyond the control of the Department of Corrections |
| ☒ | Does not affect you personally (This issue did not cause you personal loss or harm)  *Further explanation is on request submitted on 5/26/20 and answered* |
| ☐ | Limited. You have been limited by the Warden/Superintendent |
| ☐ | More than one issue – resubmit with only one issue |
| ☐ | Expired Filing Period. Grievances are to be filed within 30 calendar days from date of occurrence/incident, or discovery of the occurrence/incident except in instances: 1) beyond the offender's control or, 2) where a more restrictive time frame has been established in Operating Procedures to prevent loss of remedy or the issue from becoming moot. |
| ☐ | Repetitive. This issue has been grieved previously in Grievance # |
| ☐ | Inquiry on behalf of other offenders. |
| ☐ | Group Complaints or Petitions  Grievances are to be submitted by individuals. |
| ☐ | Vulgar/Insolent or Threatening Language. YOU MAY BE CHARGED IN ACCORDANCE WITH OPERATING PROCEDURE 861.1 *OFFENDER DISCIPLINE* |
| ☐ | Photocopy/Carbon Copy. You must submit the original grievance for responses and appeals. |
| ☐ | Grievances Filed Regarding Another Institution. This grievance is being returned to you for you to submit to: |
| ☐ | Informal Procedure. You have not used the informal process to resolve your complaint |
| ☐ | Request for services |
| ☐ | Insufficient Information (Not to include Medical). You need to provide the following information to the Grievance Office within 5 days before the grievance can be processed: |
| ☐ | The issue in the grievance is different from the issue in the informal complaint |

Institutional Ombudsman/Grievance Coordinator: *Russel Burn, IO*     Date: 5-26-26

If you disagree with this decision, you have 5 calendar days from date of receipt to submit to the Regional Ombudsman for a review of the intake decision. The Regional Ombudsman's decision is final.

Regional Review of Intake (within 5 working days of receipt)

| | |
|---|---|
| ☐ | The intake decision is being upheld in accordance with Operating Procedure 866.1 *Offender Grievance Procedure.* |
| ☒ | The intake decision is being returned to you because the 5 day time limit for review has been exceeded. |
| ☐ | The grievance meets the criteria for intake and is being returned to the Warden/Superintendent for logging. |

Regional Ombudsman: *[signature]*     Date: 6-18-2020

**WITHDRAWAL OF GRIEVANCE:** I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance, there will be no further action on this issue nor will I be able to file any other grievance in the future on this issue.

Offender Signature: _____

Staff Witness: _____     Date: _____

Date: _____

VIRGINIA
DEPARTMENT OF CORRECTIONS

RECEIVED

Offender Request 801_F3_7-1

## Offender Request    MAY 2 6 2020

**DIRECTIONS**
1. Fill in your Name, Number, Full Housing Assignment
2. Please Print your request; KEEP IT BRIEF
3. Drop in the appropriate Mail Box

4. Requests may be returned unanswered if addressed to the wrong department or if duplicate requests are sent.

| YOUR LAST NAME | FIRST | MI | NUMBER | BLDG/CELL |
|---|---|---|---|---|
| Lucas | Casey | F. | 1086673 | Q.A.38.B |
| **WORK ASSIGNMENT** | **ASSIGNED COUNSELOR** | | **TODAY'S DATE** | |
| Q.A Unit Custodian | Ms. Robinson | | 21 May 2020 | |

TO: ☐ Unit Manager  ☐ Medical  ☐ Personal Property  ☐ Law Library  ☐ Security
☐ Treatment  ☐ Mental Health  ☐ Education  ☐ Enterprise Shop  ☐ Accounting
☐ Chaplain  ☐ Assistant Warden  ☐ Warden  ☑ Other  Ms.Brown Ombudsman

**CHECK PURPOSE**  ☐ Appointment Request  ☐ Question/Statement

Ms. Brown, You asked me to explain how the incident in the kitchen affected me, my personal loss or harm.
1.) Check The COVID19 WARMline; it is not confidential & I have made several Mental Health Complaints. 2.) Ask Ms. Ridley are my fears real & for a continuing.
3.) My medical issue's with my lungs are 100% Critical & Chronic. & I have provided @ you US Dept. of Veteran Affairs Documentation, VSDOC Physian Sheet. &
4.) a copy of my 4 inhalers Microbreathig Chamber.
How I was hurt by this Negligent Action Mental Health Deterioration, I was hurt physically by Being Deprived of 2 meals. I could not Risk eating that food, my continued

DO NOT ATTACH ADDITIONAL PAGES; DO NOT WRITE BELOW THIS LINE

## RESPONSE

Request sent to correct department ☑ Yes  ☐ No; Routed to: _____  Date: _____

Everything you have said is what you assumed would happen. Grievances are based on facts; not assumption. You were not denied meals; you chose, not to partake in the meals provided; there is a difference. My decision has not changed and any further action on this issue can be reviewed by the Region.

RECEIVED
JUN 17 2020
Ombudsman Unit
Eastern Region

Offender seen ☐ Yes ☑ No

Rose T Brown IC
Official Responding

5-26-20
Date of Response

Revision Date: 7-16-12

My Heim WAS Hurt Because I AM A Diabetic

I take Glipizide which is a sub for Talucophage

I must Eat When I take this Medication.

Bottomline The Kitchen was Not Decontaminated Before

The Lunch Meal was Prepared + Served. Nor was it Decontaminated

Before The Dinner Meal was Prepared & Served the Kitchen

Still DIDN'T Recieved Decontamination Cleaning.

Mr. Brown, I AM An Expert with Nuclear Biological

and Chemical Weapons. NBC Environments in full MOPP Gear

Mission Oriented Protective Posture. I was The

U.S. Army Champion with Dealing in hazardous Contaminated

Conditions.

This I have provided you the Military skills for.

I, Can not Risk eating that food it REALLY Could Have

Killed Me & My family would Have Never known The Truth

My Mental Health Has Been Greatly Damaged, my Blood Sugar

became extremely LOW from the lack of food Yes

I have been hurt & I am at loss.

I am Resubmitting The Grievance it is VALID it Directly Affected

Me. The Grievance is Also founded.

Carol F. Sweax

RECEIVED

JUN 17 2020

Ombudsman Unit
Eastern Region

RECEIVED

MAY 26 2020

By: GRIEVANCE OFFICE

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING**: Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink.  Only one issue per Informal Complaint.  Place your complaint in the designated area at your facility.  A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake.  If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
An Informal Complaint is not required for an alleged incident of sexual abuse.

CABEL F. LUCAS
Offender Name

1080073
Offender Number

2-A-38-B
Housing Assignment

Food Service Supervisor, Security, Hcc Administration
Individuals Involved in Incident

24 April 2020    10:41 Am
Date/ Time of Incident

- [ ] Unit Manager/Supervisor
- [ ] Personal Property
- [ ] Medical Administrator

- [x] Food Service
- [ ] Commissary
- [ ] Other  (Please Specify):

- [ ] Institutional Program Manager
- [ ] Mailroom

Briefly explain the nature of your complaint (be specific): Denied Food & Food Service Housing 6-A Inmates in Chow Hc
At 1080 Am Friday 24 April 2020. After my Medical Treatment I Witnessed Inmates
From Housing Unit 6-A Being Moved within B Side Chow Hall. This Is A Food
Service Hazard. The Potential Contamination of the Food, Food Equipment, Food Service Personnel
To Cross Contaminate the Trays being Prepared for Lunch. the Trays Arrived At my
Dorm at 11:17 Am. The Chow Hall Still had inmates from 6-A inside without being
Property Decontaminated, Sterilized & Sanitized. I'm Left Risk inmate with Chronic Lung Disease,
Hypertension, Diabetic, Neck Condition.  I Had To Refuse the Meal. HEALTHcare, Visiting & Services
Violations

Recurrent
Repeat
Isolation

Offender Signature  Cabel F. Lucas

Date  24 April 2020

---

### Offenders - Do Not Write Below This Line

Date Received: 4-28-20

Response Due: 5-13-20

Action Taken/Response:

Tracking # HCC20-INF-00706

Assigned to: Busti Brown, FO

_____

_____

_____

_____

_____

_____

RECEIVED
JUN 17 2020
Ombudsman Unit
Eastern Region

Respondent Signature

Printed Name and Title

Date

### WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint.  I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____    Date: _____

Staff Witness Signature: _____    Date: _____

Revision Date: 4/28/17



VIRGINIA DEPARTMENT OF CORRECTIONS

# Grievance Receipt Report

VACORIS C - #.0
DOC Location: HCC Haynesville Correctional Center
Report generated by Brown, R T
Report run on 04/28/2020 at 04:01 PM

Grievance Number: HCC-20-INF-00706

Next Action Date: 5/13/2020 12:00:00 AM

| On this date: | 04/28/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | 1080673 | of | Haynesville Correctional Center<br>HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |

Setting out the following complaint:

He states he was denied food because he was in Medical being triaged and 6A was in the chow on B-side while their building was being decontaminated. He states he decided not to get his meal because of this; therefore, he was denied a meal. ( Rose T. Brown, IO)

| *Rose T Brown* | *IO* |
|---|---|
| *(Signature)* | |

RECEIVED
JUN 17 2020
Ombudsman Unit
Eastern Region

Officer Initials: _____



VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

# Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
An Informal Complaint is not required for an alleged incident of sexual abuse.

**RECEIVED JUN 17 2020**

| Cabel F. Lucas | 1080113 | 2-A-38 Ombudsman Unit Eastern Region |
|---|---|---|
| Offender Name | Offender Number | Housing Assignment |

Food Service Supervisor, Security, Hcc Administration — Individuals Involved in Incident

24 April 2020 10:91 AM
Date/Time of Incident

- [ ] Unit Manager/Supervisor
- [ ] Personal Property
- [ ] Medical Administrator
- [x] Food Service
- [ ] Commissary
- [ ] Other (Please Specify):
- [ ] Institutional Program Manager
- [ ] Mailroom

Briefly explain the nature of your complaint (be specific): Denied Food & Food Service Housing 6-A Inmates cross con... I was at Medical being seen for triage at 1080 Am Friday 24 April 2020. After my Medical Treatment. I witnessed inmates Contaminated From Housing Unit 6-A Being Moved within B Side Crow Hall. This is A Food Service Hazard. The Potential Contamination of the Food, food Equipment, Food Service Personnel To Cross Contaminate the Trays being Prepared for Lunch the Trays Arrived At my Dorm at 11:17 Am. The Chow Hall still had inmates from 6-A inside without being Properly Decontaminated, Sterilized, & Sanitized. I'm a high risk inmate with Chronic illness, Disease, Hypertension, Diabetic, Illegal Condition. I had to Refuse the Meal. Recurrent, healthcare Violations & Services Violation

Offender Signature _Cabel F. Lucas_ Date _24 April 2020_

### Offenders - Do Not Write Below This Line

| Date Received: 4-28-20 | | Tracking # HCG20-INF-00706 |
|---|---|---|
| Response Due: 5-13-20 | Assigned to: | Rose T Brown, FO |

Action Taken/Response:
~~The VADOC and the Department of Health has issued preventive measures for staff and offenders to follow guidelines on handwashing and hand sanitizer usage, and social distancing. The DOC has~~ established food preparation and distribution, and offender sanitation crew to ensure comply with safety, security, policies, procedures, and practices.

| Rose P Brown | Rose P. Brown, IO | 5-7-20 |
|---|---|---|
| Respondent Signature | Printed Name and Title | Date |

### WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

**RECEIVED MAY 26 2020 BY GRIEVANCE OFFICE**

Offender Signature: _____ Date: _____

Staff Witness Signature: _____ By: Date: _____

**RECEIVED MAY 26 2020 BY GRIEVANCE OFFICE**

Revision Date: 4/28/17

VIRGINIA
DEPARTMENT OF CORRECTIONS

Problem Sheet 720_F32_10-16

## Problem Sheet

| Offender Name: Lucas, Casel | Number: 1080673 |
|---|---|
| Allergies: Valporic Acid, Lithium, Trilafon | DOB. 8.8.1969 |

| Date: | Medical Condition |
|---|---|
| | Gerd |
| | Abd gas lg hx |
| | dry eye |
| | Weakness to (L) side of face (injury in 1999) resolved |
| | Nicotine dependency |
| | DJD of knees by symptoms |
| | Fibromyalgia |
| | Weapons of mass destruction exposure |
| | HTN |
| | Migraines |
| | diabetes |
| | |
| | |

(DNR for VA in Chart)

RECEIVED
JUN 17 2020
Ombudsman Unit
Eastern Region

Revision Date: 10/14/1

IN THE APPEAL OF
    CASEL F. LUCAS

SS 2
Docket No. 13-22 962

3. The Veteran's right elbow pain has been linked to a diagnosis of right elbow strain, and the preponderance of the evidence is against finding that his right elbow strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease.

4. The Veteran's flexion contracture, DIP joint, right fifth finger, has been related to service.

5. The Veteran's flexion contracture, DIP joint, left fifth finger, has been related to service.

6. The Veteran's right ankle pain has been linked to a diagnosis of right ankle strain, and the preponderance of the evidence is against finding that his right ankle strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease

7. The Veteran's left ankle pain has been linked to a diagnosis of right ankle strain, and the preponderance of the evidence is against finding that his right ankle strain is due to a disease or injury in service, to include a specific in-service event, injury, or disease

8. The Veteran has not manifested a diagnosis of CFS during the pendency of his appeal; nor has he been diagnosed with a medically unexplained chronic multi symptom illness.

9. The preponderance of the evidence of record establishes recurrent upper respiratory infections as a diagnosable but medically unexplained chronic multi symptom illness.

10. The preponderance of the evidence is against finding that the Veteran has a sleep disorder due to a disease or injury in service, to include specific in-service event, injury, or disease.

11. The Veteran's GERD began during active service.


RECEIVED
MAY 26 2020
By: GRIEVANCE OFFICE

3

IN THE APPEAL OF
**CASEL F. LUCAS**

SS▓▓▓▓▓▓
Docket No. 13-22 962

been diagnosed with CFS or with any medically unexplained chronic multi-symptom illness. The existence of a current disability is the cornerstone of a claim for VA disability compensation. *See Brammer v. Derwinski, supra.* As such, without a current diagnosis, the Veteran lacks the evidence necessary to substantiate his claim for service connection. The Board acknowledges that the Veteran does appear to have experienced fatigue, particularly as a result of his difficulties sleeping, but that fact alone does not necessitate the diagnosis of CFS which requires a specific set of symptomatology beyond just fatigue.

**5. Entitlement to service connection for recurrent upper respiratory infections.**

The Veteran contends he has respiratory problems due to various exposures in Iraq during the Gulf War, including chemicals and toxins, and exposure to WMDs after the demolition of an arms facility. He also contends he has had recurrent upper respiratory infections, to include pneumonia, and bronchitis, requiring treatment, since his service in Desert Storm.

Service treatment records show that in April 1988, the Veteran was treated for asthmatic bronchitis, and in May 1988 he was hospitalized for acute respiratory disease.

On a VA examination in March 2011, the Veteran reported his respiratory condition had an onset in the 1990s, and that he had recurrent upper respiratory infections requiring treatment since Desert Storm. The diagnosis was recurrent upper respiratory infections, which the examiner indicated was, by VBA definition category # (2), a diagnosable but medically unexplained chronic multi symptom illness of unknown etiology. The examiner opined it was at least as likely as not the Veteran's recurrent upper respiratory infections were related to a specific exposure event he experienced during his service in Southwest Asia. The examiner noted that signs and symptoms that may be manifestations of both undiagnosed illnesses or diagnosed medically unexplained chronic multi-symptom illnesses include signs or symptoms involving the upper respiratory system.

As noted above, signs and symptoms which may be manifestations of medically unexplained chronic multi symptom illnesses include respiratory symptoms.

RECEIVED MAY 26 2020 BY:_____ GRIEVANCE OFFICE

IN THE APPEAL OF                                            SS 228 29 8166
    **CASEL F. LUCAS**                                Docket No. 13-22 962

38 C.F.R. § 3.317(b).  Therefore, the VA examiner's 2011 assessment of the Veteran's recurrent upper respiratory infections as a diagnosable but medically unexplained chronic multi symptom illness is consistent with the regulations governing such illnesses.  Review of the record and resolving reasonable doubt in favor of the Veteran, the Board finds that his respiratory symptoms manifested to a degree of 10 percent or more not later than December 31, 2021, and service connection for this condition is therefore warranted.  38 C.F.R. § 3.317.

## 6. Entitlement to service connection for sleep disorder.

The Veteran contends he has a sleep disorder due to various exposures during the Gulf War, including chemicals and toxins, as well as exposure to WMDs after the demolition of an arms facility.  He also contends he has had restless sleep and sleep disruptions since 1990/1991.

In a June 1999 treatment record from the Virginia Department of Corrections, it was noted that the Veteran had reported he was not able to sleep well and the impression was sleep disorder.  Subsequently, it was noted in prison records that he was prescribed Benadryl as a sleeping medication.

The Board concludes that, while the Veteran arguably was diagnosed with a sleep disorder in June 1999, and he has reported having sleep problems since service, the preponderance of the evidence weighs against finding that he has a sleep disorder that began during service or is otherwise related to an in-service injury, event, or disease.  38 U.S.C. §§ 1110, 1131, 5107(b); *Holton v. Shinseki*, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).

In this regard, private treatment records from prison show the Veteran was not diagnosed with a sleep disorder until 1999, which is 7 years after his separation from service.  While the Veteran is competent to report having experienced symptoms of restless sleep and sleep problems since service, he is not competent to provide a diagnosis in this case or determine that these symptoms were manifestations of a sleep disability, as the issue is medically complex. *Jandreau v. Nicholson*, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007).

RECEIVED

MAY 26 2020

BY: GRIEVANCE OFFICE

IN THE APPEAL OF                                    SS 228 29 8166
   **CASEL F. LUCAS**                          Docket No. 13-22 962

The Board also notes that on a VA examination in March 2011, the Veteran reported restless sleep since 1990. He denied snoring or stopping breathing in his sleep. He reported he stopped his medication for bipolar disorder and sleeping, reporting that if he was on medication in prison, they would not let him do anything. The examiner indicated that for the claimed sleep condition there was no pathology to render a diagnosis, and, therefore, no opinion was rendered. It was also noted to "please see the [Compensation and Pension] mental health examination". In the April 2011 VA examination regarding PTSD, it was noted that the Veteran reported sleep impairment, including tossing and turning with an inability to sleep due to joint pain and uncomfortable prison beds. Notably, the Veteran is already service-connected for PTSD therefore any sleep impairments resulting from that disability is contemplated by the rating assigned for that disability.

The Board finds that the VA examiner's opinion in 2011 is probative, because it is based on an accurate medical history and provides an explanation that contains clear conclusions and supporting data. *Nieves-Rodriguez v. Peake*, 22 Vet. App. 295, 304 (2008). Consequently, the Board gives more probative weight to the 2011 VA examiner's opinion.

**7. Entitlement to service connection for GERD.**

The Veteran contends he currently has a gastrointestinal condition that had an onset in 1990, and also contends exposure to deadly toxins in the Gulf War caused him to have diarrhea, flatulence, stomach pains and cramps, and burning in throat and esophagus.

On a VA examination in March 2011, the Veteran reported his gastrointestinal condition had an onset in 1990, and that he had diarrhea for 2 years after his return from Desert Storm in 1990. He reported daily heartburn and regurgitating bile at least daily and flatus with any food. He reported an episode of vomiting blood with severe gastritis in August 1992, and underwent an x-ray which was negative for ulcer, but no episodes of vomiting blood since 1993. The diagnosis was GERD. The examiner indicated that for the claimed condition of flatus and lower abdominal discomfort there was no pathology to render a diagnosis. The examiner opined that GERD was a diagnosable chronic multi-symptom illness with a

14

IN THE APPEAL OF                                            SS 228 29 8166
**CASEL F. LUCAS**                                     Docket No. 13-22 962

partially explained etiology, and opined that it was at least as likely as not the
Veteran's GERD was related to a specific exposure event he experienced during
service in Southwest Asia. For rationale, the examiner noted the Veteran reported
his gastrointestinal problems began during the Gulf War, that he perhaps incurred
mucosal damage due to exposure events, and that he continued with GERD which
he was on medication to control.

In light of the VA examiner's opinion in 2011, the Board finds that the Veteran's
GERD is not medically unexplained and, therefore, it is not a qualifying chronic
disability under this regulation. However, as noted above, even though the Veteran
does not qualify for presumptive service connection, in light of the VA examiner's
opinion linking the Veteran's GERD to active service, service connection is
warranted. *Combee v. Brown, supra.*

## 8. Entitlement to service connection for genitourinary problems and impotency.

The Veteran contends he experienced erectile dysfunction and impotency when he
returned from service in the Gulf War, as well as burning with urination and
ejaculation, which he reported he continued to experience. He contends his
impotency and genitourinary problems are due to various exposures during the
Gulf War, including chemicals and toxins, as well as exposure to WMDs after the
demolition of an arms facility.

The question for the Board is whether the Veteran has a current disability that
began during service or is at least as likely as not related to an in-service injury,
event, or disease.

The Board concludes that the Veteran does not have a current diagnosis of a
genitourinary disorder or impotency and has not had such a diagnosis at any time
during the pendency of the claim or recent to the filing of the claim. 38 U.S.C.
§§ 1110, 1131, 5107(b); *Holton v. Shinseki*, 557 F.3d 1363, 1366 (Fed. Cir. 2009);
*Romanowsky v. Shinseki*, 26 Vet. App. 289, 294 (2013); *McClain v. Nicholson*,
21 Vet. App. 319, 321 (2007); 38 C.F.R. § 3.303(a), (d).

15

IN THE APPEAL OF
**CASEL F. LUCAS**

SS 228 29 8166
Docket No. 13-22 962

§ 20.204. At the videoconference hearing in March 2018, the Veteran indicated he wanted to withdraw his appeal for an effective date earlier than August 25, 2010 for the grant of service connection for PTSD. Therefore, the Board does not have jurisdiction to decide any appeal for that benefit and the appeal must be dismissed.

## REASONS FOR REMAND

### 1. Entitlement to service connection for patellofemoral syndrome, right knee.

The Veteran contends he has joint pain in the right knee related to various exposures during the Gulf War, including chemicals and toxins, and WMDs (weapons of mass destruction) through a demolition of an arms facility. He also contended, including on the VA examination in 2011, that he hurt his right knee in Germany in 1989 when he fell off a Howitzer and that it had never been the same.

On the VA examination in March 2011, the examiner opined that the Veteran's right patellofemoral syndrome was not related to a specific exposure event he experienced during his service in Southwest Asia. For rationale, the examiner noted that the Veteran's right knee patellofemoral syndrome "may be" from the commonly accepted cause of overload, as he described an injury in Germany in 1989 and a lot of running, noting that he has reported right knee pain since the right knee injury in 1989. The examiner also noted there was no in-service treatment record of a right knee injury or treatment, and no records of treatment for his right knee after leaving the service in 1992 to the present.

The Board notes that the VA examiner did not provide a definitive opinion as to whether the Veteran's right knee patellofemoral syndrome is related to his report of a knee injury in 1989 in service and lots of running. Once VA undertakes the effort to provide an examination when developing a service-connection claim, it must provide an adequate one. *See Barr v. Nicholson*, 21 Vet. App. 303, 310-11 (2007). Therefore, the Board concludes that another VA opinion is warranted.

18

IN THE APPEAL OF                                   SS 228 29 8166
   CASEL F. LUCAS                          Docket No. 13-22 962

**2. Entitlement to an initial rating in excess of 10 percent for PTSD is remanded.**

In March 2018, the Veteran testified his PTSD symptoms had gotten worse at times since he was last examined by VA in 2011. In light of his testimony, he should be provided an opportunity to report for a VA examination to ascertain the current severity and manifestations of his PTSD.

The record reflects that the Veteran is currently incarcerated. The Board is aware of the potential logistical difficulties in affording an incarcerated veteran an examination. However, the duty to assist incarcerated veterans requires VA to tailor its assistance to meet the peculiar circumstances of confinement because these individuals are entitled to the same care and consideration given to their fellow veterans. *See Bolton v. Brown*, 8 Vet. App. 185, 191 (1995); M21-1, Part III, Subpart iv, Chapter 3, Section F, Topic 2. The Board recognizes that VA does not have the authority to require a correctional institution to release a veteran so that VA can provide him the necessary examination at the closest VA medical facility. 38 U.S.C. § 5711. Nevertheless, VA's duty to assist an incarcerated veteran includes: (1) attempting to arrange transportation of the claimant to a VA facility for examination; (2) contacting the correctional facility and having their medical personnel conduct an examination according to VA examination worksheets; or, (3) sending a VA or fee-basis examiner to the correctional facility to conduct the examination. *See Bolton, 8 Vet. App. at 191.*

In affording an incarcerated veteran an examination, the RO must document substantial efforts to schedule and conduct the examination and associate such documentation to the claims folder. Additionally, Veterans Health Administration (VHA) compensation clinics must provide documentation that they have made substantial attempts to schedule and conduct the examination and have exhausted all possible venues for obtaining access to the incarcerated veteran for the examination. *See* VA Adjudication Procedure Manual M21-1, Part III, Subpart iv, Chapter 3, Section F, Topic 2.

The matter is REMANDED for the following actions:

19

IN THE APPEAL OF
   CASEL F. LUCAS

SS 228 29 8166
Docket No. 13-22 962

1. With any assistance needed from the Veteran, obtain
any outstanding VA and/or private medical records and
associate them with the claims file.

2. After all additional records are associated with the
claims file, to the extent available, obtain an addendum
opinion from the March 2011 VA examiner or other
appropriate clinician regarding whether the Veteran's
right knee patellofemoral syndrome is at least as likely as
not (i.e., a 50 percent or greater degree of probability)
related to his active service, to specifically include his
competent report that he hurt his right knee in Germany
in 1989 when he fell off a Howitzer and did a lot of
running. The examiner should review the claims file and
explain the rationale for all opinions given. If the
examiner is unable to provide the requested opinion
without resort to speculation, it should be so stated along
with an explanation as to the reason(s) therefor. If
deemed necessary by the examiner, a physical
examination of the Veteran should be conducted.

3. Schedule the Veteran for an examination by an
appropriate clinician to determine the current severity of
his service-connected PTSD. The examiner should
review the claims file and provide a full description of
the Veteran's PTSD disability and report all signs and
symptoms necessary for evaluating his PTSD.

(Continued on the next page)

IN THE APPEAL OF
**CASEL F. LUCAS**

SS 228 29 8166
Docket No. 13-22 962

4. In scheduling any examination, the RO must follow the special duty to assist requirements for incarcerated veterans. *See Bolton*, 8 Vet. App. At 191; M21-1, Part III, Subpart iv, Chapter 3, Section F, Topic 2.

A. ISHIZAWAR
Veterans Law Judge
Board of Veterans' Appeals

ATTORNEY FOR THE BOARD

D.M. Casula, Counsel

CERTIFICATE IN LIEU OF LOST OR DESTROYED

# Discharge



## Armed Forces of the United States

*This is to certify that*

CASEL FRANK LUCAS    SPECIALIST    USAR

*was discharged from the*

# Army of the United States

*by*       Honorable Discharge

*on*       12 March 1996

*at*       St. Louis, MO

*Given at Washington, D. C., on*       19 July 2006

RECEIVED
JUN 1 7 2020
Ombudsman Unit
Eastern Region

ROBERT T. MARSH
Colonel, AG



VIRGINIA DEPARTMENT OF CORRECTIONS

**Grievance Receipt**

866.1 A-3

DOC Location: HCC Haynesville Correctional Center

Report generated by Hand, P W

Report run on 06/24/2020 at 09:58 AM

Grievance Number: <u>HCC-20-INF-01191</u>

Next Action Date: <u>07/09/2020 12:00 AM</u>

| On this date: | 06/24/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | | 1080673 | Haynesville Correctional Center |
| | | of | HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| R Brown, IO - Ombudsman violations of the stipulated settlement agreement COVID19 Whorley v Northam. | | | |
| P Hand | | OSS | |
| *(Signature)* | | *(Title)* | |

Rev. 03/30/2009



**RECEIVED**

VIRGINIA
DEPARTMENT OF CORRECTIONS

JUN 24 2020

By:_____
Informal Complaint Office

Informal Complaint 866_F3_4-17

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

Cael F. Lucas     1086673     2-A-38-B
Offender Name      Offender Number      Housing Assignment

Ombudsman MS Brown      April 2020 thru 2020
Individuals Involved in Incident      Date/Time of Incident

☐ Unit Manager/Supervisor    ☐ Food Service    ☐ Institutional Program Manager
☐ Personal Property    ☐ Commissary    ☐ Mailroom
☐ Medical Administrator    ☐ Other (Please Specify): _____

Briefly explain the nature of your complaint (be specific): Ombudsman violations of the Stipulated Settlement Agreement COVID19 Whorley etal v. Northam Etal Case No: 3:20cv00255 Pg.4(C) Defendants agree to provide written guidance to grievance coordinators at VDOC facilities relating to grievances related to COVID19 as well regards to abide by COVID19 related policies, and protocols. This is not followed with these grievances HCC-20-Inf-00585, HCC-20-Inf-00559, HCC-20-Inf-00706, HCC-20-Inf-00945 these grievances are ill COVID19 related Policies + Protocols All Denied intake because they violated the safety + Health of myself, staff, and all inmates. This is the second Informal Complaint I have filed on this. No receipt given on none of those.

Offender Signature Cael F. Lucas     Date 22 June 2020

**Offenders - Do Not Write Below This Line**

Date Received: 6-24-2020      Tracking # HCC-20-INF-01191
Response Due: 7-9-2020      Assigned to: R Brown TD
Action Taken/Response:

Respondent Signature      Printed Name and Title      Date

**WITHDRAWAL OF INFORMAL COMPLAINT:**
I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____
Staff Witness Signature: _____ Date: _____

Witnessed by staff submitted to Ombudsman institutional Mail This is my second filing.

Revision Date: 4/28/17

DEPARTMENT OF CORRECTIONS

Offender Request #01_F3_7-1

Offender Request

**DIRECTIONS**
1. Fill in your Name, Number, Full Housing Assignment
2. Please Print your request; KEEP IT BRIEF
3. Drop in the appropriate Mail Box

4. Requests may be returned unanswered if addressed to the wrong department or if duplicate requests are sent.

JUL 01 2020

OPERATIONS OFFICE

| YOUR LAST NAME | FIRST | MI | NUMBER | BLDG/CELL |
|---|---|---|---|---|
| LUCAS | Casel | F | 1080673 | 2-A-38-B |
| WORK ASSIGNMENT | ASSIGNED COUNSELOR | | TODAY'S DATE | |
| 2-A Unit Custodian | Ms. Robinson | | 1 July 2020 | |

TO: ☐ Unit Manager  ☐ Medical  ☐ Personal Property  ☐ Law Library  ☐ Security
☐ Treatment  ☐ Mental Health  ☐ Education  ☐ Enterprise Shop  ☐ Accounting
☐ Chaplain  ☐ Assistant Warden  ☐ Warden  ☒ Other  Facility ADA Coordinator

**CHECK PURPOSE**  ☐ Appointment Request  ☒ Question/Statement  Ms. J. Greenwood

Reasonable Accommodation Request : I am Disabled Veteran An Inmate with Disability
I am A Inmate with 15 military Disabilities that I am Service Connected
for Recieving 90% Rating from the Veterans Affair, Board Veterans Appeals And
The Court of Appeals for Veteran Claims Certification. 1) PTSD Mental Illnesses
2) Depression, 3) Anxiety 4) Anti Personality Disorder 5) Cardiovascular Problem must wear A
Adult Diaper 3 to 6 per 100% 6) Degenerative Joint Disease both knees 7) Dip Joint
Left + Right Hand, (8) Chronic Respiratory Illness & Acute Respiratory Disease
9) Diabetes.
   My Request is to be Able to Participate in IERP
Release Program. Die to my Chronic Disabilities.

DO NOT ATTACH ADDITIONAL PAGES; DO NOT WRITE BELOW THIS LINE

**RESPONSE**

Request sent to correct department ☒ Yes ☐ No; Routed to: _____  Date: _____

You will need to speak to your counselor.

RECEIVED

JUL 24 2020

By: _____
GRIEVANCE OFFICE

Offender seen ☐ Yes ☒ No

Official Responding _____

Date of Response  6-2-2020

Revision Date: 7/16-13

**Sapphire eMAR**

**SYMBOL KEY**
A: ABSENT
*: SEE NOTES
H: HELD
M: MISSED
R: REFUSED
N: NO SHOW
C: COMPLETED

**SITE KEY**
1. RIGHT BUTTOCKS (GLUTEUS)
2. RIGHT BUTTOCKS (GLUTEUS)
3. LEFT BUTTOCKS (GLUTEUS)
4. RIGHT VENTRAL GLUTEUS
5. LEFT VENTRAL GLUTEUS
6. RIGHT THIGH (QUADRICEPS)
7. LEFT THIGH (QUADRICEPS)
8. RIGHT KNEE
9. LEFT KNEE
10. RIGHT ARM (DELTOID)
11. LEFT ARM (DELTOID)
12. RIGHT ARM (DELTOID) BACK
13. LEFT ARM (DELTOID) BACK
14. RIGHT LEG REAR
15. RIGHT LEG REAR
16. RIGHT ANTERIOR THIGH
17. LEFT ANTERIOR THIGH
18. LOWER BACK LEFT
19. LOWER BACK RIGHT
20. UPPER BACK LEFT
21. UPPER BACK RIGHT
22. UPPER CHEST LEFT
23. UPPER CHEST RIGHT
24. ABDOMEN UPPER QUADRANT RIGHT
25. ABDOMEN UPPER QUADRANT LEFT
26. ABDOMEN LOWER QUADRANT RIGHT
27. ABDOMEN LOWER QUADRANT LEFT
28. PIC LINE
29. MEDIPORT
30. RIGHT NARE
31. LEFT NARE
32. OTHER
33. RIGHT EYE
34. LEFT EYE
35. BOTH EYES
36. LEFT EAR
37. RIGHT EAR
38. BOTH EARS
39. BOTH NARES
40. RECTUM
41. JUGULAR RIGHT
42. JUGULAR LEFT
43. SUBCLAVIEN RIGHT
44. SUBCLAVIEN LEFT
45. DELTOID RIGHT
46. DELTOID LEFT
47. UPPER ARM RIGHT
48. UPPER ARM LEFT
49. ANTECUBITAL RIGHT
50. ANTECUBITAL LEFT
51. FOREARM RIGHT
52. FOREARM LEFT
53. WRIST RIGHT
54. WRIST LEFT
55. ABDOMEN
56. OUTER THIGH RIGHT
57. OUTER THIGH LEFT
58. VASTUS LATERAL RIGHT
59. VASTUS LATERAL LEFT
60. FEMORAL VEIN RIGHT
61. FEMORAL VEIN LEFT
62. LOWER LEG RIGHT
63. LOWER LEG LEFT
64. FOOT RIGHT
65. FOOT LEFT
66. TRICEP RIGHT
67. TRICEP LEFT
68. HAND LEFT
69. HAND RIGHT
70. DORSOGLUTEAL LEFT
71. DORSOGLUTEAL RIGHT
72. VENTROGLUTEAL LEFT
73. VENTROGLUTEAL RIGHT

## ROUTINE MEDICATION

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 05/27/2020 STOP 05/31/2020 RX 22497803 NA | **Ibuprofen 400mg Tablet – KOP** SUB FOR: MOTRIN | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | TAKE 2 TABLET(S) ORALLY TWICE DAILY - | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | LEVIN, LEONARD – [MEDICAL] | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 04/20/2020 STOP 07/18/2020 RX 32295048 NA | **Linzess 145mcg Capsule – KOP** SUB FOR: LINACLOTIDE *NF EXP 07/13/2020* - TAKE 1 CAPSULE(S) ORALLY ONCE DAILY - DURRANI, ADNAN – [MEDICAL] | 16:30 | | | | | | | | | | | | | | KL | | | | | | | | | | | | | | | | | | |
| | | QUANTITY GIVEN | | | | | | | | | | | | | | KL 30 | | | | | | | | | | | | | | | | | | |
| | | DAYS TO LAST | | | | | | | | | | | | | | KL 30 | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 04/10/2020 STOP 07/08/2020 RX 32153034 NA | **Microchamber Mis – KOP** *NF EXP 07/06/2020* - FOR USE WITH INHALER AS INSTRUCTED - DURRANI, ADNAN – [MEDICAL] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 03/11/2020 STOP 07/08/2020 RX 31608317 NA | **Mirtazapine 45mg Tablet – KOP – CRUSH** SUB FOR: REMERON *CRUSH* - TAKE 1 TABLET(S) ORALLY AT BEDTIME - LEAHY, JUSTIN – [PSYCH] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 02/05/2020 STOP 08/02/2020 RX 30703425 NA | **Montelukast 10mg Tablet – KOP** SUB FOR: SINGULAIR TAKE 1 TABLET(S) ORALLY ONCE DAILY - HENGLER, KELLY – [MEDICAL] | 16:30 | | | | | | | | | | | | | | KL | | | | | | | | | | | | | | | | | | |
| | | QUANTITY GIVEN | | | | | | | | | | | | | | KL 30 | | | | | | | | | | | | | | | | | | |
| | | DAYS TO LAST | | | | | | | | | | | | | | KL 30 | | | | | | | | | | | | | | | | | | |
| | | 18:30 | | | | | | | | | | | | | | | | | | | | | IC | | | | | | | | | | | |

| INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME |
|---|---|---|---|---|---|---|---|---|---|
| AMB | BAEHR, ADRIENNE M | JKS | SELF, JOLENE KOEHN | KL | LANGFORD, KAYLA | TH | HETTINGER, TAMMY | | |
| ES | STEWART, ELLEN | JR | REED, JANETT | LJ | JENNELL, LORI | VF | FERRELL, VALATASHIA | | |
| EW | WARD, ERIN | KG | GUESS, KRISTEN | LR | ROSS, LATOYA | WC | COUSER, WALTER | | |
| IC | CAIN, IRIS | KG1 | GUESS, KRISTEN | NB | BOYD, NATISHA | | | | |

**Diagnosis:**
**Allergies:** LITHIUM, VALPROIC ACID
**Facility:** HD HAYNESVILLE CORR CENTER
**DOB:** 09/08/1969 **Gender** M
**HU2 – A – 38-B**
**LUCAS, CASEL FRANK – 1080673**

Alt Num 376080?

**Agency** HAYNESVILLE CORR CENTER
**SSN**

**May 2020**
**PAGE 4 OF 8**

# Sapphire eMAR

**SYMBOL KEY**
A: ABSENT
*: SEE NOTES
H: HELD
M: MISSED
R: REFUSED
N: NO SHOW
C: COMPLETED

| | |
|---|---|
| 1. ORALLY | 13. LEFT ARM (DELTOID) BACK |
| 2. RIGHT BUTTOCKS (GLUTEUS) | 14. RIGHT LEG REAR |
| 3. LEFT BUTTOCKS (GLUTEUS) | 15. RIGHT LEG REAR |
| 4. RIGHT VENTRAL GLUTEUS | 16. RIGHT ANTERIOR THIGH |
| 5. LEFT VENTRAL GLUTEUS | 17. LEFT ANTERIOR THIGH |
| 6. RIGHT THIGH (QUADRICEPS) | 18. LOWER BACK LEFT |
| 7. LEFT THIGH (QUADRICEPS) | 19. LOWER BACK RIGHT |
| 8. RIGHT KNEE | 20. UPPER BACK LEFT |
| 9. LEFT KNEE | 21. UPPER BACK RIGHT |
| 10. RIGHT ARM (DELTOID) | 22. UPPER CHEST LEFT |
| 11. LEFT ARM (DELTOID) | 23. UPPER CHEST RIGHT |
| 12. RIGHT ARM (DELTOID) BACK | 24. ABDOMEN UPPER QUADRANT RIGHT |

| | |
|---|---|
| 25. ABDOMEN UPPER QUADRANT LEFT | 37. RIGHT EAR |
| 26. ABDOMEN LOWER QUADRANT RIGHT | 38. BOTH EARS |
| 27. ABDOMEN LOWER QUADRANT LEFT | 39. BOTH NARES |
| 28. PIC LINE | 40. RECTUM |
| 29. MEDIPORT | 41. JUGULAR RIGHT |
| 30. RIGHT NARE | 42. JUGULAR LEFT |
| 31. LEFT NARE | 43. SUBCLAVIEN RIGHT |
| 32. OTHER | 44. SUBCLAVIEN LEFT |
| 33. RIGHT EYE | 45. DELTOID RIGHT |
| 34. LEFT EYE | 46. DELTOID LEFT |
| 35. BOTH EYES | 47. UPPER ARM RIGHT |
| 36. LEFT EAR | 48. UPPER ARM LEFT |

| | |
|---|---|
| 49. ANTECUBITAL RIGHT | 61. FEMORAL VEIN LEFT |
| 50. ANTECUBITAL LEFT | 62. LOWER LEG RIGHT |
| 51. FOREARM RIGHT | 63. LOWER LEG LEFT |
| 52. FOREARM LEFT | 64. FOOT RIGHT |
| 53. WRIST RIGHT | 65. FOOT LEFT |
| 54. WRIST LEFT | 66. TRICEP RIGHT |
| 55. ABDOMEN | 67. TRICEP LEFT |
| 56. OUTER THIGH RIGHT | 68. HAND LEFT |
| 57. OUTER THIGH LEFT | 69. HAND RIGHT |
| 58. VASTUS LATERAL RIGHT | 70. DORSOGLUTEAL LEFT |
| 59. VASTUS LATERAL LEFT | 71. DORSOGLUTEAL RIGHT |
| 60. FEMORAL VEIN RIGHT | 72. VENTROGLUTEAL LEFT |
| | 73. VENTROGLUTEAL RIGHT |

## ROUTINE MEDICATION

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 09/10/2019 STOP 09/09/2020 RX 17059304 NA | **Finasteride 5mg Tablet – KOP** SUB FOR: PROSCAR TAKE 1 TABLET(S) ORALLY ONCE DAILY – LEVIN, LEONARD - [MEDICAL] | 18:30 | | | | | | | | | | | | | | | | | | | | | | KL | | | | | | | | | |
| | | QUANTITY GIVEN | | | | | | | | | | | | | | | | | | | | | | KL 30 | | | | | | | | | |
| | | DAYS TO LAST | | | | | | | | | | | | | | | | | | | | | | KL 30 | | | | | | | | | |
| START 03/17/2020 STOP 06/14/2020 RX 31712227 NA | **Fluticasone 0.05% Nasal S – KOP** SUB FOR: FLONASE INSTILL 1 SPRAY(S) TOPICALLY TWICE DAILY – DURRANI, ADNAN – [MEDICAL] | 18:30 | | | | | | | | KL | | | | | | | | | | | | | | | | | | | | | | | |
| | | QUANTITY GIVEN | | | | | | | | KL 1 | | | | | | | | | | | | | | | | | | | | | | | |
| | | DAYS TO LAST | | | | | | | | KL 30 | | | | | | | | | | | | | | | | | | | | | | | |
| START 05/29/2020 STOP 11/24/2020 RX 22326095 0% | **Gabapentin 100mg Capsule** SUB FOR: NEURONTIN TAKE 2 CAPSULE(S) ORALLY TWICE DAILY – LEVIN, LEONARD - [MEDICAL] | 06:00 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | 18:30 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| START 09/18/2019 STOP 09/08/2020 RX 17051038 NA | **glipiZIDE 5mg Tablet – KOP** SUB FOR: GLUCOTROL TAKE 1 TABLET(S) ORALLY TWICE DAILY – LEVIN, LEONARD - [MEDICAL] | 12:00 | | | | | | | | | | | | | | | IC | | | | | | | | | | | | | | | | | |
| | | QUANTITY GIVEN | | | | | | | | | | | | | | | IC 60 | | | | | | | | | | | | | | | | | |
| | | DAYS TO LAST | | | | | | | | | | | | | | | IC 30 | | | | | | | | | | | | | | | | | |
| START 03/11/2020 STOP 07/08/2020 RX 31608205 NA | **HydrOXYzine HCl 25mg Tab – KOP** SUB FOR: ATARAX TAKE 1 TABLET(S) ORALLY FOUR TIMES DAILY AS NEEDED FOR ANXIETY – LEAHY, JUSTIN - [PSYCH] | 12:00 | | | | | IC | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | QUANTITY GIVEN | | | | | IC 120 | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | DAYS TO LAST | | | | | IC 30 | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME |
|---|---|---|---|---|---|---|---|---|---|
| ANB | BAEHR, ADRIENNE M | JKS | SELF, JOLENE KOEHN | KL | LANGFORD, KAYLA | TH | HETTINGER, TAMMY | | |
| ES | STEWART, ELLEN | JR | REED, JANETT | LJ | JENNELL, LORI | VF | FERRELL, VALATASHIA | | |
| EW | WARD, ERIN | KG | GUESS, KRISTEN | LR | ROSS, LATOYA | WC | COUSER, WALTER | | |
| IC | CAIN, IRIS | KG1 | GUESS, KRISTEN | NB | BOYU, NAIISHA | | | | |

**Diagnosis:** Unspecified chronic bronchitis
**Allergies:** LITHIUM, VALPROIC ACID
**Facility:** HU2 HAYNESVILLE CORR CENTER
**DOB:** 08/08/1969    **Gender:** M    Alt Num 3760801    **Agency** HAYNESVILLE CORR CENTER    SSN:
**HU2 - A - - 38-B**
**LUCAS, CASEL FRANK - 1080673**

**May 2020**
**PAGE 3 OF 8**



**Sapphire** eMAR

SYMBOL KEY
A: ABSENT
*: SEE NOTES
H: HELD
M: MISSED
R: REFUSED
N: NO SHOW
C: COMPLETED

| Site Key | | | |
|---|---|---|---|
| 1. ORALLY | 13. LEFT ARM 19. LEFT GLUTEUS | 25. ABDOMEN LOWER QUADRANT RIGHT | 37. RIGHT EAR | 49. ANTECUBITAL RIGHT | 61. FEMORAL VEIN LEFT |
| 2. RIGHT BUTTOCKS (GLUTEUS) | 14. LEFT LEG REAR | 26. ABDOMEN LOWER QUADRANT LEFT | 38. BOTH EARS | 50. ANTECUBITAL LEFT | 62. LOWER LEG RIGHT |

ROUTINE MEDICATION

| EFFECTIVE DATES | MEDICATION VITAL | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 03/26/2020 STOP 04/25/2020 RX 1524693 | **FASTING BLOOD GLUCOSE** Take/Perform ONCE DAILY (INS) WEEKLY ON DAY(S) MONDAY, THURSDAY - LEVIN, LEONARD - [MEDICAL] | 05:00 | | | WC 151 | | EW 248 | | | WC 143 | | | EW 306 | | | WC 188 | | | JKS 231 | | | | WC M | | | EW 153 | | | | | | |

| EFFECTIVE DATES | MEDICATION VITAL | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 02/07/2018 STOP 07/14/2020 RX 841179 | **WEIGHT** Take/Perform ONCE DAILY (VS) ON WEEK 2 WEDNESDAY OF EVERY MONTH - LEVIN, LEONARD - [MEDICAL] | 09:00 | | | | | | | | | | | | | AMB M | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Duloxetine 60mg DR Cap (KOP) | 12:00 | | | | | IC | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | QUANTITY GIVEN | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | DAYS TO LAST | | | | | IC 30 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | 16:30 | | | | | | | | | | | | | KL | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Duloxetine 60mg DR Cap (KOP) | QUANTITY GIVEN | | | | | | | | | | | | | KL 30 | | | | | | | | | | | | | | | | | | |
| | | DAYS TO LAST | | | | | | | | | | | | | KL 30 | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Gabapentin 100mg Capsule | 06:00 | LJ | LJ | VF | JKS | JKS | JKS | JKS | VF | VF | VF | JKS | JKS | JKS | M | WC | M | JKS | JKS | JKS | JKS | JKS | | | | | | | | | | |
| | | 18:30 | | KG | KL | KL | KL | LR | LR | AMB | AMB | LR | LR | ES | TH | KG1 | KG1 | M | IC | JR | IC | KL | LR | NB | NB | | | | | | | |
| | | 20:00 | M | | VF | VF | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME |
|---|---|---|---|---|---|---|---|---|---|
| AMB | BAEHR, ADRIENNE M | JKS | SELF, JOLENE KOEHN | KL | LANGFORD, KAYLA | TH | HETTINGER, TAMMY | | |
| ES | STEWART, ELLEN | JR | REED, JANETT | LJ | JENNELL, LORI | VF | FERRELL, VALATASHIA | | |
| EW | WARD, ERIN | KG | GUESS, KRISTEN | LR | ROSS, LATOYA | WC | COUSER, WALTER | | |
| IC | CAIN, IRIS | KG1 | GUESS, KRISTEN | NB | BOYD, NATISHA | | | | |

Diagnosis: Unspecified chronic bronchitis
Allergies: LITHIUM, VALPROIC ACID
Facility: HU2 HAYNESVILLE CORR CENTER
DOB: 08/08/1969    Gender M    Alt Num 3760801
HU2   A   38 B
LUCAS, CASEL FRANK - 1080673

Agency HAYNESVILLE CORR CENTER
SSN

May 2020
PAGE 8 OF 8



# Sapphire eMAR

**SYMBOL KEY:**
A: ABSENT
*: SEE NOTES
H: HELD
M: MISSED
R: REFUSED
N: NO SHOW
C: COMPLETED

**SITE KEY:**
1. ORAL
2. RIGHT BUTTOCKS (GLUTEUS)
3. LEFT BUTTOCKS (GLUTEUS)
4. RIGHT VENTRAL GLUTEUS
5. LEFT VENTRAL GLUTEUS
6. RIGHT THIGH (QUADRICEPS)
7. LEFT THIGH (QUADRICEPS)
8. RIGHT KNEE
9. LEFT KNEE
10. RIGHT ARM (DELTOID)
11. LEFT ARM (DELTOID)
12. RIGHT ARM (DELTOID) BACK
13. LEFT ARM (DELTOID) BACK
14. RIGHT LEG REAR
15. RIGHT LEG REAR
16. RIGHT ANTERIOR THIGH
17. LEFT ANTERIOR THIGH
18. LOWER BACK RIGHT
19. LOWER BACK LEFT
20. UPPER BACK RIGHT
21. UPPER BACK LEFT
22. UPPER CHEST RIGHT
23. UPPER CHEST LEFT
24. ABDOMEN UPPER QUADRANT RIGHT
25. ABDOMEN UPPER QUADRANT LEFT
26. ABDOMEN LOWER QUADRANT RIGHT
27. ABDOMEN LOWER QUADRANT LEFT
28. PIC LINE
29. MEDIPORT
30. RIGHT NARE
31. LEFT NARE
32. OTHER
33. RIGHT EYE
34. LEFT EYE
35. BOTH EYES
36. LEFT EAR
37. RIGHT EAR
38. BOTH EARS
39. BOTH NARES
40. RECTUM
41. JUGULAR RIGHT
42. JUGULAR LEFT
43. SUBCLAVIEN RIGHT
44. SUBCLAVIEN LEFT
45. DELTOID RIGHT
46. DELTOID LEFT
47. UPPER ARM RIGHT
48. UPPER ARM LEFT
49. ANTECUBITAL RIGHT
50. ANTECUBITAL LEFT
51. FOREARM RIGHT
52. FOREARM LEFT
53. WRIST RIGHT
54. WRIST LEFT
55. ABDOMEN
56. OUTER THIGH RIGHT
57. OUTER THIGH LEFT
58. VASTUS LATERAL RIGHT
59. VASTUS LATERAL LEFT
60. FEMORAL VEIN RIGHT
61. FEMORAL VEIN LEFT
62. LOWER LEG RIGHT
63. LOWER LEG LEFT
64. FOOT RIGHT
65. FOOT LEFT
66. TRICEP LEFT
67. TRICEP RIGHT
68. HAND LEFT
69. HAND RIGHT
70. DORSOGLUTEAL RIGHT
71. DORSOGLUTEAL LEFT
72. VENTROGLUTEAL RIGHT
73. VENTROGLUTEAL LEFT

## ROUTINE MEDICATION

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 02/06/2020 STOP 03/05/2020 RX 30779325 NA | **Visine Tears Drops – KOP** INSTILL 2 DROP(S) INTO EACH EYE TWICE DAILY AS NEEDED DRY EYES - LEVIN, LEONARD - [MEDICAL] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| START 03/11/2020 STOP 08/08/2020 RX 32644384 NA | **Visine Tears Drops – KOP** INSTILL 2 DROP(S) INTO EACH EYE TWICE DAILY AS NEEDED DRY EYES - LEVIN, LEONARD - [MEDICAL] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| START 04/04/2020 STOP 08/02/2020 RX 33112645 NA | **Xopenex HFA 45mcg Inhaler - KOP** SUB FOR: LEVALBUTEROL HCL INHALE 5 PUFF(S) ORALLY FOUR TIMES DAILY AS NEEDED FOR SOB VIA MICROCHAMBER - LEVIN, LEONARD - [MEDICAL] | 18:30 QUANTITY GIVEN DAYS TO LAST | | | | | | | | | | | | | | | | | | | | C L C | L I L 30 | | | | | | IC IC IC 30 | | | | |

## MEDICATION VITAL

| EFFECTIVE DATES | MEDICATION VITAL | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 02/07/2018 STOP 07/14/2020 RX 841577 | **BLOOD PRESSURE** Take/Perform ONCE DAILY (VS) ON WEEK 2 WEDNESDAY OF EVERY MONTH - LEVIN, LEONARD - [MEDICAL] | 09:00 | | | | | | | | | | | | | | | | | | AMB 140/90 | | | | | | | | | | | | | |
| START 05/15/2020 STOP 06/04/2020 RX 1570963 | **BLOOD PRESSURE** Take/Perform ONCE DAILY(NURSEFOLLOWUP) WEEKLY ON DAY(S) TUESDAY, THURSDAY - DURRANI, ADNAN - [MEDICAL] | 19:30 | | | | | | | | | | | | | | | | | | | | M | | M | | | | EW 90/64 | EW R | | | | |

| INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME |
|---|---|---|---|---|---|---|---|---|---|
| ANB | BAEHR, ADRIENNE H | JKS | SELF, JOLENE KOEHN | KL | LANGFORD, KAYLA | TH | HETTINGER, TAMMY | | |
| ES | STEWART, ELLEN | JR | REED, JANETT | LJ | JENNELL, LORI | VF | FERRELL, VALATASHIA | | |
| EW | WARD, ERIN | KG | GUESS, KRISTEN | LR | ROSS, LATOYA | WC | COUSER, WALTER | | |
| IC | CAIN, IRIS | KG1 | GUESS, KRISTEN | NB | BOYD, NATISHA | | | | |

Diagnosis: Unspecified chronic bronchitis
Allergies: LITHIUM, VALPROIC ACID
Facility: ID: HAYNESVILLE CORR CENTER
DOB: 08/08/1969     Gender: M     Alt Num: 3760801
HU2 - A - 38 B
LUCAS, CASEL FRANK - 1080673
Agency: HAYNESVILLE CORR CENTER
SSN:
May 2020
PAGE 7 OF 8

**Sapphire eMAR**

**SYMBOL KEY**
A: ABSENT
*: SEE NOTES
H: HELD
M: MISSED
R: REFUSED
N: NO SHOW
C: COMPLETED

**SITE KEY**
1. ORAL
2. RIGHT BUTTOCKS (GLUTEUS)
3. LEFT BUTTOCKS (GLUTEUS)
4. RIGHT VENTRAL GLUTEUS
5. LEFT VENTRAL GLUTEUS
6. RIGHT THIGH (QUADRICEPS)
7. LEFT THIGH (QUADRICEPS)
8. RIGHT KNEE
9. LEFT KNEE
10. RIGHT ARM (DELTOID)
11. LEFT ARM (DELTOID)
12. RIGHT ARM (DELTOID) BACK
13. LEFT ARM (DELTOID) BACK
14. RIGHT LEG REAR
15. LEFT LEG REAR
16. RIGHT ANTERIOR THIGH
17. LEFT ANTERIOR THIGH
18. LOWER BACK RIGHT
19. LOWER BACK LEFT
20. UPPER BACK LEFT
21. UPPER BACK RIGHT
22. UPPER CHEST LEFT
23. UPPER CHEST RIGHT
24. ABDOMEN UPPER QUADRANT RIGHT
25. ABDOMEN UPPER QUADRANT LEFT
26. ABDOMEN LOWER QUADRANT LEFT
27. PIC LINE
28. MEDIPORT
29. RIGHT NARE
30. RIGHT NARE
31. LEFT NARE
32. OTHER
33. RIGHT EYE
34. LEFT EYE
35. BOTH EYES
36. LEFT EAR
37. RIGHT EAR
38. BOTH EARS
39. BOTH NARES
40. RECTUM
41. JUGULAR RIGHT
42. JUGULAR LEFT
43. SUBCLAVIEN RIGHT
44. SUBCLAVIEN LEFT
45. DELTOID RIGHT
46. DELTOID LEFT
47. UPPER ARM RIGHT
48. UPPER ARM LEFT
49. ANTECUBITAL RIGHT
50. ANTECUBITAL LEFT
51. FOREARM RIGHT
52. FOREARM LEFT
53. WRIST RIGHT
54. WRIST LEFT
55. ABDOMEN
56. OUTER THIGH RIGHT
57. OUTER THIGH LEFT
58. VASTUS LATERAL RIGHT
59. VASTUS LATERAL LEFT
60. FEMORAL VEIN RIGHT
61. FEMORAL VEIN LEFT
62. LOWER LEG RIGHT
63. LOWER LEG LEFT
64. FOOT RIGHT
65. FOOT LEFT
66. TRICEP LEFT
67. TRICEP RIGHT
68. HAND LEFT
69. HAND RIGHT
70. DORSOGLUTEAL LEFT
71. DORSOGLUTEAL RIGHT
72. VENTROGLUTEAL LEFT
73. VENTROGLUTEAL RIGHT

## ROUTINE MEDICATION

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 09/10/2019 STOP 09/08/2020 RX 17066111 NA | Rosuvastatin 10mg Tablet – KOP SUB FOR: CRESTOR TAKE 1 TABLET(S) ORALLY AT BEDTIME – LEVIN, LEONARD - [MEDICAL] | 18:30 / QUANTITY GIVEN / DAYS TO LAST | | | | | | | | | | | | | | | | | | | | | | IC / IC 30 / IC 30 | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 04/13/2020 STOP 05/13/2020 RX 32186862 NA | Senna PLUS Tablet – KOP SUB FOR: SENOKOT S TAKE 2 TABLET(S) ORALLY ONCE DAILY AS NEEDED CONSTIPATION – LEVIN, LEONARD - [MEDICAL] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 05/04/2020 STOP 06/03/2020 RX 33550449 NA | Senna PLUS Tablet – KOP SUB FOR: SENOKOT S TAKE 2 TABLET(S) ORALLY ONCE DAILY AS NEEDED CONSTIPATION – NIXON, MARIAMA - [MEDICAL] | 16:30 / QUANTITY GIVEN / DAYS TO LAST | | | | | | | | | | | | | | KL / KL 60 / KL 30 | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 09/10/2019 STOP 09/08/2020 RX 17063117 NA | Tamsulosin 0.4mg Capsule – KOP SUB FOR: FLOMAX TAKE 1 CAPSULE(S) ORALLY ONCE DAILY – LEVIN, LEONARD - [MEDICAL] | 12:00 / QUANTITY GIVEN / DAYS TO LAST | | | | IC / IC 30 / IC 30 | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 03/11/2020 STOP 07/08/2020 RX 31608326 NA | TraZODone 50mg Tablet – KOP SUB FOR: DESYREL TAKE 1 TABLET(S) ORALLY AT BEDTIME – LEAHY, JUSTIN - [PSYCH] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME |
|---|---|---|---|---|---|---|---|---|---|
| AMB | BAEHR, ADRIENNE M | JKS | SELF, JOLENE KOEHN | KL | LANGFORD, KAYLA | TH | HETTINGER, TAMMY | | |
| ES | STEWART, ELLEN | JR | REED, JANETT | LJ | JENNELL, LORI | VF | FERRELL, VALATASHIA | | |
| EW | WARD, ERIN | KG | GUESS, KRISTEN | LR | ROSS, LATOYA | WC | COUSER, WALTER | | |
| IC | CAIN, IRIS | KG1 | GUESS, KRISTEN | NB | BOYD, NATISHA | | | | |

Diagnosis   Unspecified chronic bronchitis
Allergies   LITHIUM, VALPROIC ACID
Facility   HJ HAYNESVILLE CORR CENTER

DOB   08/06/1969   Gender M
Alt Num 3760801

Agency HAYNESVILLE CORR CENTER
SSN

HU2 - A - 38-B
LUCAS, CASEL FRANK - 1080673

May 2020

**Sapphire eMAR**

SYMBOL KEY
A: ABSENT
*: SEE NOTES
H: HELD
M: MISSED
R: REFUSED
N: NO SHOW
C: COMPLETED

SITE KEY
1. RIGHT BUTTOCKS (GLUTEUS)
2. LEFT BUTTOCKS (GLUTEUS)
3. RIGHT VENTRAL GLUTEUS
4. LEFT VENTRAL GLUTEUS
5. RIGHT THIGH (QUADRICEPS)
6. LEFT THIGH (QUADRICEPS)
7. RIGHT KNEE
8. LEFT KNEE
9. RIGHT ARM (DELTOID)
10. LEFT ARM (DELTOID)
11. RIGHT ARM (DELTOID) BACK
12. LEFT ARM (DELTOID) BACK
13. RIGHT LEG REAR
14. LEFT LEG REAR
15. RIGHT ANTERIOR THIGH
16. LEFT ANTERIOR THIGH
17. LOWER BACK LEFT
18. LOWER BACK RIGHT
19. UPPER BACK LEFT
20. UPPER BACK RIGHT
21. UPPER CHEST LEFT
22. UPPER CHEST RIGHT
23. ABDOMEN UPPER QUADRANT RIGHT
24. ABDOMEN UPPER QUADRANT LEFT
25. ABDOMEN LOWER QUADRANT RIGHT
26. ABDOMEN LOWER QUADRANT LEFT
27. PIC LINE
28. MEDIPORT
29. RIGHT NARE
30. LEFT NARE
31. OTHER
32. RIGHT EYE
33. LEFT EYE
34. BOTH EYES
35. LEFT EAR
36. RIGHT EAR
37. BOTH EARS
38. UPPER NAILS
39. RECTUM
40. JUGULAR RIGHT
41. JUGULAR LEFT
42. SUBCLAVIEN RIGHT
43. SUBCLAVIEN LEFT
44. DELTOID RIGHT
45. DELTOID LEFT
46. UPPER ARM RIGHT
47. UPPER ARM LEFT
48. ANTECUBITAL RIGHT
49. ANTECUBITAL LEFT
50. FOREARM RIGHT
51. FOREARM LEFT
52. WRIST RIGHT
53. WRIST LEFT
54. ABDOMEN
55. OUTER THIGH RIGHT
56. OUTER THIGH LEFT
57. VASTUS LATERAL RIGHT
58. VASTUS LATERAL LEFT
59. FEMORAL VEIN RIGHT
60. LOWER LEG RIGHT
61. FEMORAL VEIN LEFT
62. LOWER LEG LEFT
63. FOOT RIGHT
64. FOOT LEFT
65. TRICEP LEFT
66. TRICEP RIGHT
67. HAND LEFT
68. HAND RIGHT
69. DORSOGLUTEAL RIGHT
70. DORSOGLUTEAL LEFT
71. VENTROGLUTEAL RIGHT
72. VENTROGLUTEAL LEFT
73. VENTROGLUTEAL RIGHT

## ROUTINE MEDICATION

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 02/05/2020 STOP 08/03/2020 RX 30702425 NA | **Montelukast 10mg Tablet – KOP** SUB FOR: SINGULAIR CONT'D HENGLER, KELLY - [MEDICAL] | QUANTITY GIVEN / DAYS TO LAST | | | | | | | | | | | | | | | | | | | | | | IC 30 | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 02/05/2020 STOP 08/03/2020 RX 30701660 NA | **Omeprazole 20mg Capsule – KOP** SUB FOR: PRILOSEC TAKE 1 CAPSULE(S) ORALLY ONCE DAILY - [***REEVAL GERD AFTER 6MO***] HENGLER, KELLY - [MEDICAL] | 18:30 / QUANTITY GIVEN / DAYS TO LAST | | | | | | | | | | | | | | | | | | | | | | KL / KL 30 / KL 30 | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 01/10/2020 STOP 07/07/2020 RX 30934611 NA | **Oxybutynin 5mg Tablet – KOP** SUB FOR: DITROPAN TAKE 1 TABLET(S) ORALLY THREE TIMES DAILY - LEVIN, LEONARD - [MEDICAL] | 12:00 / QUANTITY GIVEN / DAYS TO LAST / 18:30 | | | | IC / IC 30 / IC 30 | | | | | | | | | | | | | | | | | | | | | | | IC | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 01/10/2020 STOP 07/07/2020 RX 30934611 NA | **Oxybutynin 5mg Tablet – KOP** SUB FOR: DITROPAN CONT'D LEVIN, LEONARD - [MEDICAL] | QUANTITY GIVEN / DAYS TO LAST | | | | | | | | | | | | | | | | | | | | | | | | | | | | | IC 30 | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 03/25/2020 STOP 06/22/2020 RX 31434400 NA | **Oyst-Cal +D 500mg Tab – KOP** SUB FOR: OS CAL+D TAKE 1 TABLET(S) ORALLY ONCE DAILY - DURRANI, ADNAN - [MEDICAL] | 18:30 / QUANTITY GIVEN / DAYS TO LAST | | | | | | | | | | | | | | | | | | | | | | IC / IC 30 / IC 30 | | | | | | | | | | |

| INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME |
|---|---|---|---|---|---|---|---|---|---|
| AMB | BAEHR, ADRIENNE M | JKS | SELF, JOLENE KOEHN | KL | LANGFORD, KAYLA | TH | HETTINGER, TAMMY | | |
| ES | STEWART, ELLEN | JR | REED, JANETT | LJ | JENNELL, LORI | VF | FERRELL, VALATASHIA | | |
| EW | WARD, ERIN | KG | GUESS, KRISTEN | LR | ROSS, LATOYA | WC | COUSER, WALTER | | |
| IC | CAIN, IRIS | KG1 | GUESS, KRISTEN | NB | BUYU, NATISHA | | | | |

Diagnosis: Unspecified chronic bronchitis
Allergies: LITHIUM, VALPROIC ACID
Facility: HU2 HAYNESVILLE CORR CENTER
DOB: 08/08/1969    Gender: M    Alt Num 3760801
HU2 - A - 38-B
LUCAS, CASEL FRANK - 1080673

Agency: HAYNESVILLE CORR CENTER
SSN:

May 2020
PAGE 5 OF 8

JUL 20 2020
Ombudsman Unit
Eastern Region





**PRN/OTC MEDICATION
ADMINISTRATION RECORD**

No records match the criteria you□_Tve selected.

Diagnosis:   Unspecified chronic bronchitis
Allergies:   LITHIUM, VALPROIC ACID
Facility     U.S. RAYNESVILLE CORR CENTER         Agency RAYNESVILLE CORR CENTER
DOB:         09/08/1969       Gender M        Alt Num 3760801       SSN
HU2- A-—-38-B
LUCAS, CASEL FRANK - 1080673                                      PAGE 1 OF 1

| RX NUMBER | DRUG/VITAL | MP DATE | RESULT DATE | ACTION | USER | INJ SITE | REASON | NOTES |
|---|---|---|---|---|---|---|---|---|
| 841179 | WEIGHT | 5/13/2020 9:00 AM | 5/12/2020 4:34 PM | HOLD | BAEHR, ADRIENNE M | | UNABLE TO ASSESS | |
| 1570063 | BLOOD PRESSURE | 5/28/2020 7:30 PM | 5/29/2020 4:47 AM | REFUSAL | WARD, ERIN | | REFUSED DOSE*NO REASON NOTED | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

JUL 20 2020

# Sapphire eMAR

**SYMBOL KEY:**
A: ABSENT
*: SEE NOTES
H: HELD
M: MISSED
R: REFUSED
N: NO SHOW
C: COMPLETED

**SITES:**

| | |
|---|---|
| 1. SKULL | 13. LEFT ARM (DELTOID) BACK |
| 2. RIGHT BUTTOCKS (GLUTEUS) | 14. LEFT LEG FRONT |
| 3. LEFT BUTTOCKS (GLUTEUS) | 15. RIGHT LEG REAR |
| 4. RIGHT VENTRAL GLUTEUS | 16. RIGHT ANTERIOR THIGH |
| 5. LEFT VENTRAL GLUTEUS | 17. LEFT ANTERIOR THIGH |
| 6. RIGHT THIGH (QUADRICEPS) | 18. LOWER BACK LEFT |
| 7. LEFT THIGH (QUADRICEPS) | 19. LOWER BACK RIGHT |
| 8. RIGHT KNEE | 20. UPPER BACK LEFT |
| 9. LEFT KNEE | 21. UPPER BACK RIGHT |
| 10. RIGHT ARM (DELTOID) | 22. UPPER CHEST LEFT |
| 11. LEFT ARM (DELTOID) | 23. UPPER CHEST RIGHT |
| 12. RIGHT ARM (DELTOID) BACK | 24. ABDOMEN UPPER QUADRANT RIGHT |
| 25. ABDOMEN UPPER QUADRANT LEFT | 37. RIGHT EAR |
| 26. ABDOMEN LOWER QUADRANT RIGHT | 38. BOTH EARS |
| 27. ABDOMEN LOWER QUADRANT LEFT | 39. BOTH NARES |
| 28. PIC LINE | 40. RECTUM |
| 29. MEDIPORT | 41. JUGULAR RIGHT |
| 30. RIGHT NARE | 42. JUGULAR LEFT |
| 31. LEFT NARE | 43. SUBCLAVIEN RIGHT |
| 32. OTHER | 44. SUBCLAVIEN LEFT |
| 33. RIGHT EYE | 45. DELTOID RIGHT |
| 34. LEFT EYE | 46. DELTOID LEFT |
| 35. BOTH EYES | 47. UPPER ARM RIGHT |
| 36. LEFT EAR | 48. UPPER ARM LEFT |
| 49. ANTECUBITAL RIGHT | 61. FEMORAL VEIN LEFT |
| 50. ANTECUBITAL LEFT | 62. LOWER LEG RIGHT |
| 51. FOREARM RIGHT | 63. LOWER LEG LEFT |
| 52. FOREARM LEFT | 64. FOOT RIGHT |
| 53. WRIST RIGHT | 65. FOOT LEFT |
| 54. WRIST LEFT | 66. TRICEP RIGHT |
| 55. ABDOMEN | 67. TRICEP LEFT |
| 56. OUTER THIGH RIGHT | 68. HAND RIGHT |
| 57. OUTER THIGH LEFT | 69. HAND LEFT |
| 58. VASTUS LATERAL RIGHT | 70. DORSOGLUTEAL LEFT |
| 59. VASTUS LATERAL LEFT | 71. DORSOGLUTEAL RIGHT |
| 60. FEMORAL VEIN RIGHT | 72. VENTROGLUTEAL LEFT |
| | 73. VENTROGLUTEAL RIGHT |

## ROUTINE MEDICATION

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 02/06/2020 STOP 05/08/2020 RX 30778573 NA | **D-Cerin Cream - KOP** SUB FOR: HYDROCERIN | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | APPLY CREAM TOPICALLY TWICE DAILY - LEVIN, LEONARD - [MEDICAL] | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 05/13/2020 STOP 08/09/2020 RX 32640100 NA | **D-Cerin Cream - KOP** SUB FOR: HYDROCERIN | 11:00 | | | | | | | | | | | | | | | | | | | | | | | | | | KG | | | | | |
| | APPLY CREAM TOPICALLY TWICE DAILY - | QUANTITY GIVEN | | | | | | | | | | | | | | | | | | | | | | | | | | KG 1 | | | | | |
| | | DAYS TO LAST | | | | | | | | | | | | | | | | | | | | | | | | | | KG 30 | | | | | |
| | DURRANI, ADNAN - [MEDICAL] | 16:30 | | | | | | | | | | | | | | | | KL | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 05/13/2020 STOP 08/09/2020 RX 32640106 NA | **D-Cerin Cream - KOP** SUB FOR: HYDROCERIN CONT'D | QUANTITY GIVEN | | | | | | | | | | | | | | | | KL 1 | | | | | | | | | | | | | | | |
| | DURRANI, ADNAN - [MEDICAL] | DAYS TO LAST | | | | | | | | | | | | | | | | KL 30 | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 02/21/2020 STOP 05/20/2020 RX 31095334 NA | **Diclofenac Sod 1% Gel - KOP** SUB FOR: VOLTAREN *NF EXP 05/18/2020* - APPLY 4 G OF 1% GEL TO AFFECTED AREA 4 TIMES DAILY (MAXIMUM: 16 G PER JOINT PER DAY) - DURRANI, ADNAN - [MEDICAL] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| EFFECTIVE DATES | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START 03/29/2020 STOP 11/24/2020 RX 32932540 NA | **Duloxetine 60mg DR Cap - KOP** SUB FOR: CYMBALTA TAKE 1 CAPSULE(S) ORALLY ONCE DAILY - LEVIN, LEONARD - [MEDICAL] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME |
|---|---|---|---|---|---|---|---|---|---|
| AMB | BAEHR, ADRIENNE M | JKS | SELF, JOLENE KOEHN | KL | LANGFORD, KAYLA | TH | HETTINGER, TAMMY | | |
| ES | STEWART, ELLEN | JR | REED, JANETT | LJ | JENNELL, LORI | VF | FERRELL, VALATASHIA | | |
| EW | WARD, ERIN | KG | GUESS, KRISTEN | LR | ROSS, LATOYA | WC | COUSER, WALTER | | |
| IC | CAIN, IRIS | KG1 | GUESS, KRISTEN | NB | BOYD, NATISHA | | | | |

**Diagnosis:** Unspecified chronic bronchitis

**Allergies:** LITHIUM, VALPROIC ACID

**Facility:** HU2 HAYNESVILLE CORR CENTER

**Agency:** HAYNESVILLE CORR CENTER

**DOB:** 08/08/1969   **Gender** M   **Alt Num** 3760801   **SSN**

**HU2 - A - -38-B**

**LUCAS, CASEL FRANK - 1080673**

**May 2020**

## Sapphire eMAR

**SYMBOL KEY:**
A: ABSENT
*: SEE NOTES
H: HELD
M: MISSED
R: REFUSED
N: NO SHOW
C: COMPLETED

**SITE KEY:**
1. LEFT ARM (DELTOID) BACK
2. RIGHT BUTTOCKS (GLUTEUS)
3. LEFT BUTTOCKS (GLUTEUS)
4. RIGHT VENTRAL GLUTEUS
5. LEFT VENTRAL GLUTEUS
6. RIGHT THIGH (QUADRICEPS)
7. LEFT THIGH (QUADRICEPS)
8. RIGHT KNEE
9. LEFT KNEE
10. RIGHT ARM (DELTOID)
11. LEFT ARM (DELTOID)
12. RIGHT ARM (DELTOID) BACK
13. LEFT ARM (DELTOID) BACK
14. RIGHT LEG FRONT
15. RIGHT LEG REAR
16. RIGHT ANTERIOR THIGH
17. LEFT ANTERIOR THIGH
18. LOWER BACK LEFT
19. LOWER BACK RIGHT
20. UPPER BACK LEFT
21. UPPER BACK RIGHT
22. UPPER CHEST LEFT
23. UPPER CHEST RIGHT
24. ABDOMEN UPPER QUADRANT RIGHT
25. ABDOMEN UPPER QUADRANT LEFT
26. ABDOMEN LOWER QUADRANT RIGHT
27. ABDOMEN LOWER QUADRANT LEFT
28. PIC LINE
29. MEDIPORT
30. RIGHT NARE
31. LEFT NARE
32. OTHER
33. RIGHT EYE
34. LEFT EYE
35. BOTH EYES
36. LEFT EAR
37. RIGHT EAR
38. BOTH EARS
39. BOTH NARES
40. RECTUM
41. JUGULAR RIGHT
42. JUGULAR LEFT
43. SUBCLAVIEN RIGHT
44. SUBCLAVIEN LEFT
45. DELTOID RIGHT
46. DELTOID LEFT
47. UPPER ARM RIGHT
48. UPPER ARM LEFT
49. ANTECUBITAL RIGHT
50. ANTECUBITAL LEFT
51. FOREARM RIGHT
52. FOREARM LEFT
53. WRIST RIGHT
54. WRIST LEFT
55. ABDOMEN
56. OUTER THIGH RIGHT
57. OUTER THIGH LEFT
58. VASTUS LATERAL RIGHT
59. VASTUS LATERAL LEFT
60. FEMORAL VEIN RIGHT
61. FEMORAL VEIN LEFT
62. LOWER LEG RIGHT
63. LOWER LEG LEFT
64. FOOT RIGHT
65. FOOT LEFT
66. TRICEP RIGHT
67. TRICEP LEFT
68. HAND LEFT
69. HAND RIGHT
70. DORSOGLUTEAL RIGHT
71. DORSOGLUTEAL LEFT
72. VENTROGLUTEAL RIGHT
73. VENTROGLUTEAL LEFT

## ROUTINE MEDICATION

| | MEDICATION | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **START** 03/18/2020 **STOP** 06/13/2020 **RX** 31724821 **NA** | **Advair HFA 45/21 Aer – KOP** SUB FOR: ADVAIR HFA *NF EXP 06/13/2020* - INHALE 1 PUFF(S) ORALLY TWICE DAILY - DURRANI, ADNAN - [MEDICAL] | 18:30 QUANTITY GIVEN DAYS TO LAST | | | | | | | | | | | | | | | | | | | | U / U / U 30 | | | | | | | | | | | |
| **START** 03/07/2020 **STOP** 08/04/2020 **RX** 30766422 **NA** | **amLODIPine 10mg Tablet – KOP** SUB FOR: NORVASC TAKE 1 TABLET(S) ORALLY ONCE DAILY - DURRANI, ADNAN - [MEDICAL] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **START** 03/02/2020 **STOP** 08/12/2020 **RX** 31318037 **NA** | **Atenolol 50mg Tablet – KOP** SUB FOR: TENORMIN TAKE 1 TABLET(S) ORALLY TWICE DAILY - LEVIN, LEONARD - [MEDICAL] | NON_SCHEDULED | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| **START** 04/08/2020 **STOP** 08/04/2020 **RX** 31126784 **NA** | **Atrovent HFA Inhaler – KOP** SUB FOR: IPRATROPIUM BROMIDE HFA *NF EXP 08/02/2020* - INHALE 2 PUFF(S) ORALLY FOUR TIMES DAILY AS NEEDED FOR SOB VIA MICROCHAMBER - LEVIN, LEONARD - [MEDICAL] | 18:30 QUANTITY GIVEN DAYS TO LAST | | | | | | | | | | | | | | | | | | | | U / U 1 / U 30 | | | | | | | | | | | |
| **START** 03/04/2020 **STOP** 06/01/2020 **RX** 31424423 **NA** | **Biotene Moist. Mouth Spr – KOP** SPRAY 2 SPRAY(S) ORALLY ONCE DAILY AS NEEDED DRY MOUTH - DURRANI, ADNAN - [MEDICAL] | 18:30 QUANTITY GIVEN DAYS TO LAST | | | | | | | | | | | | | | | | | | | | U / U 1 / U 15 | | | | | | | | | | | |

| INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME | INIT | FULL NAME |
|---|---|---|---|---|---|---|---|---|---|
| AMB | BAEHR, ADRIENNE M | JKS | SELF, JOLENE KOEHN | KL | LANGFORD, KAYLA | TH | HETTINGER, TAMMY | | |
| ES | STEWART, ELLEN | JR | REED, JANETT | LJ | JENNELL, LORI | VF | FERRELL, VALATASHIA | | |
| EW | WARD, ERIN | KG | GUESS, KRISTEN | LR | ROSS, LATOYA | WC | COUSER, WALTER | | |
| IC | CAIN, IRIS | KG1 | GUESS, KRISTEN | NB | BOYD, NATISHA | | | | |

**Diagnosis:**
**Allergies:** LITHIUM, VALPROIC ACID
**Facility:** HI-HAYNESVILLE CORR CENTER
**DOB:** 08/08/1969   **Gender** M
**HU?– A     38-B**
**LUCAS, CASEL FRANK - 1080673**

Alt Num 3760801

Agency HAYNESVILLE CORR CENTER
SSN




**May 2020**
**PAGE 1 OF 8**

CARSEL F. LUCUS 228398166
Court of Veterans Appeals Remand 18-5157
BVA Docket NO: 13-22-962

# TABLE of Contents of EXHIBIT's

| | |
|---|---|
| 1. | PTSD Re Examination |
| 2. | Mental Health Rating Schedule |
| 3. | Roanoke Regional Office Concede To PTSD STRESSOR |
| 4. | McGuire P.TSD Exam DR. Bunch March 2011 *also Medical Discharge Assessment* |
| 5. | U.S. Airforce Mental HEALTH Hospital Records |
| 6. | DR. Bundren McGuire PTSD Examiner Mental Exam functioning |
| 7. | Incomplete Mental Health Records. |
| 8. | U.S. ARMY Health Assessment *Before Deployment During Deployment After Deployments* |
| 9. | STD History Treatments / Genitourinary Patterns |
| 10. | Mental Health Exhibit of Stressors Not Included by VA Roanoke |
| 11. | Lower Back Injury 9 Dec. 1991 (14 Days Before Mental Break Down) |
| 12. | Recurrent Upper Respiratory Infections Chronic Bronchitst |
| 13. | Genitourinary VCU Urology Specialist |
| 14. | Support Documents of Long Term Continuwity of Symtamology. |
| 15. | Records from Veterans Hospital Washington, DC *10 March 1998* |
| 16. | ETS Dental Exam & 3B U.S.C.S. 1154(b) Violation |
| 17. | My Military Service Treatment Records Removed from facility. |
| 18. | Medication Chart of All Treatment for All Injuries |



# *COMMONWEALTH OF VIRGINIA*
*Department of Corrections*
*Division of Operations*
*Eastern Region*

Gregory L. Holloway
Regional Operations Chief

14545 Old Belfield Rd
Capron, VA 23829
(434) 658-4368

July 22, 2020

C. Lucas 1080673
Haynesville Correctional Center
PO Box 129
Haynesville, Virginia 22472

Dear C. Lucas:

This letter comes to advise you that your appeal package to Grievance Log # HCC-20-REG-00046 has been forwarded to the Office of Health Services in Richmond, Virginia for review and response. Operating Procedure 866.1, Offender Grievance Procedure, states that grievances relating to medical, dental, and mental health care are reviewed and responded to by the Director of Health Services.

The response time limit will commence upon their receipt of your appeal package. However, it was noted that accurate appeal instructions were not given to you by institutional staff. The receipt of your appeal package by Health Services will be at their discretion.

Sincerely,

K. Cosby, Regional Ombudsman
Eastern Regional Office

/kwc

cc:     Office of Health Services *w/original attachments*
        File



VIRGINIA DEPARTMENT OF CORRECTIONS   866.1 A-6

**FILE COPY**

**Offender Grievance Response - Level I**

DOC Location: HCC Haynesville Correctional Center
Report generated by Brown, R T
Report run on 07/08/2020 at 03:49 PM

| Offender Name | DOC# | Location | Grievance Number |
|---|---|---|---|
| Lucas, Casel F | 1080673 | **Current** Haynesville Correctional Center | HCC-20-REG-00046 |
| **Housing** | | **Filed** Haynesville Correctional Center | |
| HU2-A-38-B | | | |

**LEVEL I:    WARDEN/SUPERINTENDENT'S RESPONSE** (To be completed and mailed within 30 calendar days)

In your grievance, you state that you wanted to go to Medical for a breathing treatment and C/O Barnes violated HIPPA rules when he did not allow you to see the Nurses.

As a result of the grievance, you would like appropriate action taken against C/O Barnes.

The results of the informal process reveal Lt. R. Radabaugh responded to Informal Complaint #HCC-20-INF-00585 on May 1, 2020, stating "Medical had other offenders from another building at that time."

An investigation into your complaint indicates after Lt. R. Radabaugh interviewed C/O Barnes, it was revealed that there were other offenders from different housing units in Medical for triage. Due to the pandemic, C/O Barnes could not have offenders from different housing units in Medical.

Your grievance is govern by policy restricted to offender access.

After thoroughly reviewing the information presented to staff in response to your complaint and the policy governing the issue, I find your grievance to be UNFOUNDED as the statements contained within are unsubstantiated.

If you are dissatisfied with the Level I response, you may appeal within 5 calendar days to:
Regional Admin. 14545 Old Belfield Road, Capron, VA 23829

RECEIVED JUL 20 2020 Ombudsman Unit Eastern Region

Warden/Superintendent   T. HICKS, Warden    Date 7-10-2020

I wish to appeal the Level I response because:

This is absolutely false. Lt. Radabaugh, Ombudsman Ms. Parson, Never Interviewed Lt. Dobyns, Also Ms. Davis, And C/o Wright. C/O Barns has lied. He specifically told Ms. Davis c/o that he was to busy and so are the nurses. He said the same thing to Lt. Dobyns. He violated the DOP 801.3 namely Offenders with Disabilities pg 6, 2(A) Under No Circumstance will a Non-Health Care work Substitute, their judgment in place of the Health Care Provider. C/O Barns Never asked A Nurse or Doctor. He did this on his own. He has Abused Me An Offender with Disabilities by making Me struggle

Offender Signature Casel F. Lucas 1080673    Date 14 July 2020

for 2 days to Breath Because he was to busy. He put My life in Extreme Danger. He also violated the DOP 801.3 He also Also Violated the following Laws State & Federal Americans with Disabilities Act of 1990 so Amended (42 U.S.C. § 12101) Virginian with Disabilities Act (COV. § 51.5-1 et Seq.)

Page 1 of 1    Rev. 05/31/2007

I AM A Geriatric Disabled Combat Veteran with Service Connected Disabilities, over

For 2 days Denying Me My treatment.

Then He tried to intimidate Me by taking the Emergency Grievance and gave it back to Me Un-Answered.

I Am being abused More by the Staff taking C/O Brown and Protecting Him and His Crimes.

He Abused Me A CDD Man

He abused Me. A Disabled Combat Veteran.

By Making A Decision On His own Not asking

The Medical Staff Can i Get the Breathing treatment

The Policy is right Here K. Cosby. DO Your Job

Interview C/o MS. Davis Warderwoman

Interview Lt. Dobyns 2A Supervisor

Interview ~~T/office~~ Nurse Wright

This Man abused me and tortured Me for 2 days Denying Me My Medically Prescribe Breathing treatments That I Get A Service Connected Disability from the U.S. Army Veterans Affairs. I will go to the Media. i will not Allow this To Continue. it is never a Hard Choice To Make When You Choose To Do The Right Thing Which is the Right Choice The Easy Choice.

Do the Interviews to Lt. Dobyns, C/o MS. Davis, T/o Wright.

Ask MS. Brown the Chairmen Why She Never Questioned or Televiewed These Staff Members.

I Was Right. I DID not Get this on 5 July 2020 The Warden Redid

Signe it Until 13 July 2020 And I DiDn't Get it Until Now 14 July 2020

VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866_F1_4-17

## REGULAR GRIEVANCE

Log Number: HCC-20-REG 00046

| CABEL F. LUCAS | 1080673 | 2 | A | 2-A-30-B |
|---|---|---|---|---|
| Name, First | Number | Building | | Cell/Bed Number |
| C/o BARNS | 13 April 2020 | 1515 Hrs | | |
| iduals Involved in Incident | Date/ Time of Incident | | | |
| Names: H. Dobyns, Gems Davis, Treatment Officer Wright. | | | | |

T IS YOUR COMPLAINT?  (Provide information from the informal process:  Attach Informal Complaint response or documentation of informal process.)  This Grievance was legitimate. Yet Was not Responded to on Time 4/29/2020. What you Have Done is not by Policy You Violate the DOP 866 Procedures C/o BARNS The Officer of Medical Violated the Hippa Law. I Requested my Breathing Treatment. C/o BARNS Flat out Denied me this Wrote" I'm too Busy & So Are the NURSES. HE Repeated This To Officer Ms. DAVIS & Lt. Dobyns & Treatment Officer Wright. AT NO Time DiD He Say To Any of these officer that their Were inmates from other Building He Did Not ask the Nurses or Doctors about getting the Treatment. I Waited 2 Hours & Filed an Emergency Grievance NURSE ReiD, Nurse Lankford, NURSE Stuard Was there that Day Nurse ReiD asked Me About the Emerging Grievance & I Said Process it Officer Barns Came to the Back of Medical & gave it Back to Me SAID you Here was Do what you want with it.

t action do you want taken? (1) No Officer Can Determine My Treatment Or Another Inmate. Medical Staff is only Able to Do this Hippa Law. This Need to Never Happen Again. I Could Have Died because my RESCUE Inhalers WERE Not Helping Me. C/o BARNS Needs to be Suspended 15 DAys And Disqualified From Working Medical Again.

vant's Signature: Carol F. Lucas   RECEIVED   Date: 7 May 2020

MAY - 8 2020

den/Superintendent's Office:

Received: _____   By: GRIEVANCE OFFICE

JUL 20 2020
Ombudsman Unit



VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866 F1_4-1

**INSTRUCTIONS FOR FILING:** You are required per Operating Procedure 866.1 *Offender Grievance Procedure* to attempt to resolve your complaint in good faith prior to filing a regular grievance. You must submit your grievance within 30 days from the date of occurrence or discovery of incident. Only one issue per grievance will be addressed. Write your issue only in the space provided on the grievance form, preferably in ink. Regular grievances are submitted through the institutional mail to the facility Grievance Office and a receipt issued within 2 working days from received date if the grievance is not returned during intake.

**INTAKE:** Grievances should be accepted for logging unless returned for the following reason(s):

| | |
|---|---|
| ☐ | **Non-Grievable.** This issue has been defined as non-grievable in accordance with Operating Procedure 866.1.<br>☐ Disciplinary Procedure. You may appeal hearing decisions, penalties, and/or procedural errors under the provisions in Operating Procedure 861.1, *Offender Discipline*.<br>☐ Matters beyond the control of the Department of Corrections |
| ☐ | **Does not affect you personally** (This issue did not cause you personal loss or harm) |
| ☐ | **Limited.** You have been limited by the Warden/Superintendent |
| ☐ | **More than one issue** – resubmit with only one issue |
| ☐ | **Expired Filing Period.** Grievances are to be filed within 30 calendar days from date of occurrence/incident, or discovery of the occurrence/incident except in instances: 1) beyond the offender's control or, 2) where a more restrictive time frame has been established in Operating Procedures to prevent loss of remedy or the issue from becoming moot. |
| ☐ | **Repetitive.** This issue has been grieved previously in Grievance # |
| ☐ | **Inquiry** on behalf of other offenders. |
| ☐ | **Group Complaints or Petitions.** Grievances are to be submitted by individuals. |
| ☐ | **Vulgar/Insolent or Threatening Language.** YOU MAY BE CHARGED IN ACCORDANCE WITH OPERATING PROCEDURE 861.1 *OFFENDER DISCIPLINE* |
| ☐ | **Photocopy/Carbon Copy.** You must submit the original grievance for responses and appeals. |
| ☐ | **Grievances Filed Regarding Another Institution.** This grievance is being returned to you for you to submit to: |
| ☐ | **Informal Procedure.** You have not used the informal process to <u>resolve</u> your complaint |
| ☐ | **Request for services** |
| ☐ | **Insufficient Information** (Not to include Medical). You need to provide the following information to the Grievance Office within 5 days before the grievance can be processed: |
| ☐ | The issue in the grievance is different from the issue in the informal complaint |

Institutional Ombudsman/Grievance Coordinator:

Date:

If you disagree with this decision, you have 5 calendar days from date of receipt to submit to the Regional Ombudsman for a review of the intake decision. The Regional Ombudsman's decision is final.

Regional Review of Intake (within 5 working days of receipt)

| | |
|---|---|
| ☐ | The intake decision is being upheld in accordance with Operating Procedure 866.1 *Offender Grievance Procedure*. |
| ☐ | The intake decision is being returned to you because the 5 day time limit for review has been exceeded. |
| ☐ | The grievance meets the criteria for intake and is being returned to the Warden/Superintendent for logging. |

Regional Ombudsman:

Date:

**WITHDRAWAL OF GRIEVANCE:** I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance, there will be no further action on this issue nor will I be able to file any other grievance in the future on this issue.

Offender Signature: _____

Staff Witness: _____                                              Date: _____

Date: _____



VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| Casel F. Lucas | 1080673 | 2 A-38-B |
|---|---|---|
| Offender Name | Offender Number | Housing Assignment |

| C/O Barns Medical Officer | 13 April 2020 1515 Hrs |
|---|---|
| Individuals Involved in Incident | Date/ Time of Incident |

- [ ] Unit Manager/Supervisor
- [ ] Personal Property
- [ ] Medical Administrator
- [ ] Food Service
- [ ] Commissary
- [x] Other (Please Specify): C/O Burns Violated The HIPPA Law When I Requested A Breathing Treatment.
- [ ] Institutional Program Manager
- [ ] Mailroom

Briefly explain the nature of your complaint (be specific): On 13 April 2020 at 1515 Hrs, I Requested To See Medical for A Breathing Treatment. C/o Ms. Davis called Medical and was told by C/o Burns He was Busy & to close all of the Nurses. Ms. Davis Told Lt Dobyns his cell C/o Burns and was told the same thing. I was Sent by Ms. Davis and when I got to Medical I was Banging on the Door for 10 minutes Officer Burns Did not Come to the Door. Ms. Noel Property Officer Called him Still No Answer. I returned to the Build. My Breathing Treatment is Protected Under HIPPA Law. Security Cannot Dictate my treatment. Nor Deny Me. That's between Me And My Doctor.

| Offender Signature Casel F. Lucas | 1080673 | Date 13 April 2020 |
|---|---|---|

### Offenders - Do Not Write Below This Line

| Date Received: 4-14-2020 | Tracking # HCC-20-INF-00585 |
|---|---|
| Response Due: 4-29-2020 | Assigned to: Capt White LT Radabaugh |

Action Taken/Response:

Medical had other offenders from another building at that time.

RECEIVED
MAY -8 2020
By: GRIEVANCE OFFICE

RECEIVED
JUL 20 2020
[stamp]

| Lt. Radab [signature] | Lt Radabaugh | 5-1-2020 |
|---|---|---|
| Respondent Signature | Printed Name and Title | Date |

### WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

| Offender Signature: | Date: HCC-20-Reg-00046 |
|---|---|
| Staff Witness Signature: | Date: |

Revision Date: 4/28/17



**VIRGINIA**
DEPARTMENT OF CORRECTIONS

**Emergency Grievance** 866_F4_4-16

## Emergency Grievance     Log # 8951

*Emergency Grievances* are provided for offender reporting and expedited staff responses to allegations that an offender is subject to a substantial risk of imminent sexual abuse and to situations or conditions which may subject the offender to immediate risk of serious personal injury or irreparable harm.

| LUCAS | CAEEL | 1080673 | Hcc | 2-A-88-B |
|-------|-------|---------|-----|----------|
| Offender Last Name | First | Number | Facility | Building-Cell/Bed |

### PART A- OFFENDER CLAIM

What is the emergency? On 13 April 2020 at 1515 hrs. I Requested that I Goto MEDical for Breathing treatment By C/o Ms Davis. She Called and Spoke to C/o BARNS. Refused Me my treatment said He was Busy So were The Nurses. The It Dobyns Also Called Him Again He Refuse. I was Sent By C/o Davis When I Arrived At Medical I Banged on the Door for 10 Minutes. C/o BARNS Refused to Come to the Door. I Had C/o Noows Cell or Radio Still Did Not Come He Violated the HIPPA Laws By Declaring my Medical in-1 treatment is Securty not my doctor.

| 13 April 2020 Date/Time 15.93 HR | C...../Offender Signature and Number 1080673 |
|-----------------------------------|-----------------------------------------------|

### PART B- STAFF RESPONSE
(This part is to be completed and returned to the offender within eight (8) hours.)

☐ Your grievance does not meet the definition for an emergency. Action Taken/Recommended:
  ☐ Submit Informal Complaint       ☐ Evaluated by Medical: Date Seen _____
  ☐ Submit Sick Call Request        ☐ Send an Offender Request To: _____
  ☐ Submit Request to Dental        ☐ Other (Provide detailed explanation below)

_____

☐ Your grievance has been determined to be an emergency and the following action has been taken:
  ☐ Sent to Hospital: Date Transported       ☐ Other (Provide detailed explanation below)

RECEIVED

MAY - 7 2020

GRIEVANCE OFFICE
JUL 2 0 2020
Ombudsman Unit

| Date/Time | Respondent Signature | Name/Title Printed |
|-----------|---------------------|--------------------|

☐ **PREA** - Alleged incident of sexual abuse or sexual harassment; Shift Commander, Facility Unit Head or Administrative Duty Officer, and facility PREA Compliance Manager notified

Alleged sexual abuse or sexual harassment   ☐ Will be referred for Investigation

Determination by: _____

| Signature | Name/Title Printed | Date/Time |
|-----------|--------------------|-----------|

Distribution:   Original Grievance returned to Offender, Copy forwarded to Institutional Ombudsman/Grievance Coordinator

---

[Detach here]
### PART C- RECEIPT     Log #: 8951

| LUCAS | Casel | 1080673 | HCC | 2A - 38B |
|-------|-------|---------|-----|----------|
| Offender Last Name | First | Number | Facility | Building-Cell/Bed |

I acknowledge receipt of this complaint from the above offender. [Complete and issue to offender if taking from his/her presence for response.]

| 4/13/2020  1535 | S)  213K | S) Wyatt  T/O |
|------------------|----------|---------------|
| Date/Time | Recipient's Signature (Staff Member) | Name/Title Printed |

HCC-20-REG-000/4   Date: 4/25/16

SP 236 (REV 7-21-1998)

**COMMONWEALTH OF VIRGINIA**
**DEPARTMENT OF STATE POLICE**
**SEX OFFENDER AND CRIMES AGAINST MINORS REGISTRATION FORM**

| RECORD COMPLETE CONVICTION DATA AND FACTS OF CONVICTION, PHOTOCOPY ON THE REVERSE SIDE OF THIS DOCUMENT | | ☐ Direct Submit ☐ Print Instructions Page 2 State Police Page 3 DOC on File |

**AGENCY NAME** / AGENCY ORI / ADDRESS (INCLUDE PROBATION PAROLE DISTRICT #)

State Farm, VA 23100

**OFFENDER'S TENTATIVE RELEASE DATES FROM:**

| DEPT. CORRECTIONS CUSTODY | DISCHARGE FROM PAROLE/PROBATION | OFFICIALS SIGNATURE |
|---|---|---|
| DPED 9/29/2019 | MPRO 8/29/2024 | R. Hartman |

**OFFENDER INFORMATION**

| LAST NAME | MAIDEN | FIRST | MIDDLE | HT | WT | HAIR | EYES | SEX | RACE |
|---|---|---|---|---|---|---|---|---|---|
| Lucas | | Carl | Frank | 5'11" | 174 | BLK | Bro | M | B |

| ALIASES USED | SSN | DOB MM | DD | YYYY |
|---|---|---|---|---|
| | | 018 | 018 | 11 9 16 9 |

| PHYSICAL HOME STREET ADDRESS | STATE | ZIP CODE |
|---|---|---|

| SIGNATURE OF PERSON REGISTERING | SID NUMBER | FBI NUMBER | INMATE NUMBER | DATE SUBMITTED |
|---|---|---|---|---|
| Carl F. Lucas | | | 266497 | 3/3/99 |



1. R. THUMB · 2. R. INDEX · 3. R. MIDDLE · 4. R. RING · 5. R. LITTLE
6. L. THUMB · 7. L. INDEX · 8. L. MIDDLE · 9. L. RING · 10. L. LITTLE
LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY · L. THUMB · R. THUMB · RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY

ShuB17B

CABEL F. LUCAS
VDP# 1080673
7 B 17   Acc Quarantined
421 BARNfield Road
Haynesville VA. 22472

18 July 2020

K. Cosby
Regional Ombudsman

RE: Appeal of ACC-20-RET-00046

Issue, Retaliation Slowing The Process
Ombudsman Ms Brady at Acc Refuses to Give me
a Response to my complaint in the time alloted by 866.1

C/o Bruns Refused me my Chronic Care
Treatment for Breathing.

RECEIVED
JUL 20 2020

No Resolution Was been given to ME
Per 866.1 In the time frame of the
Continuance Grievance/Receipt There fore
I Am Appealing The NO Decision Made
at the institution level.

Again C/o Bruns Made a Decision On His Own
without Regard for my life. Per Policy DOP 801.3
Managing Offenders with Disabilities Page 6 2 (A)
Under No Circumstances will A NON-health Care Provider

(2)

APPEAL CO BARNS Refused Me A Breathing Treatment That I needed Chronic Care Provider where an accommodation needed to Address A Physical or Mental Disability has been Prescribed.

This is A Direct Violation of this Policy To add My Breathing Condition's Are Chronic Bronchitis, Diagnosis Asthma, Bronchial Diagnosed U.S. Army Recurrent Upper Respiratory Infections All Listed by the DOP 801.3 Pages 11 & 12 Physical and Mental Impairments.

Correctional Officer BARNS also Violated the following Laws Hippa Law, Americans with Disabilities Act, The Virginians with Disabilities Law.

VA DOC Employee ethics and Rules of Conduct Under DOP. 211.

This employee HAD NO REGARD for My life and by His Actions and Violations of the Law That Protects ME, A Disabled Person.

Correctional Officer Barn Should Be Immediately Terminated for These Blatant Violations of State and Federal Laws and the Number of Virginia Dept of Corrections Policies DOP 801.3 & DOP 211 Employee Conduct. I have filed a Formal Employee Disciplinary Complaint Against C/O BARNS.

I have filed a Complaint also to Mr Brown Special agent Special Investigators Unit 6900 Atmore Drive Suite 1020 Richmond Virginia 23225 I will Not let this End. You Should have Done the Right thing An Arrest Mr. Barnum.

3.

And Take The Action To Discipline this Officer for Doing what He does Done To Me.

It Is Ur. Do Choice you have made. It Reflects the Low Quality of Your Work and Standards Ms. Brown.

All Is Well if Really Should Have gotten a Fair an Unbias Process. Hell I Never Got The Response to

Grievance HCC-20-REG-00046

I Really Think there is some type of Cabal Working against Me. I'll Be Why would it Be about not getting My Response; It Does not improve the Situation Nor Resolve The Problem. Whereas The Grievance Process Has been Ruined. That is Why I Now have taken this Approach. I also taken this to a larger Platform to a Much More effective Process + Results. You can not control this Part of the Process if I Had to file a Freedom of Information Act Request. To

Respectfully,

Carel L. Lucas

Ryan C. McCord, J.D.
Legal Issues Coordinator
Virginia Dept. of Corrections

To Get A Copy of My Grievance Response that Was Denied To Me Here at HCC By Ombudsman Brown.

She Has Absolutely No Proof She Sent It
I Have Absolutely No Proof of Receiving it.

I DO HAVE This Proof.

My Counselor Ms. Robinson Called Ms. Brown On 7 July 2020
Tuesday Morning around 8 am to 8:30 am and inquired about this
Grievance Hcc-20-Reg-000046. This was 2 Days Past the
15 July 2020 Extention Dated. Ms. Brown Said I would
Get it Tonight No Such Act As that IT DID NOT Come.
NOR DID It Wed 8 July, 9 July, 10 July So on. There IS A
Record of that Call in the System. I'll be ask to inform the
Investigators of that Piece of Material said to ensure they Question Ms. Robinson.
Get all things in Order Because it will not Stop, it will not give up,
it is relentless and it will Get Justice for What this employee of DOC
Illegally has Done. You would have Served Your Job and Done Well
Had You made Sure Ms. Brown gave me My Response. You Took Her
Side Without Knowing all the Facts and Decit that She's been going On
Around & about this With Hcc-20-Reg-000046. Or are you Completely
Complicit You may always Capitulate. We Can Work the Details of it out.
Call me So always it is available Ms. Olyeth SHU Counselor is my Current
Counselor Because it went out of Site to VCU Medical Center for Appointment
With the Dermatologist and Pulmonary Specialist my Doctor. My Breathing
Difficulties are Extreme and what was Done to me Could have Been Fatal.
You really Should Have READ What I Sent to you + the VA Documents of my
Exposure to Weapons of Mass Distruction and the Damage that does plagued my
Physical Body and Health from My Service to U.S. Environment. In the high Mccracken

Will it allow this Illegal Act Committed by a VADOC Employee to go Unpunished? Properly. I Broke the law I Pled guilty to all of My Crimes because I was guilty and DID ~~them~~ NO Matter the Cost of My freedom. How is it that I feel I am truly the only Person honorable and with integrity. Officers had a Way out Like Lt. Dobyns & A Unit Supervisor. All she had to do was admit what she Did to me + to Ms. Brown and apologize to me. Therefore his Actions and Punishment would have Remained Contained with a slap on the Wrist. His Unwillingness to admit his Mistakes and errors and to apologize does it's own Consequences That will not Be so prying. I told you that there was information That You Don't Know. If you Can't bring yourself to believe An Inmate and You Certainly will Absolutely Not Defend Me against the Abuse of A fellow Colleague. Public Service is not so easy especially when you are faced with Doing What's Right at some point Every One must Make the Hard Choice no matter the Cost or Consequence and No Matter How Unpopular. I'm the Victim this Time, I Showed my Abuser Compassion and He Could not do Apologize. Tell Me Who is the Better Person. I am I Faced my Victims Then the Court of trial & D.O.J. accounted for my despicable acts and authorities and accepted the Punishment given to Me and you Still think's I am A Liar, Untrust Worthy, Without Honor and Integrity. Not So K. Cosby that you actually Read the Documents you would know this of Me. Yet you Did something so incredulous That I ~~don't~~ presented No evidence of the Grievance Process. When infact I Did yet that I was appealing The No Intake Decision of The Grievance + informal Complaint with all the Correct Documents to support my Position. Your office DID this with the Food Grievance, the Discrimination Grievance All Very varied. I Should Be rid You of this I also Sent to you a Copy of My Certification of 180 Cumt days of EEOC + Have Reason That the U.S. Army →

JUL 20 2020

I hardly think it thought to say for one the kind of private E-1 to to the top of an officer Maybe you and Ms. Brown should have paid a lot of attention to that. I win no matter what and it's very sad that another man of color "Afro-american" is again abused at the hands of a White officer in the Dept. of Corrections Commonwealth of Virginia Capital of the South and Capital of the Confederacy -

There is something far more important here that My abuser is supported by of all things systemic Racism by other afro-americans Taking the side of a White officer with a troubled employee work history in the Dept. of Corrections. The system needs to Change there is nothing there but racism. Yet you fear me. When of all things you should be helping me. Does anyone care, NO! is anyone listening, NO! why should I fire up Because I'm a person who deserved to be treated fairly and given at the very least some dignity and not be constantly Dehumanized because I incarcerated and institutionalized. Who will help Me? are you still against me, I am sure Ombudsman Ms. Brown is certainly against me. How hard is it for you to Reach out and help Someone who has suffered from the abuse of the Misuse of Power-that Could have killed me. are you without compassion to help someone who has wronged by someone in the Commonwealth of Virginia Dept. of Corrections Uniform steal choices are not good when it's the Right thing to Do. Even if it's Unpopular to do it Has your Reluctance Changed? Will you help me? I'm just a old man a Disabled Combat Veteran I just believe I should be treated fairly it should not Matter the color of my skin or the Uniform I have worn as a Convicted felon. I am still a human Being. So helping inmates is wrong. Because I'm not Considered a person in your eyes just a number a worthless Human Undeserving of fairness or help.



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Continuance Receipt

866.1 TBD
DOC Location: HCC Haynesville Correctional Center
Report generated by Brown, R T
Report run on 06/05/2020 at 09:24 AM

Grievance Number: HCC-20-REG-00046

Next Action Date: 07/05/2020 12:00 AM

**Continuance**

| Level | Due Date | Reason | By |
|-------|----------|--------|-----|
| 1 | 07/05/2020 | Awaiting information | Brown, Rose T |
| 2 | | | |
| 3 | | | |

On this date:  05/08/2020    I have received a statement from:

Lucas, Casel F                    1080673    of    Haynesville Correctional Center

(Offender Name and DOC#)

HU2-A-38-B

(Filed Location and Housing)

Setting out the following complaint:
He states that C/O Barnes violated HIPPA laws when he denied him the right to a breathing treatment.

[stamp: RECEIVED JUL 2 0 2020 Ombudsman Unit Eastern Region]

_____
(Signature)

_____
(Title)

[stamp: RECEIVED JUL - 2 2020 Ombudsman Unit Eastern Region]

Rev. 03/30/2009

VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866_F1_4-17

## REGULAR GRIEVANCE

RECEIVED

MAY 1 - 2020
By Hand
GRIEVANCE OFFICE

Log Number: _____

CASEL F. LUCAS
ame, First

| Number | Building | Cell/Bed Number |
|---|---|---|
| 1080673 | 2-A-38B | 2-A-38-B |

Jo BARNS
duals Involved in Incident

Date/ Time of Incident
13 April 2020    1515 Hrs.

T IS YOUR COMPLAINT? (Provide information from the informal process: Attach Informal Complaint response or documentation of informal process.) C/o Barns was the Officer in Charge of Medical Violate the Hippa Law When I Requested to Come to Medical fie A Breathing Treatment On the NeBulizer Machine He Denied this to Me Himself. C/o Ms. Davis a 2nd shift officer Called him and Asked him for Me, to get A Breathing Treatment He told Ms. Davis c/o that He was Busy and so were All the Nurses He Did not Ask Anyone of the Nurses He Made this Decision on His own So I then Asked Lt. Dobyns to Call He was told the Same He Warned &Advised C/o BARNS of what He was doing was hiring He Still Denied Me Access. I filed A Emergeny Grievance and after 2 Hours I was Called Over for my breathing Treatment the Emergency Grievance was not Answered He gave Me the Emergany Grievance Back and SAID You are Over here now. Do what you want with This This Shit was Done to Me During the COVID 19 Pandemic on HCC 146 Cases.

t action do you want taken? No Medical Officer HAS A Right to Decide When I Recive A Breathing Treatment that is Medical Doctor OR NURSE. He Violated The Hippa Law When He Made A Decision to Deny Me my Treatment Without Asking Medical Professionals 1st. He Caused Me more Pain and Trauma my Recue Inholers Could Not Be given to me I Could have Died because of his Negligence.

Alound to Punisha

vant's Signature: Casel F. Lucas    Date: 30 April 2020

JUL - 2 2020    JUL 20 2020

den/Superintendent's Office: _____

Received: _____

mbudsman Unit
stern Region



VIRGINIA
DEPARTMENT OF CORRECTIONS

Regular Grievance 866_F1_4-1

**INSTRUCTIONS FOR FILING:** You are required per Operating Procedure 866.1 *Offender Grievance Procedure* to attempt to resolve your complaint in good faith prior to filing a regular grievance. You must submit your grievance within 30 days from the date of occurrence or discovery of incident. Only one issue per grievance will be addressed. Write your issue only in the space provided on the grievance form, preferably in ink. Regular grievances are submitted through the institutional mail to the facility Grievance Office and receipt issued within 2 working days from received date if the grievance is not returned during intake.

**INTAKE:** Grievances should be accepted for logging unless returned for the following reason(s):

| | |
|---|---|
| ☐ | Non-Grievable. This issue has been defined as non-grievable in accordance with Operating Procedure 866.1. <br> ☐ Disciplinary Procedure. You may appeal hearing decisions, penalties, and/or procedural errors under the provisions in Operating Procedure 861.1, *Offender Discipline*. <br> ☐ Matters beyond the control of the Department of Corrections |
| ☐ | Does not affect you personally (This issue did not cause you personal loss or harm) |
| ☐ | Limited. You have been limited by the Warden/Superintendent |
| ☐ | More than one issue – resubmit with only one issue |
| ☐ | Expired Filing Period. Grievances are to be filed within 30 calendar days from date of occurrence/incident, or discovery of the occurrence/incident except in instances: 1) beyond the offender's control or, 2) where a more restrictive time frame has been established in Operating Procedures to prevent loss of remedy or the issue from becoming moot. |
| ☐ | Repetitive. This issue has been grieved previously in Grievance # |
| ☐ | Inquiry on behalf of other offenders. |
| ☐ | Group Complaints or Petitions. Grievances are to be submitted by individuals. |
| ☐ | Vulgar/Insolent or Threatening Language. YOU MAY BE CHARGED IN ACCORDANCE WITH OPERATING PROCEDURE 861.1 *OFFENDER DISCIPLINE* |
| ☐ | Photocopy/Carbon Copy. You must submit the original grievance for responses and appeals. |
| ☐ | Grievances Filed Regarding Another Institution. This grievance is being returned to you for you to submit to: |
| ☐ | Informal Procedure. You have not used the informal process to <u>resolve</u> your complaint |
| ☐ | Request for services |
| ☐ | Insufficient Information (Not to include Medical). You need to provide the following information to the Grievance Office within 5 days before the grievance can be processed: |
| ☑ | The issue in the grievance is different from the issue in the informal complaint |

Institutional Ombudsman/Grievance Coordinator: _R Hand_   Date: _5-1-2020_

If you disagree with this decision, you have 5 calendar days from date of receipt to submit to the Regional Ombudsman for a review of the intake decision. The Regional Ombudsman's decision is final.

Regional Review of Intake (within 5 working days of receipt)

| | |
|---|---|
| ☐ | The intake decision is being upheld in accordance with Operating Procedure 866.1 *Offender Grievance Procedure*. |
| ☐ | The intake decision is being returned to you because the 5 day time limit for review has been exceeded. |
| ☐ | The grievance meets the criteria for intake and is being returned to the Warden/Superintendent for logging. |

Regional Ombudsman: _____

**WITHDRAWAL OF GRIEVANCE:** I wish to voluntarily withdraw this grievance. I understand that by withdrawing this grievance, there will be no further action on this issue nor will I be able to file any other grievance in the future on this issue.   Date: _____

Offender Signature: _____

Staff Witness: _____   Date: _____

                                        Date: _____

2 of 2



VIRGINIA DEPARTMENT OF CORRECTIONS

**Grievance Receipt**

866.1 A-3

DOC Location: HCC Haynesville Correctional Center

Report generated by Hand, P W

Report run on 04/14/2020 at 10:25 AM

Grievance Number: <u>HCC-20-INF-00585</u>

Next Action Date: <u>04/29/2020 12:00 AM</u>

| On this date: | 04/14/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | 1080673 | of | Haynesville Correctional Center HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| Capt. White - Complaint about C/O Barns not letting him medical for breathing treatment. | | | |
| *(Signature)* | | | DSS  *(Title)* |



RECEIVED

MAY - 7 2020

By: _____
GRIEVANCE OFFICE

Page 1 of 1

Rev. 03/30/2009



VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

Casel T. Lucas _____ 1080673 _____ 2-A-38-B
Offender Name ___ Offender Number ___ Housing Assignment

C/O Barns Medical Offcer _____ 13 April 2020 15 15 Hrs.
Individuals Involved in Incident ___ Date/ Time of Incident

☐ Unit Manager/Supervisor       ☐ Food Service          ☐ Institutional Program Manager
☐ Personal Property             ☐ Commissary            ☐ Mailroom
☐ Medical Administrator         ☒ Other (Please Specify): C/O Burns Violated the HIPPA Law
                                   When I Requested a Breathing Treatment.

Briefly explain the nature of your complaint (be specific): ON 13 April 2020 at 15 15 Hrs, I Request
To See Medical for a Breathing Treatment. C/O Ms. Davis called Medical and was told by C/O Burns
He was Busy & please sit all of the Nurses, Ms. Davis told Lt Dobbins to call C/O Burns and was
Told the same thing. I was Sent by Ms Davis and when I got to Medical I Bang on the
door for 10 minutes. Officer Burns did not Come to the door. Ms. Noel Property Officer
called Him Still No answer, I Returned to the Build. My Breathing Treatment is Protected
by HIPPA law. Security Cannot Dichtate my treatment, Nor Deny Me. That is between Me and My
Doctor.

Offender Signature Casel T. Lucas _____ 1080673 _____ Date 13 April 2020

### Offenders - Do Not Write Below This Line

Date Received: 4-14-2020 _____ Tracking # HCC-20-INF-00585

Response Due: 4-29-2020 _____ Assigned to: Capt White

Action Taken/Response:

_____

_____   JUL 20 2020

_____

RECEIVED
MAY - 7 2020
By GRIEVANCE OFFICE

RECEIVED
JUL - 2 2020
Ombudsman Unit
Eastern Region

Respondent Signature _____ Printed Name and Title

### WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____ Date: _____

Staff Witness Signature: _____ Date: _____

*Revision Date: 4/28/17*



VIRGINIA
DEPARTMENT OF CORRECTIONS

Emergency Grievance 866_F4_4-16

## Emergency Grievance     Log # 8951

*Emergency Grievances* are provided for offender reporting and expedited staff responses to allegations that an offender is subject to a substantial risk of imminent sexual abuse and to situations or conditions which may subject the offender to immediate risk of serious personal injury or irreparable harm.

LUCAS        CASEL        1080673    HCC      2-A-38-B
Offender Last Name   First        Number    Facility    Building-Cell/Bed

### PART A- OFFENDER CLAIM

What is the emergency? On 13 April 2020 at 1515 hrs, I Requested that I goto Medical for Breathing Treatment By C/o Ms Davis. She called and Spoke to C/o Barns. Refused Me my treatment Said He was Busy so were The Nurses. The Lt Dobyns also called Him again He Refuse. I was sent By C/o Davis when I Arrived At Medical I Banged on the Door for 10 minutes, C/o Barns Refused to come to the Door. I did C/o NCRIS Cell or Radio Still did Not Come. He violated the HIPPA laws By declaring my treatment was by severl my Doctor

13 April 2020 Date/Time 15:93HR     Offender Signature and Number 1080673

### PART B- STAFF RESPONSE
(This part is to be completed and returned to the offender within eight (8) hours.)

☐ Your grievance does not meet the definition for an emergency.  Action Taken/Recommended:
  ☐ Submit Informal Complaint          ☐ Evaluated by Medical: Date Seen _____
  ☐ Submit Sick Call Request           ☐ Send an Offender Request To: _____
  ☐ Submit Request to Dental           ☐ Other  (Provide detailed explanation below)

_____
_____

☐ Your grievance has been determined to be an emergency and the following action has been taken:
  ☐ Sent to Hospital: Date Transported _____   ☐ Other  (Provide detailed explanation below)

RECEIV
JUL 20 2020

_____
Date/Time          Respondent Signature          Name/Title Printed

☐ **PREA** - Alleged incident of sexual abuse or sexual harassment; Shift Commander, Facility Unit Head or Administrative Duty Officer, and facility PREA Compliance Manager notified
Alleged sexual abuse or sexual harassment ☐ Will be referred for Investigation

RECEIVE
JUL - 2 2020
Ombudsman Unit
Eastern Region

Determination by: _____
          Signature          Name/Title Printed          Date/Time

Distribution:  Original Grievance returned to Offender, Copy forwarded to Institutional Ombudsman/Grievance Coordinator

[Detach here]

### PART C- RECEIPT      Log #: 8951

Lucas        Casel        1080673    HCC      2A-38B
Offender Last Name   First        Number    Facility    Building-Cell/Bed

I acknowledge receipt of this complaint from the above offender. [Complete and issue to offender if taking from his/her presence for response.]

4/13/2020   1535           21.7X           D Wright  T/D
Date/Time          Recipient's Signature (Staff Member)          Name/Title Printed

Revision Date: 4/25/16



VIRGINIA DEPARTMENT OF CORRECTIONS

## Grievance Receipt

866.1 A-3

DOC Location: HCC Haynesville Correctional Center

Report generated by Hand, P W

Report run on 04/13/2020 at 12:15 PM

Grievance Number: <u>HCC-20-INF-00545</u>

Next Action Date: <u>04/28/2020 12:00 AM</u>

| On this date: | 04/13/2020 | | I have received a statement from: |
|---|---|---|---|
| Lucas, Casel F | | 1080673 | of | Haynesville Correctional Center<br>HU2-A-38-B |
| *(Offender Name and DOC#)* | | | *(Filed Location and Housing)* |
| Setting out the following complaint: | | | |
| Lt. Dobyns - Complaint officer was not wearing a mask during count on 4-11-2020. | | | |
| *P Hand*<br>*(Signature)* | | | *OSS*<br>*(Title)* |





Rev. 03/30/2009



VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
An Informal Complaint is not required for an alleged incident of sexual abuse.

RECEIVED
Received By:_____
GRIEVANCE OFFICE

| | | |
|---|---|---|
| CASEL F. LUCAS | 1080673 | 2-A-38-B |
| Offender Name | Offender Number | Housing Assignment |

Individuals Involved in Incident: Unit Officer.

Date/ Time of Incident: 11 April 2020  6:30 Am

☐ Unit Manager/Supervisor  ☐ Food Service  ☐ Institutional Program Manager
☐ Personal Property  ☐ Commissary  ☐ Mailroom
☐ Medical Administrator  ☒ Other (Please Specify): Officer Not WEARing Mask During count at 6:30 Am.

Briefly explain the nature of your complaint (be specific):
On 11 April 2020, The Officer doing count - was asked why are you Mask. He said He didn't know - NO - One Here is Sick, We can only get it from A Staff Member.

Offender Signature: Casel F. Lucas      Date: 11 April 2020

### Offenders - Do Not Write Below This Line

Date Received: 4-13-2020      Tracking # HCC-20-INF-00545
Response Due: 4-28-2020       Assigned to: Lt Dobyns
Action Taken/Response:

JUL 20 2020

RECEIVED
JUL 2 2020
Ombudsman Unit
Eastern Region

Respondent Signature: _____      Printed Name and Title: _____

### WITHDRAWAL OF INFORMAL COMPLAINT:
I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____      Date: _____
Staff Witness Signature: _____      Date: _____

*Revision Date: 4/28/17*

VIRGINIA
DEPARTMENT OF CORRECTIONS

Informal Complaint 866_F3_4-17

## Informal Complaint

**INSTRUCTIONS FOR FILING:** Briefly write your issue in the space provided on the Informal Complaint form, preferably in ink. Only one issue per Informal Complaint. Place your complaint in the designated area at your facility. A receipt is issued within 2 working days from the date received if the informal complaint is not returned during intake. If no response is received within 15 calendar days, you may proceed in filing a regular grievance. You may utilize your receipt as evidence of your attempt to resolve your complaint.
**An Informal Complaint is not required for an alleged incident of sexual abuse.**

| CABEL F. LUCAS | 1081673 | 2·A·38·B |
|---|---|---|
| Offender Name | Offender Number | Housing Assignment |
| Warden Nicks | | 2 Jun 2020 |
| Individuals Involved in Incident | | Date/ Time of Incident |

☐ Unit Manager/Supervisor     ☐ Food Service                    ☐ Institutional Program Manager
☐ Personal Property           ☐ Commissary                     ☐ Mailroom
☐ Medical Administrator       ☒ Other (Please Specify): Discrimination in IERP Program

Briefly explain the nature of your complaint (be specific): DISCrymination Against Me Being Excluded in
The IERP. HAS NO Mention to include Offenders With DISabilities As Myself. Per
① Americans with Disabilities ACT of 1990 As Amended (42 U.S.C § 12101 et seq.) ② Virginia with
Disabilities ACT (COV § 51.5-1 et seq.) ③ VADC. DOP 801.3 Managing Offenders with Disabili
I Sent A Reasonable Accommodations Request to Facility ADA Requesting that I C. LuCAS Inmate with
Disabilities be included into ① the IERP Program to go home. The 1yr or less is irrelevant to
The fact that Im A parole eligible inmate even year I should be included especially with my Mental Health
Disabilities and Chronic Surg Disease. Heart Conditions, Hypertension, and Disabetes! This is what VADOC Agreed to

Offender Signature  Cabel F. Lucas                                         Date 14 Jun 2020

### Offenders – Do Not Write Below This Line

Date Received: _____                         Tracking # _____

Response Due: _____                          Assigned to: _____
Action Taken/Response:

_____

_____

_____

_____

_____

JUL 20 2020

_____

| Respondent Signature | Printed Name and Title | Date |
|---|---|---|

## WITHDRAWAL OF INFORMAL COMPLAINT:

I wish to voluntarily withdraw this Informal Complaint. I understand that by withdrawing this Informal Complaint, I will not receive a response nor will I be able to file any other Informal Complaint or Grievance on this issue.

Offender Signature: _____                     Date: _____

Staff Witness Signature: _____  JUL - 2 2020   Date: _____

RECEIVED

Ombudsman Unit
Eastern Region

*Revision Date: 4/28/17*



# Virginia Department of Corrections

| | |
|---|---|
| **Offender Management and Programs** | |
| **Operating Procedure 801.3** | |
| ***Managing Offenders with Disabilities*** | |
| **Authority:** Directive 801, *Facility Administration* | |
| **Effective Date:** August 1, 2019 | |
| **Amended:** | |
| **Supersedes:** Operating Procedure 801.3, July 1, 2016 | |
| **Access:** ☒ Public   ☐ Restricted   ☒ Incarcerated Offender | |

**ACA/PREA Standards:**
5-ACI-2C-02, 5-ACI-2C-11, 5-ACI-2C-12,
5-ACI-2C-13, 5-ACI-3D-04, 5-ACI-5E-02,
5-ACI-5E-03, 5-ACI-6C-06, 5-ACI-7A-01,
5-ACI-7B-10, 5-ACI-7D-13; 4-4133, 4-4142,
4-4143, 4-4144, 4-4277, 4-4399, 4-4429, 4-4429-1,
4-4448, 4-4475, 4-4497; 4-ACRS-5A-19,
4-ACRS-6A-01-1, 4-ACRS-6A-04,
4-ACRS-6A-04-1, 4-ACRS-6A-04-2,
4-ACRS-6B-01; 2-CI-5A-1

| | | | | |
|---|---|---|---|---|
| **Content Owner:** | Rose Durbin<br>PREA/ADA Supervisor | *Signature Copy on File* | | 6/14/19 |
| | | Signature | | Date |
| **Reviewer:** | Jermiah Fitz Jr.<br>Corrections Operations Administrator | *Signature Copy on File* | | 6/17/19 |
| | | Signature | | Date |
| **Signatory:** | A. David Robinson<br>Chief of Corrections Operations | *Signature Copy on File* | | 7/1/19 |
| | | Signature | | Date |

## REVIEW

The Content Owner will review this operating procedure annually and re-write it no later than three years after the effective date.

## COMPLIANCE

This operating procedure applies to all units operated by the Virginia Department of Corrections. Practices and procedures must comply with applicable State and Federal laws and regulations, ACA standards, PREA standards, and DOC directives and operating procedures.



# Table of Contents

PURPOSE ...............................................................................................................................................3

PROCEDURE .........................................................................................................................................3

    I.     Training and Responsibility ......................................................................................................3

    II.    Offenders with Disabilities.......................................................................................................4

    III.   Determination of Disability and Reasonable Accommodations...................................................5

    IV.   Offender Requests for Accommodation .....................................................................................6

    V.    Housing for Offenders with Disabilities ....................................................................................7

    VI.   Durable Medical Equipment, Disability Aids, and Prostheses....................................................8

    VII.  Offender Services.....................................................................................................................8

    VIII. Special Considerations ............................................................................................................9

DEFINITIONS OF TERMS USED IN THIS OPERATING PROCEDURE ..........................................11

REFERENCES .......................................................................................................................................12

ATTACHMENTS ...................................................................................................................................13

FORM CITATIONS................................................................................................................................13

Operating Procedure 801.3, *Managing Offenders with Disabilities*                    Effective Date: August 1, 2019

## PURPOSE

This operating procedure provides guidelines for management of and provision of reasonable accommodations to offenders with disabilities housed in Department of Corrections (DOC) facilities. It describes levels of available services, methods by which assignments are made, and appropriate security measures for offenders with disabilities in accordance with the *Americans with Disabilities Act of 1990*, as Amended (42 U.S.C. §12101 et seq.) and the *Virginians with Disabilities Act* (COV §51.5-1 et seq.).

## PROCEDURE

I.      Training and Responsibility

   A. All staff, contract staff, interns, and volunteers who regularly interact with offenders will receive instruction related to the provisions of accommodations for offenders with disabilities and the requirements of this operating procedure.

   B. All staff and contract staff must complete the mandatory *Americans with Disabilities Act (ADA)* on-line training, annually. Upon completion of the training, a copy of the certificate must be printed and submitted to unit training staff or the immediate supervisor for units without training staff.

   C. Upon arrival and during formal orientation, all offenders, to include those offenders who are transferred immediately to the infirmary or restrictive housing upon intake, will be informed of their right to non-discrimination on the basis of a disability and the process for requesting a reasonable accommodation as outlined in this operating procedure. (See Operating Procedure 810.1, *Offender Reception and Classification*, and Operating Procedure 810.2, *Transferred Offender Receiving and Orientation*.) (5-ACI-3D-04; 4-4277; 4-ACRS-6B-01)

      1. Each offender, upon arrival will be provided a copy of Attachment 1, *Notice of Rights for Offenders with Disabilities*, which includes the DOC ADA Coordinator's contact information.

      2. The facility *Orientation Manual, Packet,* and/or other written orientation materials must include the facility ADA Coordinator's name and contact information.

   D. Information on the nature and extent of an offender's disability and any reasonable accommodations related to the disability is considered protected health information. This information is confidential and will only be disclosed to staff as necessary to provide assistance to the offender or as authorized and/or permitted by the offender.

   E. ADA Coordinator

      1. Staff and offenders have access to the DOC ADA Coordinator and a facility ADA Coordinator. (5-ACI-5E-03; 4-4429-1; 4-ACRS-6A-01-1)

         a. The DOC ADA Coordinator is an appropriately trained and qualified individual, educated in the problems and challenges faced by offenders with physical and/or mental impairments, programs designed to educate and assist offenders with disabilities, and all legal requirements for the protection of offenders with disabilities.

         b. The facility ADA Coordinator is trained by the DOC ADA Coordinator in mandated legal requirements regarding disability accommodations.

      2. The DOC ADA Coordinator will serve as the authority on all issues related to offenders with disabilities, reasonable accommodations, and the application of this operating procedure.

      3. The facility ADA Coordinator will review all offender requests for a reasonable accommodation and, in consultation with appropriate staff, make a determination on the request and maintain documentation of the facility accommodation process to include approvals, denials, and appeals.

         a. The following requirements will be considered when making a determination for an accommodation:

            i. The disability, as recognized by the ADA, must be known to the DOC.

            ii. The accommodation must not pose an undue hardship on the facility or to the safety and

       security of the offender or any other person.

    b. .The facility ADA Coordinator will maintain a current listing of all facility accommodations provided to offenders.

    c. The facility ADA Coordinator will make rounds twice per month to be available to offenders. These rounds should be documented in facility logbooks.

## II. Offenders with Disabilities

A. Offenders are essentially dependent on the physical conditions of and services provided by the facility.

B. Facility staff must ensure that an individual with a disability will not be excluded from participation in, or be denied the benefits of, the services, programs, or activities of the facility, or be subjected to discrimination. (5-ACI-3D-04, 5-ACI-5E-02; 4-4277, 4-4429; 4-ACRS-6B-01)

C. Reasonable accommodations must be made for offenders with disabilities, consistent with and as required by the *Americans with Disabilities Act of 1990, as Amended* (42 U.S.C. §12101 et seq.) and the *Virginians with Disabilities Act* (COV §51.5-1 et seq.)

D. Such accommodations will allow for participation in services, programs, and activities that may include but not be limited to:

1. Provision of medical and mental health care, medication, auxiliary aids and services, and protection from weather related injury

2. Removal of barriers to physical plant access or transfer to a facility that meets the offender's needs

3. Modification to procedure and/or facility practice, unless the facility can demonstrate that making the modification would fundamentally alter the nature of the service, program or activity

E. Offenders with disabilities must be provided education, durable medical equipment, supplies and facilities, and the support necessary to perform self-care and personal hygiene in a reasonably private environment. (5-ACI-2C-13; 4-4144; 4-ACRS-6A-04-2)

1. Toilet access will be provided for offenders consistent with their medical needs as determined by a facility Medical Practitioner.

2. Appropriately trained individuals should be assigned to assist offenders who cannot otherwise perform major life activities. (5-ACI-2C-12; 4-4143; 4-ACRS-6A-04-1) Offender helpers should be limited to providing assistance in such matters as ambulation and should not provide personal care such as bathing.

F. Staff and contract staff are responsible to communicate information, announcements, procedures, and other directions to offenders with communication disabilities in a manner that will maximize the offender's ability to comprehend and understand the information.

1. When a disability hinders an offender's ability to communicate, facility staff must ensure that the offender is provided with necessary accommodations to assist them during orientation, medical, psychological, educational testing and evaluation, and in explanation of facility rules and procedures.

2. Offenders with communication disabilities must be made aware of all facility announcements and alerts such as work call, emergencies, school, meals, count, etc.

3. Offenders with communication disabilities must be provided reasonable accommodations to ensure the offender and health care providers are able to communicate effectively during all scheduled appointments at the facility to include but not limited to review of medical history, medical appointments, follow-up appointments, and treatment sessions.

    a. When offenders are transported for medical care, facility health care providers will inform the offsite health care provider as far in advance of the offsite appointment as possible that an offender with a communication disability, such as deafness, that requires a qualified interpreter or other auxiliary aids and services will be seeking medical care.

    b. In the case of an emergency, a facility health care provider will inform offsite medical providers

Operating Procedure 801.3, *Managing Offenders with Disabilities*     Effective Date: August 1, 2019

that an offender with a communication disability such as deafness that requires an in-person qualified interpreter or other auxiliary aids and services is being transported to them on an urgent basis. Notification will include the estimated time of arrival.

   c. For all offenders transported for offsite health care, a facility health care provider will ensure that the offender's communication disability and the need for an accommodation is documented on the *Offender Gate Pass* and recorded in the offender's Health Record.

4. A conspicuous notice of any communications disabilities (i.e. hard of hearing, speech impairment, language translation, vision impairment) must be noted on the Health Record of any offender whose disability affects their ability to communicate and an appropriate advisory regarding this disability must be provided to facility staff and designated in VACORIS.

III.   Determination of Disability and Reasonable Accommodations

A. All offenders receive a medical and mental health screening by a qualified Health Care Provider or health trained staff in accordance with Operating Procedure 720.2, *Medical Screening, Classification, and Levels of Care*, and the *Nursing Guideline* for *Medical/Location Codes*.

   1. Offenders must be afforded the opportunity to disclose their present and prior disabilities and needs and request an accommodation(s) for their disability during their medical and mental health screening. The qualified Health Care Provider will:

      a. Question the offender regarding any previous accommodation(s)

      b. Discuss modified or additional accommodations as appropriate

      c. Make appropriate notations in the offender's Health Record.

   2. When an offender arrives at a facility with an approved accommodation, medical equipment or an assistive device that presents any concerns, the Facility Unit Head, in consultation with the facility Medical Practitioner and ADA Coordinator, will make a decision regarding the removal of the item to minimize risk and provide alternate appropriate accommodations.

   3. The facility Health Care Practitioner may consult with the facility ADA Coordinator and DOC ADA Coordinator, as needed to determine if a requested accommodation is within the scope of the ADA.

B. The facility Medical Practitioner, in consultation with qualified health care practitioners or specialists, and in conjunction with the affected offender, will diagnose any disability, not previously diagnosed.

   1. After the initial medical screening and a comprehensive health appraisal are completed and the findings evaluated, offenders will be medically classified and assigned a location code.

   2. The offender's medical classification code and location code should be reviewed during the intra-system transfer process, and any time a change of the offender's condition is identified to ensure it reflects the current medical status of the offender.

   3. The facility Medical Practitioner will assign a medical/disability code, which indicates if the offender has an impairment that qualifies as a disability (i.e. legally blind, deaf, mobility impaired). This determination is based on the *Americans with Disabilities Act of 1990, as Amended* (42 U.S.C. §12101 et seq.) and *The Virginians with Disabilities Act* (COV §51.5-1 et seq.).

   4. The Health Authority or designee will assign the medical location code, which indicates the offender's requirements for physical accommodations and access to health care services.

C. After a disability is diagnosed, a qualified health care practitioner or specialist will determine the level of medical accommodation needed and provide appropriate medical treatment as is required by the offender's condition.

   1. The facility Health Care Practitioner (i.e. physician, optometrist, dentist, psychology associate) will make a determination on the specific accommodation provided and will determine the type of auxiliary aid and/or service to be provided, considering the request of the offender with a disability, but the offender's request, although not determinative, is given priority. This information will be recorded in the offender's Health Record.

2. If the medical equipment or assistive device required to address and accommodate an offender's disability poses an undue hardship to the facility or to the safety and security of the offender or any other person, the Facility Unit Head, in collaboration with the Health Care Practitioner, will make a decision regarding an alternate appropriate accommodation.

a. Under no circumstances will non-health care providers substitute their judgment for that of a health care provider where an accommodation needed to address a physical or mental disability has been prescribed.

*[handwritten: Clo Pians violated this Denying me my Breath Treatments]*

b. If there are unclear issues about an accommodation, the DOC ADA Coordinator may discuss with facility staff whether the proposed accommodation poses an undue hardship to the facility or to the safety and security of the offender or any other person prior to a final decision regarding the requested accommodation.

c. The DOC ADA Coordinator will resolve the issue if the facility Health Care Practitioner and the Facility Unit Head cannot come to an agreement.

d. The DOC ADA Coordinator, as necessary, will provide written documentation to the Facility Unit Head and facility ADA Coordinator regarding the offender's protection under ADA and/or the accommodation to be provided.

D. Physical therapy will be available on or off-site, as appropriate, and will be carried out, subject to the offender's consent, as prescribed by the facility Medical Practitioner.

E. All offender requests for diagnosis of a disability, determinations about an offender having a disability, and whether the offender will receive medical accommodations for the disability must be recorded in the offender's Health Record.

F. A copy of the decisions, including but not limited to diagnoses, regarding the disability determination, the reasons for denial or modification of the request, and reasonable accommodations will be provided to the offender.

IV.   Offender Requests for Accommodation

A. Offenders may request a reasonable accommodation for their disability by submitting a *Reasonable Accommodation Request* 801_F7 to the facility ADA Coordinator. Offenders who have difficulty in communicating, understanding, or writing a *Request* should contact their counselor for assistance.

B. The facility ADA Coordinator will review the *Request* and, in consultation with appropriate staff, make a determination on the *Request*.

1. *Reasonable Accommodation Requests* will be acted upon in writing within ten business days, or a shorter time if necessary, by either granting the request, denying it, requesting further investigation, or granting it with modification. A specific reason must be stated if the request is denied or modified.

2. All *Accommodation Requests* with respect to medical care will be placed in the offender's Health Record with a copy forwarded to the offender and a copy maintained by the facility ADA Coordinator.

3. *Accommodation Requests* not specifically involving medical care will be maintained by the institutional ADA Coordinator with a copy forwarded to the offender.

C. If a facility Health Care Practitioner determines that a medically prescribed accommodation is warranted, facility health care providers will make provisions to provide for the medical accommodation.

1. Medically prescribed accommodations must be reviewed to address any facility safety and security concerns.

2. If facility health care providers have safety or security concerns regarding the medical accommodation, the facility ADA Coordinator or Facility Unit Head will be consulted.

3. If a medically prescribed accommodation poses an undue hardship on the facility or to the safety and security of the offender or any other person, the facility ADA Coordinator must notify a facility health care provider of the safety/security concerns so that the prescribed accommodation can appropriately modified.

D. In determining whether an offender's disability or accommodation poses an undue hardship to the health or safety of themselves or others, the facility ADA Coordinator must make an individualized assessment based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence to ascertain:

1. Nature, duration, and severity of the risk

2. Probability that the potential injury will actually occur

3. Whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids and services will mitigate the risk

E. Any offender who believes, they were discriminated against because of their disability, or decides to appeal their *Accommodation Requests* may do so in accordance with Operating Procedure 866.1, *Offender Grievance Procedure*. Grievances of this type must be initially reviewed by the facility ADA Coordinator, who should consult with the Facility Unit Head and, ultimately, the DOC ADA Coordinator.

V.    Housing for Offenders with Disabilities

A. Facility staff will use information from the offender's *Classification Assessment* and the *Cell Compatibility Assessment* to determine appropriate housing and bed assignments for offenders with disabilities in accordance with Operating Procedure 425.4, *Management of Bed and Cell Assignments* (Restricted). When necessary, single occupancy cells should be made available for offenders with severe medical disabilities. (5-ACI-2C-02; 4-4133)

B. Offenders with disabilities will be housed in a manner that provides for their safety and security. Housing used by offenders with disabilities, is designed for their use and provides for integration with other offenders. Programs and services will be made accessible to offenders with disabilities who reside in the facility. (5-ACI-2C-11; 4-4142; 4-ACRS-6A-04)

1. To the extent feasible, offenders with disabilities should be placed in general population settings. Offenders with disabilities requiring special health care and services will be placed in settings that provide health services appropriate to the offender's health needs.

2. Offenders with disabilities should be housed in the most integrated setting appropriate to the needs of the individuals, unless it is deemed necessary to make an exception.

   a. Offenders who require handicap accessible cells or beds will not be placed in inappropriate security classifications due to their disability.

   b. Offenders with disabilities will only be placed in designated medical areas when necessary to provide medical care or treatment.

   c. Offenders with disabilities will not be placed in facilities that do not offer the same programs as the facilities where they would otherwise be housed.

   d. Offenders with disabilities will not be deprived of visitation with family members by placing them in distant facilities where they would not otherwise be housed; this does not preclude gathering groups of offenders with similar special needs (i.e. dialysis, geriatric, deaf and hard of hearing) into one or more locations where special resources can be provided to meet those needs.

C. Offenders Housed in the Infirmary

1. Offenders admitted to the infirmary may have access to one or more programs and services i.e., education, work, religious services, library access, and commissary, temporarily suspended as deemed appropriate by the facility Medical Practitioner based on the offender's medical condition and level of medical care needed.

2. Offenders assigned to the infirmary for long-term care will be periodically evaluated by the facility Medical Practitioner who will determine the appropriate level of access to programs and services.

3. Determinations regarding an offender's access to programming and services will be by medical order and documented in the offender's Health Record.

VI. Durable Medical Equipment, Disability Aids, and Prostheses

A. Durable medical equipment in appropriate working order, supplies, disability aids, and prostheses will be ordered and provided for offender use by the facility Medical Practitioner as necessary to prevent an offender from being excluded from participation in, or denied the benefits of, the services, programs, or activities of the institution, or from being subjected to discrimination by the institution.

B. Operating Procedure 750.3, *Prostheses*, provides that a prosthesis or orthotic should be made available to an offender if failure to do so will exclude the offender from participation in or deny the offender the benefits of the services, programs or activities of the facility or cause the offender to be subjected to discrimination.

1. Prostheses or orthotics will be made available only by order of a DOC Health Care Practitioner.

2. The DOC will determine the style, type, and manufacturer of the device based on the offender's needs and relevant security considerations.

3. Operating Procedure 720.6, *Dental Services*, provides that a dental prosthesis, subject to co-payment, should be provided for an offender if failure to do so will result in deterioration of the offender's health while incarcerated; all dental prostheses should be ordered by the facility dentist.

C. Prosthetic (including dental) and orthotic devices, subject to co-payment in accordance with Operating Procedure 720.4, *Co-Payment for Health Care Services*, are provided for an offender if failure to do so will result in deterioration of the offender's health while incarcerated.

1. In order to assure continuity of care, the process of ordering a device must allow enough time for completion prior to release from incarceration.

2. If there is not enough time until release, the process of ordering the device will be done in a location convenient to the offender in their post-release community.

D. Resources will be made available to help offenders with mobility impairments that are being discharged to have access to mobility equipment after their release.

VII. Offender Services

A. Accommodations will be provided to access and fully participate in the programs and services if needed. Information will be communicated to the offender in a manner that will maximize the offender's ability to comprehend and understand the information; including interpreters for deaf offenders and other means as appropriate.

B. Each facility will make provisions to meet the educational and vocational needs of offenders who require special placement because of physical or mental disabilities. (5-ACI-7B-10; 4-4475)

1. Offenders will be evaluated for participation in educational programs, on a case-by-case basis, in accordance with Operating Procedure 601.4, *Educational Testing*. Eligibility to participate depends on:

a. Offender's ability to perform the curriculum requirements with or without reasonable accommodation

b. Satisfaction of procedural requirements for participation in the program

2. Offenders may request a reasonable accommodation for educational testing and instruction as provided in Operating Procedure 601.4, *Educational Testing*.

3. Operating Procedure 601.5, *Academic Programs*, and Operating Procedure 601.6, *Career and Technical Education Programs*, provides for reasonable accommodations to be made to ensure that

Operating Procedure 801.3, *Managing Offenders with Disabilities*                                      Effective Date: August 1, 2019

the testing procedure is not discriminatory to offenders with disabilities based on the disability. Reasonable accommodation includes extended time to complete the test, reading aides, interpreters, and/or tape recorded questions.

C. Operating Procedure 803.3, *Offender Telephone Service*, provides specific guidance to all offenders for access and use of the telephones. Telephones at wheelchair height and, where needed, special equipment suitable for use by the hearing impaired, including videophones, are provided. (5-ACI-7D-13; 4-4497; 4-ACRS-5A-19)

   1. Offenders with hearing and/or speech disabilities, and offenders who wish to communicate with parties who have such disabilities, are afforded access to a Telecommunications Device for the Deaf (TDD), or comparable equipment.

   2. Public telephones with volume control are also made available to offenders with a hearing impairment.

D. Offenders with disabilities will be provided the same access to recreation as other offenders in the same housing status as provided in Operating Procedure 841.6, *Recreation Programs*, and Operating Procedure 841.4, *Restrictive Housing Units*.

   1. Such opportunities for recreation will include, but are not limited to, provision of reasonable accommodations so that disabled offenders may participate in recreational programs to the greatest extent possible.

   2. In addition, disabled offenders may seek and be granted accommodations in scheduling such that they may experience and participate in recreation in a safe environment.

E. Offenders with disabilities will be provided the same access to visitation as other offenders in the same housing status as provided in Operating Procedure 851.1, *Visiting Privileges*, and Operating Procedure 841.4, *Restrictive Housing Units*. Reasonable accommodations will be provided for offenders with disabilities to allow for effective communication with their visitor. The institution will provide auxiliary aids and devices as necessary to allow disabled offenders to communicate effectively with their visitor.

F. Offenders with disabilities will be reviewed and approved for job assignments in accordance with Operating Procedure 841.2, *Offender Work Programs*. (5-ACI-7A-01; 4-4448; 2-CI-5A-1)

   1. Offenders with disabilities, subject to reasonable accommodations with respect to their disability, must meet the requirements and be able to perform the specific job duties and responsibilities provided on the *Offender Work Program Position Description*. Discrimination based on the offender's disability is prohibited. (5-ACI-3D-04; 4-4277; 4-ACRS-6B-01)

   2. Offenders with a disability will be offered accommodations, in order to meet the requirements of the position and to be able to perform the specific job duties and responsibilities, to be considered for the job assignment.

   3. Under no circumstance, will offenders be placed in a job assignment that jeopardizes their safety or security or the safety and security of others.

VIII.  Special Considerations

A. The Facility Unit Head or a designee in addition to the facility ADA Coordinator will consult with the facility Medical Practitioner or designee prior to taking action regarding chronically ill, physically disabled, geriatric, seriously mentally ill, or developmentally disabled offenders in the following areas: (5-ACI-6C-06; 4-4399)

   1. Housing assignments

   2. Program assignment

   3. Disciplinary measures

   4. Transfer to other facilities

JUL 2 0 2020

5. When immediate action is required, consultation to review the appropriateness of the action occurs as soon as possible, but no later than 72 hours.

B. Operating Procedure 802.1, *Offender Property*, governs the purchase and possession of offender property items. Offenders with disabilities will be considered on a case-by-case basis for a reasonable accommodation for special property items that are consistent with the disability being addressed.

C. Offenders with disabilities are subject to Operating Procedure 861.1, *Offender Discipline, Institutions*. Staff should take into account that an offender's disability may affect their understanding of institutional procedure; efforts should be made to communicate with the offender in a manner that will maximize the offender's ability to comprehend and understand the information.

D. Operating Procedure 410.2, *Count Procedures* (Restricted), will be followed in order to determine the total number of and location of offenders at all times. Offenders who have a disability, which interferes with their ability to follow normal count procedures, will be reasonably accommodated to provide for the effective performance of count.

E. Operating procedure 411.1, *Offender Transportation* (Restricted), provides the requirements for the secure transportation of institutional offenders; and these requirements will apply when transporting offenders with disabilities.

1. Any offender who has a mobility impairment that makes it difficult to enter the secure transport must have use of the lift.

2. Transport of offenders in wheelchairs:

   a. Any offender confined to a wheelchair will be transported by a lift-equipped vehicle with the wheelchair properly secured in the vehicle.

   b. For the convenience and safety of staff and offenders, offenders with limited mobility may be transported in a wheelchair by a lift-equipped vehicle with the wheelchair properly secured in the vehicle.

   c. Correctional Officers will not lift offenders (either with their wheelchairs or without their wheelchairs).

   d. Ambulatory offenders may be transported in the same vehicle with offenders in a wheelchair provided seats and safety restraints are available for each offender and the wheelchair is properly secured in the vehicle.

F. Restraining Offenders with Disabilities

1. Before restraining an offender who may have a medically documented disability, security staff should consult with a Medical Practitioner (or designee) to determine any restrictions on applying restraints.

2. Unless there is a medically documented restriction regarding the use of restraints, restraints should be applied to offenders with disabilities taking into account any illness or disability that adversely affects an offender's stability, balance, and/ or coordination in accordance with Operating Procedure 420.2, *Use of Restraints and Management of Offender Behavior* (Restricted), in the same manner as any other offender.

3. Restraints should be applied to deaf offenders with handcuffs in front to allow some communication unless there is a significant security issue.

4. Force multipliers (chemical agents, impact weapons, canines, etc.) may be used on offenders with disabilities if necessary to protect the staff, visitors, and other offenders or to control disruptive behavior. When offender notification is required for the use of a force multiplier, offenders with communication disabilities must be notified in a manner that the offender can observe and understand.

5. Offenders with disabilities will be restrained as authorized in Operating Procedure 420.2, *Use of Restraints and Management of Offender Behavior* (Restricted).

G. Use of Force

1. Force may be used on offenders with disabilities in instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, or to maintain or regain control as provided in Operating Procedure 420.1, *Use of Force* (Restricted).

2. When such use must be preceded by the provision of an appropriate warning, this warning must be communicated by means that offenders with communication disabilities can observe and understand.

# DEFINITIONS OF TERMS USED IN THIS OPERATING PROCEDURE

**ADA Coordinator** - A Department of Corrections employee assigned to coordinate the Department's efforts to comply with and carry out its responsibilities under the provisions of Title II of the *Americans with Disabilities Act* to include the review of complaints alleging non-compliance with requirements of non-discrimination for offenders with disabilities and coordination of DOC's efforts to comply.

**Auxiliary Aids and Services** - Assistance provided through services, equipment, or modifications to provide equal access for disabled or impaired individuals to activities, programs, and privileges, these aids and services may include, but are not limited to:
- Qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments
- Qualified readers, taped texts, audio recordings, Brailed materials, large print materials, or other effective methods of making visually delivered materials available to individuals who are blind or have visual impairments
- Functional devices to increase mobility including but not limited to walkers, canes, crutches, and manual or powered wheelchairs for individuals with mobility impairments
- Acquisition or modification of equipment or devices and other similar services and actions

**Communication Disability** - Any impairment related to speech, language, and/or auditory processing; it includes hearing impairments, visual impairments, and cognitive impairments evidenced by an inability to speak, read, and/or understand written or oral communications of information provided at the facility.

**Co-payment** - The amount paid by the offender for health care service, treatment, prosthesis, or orthotic

**Health Care Practitioner** - A clinician trained to diagnose and treat patients, such as physician, psychiatrist, dentist, optometrist, nurse practitioner, physician assistant, and psychologist

**Health Care Provider** - An individual whose primary duty is to provide health services in keeping with their respective levels of licensure, health care training, or experience

**Major Life Activities** - Include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, toileting, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working

**Medical Practitioner** - A physician, nurse practitioner or physician's assistant          JUL 2 0 2020

**Mobility Impairments** - Inability to move about without the aid of a cane, splint, crutches, wheelchair, walker, or any other form of support or because of limited functional ability to ambulate, climb, descend, sit, rise, or perform any related function

**Offender with a Disability** - Any offender who has a physical or mental impairment that substantially limits one or more of their major life activities, has a record of such impairment, or is perceived as having such impairment

**Physical or Mental Impairment** - Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organ, respiratory (including speech organs), cardiovascular, reproductive, immune, digestive, genitourinary, hemic or lymphatic, skin and endocrine; or any mental or psychological disorder, such as mental retardation (Developmental Disorder), organic brain syndrome, emotional or mental illness, and specific learning disabilities. The phrase "physical or mental impairment" includes, but is not limited to, such contagious and non-contagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental

retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

**Prosthesis or Orthotic** - An artificial device to replace a missing body part or to compensate for a defective body function, including, but not limited to:

- Artificial limbs
- Eyeglasses
- Contact lenses
- Dentures
- Hearing aids
- Orthopedic shoes
- Crutches, wheelchair, braces, support bandages, girdles, etc.

**Qualified Individual with a Disability** - An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the facility.

**Reasonable Accommodation** - A modification, action, or adjustment that will assist an offender with a disability in the performance of essential functions or that is necessary to prevent an offender with a disability from being excluded from participation in or being denied the benefits of the services, programs and/or activities of the facility or subjected to discrimination by the facility without causing an undue hardship to the facility or to the safety and security of the offender, or any other person

**TDD Devices, Videophones, Video Relay Services** - Devices and services that assist hearing impaired offenders to communicate through the Offender Telephone Service

**Undue Hardship** - An accommodation that would be unduly costly, extensive, substantial, or disruptive; undue hardship refers not only to financial difficulty, but to accommodations that would fundamentally alter the nature or operation of the business or work performed by or at the facility or creates a direct threat to the health and safety or others. Undue hardship is an extremely high legal standard to establish for a state agency.

## REFERENCES

COV §51.5-1 et seq., *The Virginians with Disabilities Act*

42 U.S.C. §12101 et seq., *Americans with Disabilities Act of 1990*

*Nursing Guideline* for *Medical &Location Codes*

Operating Procedure 410.2, *Count Procedures* (Restricted)

Operating procedure 411.1, *Offender Transportation* (Restricted)

Operating Procedure 420.1, *Use of Force* (Restricted)

Operating Procedure 420.2, *Use of Restraints and Management of Offender Behavior* (Restricted)

Operating Procedure 425.4, *Management of Bed and Cell Assignments* (Restricted)

Operating Procedure 601.4, *Educational Testing*

Operating Procedure 601.5, *Academic Programs*

Operating Procedure 601.6, *Career and Technical Education Programs*

Operating Procedure 720.2, *Medical Screening, Classification, and Levels of Care*

Operating Procedure 720.4, *Co-Payment for Health Care Services*

Operating Procedure 720.6, *Dental Services*

Operating Procedure 750.3, *Prostheses*

Operating Procedure 802.1, *Offender Property*

Operating Procedure 803.3, *Offender Telephone Service*

Operating Procedure 810.1, *Offender Reception and Classification*

